LAURENCE PARADIS (CA BAR NO. 122336)
MICHAEL NUNEZ (CA BAR NO. 280535)
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716
Email:        mnunez@dralegal.org
Email:        lparadis@dralegal.org

TIMOTHY ELDER (CA BAR NO. 277152)
TRE Legal Practice
4226 Castanos Street
Fremont, CA 94536
Telephone:    (410) 415-3493
Facsimile:    (888) 718-0617
Email:        telder@trelegal.com
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA and MICHAEL HINGSON,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendants. | Case No. 3:14-cv-4086<br><br>**COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *et seq.*, THE CALIFORNIA UNRUH CIVIL RIGHTS ACT, CAL. CIV. CODE §§ 51 & 52, AND THE CALIFORNIA DISABLED PERSONS ACT, CAL. CIV. CODE §§ 54-54.3** |

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

**INTRODUCTION**

1.    This action seeks to put an end to systemic civil rights violations committed by Uber Technologies, Inc. ("Defendant") in California against blind individuals who use guide dogs. Plaintiff National Federation of the Blind ("NFB") of California sues on behalf of its members, including Plaintiff Hingson, who have been and continue to be deterred from using Uber's UberX taxi service because Uber has failed to ensure that blind riders with service animals, including members of Plaintiff NFB of California, can access Uber's taxi services.

2.    Uber offers the UberX taxi service to sighted individuals in California. UberX is highly cost-effective and widely available. Uber uses mobile software applications to arrange rides between passengers and its fleet of UberX drivers in much the same way that a taxi dispatch arranges rides for customers.

3.    UberX drivers are refusing to transport many blind individuals who use service animals, including members of NFB of California. For example, UberX drivers refused to transport Jamey Gump, Jonathan Lyens, and Juanita Herrera, blind members of NFB of California, because they use guide dogs. Further, UberX drivers across the United States are likewise refusing to transport blind individuals, including identified UberX drivers who repeatedly denied rides to one blind woman on twelve separate occasions, charged blind riders cancellation fees, and abandoned blind travelers in extreme weather, all because of guide dogs. In total, Plaintiffs are aware of more than thirty instances where drivers of UberX vehicles refused to transport blind individuals with service animals. UberX drivers that refused to transport these blind individuals did so after they initially agreed to transport the riders. The UberX drivers denied the requested transportation service after the drivers had arrived and discovered that the riders used service animals.

4.    In addition, some UberX drivers seriously mishandle guide dogs or harass blind customers with guide dogs even when they do not outright deny the provision of taxi service. For example, Leena Dawes is blind and uses a guide dog. An UberX driver forced Ms. Dawes' guide dog into the closed trunk of the UberX sedan before transporting Ms. Dawes. When Ms. Dawes

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-4086**
**COMPLAINT**   1

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  realized where the driver had placed her dog, she pleaded with the driver to pull over so that she

2  could retrieve her dog from the trunk, but the driver refused her request. Other blind customers

3  with guide dogs have been yelled at by Uber drivers who are hostile toward their guide dogs.

4       5.     Many of these blind individuals submitted written complaints to Uber concerning

5  the discriminatory treatment that they had experienced. However, Uber has failed to notify most

6  of these individuals whether Uber has thoroughly investigated their complaints, disciplined the

7  relevant UberX drivers, or taken any other meaningful steps to ensure that these drivers do not

8  continue to unlawfully discriminate against them or other individuals with service animals.

9  Instead, Uber representatives often respond to these complaints by denying responsibility for the

10  discrimination. Meanwhile, many of these blind individuals experience ongoing denials from

11  multiple drivers.

12       6.     Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB of

13  California. Mr. Hingson, a public speaker and best-selling author, travels extensively throughout

14  California and has traveled with a guide dog for decades. Mr. Hingson is aware of Uber's

15  widespread discrimination against blind individuals with service animals, and Mr. Hingson has

16  refrained and continues to refrain from creating an Uber user account or otherwise using Uber's

17  transportation services because he fears experiencing similar discrimination. Mr. Hingson has

18  been deterred from using UberX on many specific occasions where it would have been

19  convenient for him to use Uber's services.

20       7.     When Uber denies rides to blind riders with service animals, blind individuals

21  experience several harms. They face unexpected delays, they must arrange alternate

22  transportation that is sometimes more costly, and they face the degrading experience of being

23  denied a basic service that is available to all other paying customers.

24       8.     In addition, Uber charges many blind riders with guide dogs cancellation fees

25  after UberX drivers have unlawfully denied them service. These blind riders are also often

26  placed in the uncomfortable position of explaining to uninformed UberX drivers that service

27

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-04086**
**COMPLAINT**     2

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   animals are protected by law and that blind people have the right to bring service animals into

2   vehicles providing taxi services.

3          9.      Uber is violating basic equal access requirements under both the ADA and state

4   law by failing to implement policies and procedures that would prevent or reduce discrimination

5   against blind riders committed by UberX drivers. Because Uber closely monitors and tightly

6   controls interactions between UberX drivers and its customers, Uber can implement policies and

7   procedures, including policies and procedures that leverage its mobile smart phone software

8   applications, that would prevent or reduce discrimination committed by its drivers against blind

9   riders with service dogs. However, Uber insists that it is not a transportation provider and that it

10  is not legally obligated to take any steps to ensure that its drivers do not discriminate against

11  blind riders. Uber maintains this position despite the fact that the California Public Utilities

12  Commission ruled that Uber is a transportation provider operating the UberX taxi service.

13         10.     UberX and other similar taxi services are a critical transportation option for many

14  blind individuals in California. Due to distances between destinations and the limitations of

15  public transportation and paratransit, many blind persons must use taxi services to travel from

16  one place to another. The fact that UberX vehicles have frequently refused to transport blind

17  riders with service animals, and that this discrimination deters Plaintiff Hingson and other

18  members of Plaintiff NFB of California with service animals from using UberX, means that

19  members of Plaintiff NFB of California are denied full and equal access to this critical mode of

20  transportation.

21         11.     Due to the public's widespread adoption of smart phones, Uber and other

22  transportation network companies are quickly supplanting traditional taxi companies and

23  becoming the public's primary option for on-demand taxi services. Uber offers taxi services in

24  most of California's largest cities and is quickly spreading.

25         12.     Congress provided a clear and national mandate for the elimination of

26  discrimination against individuals with disabilities when it enacted the Americans with

27  Disabilities Act. Such discrimination includes discrimination in the provision of taxi services.

28

---

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-4086**
**COMPLAINT**                                                                                      3

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Similarly, California state law requires full and equal access to all business establishments and

2   places where the public is invited, including vehicles providing taxi services.

3       13.     Plaintiffs NFB of California and Hingson proposed to Uber that the parties avoid

4   litigation and instead attempt to resolve this matter through structured negotiations, but

5   Defendant refused. Plaintiffs were ultimately unable to obtain a commitment by Defendant to

6   remedy these barriers to full and equal access.

7                                      **JURISDICTION**

8       14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

9   1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities

10  Act, 42 U.S.C. §§ 12101, et seq.

11      15.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over

12  Plaintiffs' pendent claims under the California Unruh Civil Rights Act (California Civil Code §§

13  51, et seq.), and the Disabled Persons Act (California Civil Code §§ 54-54.3).

14                                        **VENUE**

15      16.     Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c).

16      17.     Defendant Uber is headquartered in the Northern District of California and is

17  registered to do business in California. Defendant Uber does business in the Northern District of

18  California. Defendant operates fleets of vehicles providing taxi services in cities throughout

19  California, including fleets providing taxi services in the Northern District of California.

20      18.     Defendant is subject to personal jurisdiction in the Northern District of California.

21  Defendant has been and is committing the acts alleged herein in the Northern District of

22  California, has been and is violating the rights of consumers with disabilities in the Northern

23  District of California, and has been and is causing injury to consumers with disabilities in the

24  Northern District of California.

25      19.     Plaintiff NFB of California has many members who reside in the Northern

26  District of California. In addition, Plaintiff Hingson has experienced injury from deterrence in

27  the Northern District of California.

28                                        **PARTIES**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

20.     The NFB of California is a duly organized nonprofit association of blind Californians. It is the California State affiliate of the National Federation of the Blind. The NFB of California's mission is to promote the vocational, cultural, and social advancement of the blind; to achieve the integration of the blind into society on a basis of equality with the sighted; and to take any other action which will improve the overall condition and standard of living of the blind. Reliable access to modern, publicly available transportation services such as UberX is critical to the NFB of California and its members. Securing access to the UberX taxi service advances the NFB of California's goal to promote integration of the blind into society on a basis of equality by enabling blind individuals to travel in the same way that many sighted individuals travel. UberX drivers have refused to transport members of the NFB of California because they have service animals. The NFB of California sues on behalf of its members who have been deterred from using the UberX service due to unlawful discrimination against blind individuals with service animals. NFB of California also sues in furtherance of its extensive efforts and expenditure of resources in advancing its mission to improve independence of the blind. Securing access to the UberX service advances this mission because access to the UberX service enables blind individuals to travel more independently. Thus, discrimination against members of NFB of California and other blind individuals who use service animals frustrates this mission of the NFB of California and results in the diversion of its resources to address Defendant's discriminatory practices.

21.     Plaintiff Hingson is blind, uses a guide dog, is a member of NFB of California, and currently resides in Victorville, California. Mr. Hingson is a public speaker and a best-selling author who has traveled with a guide dog for decades. Mr. Hingson regularly travels and regularly uses taxis within California for work and leisure. Mr. Hingson often travels to Los Angeles and Sacramento in connection with his advocacy work for the National Federation of the Blind of California. He also regularly travels to San Francisco for personal and professional business. Though Mr. Hingson would like to use the UberX transportation service, he is deterred from signing up for and attempting to use Uber's transportation services because of the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   discrimination that other blind guide dog users have experienced when attempting to use the

2   UberX taxi service. Mr. Hingson owns and regularly uses an iPhone capable of running the Uber

3   iPhone application, and Mr. Hingson has a credit card that he could use to pay for the UberX taxi

4   service. The term "Plaintiffs" used in this complaint means both NFB of California, on behalf of

5   itself and its members with service animals who are deterred from using the UberX taxi service

6   because of discrimination against blind persons with service animals, and Mr. Hingson unless

7   otherwise indicated.

8       22.     Defendant Uber, a for-profit transportation network company based in California,

9   provides transportation services through thousands of vehicles in California. Uber uses smart

10  phone software applications to arrange rides between passengers and its fleet of drivers in much

11  the same way that a taxi dispatch arranges rides for customers. Uber closely monitors and

12  controls interactions between its drivers and customers. Uber's customers request rides through

13  Uber; Uber identifies an available driver to transport each customer; Uber bills customers for

14  their rides in UberX vehicles; Uber provides customers with receipts; and Uber handles inquiries

15  and complaints from customers concerning Uber's drivers and taxi services. Uber also controls

16  the financial transaction associated with each ride that UberX drivers provide to customers.

17                          **FACTUAL ALLEGATIONS**

18      23.     Uber provides several different taxi services to members of the general public in a

19  rapidly expanding number of metropolitan areas across California and the United States. Uber's

20  taxi services vary based on the type of vehicle providing the transportation. UberX is one of

21  Uber's most cost-effective taxi services. To use Uber taxi services, a customer must create a user

22  account, and the customer must provide Uber with her phone number, credit card information,

23  and email address. Uber has developed mobile software applications for iPhones, Android

24  phones, and Windows phones that customers use to request transportation from Uber.

25      24.     To use the UberX taxi service, a customer submits a request through one of

26  Uber's mobile software applications. Once Uber identifies the vehicle that will provide the

27  customer with taxi service, Uber notifies the customer either by text message or through its smart

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

phone application. The notification includes the UberX driver's name, customer rating, phone number, vehicle license plate number, make and model of the UberX vehicle, and the driver's estimated time of arrival. Uber's mobile application allows customers to track the UberX vehicle's location as the driver navigates to the customer. The customer may also submit his or her trip destination through Uber's mobile application.

25.     Uber notifies the customer once his or her UberX vehicle has arrived. The customer may then board the vehicle. If the customer submitted his or her destination address to Uber, then Uber will supply the UberX driver with turn-by-turn directions to the customer's destination. If the customer did not enter the destination into Uber's application, the customer must provide the driver with his or her destination. The driver then starts the fare meter in the Uber software application and proceeds to the customer's destination. When the customer arrives at his or her destination, the driver ends the trip in the Uber smart phone application.

26.     Uber decides who may provide its UberX taxi service. Individuals who wish to provide UberX taxi services must take an exam, undergo a criminal background check, undergo a driving record check, present their driver's license, vehicle registration, and drivers' insurance, and complete various forms. Once an individual becomes an UberX driver, Uber controls which trip requests are transmitted to each of its UberX drivers. Uber also exercises exclusive control over termination of UberX drivers, and Uber routinely terminates drivers for several reasons, including for poor ratings from customers.

27.     Uber also controls who may use the UberX taxi service. Uber makes the UberX service available only to members of the public who have a credit card and a smart phone that can run one of its mobile applications, who create an Uber account, and who request a ride through Uber's mobile application. Customers cannot access the UberX taxi service by physically hailing an UberX vehicle on the street.

28.     Uber exercises significant control over the UberX taxi service, and Uber has detailed requirements for driver conduct and appearance. Uber has requirements for the type and age of the vehicle that drivers may use to provide the UberX taxi service. In addition, before an

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

UberX driver may use a vehicle to provide UberX taxi services in California, the vehicle must pass an inspection. Uber also requires that UberX drivers refrain from smoking while providing Uber taxi services, refrain from asking customers to give them five-star ratings, and meet or exceed the estimated time-of-arrival that Uber generates and provides to each customer. In addition, Uber instructs UberX drivers that the share of trip requests that they accept through Uber's application should be consistently high, and that UberX drivers may not accept street hails from potential passengers. Furthermore, Uber issues training and directives concerning other requirements to UberX drivers.

29.     Uber also closely monitors its UberX drivers. Uber records many details about the taxi services that its UberX drivers provide, including for each trip: (1) the pickup location, (2) the time of pickup, (3) the drop off location, (4) the time of drop off, (5) the distance traveled, (6) the trip route, (7) the trip duration, and (8) the customer's identity. Uber employees who supervise drivers have easy access to this data. In addition, Uber periodically reviews the driving record for each of its UberX drivers. Uber also monitors its UberX drivers' performance by asking customers for written feedback after every ride that a driver provides, and Uber routinely follows up with customers who express dissatisfaction. Furthermore, Uber regularly terminates or suspends UberX drivers whose average customer rating falls below a certain threshold.

30.     In addition, Uber provides UberX drivers with supplies necessary to provide Uber's taxi services. Uber provides UberX drivers with iPhones loaded with Uber's smart-phone application. When providing Uber's taxi services, drivers use these phones to receive and respond to trip requests, receive GPS-based navigational guidance, record the beginning and end of each trip, communicate with customers, and cancel trips. In addition, Uber maintains general commercial liability insurance to cover claims concerning incidents that occur while drivers are providing UberX taxi services.

31.     Uber tightly controls payment for its UberX taxi services. Customers do not pay drivers of Uber vehicles directly. Instead, Uber automatically charges a customer's credit card after he or she arrives at her destination. Uber has exclusive control over the fares that customers

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  pay and the compensation that UberX drivers receive. Fares for Uber's taxi services are based on

2  the duration and distance of each trip and other factors such as demand at the time and place of

3  the ride. Uber keeps twenty percent of each fare. Thus, Uber compensates its UberX drivers

4  based on the duration and distance of the trips that they provide to customers. Customers who

5  dispute the fare for a particular trip must contact Uber customer service representatives to request

6  an adjustment to their fares.

7       32.    Thus, Uber closely monitors and controls interactions between UberX drivers and

8  customers. Uber decides which of its UberX drivers may transport each customer. In addition,

9  Uber specifies how quickly each UberX driver should pick up each customer. After UberX

10 drivers pick up customers, Uber routinely provides UberX drivers with directions to customers'

11 destinations, and Uber specifies driver conduct that is prohibited while UberX drivers transport

12 customers. Moreover, Uber decides how much each customer must compensate each UberX

13 driver for each trip, and Uber, not the UberX driver, provides each customer with a fare receipt

14 for each trip. Customers and drivers must communicate through Uber's mobile application. Uber

15 records trip-related details about every trip that each UberX driver provides to each customer,

16 and Uber collects written feedback from every customer concerning the quality of each UberX

17 driver's performance after every trip. Furthermore, customers who forget personal property in

18 UberX vehicles may contact Uber to request assistance retrieving that property.

19      33.    On September 19, 2013, the California Public Utilities Commission ruled that

20 Uber is a transportation provider with respect to the UberX service. The Commission requires

21 that Uber possess a Class P Charter Party Carrier permit issued by the Commission to operate the

22 UberX service in California. The Commission concluded that Uber is a transportation provider

23 because Uber provides essentially the same function as a taxi dispatch office and because Uber

24 controls payment for its transportation services. The Commission also explained that the fact that

25 a smart phone application is used to arrange Uber's transportation service is irrelevant to whether

26 Uber is a transportation provider. The Commission also stated that Uber may not discriminate

27 against people with disabilities in the provision of its UberX transportation service.

28

---

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-4086**
**COMPLAINT**                                                     **9**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

34.     Members of Plaintiff NFB of California and other blind individuals use Uber's UberX taxi service. Many of these individuals operate Uber's smart phone software application using text-to-speech technology that is built into iPhones. Text-to-speech software, commonly used by persons who are blind or visually impaired, enables blind persons to operate smart phones by translating visual information and text displayed on a touchscreen device into audible synthesized speech or into Braille on a portable electronic braille display.

35.     UberX drivers have refused on the basis of disability to transport many blind individuals with service animals, including members of Plaintiff NFB of California. For example, Jamey Gump is blind, uses a guide dog, and is a member of NFB of California. On or about March 23, 2014, an UberX driver refused to transport Mr. Gump in San Leandro, California from a work-related event to his home. On that occasion, Mr. Gump used the Uber mobile app to summon an UberX taxi. The UberX driver pulled the vehicle up to where Mr. Gump was standing on the curb and, after noticing that Mr. Gump had a dog, said "no pets allowed." Mr. Gump tried to explain that his guide dog was a service animal and that the UberX driver had a legal obligation to allow the service animal into the vehicle. Mr. Gump attempted to show the UberX driver an official guide dog identification card issued by his guide dog's training program. The driver adamantly refused to let Mr. Gump into the vehicle and drove away.

36.     On or about May 21, 2014, another UberX driver refused to transport Mr. Gump because of his service animal. On that occasion, Mr. Gump and a friend who also uses a service animal were enjoying an evening at the Dutch Goose, a local pub in downtown Menlo Park, California. Mr. Gump had planned to leave on a trip early the next morning and requested an UberX ride to get to his home in Menlo Park because of the late hour. After the requested UberX vehicle had pulled up to the curb, Mr. Gump and his friend opened a passenger door. The UberX driver began shouting "no dogs!" Mr. Gump tried to explain that his dog was a service animal for his disability and was legally allowed in the vehicle. The UberX driver began shouting and cursing at Mr. Gump and his friend in a language that Mr. Gump did not understand. Mr.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Gump's friend speaks the language and was offended by the profanity and insults. As Mr. Gump

2   attempted to enter the vehicle, the UberX driver quickly accelerated the vehicle forward, nearly

3   injuring Mr. Gump's guide dog and causing an open passenger door to strike Mr. Gump's friend.

4   The UberX driver then sped away and cancelled the ride request. Mr. Gump and his friend

5   immediately called the police to file a report and used alternative transportation to travel home

6   approximately forty-five minutes later.

7       37.     On August 20, 2014, Mr. Gump requested an UberX ride to pick him up at 214

8   Van Ness Ave., San Francisco, California. Mr. Gump determined from the map in the Uber

9   iPhone application that his requested vehicle was about to turn onto his street. Mr. Gump then

10  went out to the curb with his guide dog in direct sight of the oncoming vehicle to intercept the

11  UberX driver. Mr. Gump noticed a vehicle slow its speed to a near stop in front of him and then

12  accelerate again as it passed him on the curb. A few seconds later, Mr. Gump received a

13  notification on his phone that the UberX driver had cancelled the ride. Mr. Gump then requested

14  a second UberX ride, but Uber assigned the exact same driver and vehicle to pick up Mr. Gump

15  for a second time. Again, a few seconds after Mr. Gump received confirmation that this same

16  driver was on the way, the driver cancelled on him for a second time.

17      38.     Mr. Gump wants to use the UberX taxi service because it is convenient and

18  available near his home, an area with limited public transportation. However, he stopped using

19  Uber after this most recent experience because he concluded that it is not a reliable transportation

20  option for him. Notwithstanding Mr. Gump's repeated complaints to Uber about his negative

21  experiences over the last several months, his access to Uber's services has not improved. Mr.

22  Gump hopes that Uber will change its policies and practices to better prevent discrimination

23  against passengers with service animals so that he can enjoy Uber with the same convenience

24  and reliability enjoyed by others.

25      39.     Jonathan Lyens is blind, uses a guide dog, and is a member of NFB of California.

26  An UberX driver refused to transport him from his home to a job interview in San Francisco,

27  California on or about February 20, 2014. On or about 8:30 a.m. on that date, Mr. Lyens

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

requested UberX transportation from his home in San Francisco. Uber notified Mr. Lyens that it had identified an UberX vehicle to transport him, and Uber notified Mr. Lyens when the vehicle arrived at his home. Mr. Lyens then went with his guide dog to the street in front of his home to find his UberX vehicle. Mr. Lyens observed that a vehicle arrived at his home briefly after Uber notified him that his transportation had arrived. Uber then notified Mr. Lyens that the driver of the Uber vehicle had cancelled his ride, and Mr. Lyens observed the vehicle in front of his home leave. As a result of this cancellation, Mr. Lyens had to pay a higher fare for transportation to his interview. He was also late to his interview because of the delay.

40.    Juanita Herrera is a blind college student, uses a guide dog, is a member of NFB of California, and resides in Southern California. Ms. Herrera is interested in using the UberX service because it is more convenient and affordable than other taxi options. She attempted to use the UberX service for the first time on August 7, 2014. She requested a ride from the Macy's store located at 6200 Slauson Avenue in Culver City, California. She was standing in front of the store waiting for her requested ride when an Uber driver approached her and asked if she was waiting for Uber. She answered yes, and the Uber driver asked if her dog was coming with her. She told him that her dog would accompany her and that her dog is not a pet. She explained that her dog is a service animal and that he was legally required to take both her and her service animal. The UberX driver ignored her plea and refused to let her service animal enter the vehicle. The UberX driver told her that he was leaving for his next passenger. He then left Ms. Herrera standing dejected on the curb with her service animal. As a result, Ms. Herrera waited thirty minutes for a bus and then rode the bus for 25 minutes to get to her destination. The trip takes ten minutes in an UberX taxi.

41.    Robert Schulenburg is blind, uses a guide dog, and resides in California. UberX drivers have refused to transport Mr. Schulenburg on several occasions in Santa Clara, California, San Jose, California, and Sacramento, California because of his guide dog. In addition, Uber has charged him cancellation fees after some UberX drivers refused to transport him, and Mr. Schulenburg has been forced to submit written complaints to Uber to get these fees

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   refunded. When UberX drivers have refused to transport Mr. Schulenburg, he has faced delays of

2   up to thirty minutes as he awaits alternative transportation. Mr. Schulenburg has submitted

3   written complaints about these instances of discrimination to Uber. However, Uber has failed to

4   inform Mr. Schulenburg whether Uber disciplined the relevant drivers or took any other steps to

5   ensure that these drivers would not unlawfully discriminate against other individuals with service

6   animals. Instead, Uber responded to some of Mr. Schulenburg's complaints by stating that Uber

7   cannot control its drivers' conduct because the drivers are independent contractors and by

8   advising Mr. Schulenburg that he should inform UberX drivers of their legal obligation to allow

9   his service animal to accompany him.

10      42.     Sarah Outwater is blind and uses a guide dog. UberX drivers refused to transport

11  her in Boston on at least twelve separate occasions over the last year. Uber charged her

12  cancellation fees in some instances where the UberX vehicles refused to transport her. In

13  addition, the same UberX driver refused to transport her on three of these occasions, despite an

14  Uber representative's prior assurances that Uber would address the driver's discriminatory

15  practices.

16      43.     Mark Cadigan is blind and uses a guide dog. During the month of August 2014,

17  Mr. Cadigan was denied service by two UberX drivers in the Boston area because of his service

18  animal. On both occasions, Uber charged Mr. Cadigan cancellation fees after the UberX drivers

19  cancelled the trip. Mr. Cadigan was forced to submit written complaints to Uber and to wait one

20  to three business days to get these cancellation fees refunded. His written complaints also

21  described the discrimination that he experienced. Mr. Cadigan is unsatisfied with Uber's

22  responses to his complaints. He received no formal response on one occasion and was verbally

23  told on the other occasion that the UberX driver had merely been reprimanded. Mr. Cadigan

24  believes Uber does not adequately or consistently discipline UberX drivers when complaints are

25  made to Uber customer service representatives.

26      44.     Demetrius Kouniaris is blind and uses a guide dog. During August 2014, UberX

27  drivers refused to transport Mr. Kouniaris on two occasions in Austin, Texas because of his

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    service animal. On both occasions, Mr. Kouniaris was stranded in temperatures of over 100 °F as

2    he waited for alternative transportation. Uber also charged Mr. Kouniaris a cancellation fee and

3    only refunded it after he complained.

4         45.    Plaintiffs are aware of other blind persons throughout California and the United

5    States whom UberX drivers refused to transport because those individuals had service animals.

6         46.    In addition, some UberX drivers mishandle transportation services for blind

7    people using guide dogs even when they do not outright deny service. For example, Leena

8    Dawes is blind and uses a guide dog. On or about March 27, 2014, an UberX driver placed Ms.

9    Dawes' guide dog in the closed trunk of his sedan before transporting Ms. Dawes in Sacramento,

10   California. Once Ms. Dawes had realized that her dog was in the trunk, she pleaded with the

11   driver to pull over so that she could retrieve her dog, but the driver refused her request. Ms.

12   Dawes transmitted a written complaint about this incident to Uber. Uber has failed to inform Ms.

13   Dawes whether Uber fully investigated her complaint or took any meaningful action to ensure

14   that the driver does not abuse service animals in this manner in the future.

15        47.    Many of these blind individuals submitted written complaints to Uber concerning

16   the discriminatory treatment that they have experienced. However, Uber has failed to inform

17   most of these individuals whether Uber has fully investigated their complaints, disciplined the

18   relevant drivers, or taken any other meaningful steps to ensure that these drivers do not

19   unlawfully discriminate against other individuals with service animals. Uber representatives

20   instead informed many blind guide dog users that "the drivers are independent contractors" and

21   Uber "cannot control their actions" and advised blind guide dog users to "let your driver know

22   when he or she is on the way to your pickup location that you have a guide dog[.]"

23        48.    Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB of

24   California. Mr. Hingson previously downloaded the Uber app onto his iPhone but ultimately

25   decided against creating an account and trying to use the service. Mr. Hingson learned that

26   UberX drivers often refuse to transport blind individuals with service animals. Mr. Hingson has

27   refrained and continues to refrain from creating an Uber user account or otherwise using Uber's

28

1 transportation services because he fears experiencing similar discrimination. Mr. Hingson was

2 deterred from using UberX on many specific occasions. For example, on or about December 5,

3 2013, Mr. Hingson was planning to travel to a job interview at an executive recruiting firm in

4 San Francisco. At that time, Mr. Hingson was aware that Uber was available in San Francisco.

5 However, because of a tight schedule, Mr. Hingson decided not to attempt to use the UberX taxi

6 service because he could not afford to be delayed by an UberX driver refusing to take his guide

7 dog. Instead, Mr. Hingson arranged for a taxicab well in advance of his transit and extended his

8 trip so that he could use nondiscriminatory transportation services to travel to his appointment on

9 time.

10       49.    Plaintiff Hingson was further deterred from using Uber on January 20, 2014. On

11 that occasion, Mr. Hingson needed to quickly travel from the Ferry Building in San Francisco to

12 a speaking engagement at Wells Fargo. Mr. Hingson could not risk arriving late for this

13 important professional engagement. Mr. Hingson wanted to use UberX because of its general

14 convenience and the quality of the vehicles. However, he was deterred from doing so because he

15 did not want to wait for the UberX vehicle to arrive and then discover that the driver would

16 refuse to take his service animal.

17       50.    Plaintiff Hingson was similarly deterred from using Uber on or about May 15,

18 2014. Mr. Hingson needed to travel within San Francisco to a meeting with a press contact. Mr.

19 Hingson wanted to use UberX to attend this meeting. However, Mr. Hingson wanted to be

20 focused for this meeting and believed the stress of encountering an improperly trained UberX

21 driver that refused to transport his service animal would cause him stress and negatively affect

22 his performance at the meeting.

23       51.    Plaintiff Hingson would like to use UberX for future travel. For example, on or

24 about September 28, 2014, Mr. Hingson will travel from Los Angeles to San Francisco to attend

25 meetings with marketing consultants for the purpose of filming video footage. Mr. Hingson must

26 coordinate his travel schedule with airline flights and maximize his time with these consultants

27 during the trip. He cannot afford to waste unnecessary time in transit. Mr. Hingson would like to

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-4086**
**COMPLAINT**                         15

use UberX on this and many other upcoming trips. However, UberX is currently not a reliable source of transportation for Mr. Hingson because of the risk that an UberX driver will refuse to transport his service animal. Mr. Hingson hopes that Uber will take responsibility for the conduct of its drivers and assert the control that it has over them to prevent and minimize discrimination. Mr. Hingson would use UberX if Uber properly trained drivers, adopted and enforced effective antidiscrimination policies, and provided blind passengers a convenient way to immediately report discrimination so that he has some assurance that UberX will be as reliable and convenient for him and his guide dog as Uber is for others.

52.     Uber is violating basic equal access requirements under both the ADA and state law by failing to implement policies and procedures that would prevent or reduce discrimination against blind riders committed by UberX drivers. Because Uber closely monitors and tightly controls interactions between UberX drivers and its customers, Uber can adopt and enforce policies and procedures that would prevent or reduce discrimination against blind individuals with service animals, including members of Plaintiff NFB of California. These policies would include, but are not limited to, the following:

1.     Provide an accessible method for blind individuals with service dogs to immediately and efficiently report instances where Uber drivers refuse to transport them on the basis of disability;

2.     Establish a procedure for quickly investigating complaints and informing such blind persons of the outcome of their complaints;

3.     Provide mandatory periodic training to Uber drivers concerning legal access requirements applicable to service animals and explain to drivers the consequences for failing to comply with these legal obligations;

4.     Meaningfully discipline drivers who deny access to blind riders with service animals and permanently terminate drivers who violate service animal policies on more than one occasion; and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

5. Randomly deploy blind testers who use guide dogs to proactively identify–for retraining or termination–drivers who refuse to transport individuals with disabilities because of the presence of their service animals.

53. On June 3, 2014, Plaintiffs wrote to Defendant to notify it about the unlawful discrimination in the provision of UberX taxi services to blind individuals with service animals. On July 16, 2014, Plaintiffs proposed to Defendant that the parties attempt structured negotiations to resolve the issue without a lawsuit. On August 8, 2014, Defendant rejected Plaintiffs' proposal for structured negotiations. Defendant has since then failed to take adequate measures to remedy the discrimination, and UberX drivers continue to discriminate against blind customers with service animals.

**FIRST CAUSE OF ACTION**

**Violation of Title III of the Americans with Disabilities Act**
**(42 U.S.C. § 12101 et seq.)**

54. Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

55. Title III of the Americans with Disabilities Act prohibits discrimination on the basis of disability by owners, operators, lessees, and lessors of places of public accommodation. 42 U.S.C. § 12182(a).

56. Title III of the ADA also prohibits discrimination on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

57. Members of Plaintiff NFB of California including Plaintiff Hingson are qualified individuals with disabilities within the meaning of Title III of the ADA.

58. Defendant Uber owns, operates, or leases vehicles providing taxi service and specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D § 37.29. The vehicles providing taxi services owned, operated, or

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   leased by Uber are places of public accommodation within the meaning of Title III of the ADA.

2   42 U.S.C. §§ 12181(10), 12184(a); 28 C.F.R. § 36.104. Except for modifications to vehicles

3   providing taxi services for the purpose of wheelchair accessibility, all of the antidiscrimination

4   provisions of Title III of the ADA apply to the goods, services, facilities, privileges, advantages,

5   and accommodations of vehicles providing taxi services.

6       59.     Title III prohibits public accommodations from excluding, on the basis of

7   disability, individuals with disabilities from participating in or benefiting from the goods,

8   services, facilities, privileges, advantages, or accommodations of public accommodations or

9   otherwise discriminating against a person on the basis of disability. 42 U.S.C. §

10  12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

11      60.     By failing to adopt policies and practices that will prevent or reduce

12  discrimination against blind individuals with service animals in the provision of the UberX taxi

13  service, Defendant violates Title III of the ADA by excluding Plaintiffs on the basis of disability

14  from enjoying the services, privileges, advantages, or accommodations of UberX vehicles.

15      61.     Under Title III, it is also unlawful for places of public accommodation to afford,

16  on the basis of disability, an individual or class of individuals with disabilities with an

17  opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or

18  accommodation that is not equal to that afforded other individuals. 42 U.S.C. §

19  12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

20      62.     Defendant violates Title III of the ADA by providing blind individuals with

21  service animals, including Plaintiffs, an opportunity to participate in or benefit from the services,

22  privileges, advantages, or accommodations of UberX vehicles that is not equal to that afforded

23  other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

24      63.     Title III further prohibits places of public accommodation from providing, on the

25  basis of disability, an individual or class of individuals with a good, service, facility, privilege,

26  advantage, or accommodation that is different or separate from that provided to other

27  individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

64.     By operating a taxi service that dispatches drivers who unlawfully discriminate against and refuse to transport blind individuals with service animals, Defendant violates Title III of the ADA because it provides Plaintiffs, on the basis of disability, with services, privileges, advantages, and accommodations of UberX vehicles that are different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

65.     Title III prohibits private entities providing specified public transportation from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered. 42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

66.     By operating a taxi service that dispatches drivers who unlawfully discriminate and refuse to transport blind individuals with service animals, Defendant violates Title III of the ADA because Defendant is utilizing eligibility criteria that screen out or tend to screen out Plaintiffs and other blind individuals with guide dogs from fully enjoying the UberX taxi service. 42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

67.     It is a violation of Title III for public accommodations to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12182(b)(2)(a)(ii), 12184(b)(2)(A); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302(a).

68.     By failing to modify practices, policies, and procedures to ensure that drivers of UberX vehicles are properly trained and do not refuse to transport blind individuals with service animals, Defendant is denying Plaintiffs full and equal access to Uber's taxi services.

69.   In addition, it is a violation of Title III to utilize, directly or through contractual or other arrangements, standards or criteria or methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(d); 28 C.F.R. § 36.204.

70.   By administering Defendant's UberX taxi service in a manner that results in blind individuals who use service animals being denied access to the UberX service on the basis of disability, Defendant is denying Plaintiffs full and equal access to the services, privileges, advantages, and accommodations of UberX vehicles because Defendant is utilizing methods of administration that have the effect of discriminating on the basis of disability.

71.   Title III regulations prohibit private entities providing taxi services from discriminating by refusing to provide taxi services to people with disabilities who can physically access taxi vehicles. 42 U.S.C. § 12184(b)(4)(B); 49 C.F.R. §§ 37.5(a)-(b), (f), 37.29(c).

72.   Title III regulations also specifically require that private entities providing transportation services permit service animals to accompany people with disabilities in vehicles and facilities. 49 C.F.R. §§ 37.5(f), 37.37(f), 37.167(a), (d); 28 C.F.R. § 302(c)(1).

73.   Defendant violates Title III of the ADA by refusing to provide transportation services to blind individuals with service animals, including Plaintiffs, who can physically access UberX vehicles. Defendant therefore violates Title III of the ADA by denying Plaintiffs full and equal access to the services, facilities, privileges, advantages, and accommodations of vehicles providing the UberX taxi service.

74.   The actions of Defendant were and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Defendant has failed to take any equitable steps to remedy its discriminatory conduct, and Defendant's violations of the ADA are ongoing. Defendant's unlawful actions deter members of Plaintiff NFB of California, including Plaintiff Michael Hingson, from attempting to access the UberX taxi service. Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

75.   Plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    WHEREFORE, Plaintiffs pray for relief as set forth below.

2                      **SECOND CAUSE OF ACTION**

3         **Violation of the California Unruh Civil Rights Act**

4             **(California Civil Code §§ 51 & 52)**

5        76.      Plaintiffs incorporate by reference the foregoing allegations as though fully set

6    forth herein.

7        77.      The Unruh Civil Rights Act guarantees, inter alia, that persons with disabilities

8    are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all

9    business establishments of every kind whatsoever within the jurisdiction of the state of

10    California. Cal. Civ. Code § 51(b).

11        78.      The network of Uber vehicles providing transportation services to the general

12    public in California is a business establishment within the jurisdiction of the state of California,

13    and as such are obligated to comply with the provisions of the California Unruh Civil Rights Act,

14    California Civil Code §§ 51 *et seq*.

15        79.      The Unruh Act provides, inter alia, that a violation of the ADA, §§ 12101 *et seq.*,

16    also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

17        80.      Defendant's discriminatory conduct alleged herein includes, *inter alia*, the

18    violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore

19    also violates the Unruh Act. Cal. Civ. Code § 51(f).

20        81.      The actions of Defendant were and are in violation of the Unruh Civil Rights Act,

21    California Civil Code §§ 51, et seq. Members of Plaintiff NFB of California, including Plaintiff

22    Hingson, are aware of Defendant's unlawful actions, and their knowledge of this discrimination

23    has deterred members of Plaintiff NFB of California, including Plaintiff Hingson, from

24    attempting to access the UberX taxi service on several occasions. Therefore Plaintiffs are entitled

25    to injunctive relief remedying the discrimination pursuant to California Civil Code § 52. Unless

26    the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiffs

27    will continue to suffer irreparable harm.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC.,*
**Case No. 3:14-cv-4086**
**COMPLAINT**                                        21

82.     Plaintiff Hingson is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense in violation of the Unruh Act. Cal. Civ. Code § 52(b).

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION

### Violation of the California Disabled Persons Act
### (California Civil Code §§ 54-54.3)

83.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

84.     California Civil Code §§ 54-54.3 guarantee, *inter alia*, that persons with disabilities are entitled to full and equal access, as other members of the general public receive, to accommodations, advantages, facilities, and privileges of all "common carriers," "motor vehicles," "places of public accommodation" and "other places to which the general public is invited" within the jurisdiction of California. Cal. Civ. Code § 54.1(a)(1).

85.     It is a violation of California Civil Code §§ 54-54.3 to prevent service dogs from accompanying individuals with disabilities in any common carriers, motor vehicles, places of public accommodation, or other places to which the general public is invited. Cal. Civ. Code § 54.2(a)-(b). Any violation of the ADA is also a violation of California Civil Code § 54.1. Cal. Civ. Code § 54.1(d).

86.     UberX vehicles providing transportation services to the general public are common carriers, motor vehicles, places of public accommodation or other places to which the general public is invited under California Civil Code §§ 54.1(a)(1).

87.     Defendant is violating the rights of Plaintiffs to full and equal access to common carriers, motor vehicles, places of public accommodation or other places to which the general public is invited under California Civil Code §§54-54.3 by denying blind riders with service dogs full and equal access to the accommodations, advantages, facilities, and privileges of Uber vehicles providing the UberX taxi service. Defendant is also violating California Civil Code §§

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

54-54.3 in that its actions are a violation of the ADA. Members of Plaintiff NFB of California, including Plaintiff Hingson, are aware of Defendant's unlawful actions, and their knowledge of this discrimination has deterred members of Plaintiff NFB of California, including Plaintiff Hingson, from attempting to access the UberX taxi service on several occasions.

88. Plaintiffs thus seek declaratory relief based on Defendant's violation of Plaintiffs' rights under Cal. Civ. Code §§ 54-54.3.

89. Plaintiff Hingson is also entitled to statutory minimum damages for each violation of. Cal. Civ. Code §§ 54-54.3(a).

90. Plaintiffs do not seek relief under California Civil Code § 55.

WHEREFORE, Plaintiffs pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**

(Declaratory Relief on Behalf of Plaintiffs)

91. Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

92. An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies, that by failing to adopt policies and procedures that would prevent drivers of Uber vehicles that provide the UberX taxi service from denying rides to Plaintiffs and other blind individuals with service animals, Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, California Civil Code §§ 51 - 52, and California Civil Code §§ 54-54.3.

93. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

94.     A permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and the Unruh Act, California Civil Code §§ 51 – 52, requiring Defendants to take the steps necessary to ensure that Uber's drivers who provide UberX taxi services do not unlawfully refuse to transport blind individuals with service animals, including Plaintiffs.

95.     A declaration that Defendant discriminates against blind persons by failing to provide blind riders, including Plaintiffs, with full and equal access to the services, facilities, privileges, advantages, and accommodations of Uber vehicles providing taxi services in violation of Title III of the ADA, 42 U.S.C. §§ 12181 *et seq.*, California Civil Code §§ 54- 54.3, and California's Unruh Act, California Civil Code §§ 51 – 52.

96.     For Plaintiff Hingson, damages in an amount to be determined by proof, including all applicable statutory damages pursuant to California Civil Code § 52(a) or California Civil Code § 54.3.

97.     An order awarding Plaintiffs reasonable attorneys' fees and costs, as authorized by 42 U.S.C. § 12188, California Civil Code § 52 and California Civil Code § 54.3; and

98.     For such other and further relief as the Court deems just and proper.


DATED:  September 9, 2014                    Respectfully submitted,


                                             DISABILITY RIGHTS ADVOCATES

                                             *Michael F. Nunez*

                                             _____
                                             Michael Nunez
                                             Attorneys for Plaintiffs