1  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
2  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
3  EMILY E. O'CONNOR, Bar No. 279400
   eoconnor@littler.com
4  LITTLER MENDELSON, P.C.
   650 California Street
5  20th Floor
   San Francisco, California  94108.2693
6  Telephone:    415.433.1940
   Facsimile:    415.399.8490
7
   Attorneys for Defendant
8  UBER TECHNOLOGIES, INC.

9                          UNITED STATES DISTRICT COURT

10                        NORTHERN DISTRICT OF CALIFORNIA

11

12  NATIONAL FEDERATION OF THE            Case No.  3:14-cv-04086-NC
    BLIND OF CALIFORNIA and MICHAEL
13  HINGSON,                              **DEFENDANT UBER TECHNOLOGIES,
                                          INC.'S NOTICE OF MOTION AND
14              Plaintiffs,               MOTION TO DISMISS; MEMORANDUM
                                          OF POINTS AND AUTHORITIES IN
15        v.                              SUPPORT THEREOF**

16  UBER TECHNOLOGIES, INC.,              **[F.R.C.P. 12(b)(1) and 12(b)(6)]**

17              Defendant.                Date:       December 3, 2014
                                          Time:       1:00 p.m.
18                                        Location:   Courtroom A, 15th Floor
                                                      San Francisco Federal Courthouse
19
                                          Trial Date:  None set.
20                                        Complaint Filed:  September 9, 2014

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS                                    Case No. 3:14-cv-04086-NC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on December 3, 2014, in Courtroom A, 15th Floor of the U.S. District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, at 1:00 p.m., or as soon thereafter as counsel may be heard, Defendant UBER TECHNOLOGIES, INC. will move the Court to dismiss this action, pursuant to Federal Rule of Civil Procedure Rules 12(b)(1) and (b)(6).

1.      Plaintiffs Michael Hingson's ("Hingson") and National Federation of the Blind of California's ("NFB") First Cause of Action for disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to sue.  Neither Plaintiff Hingson nor Plaintiff NFB meets the threshold Constitutional standing requirement necessary to seek the injunctive relief sought under the ADA.

2.      Plaintiffs' Second Cause of Action for disability discrimination under the California Unruh Civil Rights Act, California Civil Code §§ 51 and 52 ("Unruh") is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to sue.  Neither Hingson nor NFB personally experienced discriminatory treatment and accordingly, they are not "persons aggrieved" with standing to sue under Unruh.

3.      Plaintiff Hingson's Third Cause of Action for disability discrimination under the California Disabled Persons Act, California Civil Code §§ 54-54.3 ("DPA") is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff Hingson lacks standing under the heightened pleading standard for a damages claim under the DPA.

4.      Plaintiffs' Fourth Cause of Action for declaratory relief based on the violations asserted in Plaintiffs' First, Second and Third Causes of Action is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to pursue those underlying Causes of Action.

5.      Even if Plaintiffs could demonstrate the requisite standing to sue, their First Cause of Action under the ADA is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not constitute a proper cause of action to the extent it is based on the allegation that

DEFENDANT'S NOTICE OF MOTION TO DISMISS

Case No. 3:14-cv-04086-NC

Uber is a public accommodation or that Uber owns, leases or operates a place of public accommodation.

6. Even if Plaintiffs could demonstrate the requisite standing to sue, their Second Cause of Action under Unruh is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not constitute a proper cause of action to the extent it is based on the allegation that Uber is a public accommodation or that Uber owns, leases or operates a place of public accommodation as defined by the ADA.

7. Even if Plaintiff Hingson could demonstrate the requisite standing to sue, his Third Cause of Action for damages under the DPA is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because it does not constitute a proper cause of action to the extent it is based on the allegation that Uber is a public accommodation or that Uber owns, leases or operates a place of public accommodation as defined by the ADA.

The motion will be based upon this notice of motion and motion and upon Defendant's memorandum of points and authorities, Defendant's request for judicial notice, the declaration of Michael Colman, the pleadings and papers filed herein, and any other matters considered by the Court.

Dated: October 22, 2014

/s/ *Andrew M. Spurchise*
ANDREW M. SPURCHISE
LITTLER MENDELSON, P.C.
Attorneys for Defendant
UBER TECHNOLOGIES, INC.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S NOTICE OF MOTION TO DISMISS                    2.                    Case No. 3:14-cv-04086-NC

# TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.   INTRODUCTION ...................................................................................................... 1

II.   FACTUAL SUMMARY .............................................................................................. 2

    A.   Defendant Uber Technologies, Inc .............................................................. 2

    B.   The UberX Platform ..................................................................................... 2

    C.   UberX, As A "TNC", Complies With Requirements Imposed By The
    California Public Utilities Commission ........................................................ 4

III.   UBER'S MOTION TO DISMISS SHOULD BE GRANTED ...................................... 5

    A.   Plaintiffs' Complaint Should Be Dismissed Pursuant To FRCP 12(b)(1)
    Because Plaintiffs Lack Standing ................................................................ 5

        1.   Dismissal Of The First Cause Of Action Is Warranted Because
        Plaintiffs Cannot Meet The Threshold Standing Requirements .................... 5

        2.   The Second Cause Of Action Must Be Dismissed Because Plaintiffs
        Lack Standing To Sue Under The Unruh Civil Rights Act ......................... 12

        3.   Plaintiff Hingson Cannot Meet The Heightened Standing Requirement
        To Establish An Entitlement To Damages Under The Disabled Persons
        Act ............................................................................................................... 14

        4.   The Fourth Cause Of Action For Declaratory Relief Necessarily Fails
        Because Plaintiffs Lack Standing ............................................................... 15

    B.   Even If Plaintiffs Have Standing, And They Do Not, Plaintiffs' First, Second
    And Third Causes Of Action Should Be Dismissed ................................... 16

        1.   The First Cause Of Action For Violation Of The ADA Should Be
        Dismissed To The Extent It Alleges Uber Is A Public Accommodation
        Or Owns, Leases, Or Operates A Place Of Public Accommodation ........... 16

        2.   The Second And Third Causes Of Action Should Be Dismissed To
        The Extent Based On The Allegation That Uber, As A Public
        Accommodation, Violated The ADA ........................................................... 19

IV.   CONCLUSION ........................................................................................................ 20

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Adiutori v. Sky Harbor International Airport*
    880 F. Supp. 696 (D. Ariz. 1995), aff'd .................................................................... 19

*Alexander v. Circus Circus Enters., Inc.*
    972 F.2d 261 (9th Cir. 1992) ........................................................................................ 5

*Balistreri v. Pacifica Police Dep't*
    901 F. 2d 696 (9th Cir. 1988) ..................................................................................... 16

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................................... 5, 16

*Bowden v. Redwood Institute for Designed Educ., Inc.*
    1999 U.S. Dist. LEXIS 2881 (N.D. Cal. 1999) ......................................................... 14

*Chapman v. Pier I Imps. (U.S.), Inc.*
    631 F.3d 939 (9th Cir. 2011) ..................................................................................... 5, 6

*Clark v. Burger King Corp.*
    255 F. Supp. 2d 334 (D.N.J. 2003) ............................................................................ 12

*Clark v. McDonald's*
    213 F.R.D. 198 (D. N.J. 2003) ........................................................................... 8, 9, 11

*Cullen v. Netflix, Inc.*
    880 F. Supp. 2d 1017 (N.D. Cal 2012) ...................................................................... 17

*DeLil v. El Torito Restaurants*
    1997 U.S. Dist. LEXIS 22788 (N.D. Cal. 1997) ......................................................... 7

*Doran v. 7-Eleven, Inc.*
    524 F.3d 1034 (9th Cir. 2008) ...................................................................................... 6

*Ernst & Young v. Depositors Economic Protection Corp.*
    45 F. 3d 530 (1st Cir. 1995) ....................................................................................... 15

*Fortyune v. Am. Multi-Cinema, Inc.*
    364 F.3d 1075 (9th Cir. 2004) ...................................................................................... 8

*Havens Realty Corp. v. Coleman*
    455 U.S. 363 (1982) .................................................................................................... 11

*Hous. Rights Ctr., Inc. v. Moskowitz*
    2004 U.S. Dist. LEXIS 28885 (C.D. Cal 2004) ........................................................ 14

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

TABLE OF AUTHORITIES                    ii.                    Case No. 3:14-cv-04086-NC

1
2

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

3
4

*Hunt v. Wash. State Apple Adver. Comm'n*
    432 U.S. 333 (1977)...................................................................................................9

5

*Los Angeles v. Lyons*
    461 U.S. 95 (1983)......................................................................................................6

6
7

*Martin v. International Olympic Committee*
    740 F. 2d 670 (9th Cir. 1984) ................................................................................13

8
9

*Molski v. Arby's Huntington Beach*
    359 F. Supp. 2d 938 (C.D. Cal. 2005) ....................................................................8

10

*Moreno v. G&M Oil Co.*
    88 F. Supp. 2d 1116 (C.D. Cal 2000) .....................................................................9

11
12

*Moyer v. Walt Disney World Co.*
    146 F. Supp. 2d 1249 (M.D. Fla. 2000).................................................................7

13
14

*Neitzke v. Williams*
    490 U.S. 319 (1989)..................................................................................................16

15

*O'Bryan v. Holy See*
    556 F.3d 361, 376 (6th Cir. 2009) ...........................................................................5

16
17

*Pickern v. Holiday Quality Foods, Inc.*
    293 F.3d 1133 (9th Cir. 2002) ..................................................................................6

18
19

*Prasco, LLC v. Medicis Pharmaceutical Corp.*
    537 F. 3d 1329 (Fed. Cir. 2008)............................................................................15

20

*Resnick v. Magical Cruise Co.*
    148 F. Supp. 2d 1298 (M.D. Fla. 2001)..................................................................7

21
22

*Reyes v. Atlantic Richfield*
    12 F.3d 1464 (9th Cir. 1993) ..................................................................................14

23
24

*Robertson v. Dean Witter Reynolds, Inc.*
    749 F. 2d 530 (9th Cir. 1984) .................................................................................16

25

*Savage v. Glendale Union High School*
    343 F.3d 1036 (9th Cir. 2003) ..................................................................................5

26
27

*SIDA of Hawaii, Inc. v. NLRB*
    512 F. 3d 853 (9th Cir. 1975) ...................................................................................5

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Silvas v. E\*Trade Mortg. Corp.*
421 F. Supp. 2d 1315 (S.D. Cal. 2006)..................................................16

*Small v. General Nutrition Cos.*
388 F. Supp. 2d 83 (E.D.N.Y. 2005) ..............................................10, 12

*Spann v. Colonial Village, Inc.*
899 F. 2d 24 (D.C. Cir. 1990)........................................................11

*Sprewell v. Golden State Warriors*
266 F. 3d 979 (9th Cir. 2001) .......................................................16

*Warth v. Seldin*
422 U.S. 490 (1975)..............................................................10, 11

*Weyer v. Twentieth Century Fox Film Corp.*
198 F.3d 1104 (9th Cir. 2000) .......................................................17

*Young v. Facebook Inc.*
790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...............................................17

**CALIFORNIA CASES**

*Angelucci v. Century Supper Club*
41 Cal. 4th 160 (2007) .............................................................13

*Arnold v. Mut. Of Omaha Ins. Co.*
202 Cal. App. 4th 580 (2011) .........................................................5

*Donald v. Cafe Royale, Inc.*
218 Cal. App. 3d 168 (1990) ........................................................15

*Koire v. Metro Car Wash*
40 Cal. 3d 24 (1985) ..............................................................13

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*
221 Cal. App. 3d 1377 (1990) ....................................................13, 14

*Southwest Research Institute v. UIAB*
81 Cal. App. 4th 705 (2000) ..........................................................5

*Surrey v. TrueBeginnings, LLC*
168 Cal. App. 4th 414 (2008) .......................................................13

*Urhausen v. Longs Drug Stores California, Inc.*
155 Cal. App. 4th 254 (2007) .......................................................15

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

**FEDERAL STATUTES**

Americans with Disabilities Act ................................................................................................ passim

Declaratory Judgment Act, 28 U.S.C.A. § 2201 et seq. ............................................................15

**CALIFORNIA STATUTES**

Cal. Civ. Code § 51, *et seq*..........................................................................................................12

Cal. Civ. Code § 51(f)..................................................................................................................19

Cal. Civ. Code § 54.1(d) ..............................................................................................................19

Cal. Civ. Code §§ 54-54.3 ...........................................................................................................14

Cal. Civ. Code sec. 55 ..................................................................................................................15

Cal. Civil Code § 54.3...........................................................................................................14, 15

Cal. Pub. Util. Code § 5360.5 ......................................................................................................18

**OTHER AUTHORITIES**

California Public Utilities Commission's "Decision Adopting Rules and Regulations to
    Protect Public Safety While Allowing New Entrants to the Transportation Industry." ...........2

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 16

Federal Rule of Civil Procedure 57 ..............................................................................................15

Federal Rule of Civil Procedure 12(b)(1) .................................................................................1, 5

Article III of the U.S. Constitution ........................................................................................12, 16

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

TABLE OF AUTHORITIES                    v.                    Case No. 3:14-cv-04086-NC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Defendant Uber Technologies, Inc. ("Uber") is a technology company that acts as a conduit between passengers looking for transportation and transportation providers looking for passengers. Specifically, Uber provides the technology, through its smartphone application (the "app"), that allows passengers and transportation providers to make a "match" based on their location.

Uber's mission is to connect its users to safe, reliable rides as efficiently as possible. Uber values all of its users, but is on the cutting edge of connecting individuals with disabilities to reliable transportation options. Among other things, this includes, in some cities, exploring partnerships with taxi and limousine companies that offer wheelchair accessible vehicles as a means of increasing the availability of these vehicles to Uber's disabled users. Moreover, as admitted in the Complaint, Uber's technology has greatly increased the mobility and freedom of Uber users with disabilities, particularly the blind.

Nevertheless, Plaintiffs National Federation of the Blind of California ("NFB") and Michael Hingson ("Hingson"), despite implicitly acknowledging that blind individuals use the app to book transportation on a regular basis without incident, accuse Uber of failing to do enough to accommodate blind individuals with service animals. However, Plaintiffs' Complaint is fatally flawed and should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) or, in the alternative, 12(b)(6). Most critically, Plaintiffs both lack standing to pursue these claims: Hingson because he has not suffered cognizable legal injury under the ADA, Unruh or the DPA; NFB because it has no legal right to pursue the sweeping relief it asks the Court to impose upon Uber, including by regulating the conduct of thousands of transportation providers using its platform across the country.

Even if the Court determines one or both Plaintiffs have standing (and they do not), Plaintiffs' ADA and derivative state law claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent Plaintiffs' allege Uber is a place of public accommodation or owns, leases or operates a place of public accommodation.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS

Case No. 3:14-cv-04086-NC

## II. FACTUAL SUMMARY

### A. Defendant Uber Technologies, Inc.

As stated in the Complaint, Uber has developed a smartphone application ("app") that enables its customers to use their smartphones to request pre-arranged transportation services. (Complaint, ¶ 22.) Uber offers the app as a tool to facilitate pre-arranged transportation services. Uber licenses the use of the Uber app to transportation providers. (Declaration of Michael Colman, ["Colman Decl."], ¶¶ 3-5, Exh. A.)[1] Uber does not own, lease or operate any vehicles for transporting users, and does not employ people to operate vehicles. (Colman Decl., Exh. A; Uber's Request for Judicial Notice ["RJN"], Exh. A at 24.)[2]

### B. The UberX Platform.

Through the app, Uber users can connect with available drivers offering a variety of transportation options. Among these options, the uberX platform connects users to independent transportation providers operating cost-efficient, everyday vehicles.[3] (Colman Decl., ¶ 5.)

Individuals seeking to use the Uber app to request a ride must first accept Uber's User Terms and Conditions. (Colman Decl., ¶ 8, Exh. B.) Once a user accepts the User Terms and Conditions, he or she can log on to the app and select the type of service (e.g., uberX) he or she desires. After the service is selected, the user can request a ride through whichever platform they prefer. (*Id.*)

Plaintiff Michael Hingson has not created a Uber user account, accepted the User Terms and Conditions, or taken a ride booked through the uberX platform. (Complaint, ¶ 48.)

Similar to the users, any independent transportation provider who wishes to access Uber's uberX software platform to book passengers must enter into a "Software Sublicense & Online Services Agreement" ("Sublicense Agreement") with Uber Technologies, Inc.'s wholly-owned subsidiary, Rasier, LLC. (Colman Decl., ¶ 6, Exh. A.) There are several thousand transportation

---

[1] Exhibit A to the Declaration of Michael Colman is the Rasier Software Sublicense & Online Services Agreement. Rasier (in California, Rasier-CA LLC) is a wholly-owned subsidiary of Uber Technologies, Inc. For purposes of this motion, Uber and Rasier are collectively referred to as "Uber."
[2] Exhibit A to Uber's RJN is the California Public Utilities Commission's "Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry."
[3] Only transportation arranged through the uberX platform is at issue in this case.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS

2.

Case No. 3:14-cv-04086-NC

providers authorized to use the uberX platform to book passengers who are currently operating in California.  (Colman Decl., ¶ 7.)

The very outset of the Sublicense Agreement states that transportation providers independently operate their own transportation businesses.  The Sublicense Agreement is explicit that any relationship between Uber and third party transportation providers is *solely* in the nature of a contractual relationship between separate business ventures:

> You represent that you are an independent contractor engaged in the independent business of providing the transportation services described in this Agreement and further represent that, as of the date of execution of this Agreement, you currently possess a valid driver's license and all licenses, permits and other legal prerequisites necessary to perform rideshare or P2P transportation services, as required by the states and/or localities in which you operate.
>
> . . . .

> **Relationship of Parties**
>
> This Agreement is between two co-equal, independent business enterprises that are separately owned and operated.  The Parties intend this Agreement to create the relationship of principal and independent contractor and not that of employer and employee.  The Parties are not employees, agents, joint venturers or partners of each other for any purpose.

(*Id.* at 3, 9.)  The Sublicense Agreement also expressly provides that Uber may not direct and control the work of transportation providers or their drivers:

> The Company shall have no right to, and shall not, control the manner or prescribe the method you use to perform accepted Requests, subject to the terms of this Agreement. You shall be solely responsible for determining the most effective, efficient and safe manner to perform the services relating to each Request, subject to the terms of this Agreement and the applicable User specifications. The Parties acknowledge that any provisions of this Agreement reserving certain authority in the Company have been inserted solely to achieve compliance with federal, state, or local laws, rules, and interpretations thereof.

(*Id.* at 3.)

The Sublicense Agreement continues:

> Subject only to requirements imposed by law, Request parameters, User specifications, and/or as otherwise set forth in this Agreement, you shall direct in all aspects the operation of the equipment used in the performance of this Agreement and shall exercise full discretion

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS     3.     Case No. 3:14-cv-04086-NC

and judgment as an independent business in determining the means and methods of performance under this Agreement.

(*Id.* at 4.)

### C.    UberX, As A "TNC", Complies With Requirements Imposed By The California Public Utilities Commission.

In September 2013, the California Public Utilities Commission ("CPUC") promulgated new rules applicable to transportation network companies ("TNCs").  (Uber's RJN, Exh. A.)  The CPUC defines TNC as follows: "an organization…operating in California that provides prearranged transportation services for compensation using an online-enabled application ('app') or platform to connect passengers with drivers using their personal vehicles."  (*Id.* at 65.)  In promulgating these rules, the CPUC expressly distinguished "taxi services" from the transportation that can be arranged through the uberX platform:

> …1) before a passenger can request a ride, the passenger must download the software application, provide identification information and agree to the TNC service agreement, and 2) for a particular trip, the passenger must input information regarding current location, and finally, 3) a TNC driver cannot be hailed on the street similar to a taxicab where no information is shared until the passenger enters the vehicle.

(*Id.* at p. 66.)

The CPUC explained that it recognizes and regulates three modes of passenger transportation for compensation: (1) taxi services (regulated by cities and/or counties), (2) charter-party carrier services and (3) passenger-stage companies (regulated by the CPUC).  (*Id.* at 65.)  It found that Uber, with respect to the uberX platform only, is a TNC, and required to obtain a Class P charter-party carrier permit.  (*Id.* at 72.)  As stated by the CPUC, unlike other charter-party carriers, Uber is "not permitted to itself own vehicles used in its operation or own fleets of vehicles."  (*Id.* at 24.)

As a TNC, Uber is obligated to comply with certain safety requirements as it relates to the transportation providers who offer transportation services through the uberX platform.  (*Id.* at 26-29.)  However, as a matter of law, these controls do not alter the independent business relationship between Uber and the third party transportation providers who offer transportation using the uberX

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS                    4.                    Case No. 3:14-cv-04086-NC

1    platform.[4]  Beyond these requirements, and subject to the terms of the Sublicense Agreement, Uber

2    is contractually prohibited from exercising control over the transportation service provided.

3    **III.    UBER'S MOTION TO DISMISS SHOULD BE GRANTED**

4          **A.    Plaintiffs' Complaint Should Be Dismissed Pursuant To FRCP 12(b)(1) Because
                   Plaintiffs Lack Standing.**

5
6          Plaintiffs have the burden of establishing standing sufficient to defeat this motion to dismiss.

7    *Savage v. Glendale Union High School,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  In deciding the

8    motion, the Court accepts as true any uncontroverted allegations in the complaint and resolves any

9    conflicts between the facts contained in the parties' evidence in the Plaintiffs' favor.  *Id.*  However,

10   for jurisdictional purposes, a court "may not assume the truth of the allegations in a pleading which

11   are contradicted" by other record evidence.  *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261,

12   262 (9th Cir. 1992).  Moreover, as to the uncontroverted allegations in the Complaint, the Court need

13   not accept as true legal conclusions or inferences that are unsupported by the facts set out in the

14   Complaint.  *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).  The complaint must contain

15   "sufficient jurisdictional facts to state a claim which is plausible on its face."  *Bell Atlantic Corp. v.*

16   *Twombly*, 550 U.S. 544, 570, (2007).

17          **1.    Dismissal Of The First Cause Of Action Is Warranted Because Plaintiffs
                   Cannot Meet The Threshold Standing Requirements.**

18              **a.    Plaintiff Hingson has not suffered an injury-in-fact and does not
                       face an immediate threat of repeated injury.**

19
20         To establish standing to bring this Complaint, Hingson must demonstrate (1) that he has

21   suffered an injury-in-fact; (2) that the injury is traceable to Uber's actions; and (3) that the injury can

22   be redressed by a favorable decision.  *Chapman v. Pier I Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th

23   Cir. 2011).  In addition, "to establish standing to pursue injunctive relief, which is the only relief

24   available to private plaintiffs under the ADA, [plaintiff] must demonstrate a 'real and immediate

25
26   _____
     [4] *SIDA of Hawaii, Inc. v. NLRB*, 512 F. 3d 853, 862-863 (9th Cir. 1975) ("the fact that a putative employer incorporates
27   into its regulations controls required by a government agency does not establish an employer-employee relationship");
     *see also, Southwest Research Institute v. UIAB*, 81 Cal. App. 4th 705, 709 (2000) (compliance with FAA and EPA
     training requirements not evidence of control); *Arnold v. Mut. Of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 588-589
28   (2011) (training required only with respect to compliance with state law directives regarding insurance sales did not
     constitute evidence of control).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                         5.                    Case No. 3:14-cv-04086-NC

1    threat of repeated injury in the future.'" *Id.*   Similarly, as the Supreme Court held in *Los Angeles v.*

2    *Lyons*, 461 U.S. 95, 108-109 (1983), a plaintiff cannot establish standing to sue for injunctive relief

3    merely by alleging that there is a policy and practice of discriminating generally.   Instead, a plaintiff

4    must show he is ***likely*** to suffer injury in the future related to his disability.   Hingson does not and

5    cannot meet this standard.

6         Hingson admits that he has not created an Uber user account, which means that he has yet to

7    accept the User Term and Conditions, a condition precedent to even being authorized to request a

8    ride via the uberX platform.

9         Hingson has never himself been denied transportation services from a transportation provider

10   booked using the Uber app, and he does not (and cannot) allege that the Uber app itself somehow

11   presents a barrier.   Furthermore, Hingson has not alleged that Uber maintains a blanket rule banning

12   service animals nor has he (or NFB, for that matter) alleged that *all* drivers on the uberX platform

13   refuse to transport or mishandle blind individuals with service animals.   Hingson admittedly asserts

14   standing based on the "deterrent effect" doctrine.

15        Under the deterrent effect doctrine, "a disabled individual suffers a cognizable injury if he is

16   deterred from visiting a noncompliant public accommodation ***because he has encountered barriers***

17   ***related to his disability there***."   *Chapman*, 631 F.3d at 949 (emphasis added); *see, e.g., Pickern v.*

18   *Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1138 (9th Cir. 2002) (applying deterrent effect doctrine

19   and finding plaintiff had suffered an "actual injury" for standing purposes where plaintiff had

20   encountered accessibility barriers on a past visit to a market which deterred him from returning to

21   the market even though he preferred to shop there); *Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1040

22   (9th Cir. 2008) (court found that plaintiff had standing where he had visited a 7-Eleven store on ten

23   to twenty prior occasions but was currently deterred from visiting the store because of the

24   accessibility barriers he had personally encountered in past visits).

25        Hingson claims he has been, and continues to be, deterred from creating an Uber user

26   account and requesting rides through the uberX platform based on the fact that he is "aware of"

27   various instances where uberX drivers refused to transport blind individuals with service animals.

28   (Complaint, ¶ 3, 6.)   Hingson has not alleged a single encounter or first-hand knowledge of any

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                    6.                      Case No. 3:14-cv-04086-NC

barrier to receiving transportation, along with his service animal, arranged through the Uber app. alleges that this "deterrence" constitutes an injury sufficient to confer standing.

While a disabled person is not required to engage in a futile gesture if there is "actual notice" that the defendant will discriminate, here Hingson has only alleged **general, second-hand knowledge** of **various instances** where uberX drivers allegedly refused to transport blind individuals with service animals.[5]  *DeLil v. El Torito Restaurants*, 1997 U.S. Dist. LEXIS 22788, *12-13 (N.D. Cal. 1997) (while a plaintiff need not repeatedly suffer discrimination in order to assert her rights, "ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real and immediate threat of future harm."); *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1303 (M.D. Fla. 2001) (court found plaintiffs did not have standing because "even if Plaintiffs had alleged a concrete intention to cruise on one of [cruise line's] vessels, they would still lack the requisite reasonable grounds for their alleged belief that they would suffer discrimination. In short, there is no record evidence that Plaintiffs had knowledge at the inception of this suit of any alleged violations *from personal observation or expert findings*."); *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1254 (M.D. Fla. 2000) (court found that plaintiff lacked standing to assert ADA claims where plaintiff did not visit the defendant amusement parks and provided "no evidence save inadmissible hearsay to show 'actual notice' of the alleged ADA violations at [the amusement parks].").  This is insufficient as a matter of law to confer standing to bring these claims.

Even if second-hand knowledge was legally sufficient to cause deterrence, Hingson fails to allege specific facts indicating how he became aware or from whom he learned of any alleged incidents of discrimination.  He fails to identify the individual drivers who allegedly refused rides to blind individuals with service animals or mishandled service animals.  His general "awareness" that certain transportation providers on the uberX platform (though not *all*) allegedly discriminated against blind individuals with service animals cannot constitute "actual notice" of discrimination on the part of every transportation provider on the uberX platform.

---

[5] For example, Paragraph 45 of the Complaint states "Plaintiffs are aware of other blind persons throughout California and the United States whom UberX drivers refused to transport because those individuals had service animals."  *See also* Complaint, ¶ 48.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS                    7.                    Case No. 3:14-cv-04086-NC

1    Hingson's alleged injury is the quintessential "conjectural or hypothetical" injury: *if* he set up

2    an Uber account, agreed to the User Terms and Conditions, and requested a ride on the uberX

3    platform, he *might* be denied access.  This is insufficient to establish standing to pursue individual

4    claims under the ADA or his derivative claims under state law.  *Molski v. Arby's Huntington Beach*,

5    359 F. Supp. 2d 938, 946 (C.D. Cal. 2005) ("*past exposure* to illegal conduct does not in itself show

6    a present case or controversy regarding injunctive relief…if unaccompanied by any continuing,

7    present adverse effects") (emphasis added); *cf. Fortyune v. Am. Multi-Cinema, Inc*., 364 F.3d 1075,

8    1080-81 (9th Cir. 2004) (where wheelchair bound plaintiff attended up to four movies per week and

9    theater's discriminatory seating policy was ongoing, the court concluded plaintiff had established a

10   "real and immediate threat" that the injury would be repeated sufficient to permit him to pursue

11   injunctive relief).

12   *Clark v. McDonald's*, 213 F.R.D. 198 (D. N.J. 2003) is instructive here.   There, the

13   complaint, brought by advocacy organization Access Today and individual plaintiff Clark, alleged

14   that Clark had visited numerous McDonald's restaurants in New Jersey and encountered various

15   barriers.  *Id.* at 203.  The plaintiffs also alleged that other members of the advocacy organization

16   Access Today had visited McDonald's restaurants in New Jersey and Pennsylvania and encountered

17   various barriers.  *Id.*  Similar to the relief sought here, the plaintiffs sought injunctive relief against

18   all the McDonald's-brand restaurants throughout the United States.  *Id.*  Defendants moved to

19   dismiss the complaint primarily on the grounds that the plaintiffs lacked standing.  *Id.* at 204.

20   Individual plaintiff Clark did not allege actual notice of any ADA violation at any of the

21   McDonald's restaurants *he had not visited*.  *Id.* at 230 (emphasis added).  Instead, like Hingson,

22   Clark alleged only that the discriminatory features of the restaurants were "generally known."  *Id.*

23   With respect to that allegation, the court stated "it would be unreasonable for the Court to

24   infer 'actual notice' of an ADA violation at a particular restaurant that Clark has not visited from

25   whatever general knowledge he may possess about discriminatory features said to be commonplace

26   at McDonald's restaurants."  *Id.*  Based on the lack of standing, the Court dismissed the claims

27   brought by plaintiff Clark as to any restaurant Clark had not visited.  *Id.* at 234.  Here, Hingson has

28   not attempted to ride in *a single* vehicle available on the uberX platform.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS                    8.                    Case No. 3:14-cv-04086-NC

1    In *Moreno v. G&M Oil Co.*, 88 F. Supp. 2d 1116 (C.D. Cal 2000), the court reached a similar

2  conclusion.  There, a plaintiff who sued G&M Oil Co. for an ADA architectural barrier violation at

3  one gas station, moved to amend his complaint to add claims about similar barrier violations at 82

4  other gas stations owned by defendant.  *Id.* at 1116.  The court held as follows: "there is no showing

5  this Plaintiff was subjected to or about to be subjected to discrimination at the 82 additional gas

6  stations." *Id.* at 1117.  Accordingly, the Court denied the motion for leave to amend stating that the

7  plaintiff lacked standing to assert a claim based on a generalized grievance of architectural barriers

8  at gas stations owned by G&M Oil where plaintiff was not personally discriminated against.  *Id.* at

9  1118.

10    *McDonald's* and *Moreno* mandate the same result here.  Because Hingson failed to establish

11  both an injury-in-fact and an immediate threat of repeated injury, he lacks standing to bring any

12  claim for injunctive relief under the ADA.  Therefore, his First Cause of Action should be dismissed.

### b.    Plaintiff NFB lacks associational standing.

14    As with Hingson, Plaintiff NFB lacks standing to bring a claim for injunctive relief under the

15  ADA, either as an association or in its own right.

16    Even where an association lacks standing to sue in its own right because it has not itself

17  suffered an injury-in-fact, it will nevertheless have "standing to bring suit on behalf of its members

18  when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it

19  seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

20  relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State

21  Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

22    First, to the extent NFB bases its claim to standing on Hingson's alleged standing, that claim

23  fails for the same reasons Hingson himself lacks standing.

24    The allegations specific to other NFB members are also insufficient to confer the broad

25  associational standing sought by NFB.  The Complaint sets forth a number of instances where

26  individual NFB members were allegedly refused service by transportation providers who were

27  booked using uberX in various cities in California, Texas and Massachusetts.  (Complaint, ¶¶ 39-

28  46.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS

9.

Case No. 3:14-cv-04086-NC

1   Even assuming the individual NFB members satisfy the standing requirements on behalf of

2   specific members as to specific transportation providers by asserting "actual notice" of

3   discrimination by those transportation providers, it does not follow that they (or by extension NFB)

4   have standing to assert a generalized grievance as to each and every transportation provider offering

5   his or her services on the uberX platform statewide. *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)

6   (when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a

7   large class of citizens, that harm alone normally does not warrant exercise of jurisdiction).

8   Yet, the relief sought by NFB is ***virtually unlimited***, and requested as to each of the several

9   thousand transportation providers operating in California. This is fatal to NFB's claim.

10   In *Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83 (E.D.N.Y. 2005), the court held that a

11   disability rights organization lacked associational standing. There, plaintiff Disabled in Action

12   ("DIA") brought suit against GNC alleging that various features of many of GNC's approximately

13   55 stores in New York City were not sufficiently accessible to the disabled. *Id.* at 85. Defendant

14   moved to dismiss the complaint and argued that DIA lacked associational standing. *Id.* The court

15   agreed, and dismissed the complaint. *Id.* at 97. The court explained as follows, "because

16   associational standing exists only insofar as organization members have standing, ***associational***

17   ***standing may not be broader or more extensive than the standing of the organization's members***.

18   Thus, the association would only have standing with respect to the specific stores at which the [DIA]

19   member identified in the amended complaint has standing." *Id.* at 98 (emphasis added).

20   Here, NFB appears to seek injunctive relief with respect to the entire uberX platform and

21   every single transportation provider offering services on that platform in California.[6] Accordingly,

22   the Complaint improperly seeks to confer associational standing on NFB that is far more extensive

23

24

---

25   [6] Plaintiff NFB describes itself as the California chapter of a national organization. (Complaint, ¶ 1.) Presumably its
26   members reside in California. Accordingly, Defendant reads the Complaint as seeking relief with respect to the uberX
     platform in California only. However, to the extent NFB seeks an injunction as to all transportation providers offering
27   their services on the uberX platform nationwide, the relief sought is plainly inappropriate. Even assuming individual
     NFB members residing in California satisfy the standing requirements as to a number of transportation providers
28   operating in California, they (and thus NFB) lack standing to seek an injunction as to those transportation providers
     nationwide, or even statewide.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                    10.                Case No. 3:14-cv-04086-NC

than the standing of its members.  Because NFB cannot establish associational standing to recover the relief it seeks, its First Cause of Action should be dismissed.

### c. Plaintiff NFB lacks standing to sue in its own right.

NFB also appears to assert (though not clearly) it has standing to sue in its own right (i.e. organizational standing): NFB "sues in furtherance of its extensive efforts and expenditure of resources in advancing its mission to improve independence of the blind." (Complaint, ¶ 20.)  The Complaint asserts that Uber's alleged discrimination against NFB's members frustrates NFB's mission and diverts its resources.  However, NFB lacks standing under this theory as well.

The Supreme Court has held that a plaintiff generally must assert his or her own legal rights and interests and may not rest his or her claim for relief on the legal rights or interests of third parties.  *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975).  When asserting standing on its own behalf, an organization must be able to demonstrate some injury to the association itself that meets the constitutional standing requirements.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19 (1982).

This Court must conduct the same inquiry with respect to NFB as with an individual plaintiff: has NFB "alleged such a personal stake in the outcome of the controversy as to warrant [] invocation of federal-court jurisdiction"?  *Havens Realty Corp.*, 455 U.S. at 378-379.  "The enforcement provisions of Title III unambiguously require that the 'person' (be it an individual or entity possessing the cause of action) is being subjected, or is under threat of being subjected, to discrimination."  *McDonald's*, *supra*, 213 F.R.D. at 209.  Accordingly, in seeking to sue in its own right, NFB must itself have suffered an injury-in-fact.  It clearly has not.

NFB's vague, unsupported assertions regarding "frustration of mission" and the "diversion of resources" fall well short of establishing that NFB *itself* suffered an injury-in-fact sufficient to confer organizational standing.  *McDonald's*, 213 F.R.D. at 209 (in ruling that a disability rights organization asserting it suffered a "frustration of mission" injury did not have organizational standing, the court emphasized that the alleged injury was the result of defendant's purported discrimination against others, not the organization itself); *Spann v. Colonial Village, Inc.*, 899 F. 2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury necessary to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS          11.          Case No. 3:14-cv-04086-NC

1  maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any

2  litigant could create injury in fact by bringing a case, and Article III would present no real

3  limitation.")

4  In *Small*, *supra*, the plaintiff disability rights organization asserted that it had organizational

5  standing because the diversion of its organizational resources from core organizational activities

6  towards legal efforts constituted an injury-in-fact. 388 F. Supp. 2d at 95. However, the complaint

7  alleged that the organization initiated and joined lawsuits to enforce the ADA as part of its

8  organizational mission. The court granted defendant's motion to dismiss as to organizational

9  standing and stated, "in light of this stated organizational purpose, the court would be reluctant to

10  find that any litigation expenses incurred by DIA involved a diversion of organizational resources

11  from core organizational activities toward legal efforts." *Id.* at 95.

12  Indeed, in describing NFB's mission, NFB alleges that it seeks to "take any [ ] action which

13  will improve the overall condition and standard of living of the blind." (Complaint, ¶ 20.) Given

14  NFB's stated mission to "take any action" to achieve equality for the blind, the instant litigation

15  seemingly ***advances***, rather than frustrates NFB's mission. *Clark v. Burger King Corp.*, 255 F.

16  Supp. 2d 334, 344 (D.N.J. 2003) (finding that an ADA advocacy organization had failed to show an

17  impairment to its mission that would constitute an injury in fact and stating that, "absent evidence to

18  the contrary, it appears that [the organization] is an organization whose primary purpose is ADA

19  litigation"). Therefore, NFB cannot rely on organizational standing as a basis for asserting its First

20  Cause of Action under the ADA.

21     **2.     The Second Cause Of Action Must Be Dismissed Because Plaintiffs Lack
22           Standing To Sue Under The Unruh Civil Rights Act.**

23        **a.     Plaintiff Hingson lacks standing because he has not himself been
              the victim of discrimination.**

24  Under the Unruh Civil Rights Act ("Unruh"), disabled individuals are entitled to full and

25  equal access to the accommodations, advantages, facilities, privileges or services of covered entities.

26  Cal. Civ. Code § 51, *et seq.* Unruh authorizes an "aggrieved person" to sue for injunctive relief or

27  damages. Hingson does not qualify as an "aggrieved person" because he has never ***personally*** been

28  denied service or otherwise been discriminated against in his use of the uberX service. In fact, he

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                    12.                    Case No. 3:14-cv-04086-NC

1    ***cannot even use*** the uberX service because he has not created a Uber user account or accepted the

2    User Terms and Conditions.

3        The cases interpreting Unruh "have consistently held that an individual plaintiff has standing

4    to bring claims thereunder only if he or she ***has been the victim of the defendant's discriminatory***

5    ***act***." *Surrey v. TrueBeginnings, LLC*, 168 Cal.  App.  4th 414, (2008) (court held that individual

6    who  sued  a  defendant  online  matchmaking  service  after  he  "became  aware"  of  discriminatory

7    business  practices  even  though  he  never  subscribed  to  or  utilized  its  online  services  did  not  have

8    standing  under  Unruh)  (emphasis  added);  *Midpeninsula  Citizens  for  Fair  Housing  v.  Westwood*

9    *Investors*, 221 Cal. App. 3d 1377, 1383 (1990) (determining that standing under the Unruh extends

10   only to persons "actually denied full and equal treatment by a business establishment.").

11       In *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007), the California Supreme

12   Court acknowledged that "a plaintiff cannot sue for discrimination in the abstract, but must ***actually***

13   ***suffer*** the discriminatory conduct." (Emphasis added.)  The *Angelucci* holding is fatal to Hingson's

14   claim under Unruh.  Because Hingson did not attempt to or actually create an account in order to

15   request a ride using uberX, he did not suffer discrimination in any sense other than "in the abstract."

16   *See also Koire v. Metro Car Wash*, 40 Cal. 3d 24, 34 (1985) (under Unruh, injury occurs when the

17   discriminatory policy is applied to the plaintiff.)  Thus, under *Angelucci*, Hingson lacks standing to

18   seek relief (whether damages or injunctive relief) for violations of Unruh and his Second Cause of

19   Action must be dismissed.

20                    **b.      Plaintiff NFB lacks associational and organizational standing.**

21       Like Hingson, NFB lacks standing to seek an injunction under Unruh.

22       First, NFB is not itself an "aggrieved party" under Unruh and accordingly, it does not have

23   standing to sue in its own right.  As noted above, a cause of action under Unruh is individual in

24   nature.  *Martin v. International Olympic Committee*, 740 F. 2d 670, 677 (9th Cir. 1984) ("the rights

25   protected by the act are enjoyed by all persons, *as individuals*.").  Unruh confers standing "upon the

26   victims of the discriminatory practices…the California courts have not seen fit to endorse a more

27   expansive interpretation of these standing requirements."  *Midpeninsula Citizens for Fair Housing,*

28   221 Cal. App. 3d at 1386 (nonprofit organization lacked standing to sue apartment complex owners

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS                    13.                    Case No. 3:14-cv-04086-NC

for allegedly discriminatory rental practices because the organization's civil rights had not personally been violated).

While an organization may be deemed an "aggrieved party," the Complaint does not assert that NFB itself experienced discriminatory treatment and it therefore lacks standing. Rather, the purported injury is based on the allegation that transportation providers using the uberX app discriminate against blind individuals with service animals, not that Uber, the transportation providers, or the app discriminates against NFB. To the extent NFB contends it is suffering an injury in the form of "frustration of mission" and "diversion of resources," NFB fails to plead an injury sufficient to confer standing. *See Midpeninsula Citizens for Fair Housing, supra,* 221 Cal. App. 3d at 1383.

Since NFB lacks personal standing under Unruh, it cannot seek an injunction to compel enforcement of Unruh based on the injuries allegedly suffered by its members. *Reyes v. Atlantic Richfield*, 12 F.3d 1464, 1471 (9th Cir. 1993) (court denied the existence of representative standing under Unruh, and ruled that a franchisee lacked standing to bring a racial discrimination suit on behalf of accountants and cashiers working at the franchise); *Bowden v. Redwood Institute for Designed Educ., Inc.*, 1999 U.S. Dist. LEXIS 2881 *14-16 (N.D. Cal. 1999) ("plaintiff, not claiming membership in the asserted protected class, namely the disabled, may not…sue as a representative of the students under [] Unruh"); *Hous. Rights Ctr., Inc. v. Moskowitz*, 2004 U.S. Dist. LEXIS 28885 *9-10 (C.D. Cal 2004) (Non-profit corporation that sued defendants to redress alleged housing discrimination did not have standing to sue under Unruh, as standing is limited to "persons aggrieved" and public agency plaintiffs).

NFB's Second cause of action for an injunction under Unruh should therefore be dismissed.

### 3. Plaintiff Hingson Cannot Meet The Heightened Standing Requirement To Establish An Entitlement To Damages Under The Disabled Persons Act.

Hingson's Third Cause of Action under the DPA for monetary damages must be dismissed. (Complaint, ¶ 89.)

The DPA (Cal. Civ. Code sections 54-54.3) creates a private cause of action for damages. California courts have held that Section 54.3 incorporates a heightened standing requirement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS                    14.                    Case No. 3:14-cv-04086-NC

1   *Urhausen v. Longs Drug Stores California, Inc.* 155 Cal. App. 4th 254, 262 (2007).  To maintain an

2   action for damages pursuant to section 54.3, an individual must establish that he was denied equal

3   access **on a particular occasion**.[7]  *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 183 (1990) (to

4   recover monetary damages under Civil Code Section 54.3, plaintiff must show "he or she **was**

5   **denied equal access on a particular occasion**") (emphasis added); *Urhausen*, 155 Cal. App. 4th at

6   262 (to maintain an action for damages under the DPA, plaintiff must show that "he actually

7   presented himself to the restaurant on a particular occasion, as any other customer would do, with

8   the intent of being…served and to purchase food…in the manner offered…[and]  actually

9   encountered access to seating inside…the restaurant that was not full and equal").

10      Here, Hingson **admits** that he never created an Uber user account, that he never requested a

11   ride through the uberX platform, and that he was never been refused service by an uberX driver.

12   (Complaint, ¶ 48.)   As such, Hingson failed to plead, and cannot plead, facts indicating that he

13   suffered an actual denial of equal access on a particular occasion.  Under well-settled California law,

14   his claim for damages under the DPA must be dismissed for lack of standing.

15       **4.      The Fourth Cause Of Action For Declaratory Relief Necessarily Fails**
             **Because Plaintiffs Lack Standing.**

16

17      Plaintiffs seek a declaration that Uber discriminates against blind persons in violation of the

     ADA, Unruh and the DPA.  (Complaint, ¶ 92.)  Federal Rule of Civil Procedure 57 permits parties to
18
     obtain a declaratory judgment to determine their rights and obligations in cases involving actual
19
     controversies.  However, Rule 57 (and the related Declaratory Judgment Act) [8] does not expand the
20
     District Court's jurisdiction.   Rather, a plaintiff seeking declaratory relief must establish an
21
     independent basis for the District Court's subject matter jurisdiction.  *See Prasco, LLC v. Medicis*
22
     *Pharmaceutical Corp.*, 537 F. 3d 1329, 1335 (Fed. Cir. 2008) (holding a district court may exercise
23
     jurisdiction over a declaratory judgment action so long as the suit meets the case or controversy
24

25

26

27   [7] The Complaint explicitly states that Plaintiffs do not seek injunctive relief under section 55.  (Complaint, ¶ 90.)

28   [8] Courts have held that the federal Declaratory Judgment Act, 28 U.S.C.A. §2201 et seq., is "mirrored by" and
     "functionally equivalent" to Rule 57.  *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F. 3d 530, 534, n.8
     (1st Cir. 1995).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                15.                Case No. 3:14-cv-04086-NC

1    requirement of Article III of the Constitution, a requirement which includes "various more specific

2    but overlapping doctrines rooted in the same Article III inquiry…including standing.")

3         Because Plaintiffs lack standing to pursue their First, Second and Third Causes of Action,

4    their Fourth Cause of Action for declaratory relief also fails.

**B.    Even If Plaintiffs Have Standing, And They Do Not, Plaintiffs' First, Second And Third Causes Of Action Should Be Dismissed.**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible

on its face." *Bell Atlantic Corp.*, 550 U.S. at 570; *see* Fed. R. Civ. P. 12(b)(6).

Dismissal can be based on the absence of sufficient facts alleged under a cognizable legal

theory. *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1988); *see also Robertson v.

Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 533-534 (9th Cir. 1984). While the Court must assume

the Complaint's factual allegations are true, "legal conclusions need not be taken as true merely

because they are cast in the form of factual allegations." *Silvas v. E*Trade Mortg. Corp.*, 421 F.

Supp. 2d 1315, 1317 (S.D. Cal. 2006). "Nor is the court required to accept as true allegations that

are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.

Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001). Rule 12(b)(6) also "authorizes a court to

dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-

327 (1989).

**1.    The First Cause Of Action For Violation Of The ADA Should Be Dismissed To The Extent It Alleges Uber Is A Public Accommodation Or Owns, Leases, Or Operates A Place Of Public Accommodation.**

Even if the Court determines that either one, or both, of the Plaintiffs have standing, it should

nevertheless dismiss Plaintiffs' ADA claim to the extent it is based on the contentions that Uber is a

public accommodation or owns, leases or operates a place of public accommodation.

Title III of the ADA provides generally that "no individual shall be discriminated against on

the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A place

of public accommodation means a facility, operated by a private entity, whose operations affect commerce and fall within one of twelve enumerated categories.  *See* Section 42 USC § 12181(7)(A)-(L).  Additional specific prohibitions for public accommodations are listed under Section 12182(b).[9]

### a.    The Uber app is not a place of public accommodation.

As Plaintiff admits, Uber "uses smart phone software applications to arrange rides between passengers and its fleet of drivers[.]"  (Complaint, ¶ 22.)  Websites, smartphone applications, virtual spaces or any variation thereof are not listed among Title III's twelve "places of public accommodation."  *See* 42 USC § 12181(7)(A)-(L).  These twelve categories are exclusive.  If an entity does not fit into one of the categories, the entity is not a place of public accommodation.

Under Ninth Circuit law, a "place of public accommodation" is a physical place.  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of public accommodation are "actual, physical places.");  *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal 2012) (Video programming provider's motion to dismiss a hearing-impaired customer's claims that a streaming library violated Unruh was dismissed where the streaming video library was a website, not an actual physical place, and under judicial precedent, it was not a place of public accommodation under the ADA);  *Young v. Facebook Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) (finding that Facebook was not place of public accommodation in Title III claim by mentally disabled plaintiff alleging failure to provide reasonable customer service upon deactivation of her account).  Courts have largely rejected attempts to wedge virtual environments into the ADA's definition of public accommodations or expand the ADA's applicability to non-physical structures even when the entity has an actual physical location.  *See Access Now, Inc. v. Southwest Airlines*, Co., 227 F. Supp.  2d 1312, 1321 (S.D. Fl. 2002) (noting cyberspace is a unique medium, with no particular geographical location, and therefore www.southwest.com was not place of public accommodation like ticket counter or travel agency), aff'd, 385 F.3d 1324, 1329 (11th Cir. 2004).

---

[9] For example, public accommodations are prohibited from (1) imposing eligibility criteria that screen out or tend to screen out disabled individuals; (2) failing to make reasonable modifications to policies, practices or procedures unless those modifications would "fundamentally alter" the nature of the service; (3) failing to provide auxiliary aids (e.g., interpreters) unless those aids are unduly burdensome; and (4) failing to remove architectural barriers. 42 U.S.C. § 12182(b)(1)-(2).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS          17.          Case No. 3:14-cv-04086-NC

As a smartphone application, Uber's app exists solely in a virtual environment. Accordingly, the app itself, the lone "service" Uber provides, is not a public accommodation under Title III as a matter of law.

Plaintiffs have not alleged the Uber app is itself a place of public accommodation, or that the app itself is inaccessible to blind individuals with service animals. In fact, Plaintiffs acknowledge being able to successfully access the Uber app to request transportation. (Complaint, ¶ 34.)

Plaintiffs allege instead that the *vehicles* providing transportation services on the uberX platform are places of public accommodation. (Complaint, ¶ 58.) However, as described below, Uber does not own, lease or operate these vehicles.

### b. Uber does not own, lease or operate a place of public accommodation.

Throughout the Complaint, Plaintiffs state that uberX is a "taxi service" and that Uber owns, operates or leases a fleet of vehicles. Neither of these allegations is true, and, in fact, both are directly and expressly contradicted by the rules promulgated by the California Public Utilities Commission ("CPUC") governing "Transportation Network Companies" (TNCs), rules that Plaintiffs themselves rely upon in the Complaint. (Complaint, ¶¶ 9, 33.)

As stated in the Complaint, in September 2013, the CPUC issued a ruling designating uberX as a TNC. (RJN Exh. A at 25.) In finding that TNCs are charter-party carriers within the meaning of the California Public Utilities Code, the CPUC expressly distinguished "taxi services," which are regulated by cities and/or counties, and "charter-party carrier services" subject to regulation by the CPUC. (*Id.* at 11.) The CPUC also made clear that "[u]nlike taxi cabs, which may pick up passengers via street hails, PU Code § 5360.5 requires that charter party carriers operate on a prearranged basis. We find that TNCs operate on a prearranged basis." (*Id.* at 20.)

The CPUC's Rules go on to state that a TNC like uberX is "*not permitted to itself own vehicles used in its operation or own fleets of vehicles.*" *Id.* at p. 24 (emphasis added). Plaintiffs contend that the vehicles themselves are places of public accommodation yet the CPUC has effectively ruled that Uber does not own or operate those "places of public accommodation."

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS

18.

Case No. 3:14-cv-04086-NC

1   *Adiutori v. Sky Harbor International Airport*, 880 F. Supp. 696 (D. Ariz. 1995), aff'd without

2   op., 103 F.3d 137 (9th Cir. 1996) is instructive.  There, the plaintiff asserted that a skycap company

3   providing services at an airport was bound by the requirements of the ADA by virtue of the fact that

4   it was a private entity providing a service in a "terminal, depot, or other station used for specified

5   public transportation," which are public accommodations under the ADA.  *Id.* at 704.  In ruling that

6   the skycap company did not operate a place of public accommodation and, hence, could not be sued

7   under Title III of the ADA, the district court pointed out that the ADA "does not state that it applies

8   to entities which merely provide a service in a place of public accommodation, e.g. a terminal, etc.--

9   it only applies to entities which own, lease or operate a place of public accommodation."  *Id.*  There

10  was no evidence that the skycap company owned, leased, or operated the terminal at the airport; it

11  possessed only a permit to conduct business in the terminal.  *Id.*  Accordingly, the court ruled there

12  was no basis to hold the company liable under Title III of the ADA.  *Id.*

13          Similarly, Uber's role is merely to provide to transportation providers a service (*i.e.* use of

14  the app to connect with potential passengers) that is used to access the place of public

15  accommodation: the transportation providers' vehicles.  Because the Uber app itself is not a place of

16  public accommodation, and given that the CPUC has ruled that Uber legally cannot own a fleet of

17  vehicles (*i.e.* the places of public accommodation per Plaintiffs' Complaint), Plaintiffs have failed to

18  allege sufficient facts to show that Uber owns, leases, or operates ***a place*** of public accommodation.

19  To the extent Plaintiffs' ADA claim is premised on that contention, it must be dismissed.

20          **2.      The Second And Third Causes Of Action Should Be Dismissed To The
               Extent Based On The Allegation That Uber, As A Public
21             Accommodation, Violated The ADA.**

22          Under the Unruh Civil Rights Act ("Unruh"), a violation of the ADA constitutes a violation

23  of Unruh.  *See* Cal. Civ. Code § 51(f).  Likewise, under the California Disabled Persons Act

24  ("DPA"), a violation of the ADA constitutes a violation of the DPA.  *See* Cal. Civ. Code § 54.1(d).

25          In their Second and Third Causes of Action, Plaintiffs assert that because Defendant violated

26  the ADA, it also violated Unruh and the DPA.  (Complaint, ¶¶ 80, 87.)  To the extent Plaintiffs'

27  Second and Third causes of action are based on the allegation that Uber owns, leases or operates a

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO
DISMISS                                    19.                          Case No. 3:14-cv-04086-NC

1    public accommodation as defined by the ADA, Plaintiffs' claims fail and should be dismissed for the

2    same reasons described above.

3    **IV.    CONCLUSION**

4         For the foregoing reasons, Uber respectfully requests that the Complaint be dismissed in its

5    entirety due to Plaintiffs' failure to establish standing to sue under the ADA, Unruh or the DPA.

6         Alternatively, at a minimum, Uber requests that Plaintiffs' First, Second and Third Causes of

7    Action be dismissed to the extent it is based on the allegation that Uber is a public accommodation

8    or that Uber owns, operates or leases a place of public accommodation.

9

10   Dated: October 22, 2014

11

12                                              /s/*Andrew M. Spurchise*
                                                ANDREW M. SPURCHISE
13                                              LITTLER MENDELSON, P.C.
                                                Attorneys for Defendant
14                                              UBER TECHNOLOGIES, INC.

15

16

17   Firmwide:129704605.1 073208.1034

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFENDANT'S MPA ISO MOTION TO DISMISS            20.            Case No. 3:14-cv-04086-NC