1  LAURENCE PARADIS (CA BAR NO. 122336)
   MICHAEL NUNEZ (CA BAR NO. 280535)
2  Disability Rights Advocates
   2001 Center Street, Fourth Floor
3  Berkeley, California  94704-1204
   Telephone:     (510) 665-8644
4  Facsimile:     (510) 665-8511
   TTY:           (510) 665-8716
5  Email:         mnunez@dralegal.org
   Email:         lparadis@dralegal.org
6
   TIMOTHY ELDER (CA BAR NO. 277152)
7  TRE Legal Practice
   4226 Castanos Street
8  Fremont, CA 94536
   Telephone:     (410) 415-3493
9  Facsimile:     (888) 718-0617
   Email:         telder@trelegal.com
10 Attorneys for Plaintiffs

11

12                 **UNITED STATES DISTRICT COURT**

13                **NORTHERN DISTRICT OF CALIFORNIA**

14

15

16 NATIONAL FEDERATION OF THE BLIND        **Case No. 3:14-cv-4086 NC**
   OF CALIFORNIA,  MICHAEL KELLY,
17 MICHAEL HINGSON, and MICHAEL            **FIRST AMENDED COMPLAINT FOR**
   PEDERSEN,                               **VIOLATIONS OF THE AMERICANS**
18                                         **WITH DISABILITIES ACT, 42 U.S.C. §§**
                                           **12101, *et seq*., THE CALIFORNIA UNRUH**
19         Plaintiffs,                     **CIVIL RIGHTS ACT, CAL. CIV. CODE**
                                           **§§ 51 & 52, AND THE CALIFORNIA**
20 v.                                      **DISABLED PERSONS ACT, CAL. CIV.**
                                           **CODE §§ 54-54.3**
21 UBER TECHNOLOGIES, INC., RASIER,
   LLC, and RASIER-CA, LLC,
22
           Defendants.
23

24

25

26

27

28

*(left margin, rotated)* DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

**INTRODUCTION**

2     1.    This action seeks to put an end to systemic civil rights violations committed by

3  Uber Technologies, Inc. and its subsidiaries operating in California, Rasier, LLC, and Rasier-

4  CA, LLC, (collectively "Uber" or "Defendants") in California against blind individuals who use

5  guide dogs. Plaintiff National Federation of the Blind ("NFB") of California sues on behalf of its

6  members, including Plaintiff Kelly, who has been and will continue to be denied access to

7  Uber's UberX taxi service and Plaintiff Hingson, who has been and continues to be deterred

8  from using Uber's UberX taxi service, all because Uber has failed to ensure that blind riders with

9  service animals, including many other members of Plaintiff NFB of California, can access

10  Uber's taxi services. Likewise, Michael Pedersen, a blind resident of San Francisco who uses a

11  guide dog, also sues alongside Plaintiff NFB of California because Pedersen has been and will

12  continue to be denied access to UberX taxi services on the basis of his using a service animal.

13     2.    Uber offers the UberX taxi service to sighted individuals in California. UberX is

14  highly cost-effective and widely available. Uber uses mobile software applications to arrange

15  rides between passengers and its fleet of UberX drivers in much the same way that a taxi

16  dispatch arranges rides for customers.

17     3.    UberX drivers are refusing to transport many blind individuals who use service

18  animals, including members of NFB of California. For example, UberX drivers refused to

19  transport Jamey Gump, Manveen Chahal, Cody Austin Meyer, Brooklyn Rodden, Michael Kelly,

20  Jessie Lorenz, Jonathan Lyens, and Juanita Herrera (all blind members of NFB of California)

21  because they use guide dogs. Further, UberX drivers across the United States are likewise

22  refusing to transport blind individuals, including identified UberX drivers who denied rides to

23  one blind woman on twelve separate occasions, charged blind riders cancellation fees, refused

24  service to a blind parent on her way to a pharmacy to get a prescription for her feverish toddler,

25  and abandoned blind travelers in extreme weather, all because of guide dogs. In total, Plaintiffs

26  are aware of more than forty instances where drivers of UberX vehicles refused to transport blind

27  individuals with service animals. UberX drivers that refused to transport these blind individuals

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    did so after they initially agreed to transport the riders. The UberX drivers denied the requested

2    transportation service after the drivers had arrived and discovered that the riders used service

3    animals.

4         4.    In addition, some UberX drivers seriously mishandle guide dogs, harass blind

5    customers with guide dogs, or give low feedback scores to passengers with service animals even

6    when drivers do not outright deny the provision of taxi service. For example, Leena Dawes is

7    blind and uses a guide dog. An UberX driver locked Ms. Dawes' guide dog in the closed trunk of

8    the UberX sedan before transporting Ms. Dawes. When Ms. Dawes realized where the driver had

9    placed her dog, she demanded that the driver pull over so that she could retrieve her dog from the

10   trunk, but the driver refused her request. Other blind customers with guide dogs have been yelled

11   at by Uber drivers who are hostile toward their guide dogs. In addition, upon information and

12   belief, passengers with service animals receive lower average ratings from UberX drivers. A

13   lower rating reduces the probability that Uber will provide transportation to a passenger in the

14   future or reassign that same driver to transport the passenger with the service animal.

15        5.    Many of these blind individuals submitted written complaints to Uber concerning

16   the discriminatory treatment that they experienced. However, Uber has failed to notify most of

17   these individuals regarding whether Uber has thoroughly investigated their complaints,

18   disciplined the relevant UberX drivers, or taken any other meaningful steps to ensure that these

19   drivers do not continue to unlawfully discriminate against them or other individuals with service

20   animals. Instead, Uber representatives often respond to these complaints by denying

21   responsibility for the discrimination. Meanwhile, many of these blind individuals experience

22   ongoing denials from multiple drivers.

23        6.    Plaintiff Kelly is blind, uses a guide dog, and is a member of NFB of California.

24   Mr. Kelly travels in UberX vehicles with companions who use the Uber app. Mr. Kelly and his

25   companions have been denied access to UberX taxi services because of the presence of Mr.

26   Kelly's service animal.

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

7.      Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB of California. Mr. Hingson, a public speaker and best-selling author, travels extensively throughout California and has traveled with a guide dog for decades. Mr. Hingson is aware of Uber's widespread discrimination against blind individuals with service animals, and Mr. Hingson has refrained and continues to refrain from creating an Uber user account or otherwise using Uber's transportation services because he fears experiencing similar discrimination. Mr. Hingson has been deterred from using UberX on many specific occasions when it would have been convenient for him to use Uber's services.

8.      Plaintiff Pedersen is blind, uses a guide dog, and is a resident of San Francisco, California. Mr. Pedersen has been denied access to UberX taxi services multiple times because of the presence of his service animal. Mr. Pedersen will continue to attempt to use the UberX service. Mr. Pedersen would like to continue using UberX taxi services without fear that UberX drivers will refuse to transport him.

9.      When Uber denies rides to blind riders with service animals, blind individuals experience several harms. They face unexpected delays, they must arrange alternate transportation that is sometimes more costly, and they face the degrading experience of being denied a basic service that is available to all other paying customers.

10.     In addition, Uber charges many blind riders with guide dogs cancellation fees after UberX drivers have unlawfully denied them service. These blind riders are also often placed in the uncomfortable position of explaining to uninformed UberX drivers that service animals are protected by law and that blind people have the right to bring service animals into vehicles providing taxi services.

11.     Uber is violating basic equal access requirements under both the ADA and state law by failing to implement policies and procedures that would prevent or reduce discrimination against blind riders committed by UberX drivers. Because Uber closely monitors and tightly controls interactions between UberX drivers and its customers, Uber can implement policies and procedures, including policies and procedures that leverage its mobile smart phone software

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 applications, that would prevent or reduce discrimination committed by its drivers against blind

2 riders with service dogs. However, Uber insists that it is not a transportation provider and that it

3 is not legally obligated to take any steps to ensure that its drivers do not discriminate against

4 blind riders. Uber maintains this position despite the fact that the California Public Utilities

5 Commission ruled that Uber is a transportation provider operating the UberX transportation

6 service.

7      12. UberX and other similar taxi services are a critical transportation option for many

8 blind individuals in California. Due to distances between destinations and the limitations of

9 public transportation and paratransit, many blind persons must use taxi services to travel from

10 one place to another. The fact that UberX vehicles have frequently refused to transport Plaintiffs

11 Kelly and Pedersen and other blind riders with service animals, and that this discrimination

12 deters Plaintiff Hingson and other members of Plaintiff NFB of California with service animals

13 from using UberX, means that members of Plaintiff NFB of California are denied full and equal

14 access to this critical mode of transportation.

15      13. Due to the public's widespread adoption of smart phones, Uber and other

16 transportation network companies are quickly supplanting traditional taxi companies and

17 becoming the public's primary option for on-demand taxi services. Uber offers taxi services in

18 most of California's largest cities and is quickly spreading.

19      14. Congress provided a clear and national mandate for the elimination of

20 discrimination against individuals with disabilities when it enacted the Americans with

21 Disabilities Act. Such prohibited discrimination includes discrimination in the provision of taxi

22 services and other transportation services. Similarly, California state law requires full and equal

23 access to all business establishments and places where the public is invited, including vehicles

24 providing taxi services.

25      15. Plaintiffs NFB of California and Hingson proposed to Uber that the parties avoid

26 litigation and instead attempt to resolve this matter through structured negotiations, but

27

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-04086**
**FIRST AMENDED COMPLAINT**      4

1   Defendant Uber refused. Plaintiffs were ultimately unable to obtain a commitment by Defendant

2   Uber to remedy these barriers to full and equal access.

### JURISDICTION

4   16.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

5   1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities

6   Act, 42 U.S.C. §§ 12101, *et seq.*

7   17.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over

8   Plaintiffs' pendent claims under the California Unruh Civil Rights Act (California Civil Code §§

9   51, *et seq.*), and the Disabled Persons Act (California Civil Code §§ 54-54.3).

### VENUE

11   18.    Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c).

12   19.    Defendants are headquartered in the Northern District of California and are

13   registered to do business in California. Defendants do business in the Northern District of

14   California. Defendants operate fleets of vehicles providing taxi services in cities throughout

15   California, including fleets providing taxi services in the Northern District of California.

16   20.    Defendants are subject to personal jurisdiction in the Northern District of

17   California. Defendants have been and are committing the acts alleged herein in the Northern

18   District of California, have been and are violating the rights of consumers with disabilities in the

19   Northern District of California, and have been and are causing injury to consumers with

20   disabilities in the Northern District of California.

21   21.    Plaintiff NFB of California has many members who reside in the Northern

22   District of California. In addition, Plaintiffs Hingson and Pedersen have experienced injury in the

23   Northern District of California.

### PARTIES

25   22.    NFB of California is a duly organized nonprofit association of blind Californians.

26   It is the California State affiliate of the National Federation of the Blind. NFB of California's

27   mission is to promote the vocational, cultural, and social advancement of the blind; to achieve

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   the integration of the blind into society on a basis of equality with the sighted; and to take any

2   other action which will improve the overall condition and standard of living of the blind.

3   Reliable access to modern, publicly available transportation services such as UberX is critical to

4   NFB of California and its members. Securing access to the UberX taxi service advances NFB of

5   California's goal to promote integration of the blind into society on a basis of equality by

6   enabling blind individuals to travel in the same way that many sighted individuals travel. UberX

7   drivers have refused to transport members of NFB of California because they have service

8   animals. NFB of California sues on behalf of its members who have been denied access to or

9   deterred from using the UberX service due to unlawful discrimination against blind individuals

10  with service animals. NFB of California also sues in furtherance of its extensive efforts and

11  expenditure of resources in advancing its mission to improve independence of the blind.

12  Securing access to the UberX service advances this mission because access to the UberX service

13  enables blind individuals to travel more independently. Thus, discrimination against members of

14  NFB of California and other blind individuals who use service animals frustrates this mission of

15  NFB of California and results in the diversion of its resources to address Defendants'

16  discriminatory practices.

17      23.     Plaintiff Michael Kelly is blind, uses a guide dog, is a member of NFB of

18  California, and currently resides in Sacramento, California. Mr. Kelly is a musician and virtuoso

19  electric bassist. Mr. Kelly often travels with his girlfriend, who has an Uber account. Mr. Kelly

20  and his girlfriend prefer to travel together when going out to eat or running errands in the

21  Sacramento area. The UberX service potentially offers a convenient and affordable way for Mr.

22  Kelly and his girlfriend to travel, though this convenience is undermined by the discriminatory

23  practices of Uber. Mr. Kelly will continue to attempt to travel using the UberX taxi service with

24  his girlfriend and other companions who use the Uber mobile application. Mr. Kelly and his

25  girlfriend have been and will continue to be denied access to UberX taxi services because of the

26  presence of Mr. Kelly's service animal.

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

24.     Plaintiff Michael Hingson is blind, uses a guide dog, is a member of NFB of California, and currently resides in Victorville, California. Mr. Hingson is a public speaker and a best-selling author who has traveled with a guide dog for decades. Mr. Hingson regularly travels and regularly uses taxis within California for work and leisure. Mr. Hingson often travels to Los Angeles and Sacramento in connection with his advocacy work for NFB of California. He also regularly travels to San Francisco for personal and professional business. Though Mr. Hingson would like to use the UberX transportation service, he is deterred from signing up for and attempting to use Uber's transportation services because of the discrimination that other blind guide dog users have experienced when attempting to use the UberX taxi service. Mr. Hingson owns and regularly uses an iPhone capable of running the Uber iPhone application, and Mr. Hingson has a credit card that he could use to pay for the UberX taxi service.

25.     Plaintiff Michael Pedersen is blind, uses a guide dog, and currently resides in San Francisco, California. Mr. Pedersen is employed as a software developer and regularly commutes from his home in San Francisco to his place of work in Cupertino, California. Mr. Pedersen's wife has used her Uber account to request rides for Mr. Pedersen as he is preparing to leave for work in the morning. Mr. Pedersen has been denied access to UberX taxi services multiple times because of his service animal. Mr. Pedersen will continue to attempt to travel using the UberX taxi service. Mr. Pedersen will continue to be denied access to UberX taxi services because of the presence of his service animal.

26.     The term "Plaintiffs" used in this complaint means NFB of California, on behalf of itself and its members with service animals who have been denied access to or deterred from using the UberX taxi service because of discrimination against blind persons with service animals, Mr. Kelly, Mr. Hingson, and Mr. Pedersen, unless otherwise indicated.

27.     Defendant Uber Technologies, Inc., a for-profit transportation network company based in California, with its subsidiaries Defendants Rasier, LLC and Rasier-CA, LLC, provides transportation services through thousands of vehicles in California. Uber uses smart phone software applications to arrange rides between passengers and its fleet of drivers in much the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   same way that a taxi dispatch arranges rides for customers. Uber closely monitors and controls

2   interactions between its drivers and customers. Uber's customers request rides through Uber;

3   Uber identifies an available driver to transport each customer; Uber bills customers for their rides

4   in UberX vehicles; Uber provides customers with receipts; and Uber handles inquiries and

5   complaints from customers concerning Uber's drivers and taxi services. Uber also controls the

6   financial transaction associated with each ride that UberX drivers provide to customers.

7        28.    Defendants Rasier, LLC, and Rasier-CA, LLC are wholly-owned subsidiaries of

8   Uber that operate within the state of California. Upon information and belief, these subsidiaries

9   are required parties pursuant to Federal Rule of Civil Procedure 19(a)(1) because in their

10  absence, the court cannot accord complete relief from Uber alone.

11  **FACTUAL ALLEGATIONS**

12       29.    Uber provides several different taxi services to members of the general public in a

13  rapidly expanding number of metropolitan areas across California and the United States. Uber's

14  taxi services vary based on the type of vehicle providing the transportation. UberX is one of

15  Uber's most cost-effective taxi services. To use Uber taxi services, an individual must either (1)

16  create a user account, and provide Uber with her phone number, credit card information, and

17  email address, or (2) travel as the guest of an individual with an Uber customer account. Uber

18  has developed mobile software applications for iPhones, Android phones, and Windows phones

19  that customers use to request transportation from Uber for themselves and/or guests. An UberX

20  taxi vehicle is able to transport a single passenger or group of passengers traveling together up to

21  the safe capacity of the requested vehicle, which is usually no more than four passengers.

22       30.    To use the UberX taxi service, a customer submits a request on behalf of himself

23  or other passengers through one of Uber's mobile software applications. Once Uber identifies the

24  vehicle that will provide the requester or the requester's party with taxi service, Uber notifies the

25  requester either by text message or through its smart phone application. The notification includes

26  the UberX driver's name, customer rating, phone number, vehicle license plate number, make

27  and model of the UberX vehicle, and the driver's estimated time of arrival. Uber's mobile

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**FIRST AMENDED COMPLAINT**        **8**

1    application allows the requesting customer to track the UberX vehicle's location as the driver

2    navigates to the requesting customer's identified pick-up address. Requesting customers may

3    also submit the desired trip destination through Uber's mobile application.

4         31.    Uber notifies the requesting customer once his or her UberX vehicle has arrived.

5    The requester or any other associated passengers may then board the vehicle. If the requesting

6    customer submitted the destination address to Uber, then Uber will supply the UberX driver with

7    turn-by-turn directions to the desired destination. If the requesting customer did not enter the

8    destination into Uber's application, the passenger(s) must provide the driver with the desired

9    destination. The driver then starts the fare meter in the Uber software application and proceeds to

10   the desired destination. When the vehicle arrives at the desired destination, the driver ends the

11   trip in the Uber smart phone application.

12        32.    Uber decides who may provide its UberX taxi service. Individuals who wish to

13   provide UberX taxi services must take an exam, undergo a criminal background check, undergo

14   a driving record check, present their driver's license, vehicle registration, and driver's insurance,

15   and complete various forms. Once an individual becomes an UberX driver, Uber controls which

16   trip requests are transmitted to each of its UberX drivers. Uber also exercises exclusive control

17   over termination of UberX drivers, and Uber routinely terminates drivers for several reasons,

18   including for poor ratings from customers.

19        33.    Uber also controls who may use the UberX taxi service. Uber makes the UberX

20   service available only to passengers when at least one requesting customer has a credit card and a

21   smart phone that can run one of its mobile applications, creates an Uber account, and requests a

22   ride through Uber's mobile application. Customers cannot access the UberX taxi service by

23   physically hailing an UberX vehicle on the street.

24        34.    Uber exercises significant control over the UberX taxi service, and Uber has

25   detailed requirements for driver conduct and appearance. Uber has requirements for the type and

26   age of the vehicle that drivers may use to provide the UberX taxi service. In addition, before an

27   UberX driver may use a vehicle to provide UberX taxi services in California, the vehicle must

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  pass an inspection. Uber also requires that UberX drivers refrain from smoking while providing

2  Uber taxi services, refrain from asking customers to give them five-star ratings, and meet or

3  exceed the estimated time-of-arrival that Uber generates and provides to each customer. In

4  addition, Uber instructs UberX drivers that the share of trip requests that they accept through

5  Uber's application should be consistently high, and that UberX drivers may not accept street

6  hails from potential passengers. Furthermore, Uber issues training and directives concerning

7  other requirements to UberX drivers.

8      35.    Uber also closely monitors its UberX drivers. Uber records many details about the

9  taxi services that its UberX drivers provide, including for each trip: (1) the pickup location, (2)

10  the time of pickup, (3) the drop off location, (4) the time of drop off, (5) the distance traveled, (6)

11  the trip route, (7) the trip duration, and (8) the customer's identity. Uber employees who

12  supervise drivers have easy access to this data. In addition, Uber periodically reviews the driving

13  record for each of its UberX drivers. Uber also monitors its UberX drivers' performance by

14  asking customers for written feedback after every ride that a driver provides, and Uber routinely

15  follows up with customers who express dissatisfaction. Customers who wish to lodge complaints

16  concerning UberX drivers do so by contacting Uber. Furthermore, Uber regularly terminates or

17  suspends UberX drivers whose average customer rating falls below a certain threshold.

18      36.    In addition, Uber provides UberX drivers with supplies necessary to provide

19  Uber's taxi services. Uber provides UberX drivers with iPhones loaded with Uber's smart phone

20  application. When providing Uber's taxi services, drivers use these phones to receive and

21  respond to trip requests, receive GPS-based navigational guidance, record the beginning and end

22  of each trip, communicate with customers, and cancel trips. In addition, Uber maintains general

23  commercial liability insurance to cover claims concerning incidents that occur while drivers are

24  providing UberX taxi services.

25      37.    Uber tightly controls payment for its UberX taxi services. Customers do not pay

26  drivers of Uber vehicles directly. Instead, Uber automatically charges a customer's credit card

27  after the UberX vehicle arrives at the desired destination. Uber has exclusive control over the

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   fares that customers pay and the compensation that UberX drivers receive. Fares for Uber's taxi

2   services are based on the duration and distance of each trip and other factors such as demand at

3   the time and place of the ride, as determined by Uber's algorithms. Uber keeps twenty percent of

4   each fare. Thus, Uber compensates its UberX drivers based on the duration and distance of the

5   trips that they provide to passengers. Payments are not transferred directly from customers to

6   UberX drivers; rather, Uber collects and holds customer payments, deducts fees, and then later

7   transfers money to drivers on a set schedule. Customers who dispute the fare for a particular trip

8   must contact Uber customer service representatives to request an adjustment to their fares.

9       38.    Thus, Uber closely monitors and controls interactions between UberX drivers and

10   customers. Uber decides which of its UberX drivers may transport each customer. In addition,

11   Uber specifies how quickly each UberX driver should pick up each customer. After UberX

12   drivers pick up customers, Uber routinely provides UberX drivers with directions to customers'

13   destinations, and Uber specifies driver conduct that is prohibited while UberX drivers transport

14   customers. Moreover, Uber decides how much each customer will be charged for each trip and

15   how much it will compensate the driver for the trip, and Uber provides each customer with a fare

16   receipt. Customers and drivers must communicate through Uber's mobile application. Uber

17   records trip-related details about every trip that each UberX driver provides to each customer,

18   and Uber collects written feedback from every customer concerning the quality of each UberX

19   driver's performance after every trip. Furthermore, customers who forget personal property in

20   UberX vehicles may contact Uber to request assistance retrieving that property.

21       39.    On September 19, 2013, the California Public Utilities Commission ruled that

22   Uber is a transportation provider with respect to the UberX service. The Commission requires

23   that Uber possess a Class P Charter Party Carrier permit issued by the Commission to operate the

24   UberX service in California. The Commission concluded that Uber is a transportation provider

25   because Uber provides essentially the same function as a taxi dispatch office and because Uber

26   controls payment for its transportation services. The Commission also explained that the fact that

27   a smart phone application is used to arrange Uber's transportation service is irrelevant to whether

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**FIRST AMENDED COMPLAINT**        11

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Uber is a transportation provider. In addition, the Commission stated that Uber may not

2    discriminate against people with disabilities in the provision of its UberX transportation service

3    and required that Uber's website and mobile applications comply with Level AA of version 2.0

4    of the Web Content Accessibility Guidelines.

5          40.     Members of Plaintiff NFB of California and other blind individuals use Uber's

6    UberX taxi service. Many of these individuals operate Uber's smart phone software application

7    using text-to-speech technology that is built into iPhones. Text-to-speech software, commonly

8    used by persons who are blind or visually impaired, enables blind persons to operate smart

9    phones by translating visual information and text displayed on a touchscreen device into audible

10   synthesized speech or into Braille on a portable electronic braille display.

11         41.     UberX drivers have refused on the basis of disability to transport many blind

12   individuals with service animals, including members of Plaintiff NFB of California.

13         42.     For example, Jamey Gump is blind, uses a guide dog, and is a member of NFB of

14   California. On or about March 23, 2014, an UberX driver refused to transport Mr. Gump in San

15   Leandro, California from a work-related event to his home. On that occasion, Mr. Gump used the

16   Uber mobile app to summon an UberX taxi. The UberX driver pulled the vehicle up to where

17   Mr. Gump was standing on the curb and, after noticing that Mr. Gump had a dog, said "no pets

18   allowed." Mr. Gump tried to explain that his guide dog was a service animal and that the UberX

19   driver had a legal obligation to allow the service animal into the vehicle. Mr. Gump attempted to

20   show the UberX driver an official guide dog identification card issued by his guide dog's

21   training program. The driver adamantly refused to let Mr. Gump into the vehicle and drove

22   away.

23         43.     On or about May 21, 2014, another UberX driver refused to transport Mr. Gump

24   and a friend who also uses a service animal because of their service animals. On that occasion,

25   Mr. Gump and Manveen Chahal, a friend and fellow member of NFB of California who also

26   uses a service animal, were enjoying an evening at the Dutch Goose, a local pub in downtown

27   Menlo Park, California. Mr. Gump had planned to leave on a trip early the next morning and

28

1  requested an UberX ride to get to his home in Menlo Park because of the late hour. After the

2  requested UberX vehicle had pulled up to the curb, Mr. Gump and Mr. Chahal attempted to enter

3  the vehicle and opened a passenger door. The UberX driver began shouting "no dogs!" Mr.

4  Gump tried to explain that their dogs were service animals for their disabilities and were legally

5  allowed in the vehicle. The UberX driver began shouting and cursing at Mr. Gump and Mr.

6  Chahal in a language that Mr. Gump did not understand. Mr. Chahal speaks the language and

7  was offended by the profanity and insults. As Mr. Gump attempted to enter the vehicle, the

8  UberX driver quickly accelerated the vehicle forward, nearly injuring Mr. Gump's guide dog and

9  causing an open passenger door to strike Mr. Chahal. The UberX driver then sped away and

10  cancelled the ride request. Mr. Gump and Mr. Chahal immediately called the police to file a

11  report and used alternative transportation to travel home approximately forty-five minutes later.

12      44.    On August 20, 2014, Mr. Gump requested an UberX ride to pick him up at 214

13  Van Ness Ave., San Francisco, California. Mr. Gump determined from the map in the Uber

14  iPhone application that his requested vehicle was about to turn onto his street. Mr. Gump then

15  went out to the curb with his guide dog in direct sight of the oncoming vehicle to intercept the

16  UberX driver. Mr. Gump noticed a vehicle slow its speed to a near stop in front of him and then

17  accelerate again as it passed him on the curb. A few seconds later, Mr. Gump received a

18  notification on his phone that the UberX driver had cancelled the ride. Mr. Gump then requested

19  a second UberX ride, but Uber assigned the exact same driver and vehicle to pick up Mr. Gump

20  for a second time. Again, a few seconds after Mr. Gump received confirmation that this same

21  driver was on the way, the driver cancelled on him for a second time.

22      45.    Mr. Gump wants to use the UberX taxi service because it is available near his

23  home, an area with limited public transportation, and it would be convenient if it was reliably

24  accessible and non-discriminatory. However, after this most recent experience, he has used Uber

25  less frequently than previously because he concluded that it is not a reliable transportation option

26  for him. Notwithstanding Mr. Gump's repeated complaints to Uber about his negative

27  experiences over the last several months, his access to Uber's services has not improved when he

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    does still attempt to use the service. Mr. Gump hopes that Uber will change its policies and

2    practices to better prevent discrimination against passengers with service animals so that he can

3    enjoy Uber with the same convenience and reliability enjoyed by others.

4         46.    Cody Austin Meyer is blind, uses a guide dog, and is a member of NFB of

5    California. An UberX driver refused to transport Mr. Meyer on September 30, 2014. On that

6    occasion, Mr. Meyer was shopping at a grocery store in the Mission Valley Shopping Center in

7    Fremont, California and needed a way to transport his groceries back to his apartment. Mr.

8    Meyer used the Uber iPhone app to request an UberX vehicle. An UberX driver was assigned to

9    pick Mr. Meyer up at the shopping center. Mr. Meyer was standing on the curb in the shopping

10   center waiting for the assigned UberX driver when Mr. Meyer noticed a vehicle pull up near

11   where he was standing and remain inactive for an extended period of time. The UberX driver

12   then called Mr. Meyer's cell phone. When the UberX driver observed Mr. Meyers answering his

13   cell phone, the nearby vehicle rolled a window down and told Mr. Meyer "no dogs!" Mr. Meyer

14   explained that it was a certified service animal and it was illegal for the driver to refuse to take

15   him. The UberX driver then began to drive away. Mr. Meyer warned that he would report this

16   incident to Uber. The UberX driver said "go ahead" and left.

17        47.    Mr. Meyer was then charged a cancellation fee. Because Mr. Meyer did not want

18   to risk being denied by yet another UberX driver, Mr. Meyer went to the bus stop with his

19   groceries to catch the next bus. After a prolonged wait for the bus, Mr. Meyer called a friend to

20   talk about the incident and that friend eventually came to pick up Mr. Meyer using the friend's

21   personal vehicle. Using a computer equipped with screen reader software, software that enables

22   blind individuals to read and interact with text and controls on properly coded websites, Mr.

23   Meyer visited Uber's website the next day to submit a complaint. However, he had difficulty

24   submitting a complaint on Uber's website because of its inaccessible design. Mr. Meyer called

25   the telephone number listed on Uber's website and encountered a busy signal. Mr. Meyer was

26   required to spend an extended period of time composing and submitting a written complaint to

27   Uber in order to get the cancellation fee refunded.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

48.     Brooklyn Rodden is blind, uses a guide dog, and is a member of NFB of California. An UberX driver refused to transport her and her boyfriend, Plaintiff Michael Kelly, who also uses a service animal, on or about September 13, 2014. On that occasion, Ms. Rodden used her Uber app to request an UberX vehicle so that she and Plaintiff Kelly could go out to dinner at Chicago Fire Pizza, a local pizza parlor in Sacramento, California. When the requested UberX driver arrived, Ms. Rodden and Plaintiff Kelly attempted to enter the vehicle with their service animals and were refused access by the UberX driver. Though Ms. Rodden and Plaintiff Kelly explained that the UberX driver's conduct was illegal, the UberX driver maintained his refusal to transport them because of their service animals and then drove away.

49.     Jessie Lorenz is blind, uses a guide dog, and is a member of NFB of California. An Uber driver refused to transport Ms. Lorenz on or about November 30, 2012. On that occasion, Ms. Lorenz was leaving a fundraising event at Chevys Fresh Mex restaurant located at 201 3rd Street in San Francisco. Ms. Lorenz and a friend both felt tired and decided to request an Uber taxi to BART. Ms. Lorenz's blind friend uses a white cane instead of a service animal. When the Uber vehicle arrived, the driver said "I don't take dogs." Ms. Lorenz did not want to have an argument with the Uber driver, so she did not protest. The driver was willing to transport Ms. Lorenz's blind friend, so he took the Uber vehicle. Ms. Lorenz then walked to BART alone. After that experience, Ms. Lorenz decided not to continue using Uber because she has other taxi options and does not want to deal with the potential hassle and humiliation that accompanies being denied a ride by an Uber driver.

50.     Jonathan Lyens is blind, uses a guide dog, and is a member of NFB of California. An UberX driver refused to transport him from his home to a job interview in San Francisco, California on or about February 20, 2014. On or about 8:30 a.m. on that date, Mr. Lyens requested UberX transportation from his home in San Francisco. Uber notified Mr. Lyens that it had identified an UberX vehicle to transport him, and Uber notified Mr. Lyens when the vehicle arrived at his home. Mr. Lyens then went with his guide dog to the street in front of his home to find his UberX vehicle. Mr. Lyens observed that a vehicle arrived at his home briefly after Uber

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    notified him that his transportation had arrived. Uber then notified Mr. Lyens that the driver of

2    the Uber vehicle had cancelled his ride, and Mr. Lyens observed the vehicle in front of his home

3    leave. As a result of this cancellation, Mr. Lyens had to pay a higher fare for transportation to his

4    interview. He was also late to his interview because of the delay.

5          51.    Juanita Herrera is a blind college student, uses a guide dog, is a member of NFB

6    of California, and resides in Southern California. Ms. Herrera is interested in using the UberX

7    service because it is more convenient and affordable than other taxi options. She attempted to use

8    the UberX service for the first time on August 7, 2014. She requested a ride from the Macy's

9    store located at 6200 Slauson Avenue in Culver City, California. She was standing in front of the

10   store waiting for her requested ride when an Uber driver approached her and asked if she was

11   waiting for Uber. She answered yes, and the Uber driver asked if her dog was coming with her.

12   She told him that her dog would accompany her and that her dog is not a pet. She explained that

13   her dog is a service animal and that he was legally required to take both her and her service

14   animal. The UberX driver ignored her plea and refused to let her service animal enter the vehicle.

15   The UberX driver told her that he was leaving for his next passenger. He then left Ms. Herrera

16   standing dejected on the curb with her service animal. As a result, Ms. Herrera waited thirty

17   minutes for a bus and then rode the bus for 25 minutes to get to her destination. The trip takes ten

18   minutes in an UberX taxi.

19         52.    Robert Schulenburg is blind, uses a guide dog, and resides in California. UberX

20   drivers have refused to transport Mr. Schulenburg on at least five separate occasions in several

21   California cities, including Santa Clara, San Jose, Campbell, and Sacramento, because of his

22   guide dog. When these drivers were willing to speak with him, Mr. Schulenburg explained to the

23   drivers that he had the legal right to bring his service animal with him, but the drivers ignored his

24   explanations, and many of the drivers informed him that they had not received training

25   concerning service animals. In addition, Uber has charged him cancellation fees after some

26   UberX drivers refused to transport him, and Mr. Schulenburg has been forced to submit written

27   complaints to Uber to get these fees refunded. When UberX drivers have refused to transport Mr.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Schulenburg, he has faced delays of up to thirty minutes as he awaits alternative transportation.

2   Mr. Schulenburg has submitted written complaints about these instances of discrimination to

3   Uber. However, Uber has failed to inform Mr. Schulenburg whether Uber disciplined the

4   relevant drivers or took any other steps to ensure that these drivers would not unlawfully

5   discriminate against him again or other individuals with service animals. Instead, Uber

6   responded to some of Mr. Schulenburg's complaints by stating that Uber cannot control its

7   drivers' conduct because the drivers are independent contractors and by advising Mr.

8   Schulenburg that he should inform UberX drivers of their legal obligation to allow his service

9   animal to accompany him.

10       53.     Richard Rueda is blind, uses a guide dog, and resides in California. Mr. Rueda

11   attended the annual convention for NFB of California, which was held in Southern California on

12   October 9-12, 2014. In connection with Mr. Rueda's travels to and from that convention, at least

13   two different UberX drivers refused to transport him because of his service animal. On October

14   10, 2014, Mr. Rueda requested an UberX trip from his parents' home in Whittier, California to

15   the NFB of California convention at the Embassy Suites in El Segundo. When the driver arrived,

16   he stepped out of his vehicle and informed Mr. Rueda that he would not transport dogs because

17   he has had issues with dogs in the past. In response, Mr. Rueda explained to the driver that his

18   dog was a service animal, not a pet. The UberX driver repeated his objection, reentered his

19   vehicle, and left the scene.

20       54.     Again, on October 12, 2014, Mr. Rueda requested an Uber vehicle back to his

21   parents' home in Whittier. An Uber driver accepted the trip request. Mr. Rueda called the driver

22   to inform her of his location and to inform her that he had a service animal. In response, the

23   driver stated that she could not transport him because of the dog and then canceled his ride

24   request. Mr. Rueda then requested a second Uber vehicle. Again, after Mr. Rueda spoke with this

25   driver on the phone, the driver canceled the trip. Mr. Rueda made a third attempt and requested a

26   third Uber vehicle. A driver named Jesus accepted his trip request and transported him without

27   incident. When Mr. Rueda told Jesus about Uber drivers denying him rides, Jesus stated that he

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    knew of other Uber drivers who refused to transport dogs because the drivers did not want dog

2    hair in their cars.

3         55.    Thomas Foley is blind, uses a guide dog, and resides in California. An UberX

4    driver refused to transport Mr. Foley on or about September 5, 2014. On that occasion, Mr. Foley

5    used the Uber app to request an UberX ride from his place of work in Berkeley, California on his

6    way to an appointment. He waited for his ride in front of the building. The Uber app notified Mr.

7    Foley that his vehicle, a Toyota Corolla, was arriving, and a few seconds later a car pulled up

8    about ten feet from him. Mr. Foley proceeded to the car, reached for the door, and shouted

9    "Uber?" The car then drove away. Approximately 30 seconds later, the Uber app informed Mr.

10   Foley that the driver had cancelled his ride. Mr. Foley then conferred with a sighted individual at

11   a nearby bus stop who confirmed that the car that just drove away was a Toyota Corolla and that

12   the driver looked at Mr. Foley and his guide dog shortly before leaving the scene. Mr. Foley was

13   late to his appointment because of this incident.

14        56.    Sarah Outwater is blind and uses a guide dog. UberX drivers refused to transport

15   her in Boston on at least twelve separate occasions over the last year. Uber charged her

16   cancellation fees in some instances where the UberX vehicles refused to transport her. In

17   addition, the same UberX driver refused to transport her on three of these occasions, despite an

18   Uber representative's prior assurances that Uber would address the driver's discriminatory

19   practices.

20        57.    Mark Cadigan is blind and uses a guide dog. During the month of August 2014,

21   Mr. Cadigan was denied service by two UberX drivers in the Boston area because of his service

22   animal. On both occasions, Uber charged Mr. Cadigan cancellation fees after the UberX drivers

23   cancelled the trip. Mr. Cadigan was forced to submit written complaints to Uber and to wait one

24   to three business days to get these cancellation fees refunded. His written complaints also

25   described the discrimination that he experienced. Mr. Cadigan is unsatisfied with Uber's

26   responses to his complaints. He received no formal response on one occasion and was verbally

27   told on the other occasion that the UberX driver had merely been reprimanded. Mr. Cadigan

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   believes Uber does not adequately or consistently discipline UberX drivers when complaints are

2   made to Uber customer service representatives.

3       58.   Kristin Fleschner is blind and uses a guide dog. UberX drivers refused to transport

4   her in the Boston area because of her service animal on at least five separate occasions over the

5   previous year. On one of those occasions she was left stranded in the rain while trying to secure

6   replacement transportation. Ms. Fleschner was unable to submit a complaint on Uber's website

7   because of accessibility barriers in the design of that website that prevent a blind person from

8   using it with standard screen access software.

9       59.   Melissa Riccobono is blind and uses a guide dog. An UberX driver refused to

10   transport Ms. Riccobono in the Baltimore, Maryland, area on October 8, 2014. On that occasion,

11   Ms. Riccobono needed to travel to a local pharmacy to pick up a prescription for her sick child,

12   who had a high fever. The UberX driver that she had requested using Uber's app refused to take

13   her because of her service animal. The driver maintained his refusal even after Ms. Riccobono

14   had explained her rights and tried to change the driver's mind. Ms. Riccobono is a mother of

15   three young children and depends on reliable and timely transportation services to take care of

16   her family.

17       60.   Mariea Harris is blind and uses a guide dog. An UberX driver refused to transport

18   Ms. Harris in the Charlotte, North Carolina, area on October 25, 2014 because she uses a service

19   animal. Ms. Harris planned to use Uber to travel from her home to a local grocery store with a

20   friend who also uses a service animal. When the requested UberX vehicle arrived, Ms. Harris

21   received a notification in the Uber app. Ms. Harris's friend who uses a service animal went

22   outside to intercept the vehicle. The UberX driver refused to let Ms. Harris's friend into the

23   vehicle because of her guide dog. Ms. Harris then came out of the house with her guide dog and

24   approached the vehicle to talk to the UberX driver through the open driver-side window. The

25   UberX driver told Ms. Harris that he did not have to take the dogs because the vehicle was his

26   own personal car. Ms. Harris explained that the ADA required the UberX driver to transport the

27   dogs and that the driver could lose his job if he did not comply. The UberX driver disagreed,

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-04086**
**FIRST AMENDED COMPLAINT**    **19**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  drove away, and canceled the trip request. Ms. Harris attempted to go to Uber's website to file a

2  complaint while she waited for alternative transportation. Ms. Harris then experienced difficulty

3  using Uber's website because of accessibility barriers in its design that inhibited her from using

4  her screen reader technology to access the content on Uber's website.

5       61.    Dimitrios Kouniaris is blind and uses a guide dog. During August 2014, UberX

6  drivers refused to transport Mr. Kouniaris on two occasions in Austin, Texas because of his

7  service animal. On both occasions, Mr. Kouniaris was stranded in temperatures of over 100 °F as

8  he waited for alternative transportation. Uber also charged Mr. Kouniaris a cancellation fee and

9  only refunded it after he complained. Mr. Kouniaris has since stopped using the UberX service

10  because he does not want to face the risk that additional UberX drivers will refuse to transport

11  him or mistreat him because of his service animal. However, Mr. Kouniaris wants safe reliable

12  access to the UberX service.

13       62.    Plaintiffs are aware of other blind persons throughout California and the United

14  States whom UberX drivers refused to transport because those individuals had service animals.

15       63.    In addition, some UberX drivers mishandle transportation services for blind

16  people using guide dogs even when they do not outright deny service. For example, Leena

17  Dawes is blind and uses a guide dog. On or about March 27, 2014, an UberX driver locked Ms.

18  Dawes' guide dog in the closed trunk of his sedan before transporting Ms. Dawes in Sacramento,

19  California. Once Ms. Dawes had realized that her dog was in the trunk, she demanded that the

20  driver pull over so that she could retrieve her dog, but the driver refused her request. Ms. Dawes

21  transmitted a written complaint about this incident to Uber. Uber has failed to inform Ms. Dawes

22  whether Uber fully investigated her complaint or took any meaningful action to ensure that the

23  driver does not abuse service animals in this manner in the future.

24       64.    Uber also employs a rating system of its customers that tends to disparately affect

25  blind passengers with service animals and reduce their access to the service. After every

26  completed ride, Uber allows its drivers to rate each passenger on a scale from one to five similar

27  to the scale passengers are given to rate every driver after a ride concludes. Upon information

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**FIRST AMENDED COMPLAINT**       20

1   and belief, Uber will not match an UberX driver to the passenger a second time if the UberX

2   driver gives that passenger a low rating. Uber drivers can also review an assigned passenger's

3   average rating by other Uber drivers before deciding whether to travel to pick up that assigned

4   passenger. When Uber drivers do begrudgingly accept a passenger with a service animal who has

5   successfully persuaded a driver not to violate the law, the Uber driver has an incentive to rate

6   that passenger lower on the rating scale, which will make it less likely that Uber will assign that

7   same driver to that passenger again in the future. This creates a system in which blind passengers

8   with service animals have fewer options to connect with drivers.

9        65.    Many of the preceding blind individuals submitted written complaints to Uber

10  concerning the discriminatory treatment that they had experienced. However, Uber has failed to

11  inform most of these individuals whether Uber has fully investigated their complaints,

12  disciplined the relevant drivers, or taken any other meaningful steps to ensure that these drivers

13  do not unlawfully discriminate against other individuals with service animals. Uber

14  representatives instead informed many blind guide dog users that "the drivers are independent

15  contractors" and Uber "cannot control their actions" and advised blind guide dog users to "let

16  your driver know when he or she is on the way to your pickup location that you have a guide

17  dog[.]"

18       66.    Plaintiff Kelly is blind, uses a guide dog, and is a member of NFB of California.

19  Plaintiff Kelly lives in the Sacramento, California area and regularly depends on transportation

20  services to travel for work and leisure. Mr. Kelly regularly travels with his girlfriend, Brooklyn

21  Rodden, who also is blind and uses a guide dog. Mr. Kelly's girlfriend has an Uber account that

22  she often uses to request UberX taxi services for her and Mr. Kelly to use. An UberX driver

23  recently refused to transport Mr. Kelly and Ms. Rodden on September 13, 2014 because of their

24  guide dogs. Mr. Kelly and Ms. Rodden intend to keep using UberX transportation services. Mr.

25  Kelly wants Uber to change its policies and practices so that the denials of service that he and

26  Ms. Rodden experienced do not recur.

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

67. Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB of California. Mr. Hingson previously downloaded the Uber app onto his iPhone but ultimately decided against creating an account and trying to use the service. Mr. Hingson learned that UberX drivers often refuse to transport blind individuals with service animals. Because of Mr. Hingson's position as Vice President of the National Association of Guide Dog Users and his longstanding involvement with membership activities within NFB of California, he has specific and general knowledge of the experiences of multiple Uber passengers with service animals who have been denied access. Through his regular contact with members of NFB of California and other members of the blind community, Mr. Hingson has known of specific refusals by UberX drivers to transport individuals with guide dogs over the past year. Additionally, through his activities with NFB of California, Mr. Hingson regularly attends events where fellow blind attendees with service animals are having trouble using the UberX service. Most recently, Mr. Hingson attended the annual state convention for NFB of California, which was held at the Embassy Suites South, El Segundo, CA, on October 9-12, 2014. Mr. Hingson met convention attendees with service animals who were experiencing denials when attempting to use UberX to travel to and from the convention hotel. Mr. Hingson has refrained and continues to refrain from creating an Uber user account or otherwise using Uber's transportation services because he fears experiencing similar discrimination.

68. Mr. Hingson was deterred from using UberX on many specific occasions. For example, on or about December 5, 2013, Mr. Hingson was planning to travel to a job interview at an executive recruiting firm in San Francisco. At that time, Mr. Hingson was aware that Uber was available in San Francisco. However, because of a tight schedule, Mr. Hingson decided not to attempt to use the UberX taxi service because he could not afford to be delayed by an UberX driver refusing to take his guide dog. Instead, Mr. Hingson arranged for a taxicab well in advance of his transit and extended his trip so that he could use nondiscriminatory transportation services to travel to his appointment on time.

69.     Plaintiff Hingson was further deterred from using Uber on January 20, 2014. On that occasion, Mr. Hingson needed to quickly travel from the Ferry Building in San Francisco to a speaking engagement at Wells Fargo. Mr. Hingson could not risk arriving late for this important professional engagement. Mr. Hingson wanted to use UberX because of its general convenience and the quality of the vehicles. However, he was deterred from doing so because he did not want to wait for the UberX vehicle to arrive and then discover that the driver would refuse to take his service animal.

70.     Plaintiff Hingson was similarly deterred from using Uber on or about May 15, 2014. Mr. Hingson needed to travel within San Francisco to a meeting with a press contact. Mr. Hingson wanted to use UberX to attend this meeting. However, Mr. Hingson wanted to be focused for this meeting and believed the stress of encountering an improperly trained UberX driver that refused to transport his service animal would cause him stress and negatively affect his performance at the meeting.

71.     Likewise, on or about September 28, 2014, Mr. Hingson traveled from Los Angeles to San Francisco to attend meetings with marketing consultants for the purpose of filming video footage. Mr. Hingson needed to coordinate his travel schedule with airline flights and maximize his time with these consultants during the trip. He wanted to use the UberX service, but could not afford to waste unnecessary time in transit caused by a driver refusing to take his service animal.

72.     Plaintiff Hingson would like to use UberX for future travel. For example, Mr. Hingson will travel to Sacramento on March 9, 2015 for business. Mr. Hingson would like to use UberX for traveling around Sacramento if he had some assurance that he would not be denied transportation because of his service animal. Mr. Hingson would like to use UberX on this and many other upcoming trips. However, UberX is currently not a reliable source of transportation for Mr. Hingson because of the risk that an UberX driver will refuse to transport him and his service animal. Mr. Hingson hopes that Uber will take responsibility for the conduct of its drivers and use the control that it has over them to prevent and minimize discrimination. Mr.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Hingson would use UberX if Uber properly trained drivers, adopted and enforced effective

2    antidiscrimination policies, and provided blind passengers a convenient way to immediately

3    report discrimination so that he has some assurance that UberX will be as reliable and convenient

4    for him and his guide dog as it is for others.

5        73.    Plaintiff Pedersen is blind, uses a guide dog, and resides in San Francisco,

6    California. Mr. Pedersen regularly uses transportation services, such as UberX, to commute to

7    work. Over the previous year, UberX drivers refused to transport Mr. Pedersen multiple times

8    because of his guide dog.

9        74.    Most recently, on or about September 12, 2014, Mr. Pedersen's wife used her

10   Uber account to request an Uber vehicle for Mr. Pedersen as he was preparing to leave for work

11   in the morning. Mr. Pedersen heard that the UberX driver had pulled up in front of his home and

12   went outside to enter the vehicle. Mr. Pedersen knocked on the window of the vehicle and asked,

13   "Uber?" The UberX driver said, "yes, but I don't take dogs." Mr. Pedersen explained that his dog

14   was a service animal and the UberX driver was legally required to transport him. The UberX

15   driver replied, "I don't care. It's not my problem." The UberX driver then drove away and

16   canceled the trip request. Mr. Pedersen's wife was charged a $5 cancellation fee. Mr. Pedersen

17   then used Flywheel, a competing transportation service, to obtain alternative taxi service.

18   Because of the delay caused by the UberX driver, Mr. Pedersen missed his connection to a

19   commuter shuttle and was late for work. Mr. Pedersen would like to keep using Uber without

20   fear that he will be denied service and made late for work or other appointments. Mr. Pedersen

21   wants Uber to change its policies and practices so that he can enjoy the same reliability and

22   convenience of Uber's transportation services that others without service animals enjoy.

23       75.    Uber is violating basic equal access requirements under both the ADA and state

24   law by failing to implement policies and procedures that would prevent or reduce discrimination

25   against blind riders committed by UberX drivers. Because Uber closely monitors and tightly

26   controls interactions between UberX drivers and its customers, Uber can adopt and enforce

27   policies and procedures that would prevent or reduce discrimination against blind individuals

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

with service animals, including members of Plaintiff NFB of California. These policies would include, but are not limited to, the following:

      1.     Provide an accessible method for blind individuals with service dogs to immediately and efficiently report instances where Uber drivers refuse to transport them on the basis of disability;

      2.     Establish a procedure for quickly investigating complaints and informing such blind persons of the outcome of their complaints;

      3.     Provide mandatory periodic training to Uber drivers concerning legal access requirements applicable to service animals and explain to drivers the consequences for failing to comply with these legal obligations;

      4.     Meaningfully discipline drivers who deny access to blind riders with service animals and permanently terminate drivers who violate service animal policies on more than one occasion; and

      5.     Randomly deploy blind testers who use guide dogs to proactively identify–for retraining or termination–drivers who refuse to transport individuals with disabilities because of the presence of their service animals.

      76.     On June 3, 2014, Plaintiff NFB of California and Plaintiff Hingson wrote to Defendant Uber Technologies, Inc. to notify it about the unlawful discrimination in the provision of UberX taxi services to blind individuals with service animals. On July 16, 2014, Plaintiff NFB of California and Plaintiff Hingson proposed to Defendant that the parties attempt structured negotiations to resolve the issue without a lawsuit. On August 8, 2014, Defendant rejected Plaintiffs' proposal for structured negotiations. Defendant has since then failed to take adequate measures to remedy the discrimination, and UberX drivers continue to discriminate against blind customers with service animals.

**FIRST CAUSE OF ACTION**

**Violation of Title III of the Americans with Disabilities Act**

**(42 U.S.C. § 12101, *et seq.*)**

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-04086**
**FIRST AMENDED COMPLAINT**      25

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

77.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

78.     Members of Plaintiff NFB of California including Plaintiffs Kelly and Hingson are qualified individuals with disabilities within the meaning of Title III of the ADA. Plaintiff Pedersen is also a qualified individual with a disability within the meaning of Title III of the ADA.

79.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

80.     Defendants are primarily engaged in the business of transporting people within the meaning of Title III of the ADA and its regulations. 42 U.S.C. § 12184(a). Defendants operate a taxi service and specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D § 37.29. The operations of Defendants affect commerce.

81.     Title III prohibits private entities providing specified public transportation from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered. 42 U.S.C. § 12184(b)(1); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.301(a).

82.     By operating a taxi service that dispatches drivers who unlawfully discriminate and refuse to transport blind individuals with service animals and by operating a customer rating system that, on information and belief, reduces the number of UberX drivers available to Plaintiffs and other blind customers with service animals, Defendants violate Title III of the ADA because Defendants are utilizing eligibility criteria that screen out or tend to screen out Plaintiffs and other blind individuals with guide dogs from fully enjoying the UberX taxi service. 42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

83. It is a violation of Title III for private entities providing specified public transportation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford the entity's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12184(b)(2)(a), 12182(b)(2)(a)(ii); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302(a).

84. By failing to modify practices, policies, and procedures to ensure that drivers of UberX vehicles are properly trained and do not refuse to transport Plaintiffs and other blind individuals with service animals, Defendants are denying Plaintiffs full and equal access to the specified public transportation offered by Defendants.

85. Title III regulations prohibit private entities providing taxi services and other transportation services from discriminating by refusing to provide transportation services to people with disabilities who can physically access vehicles. 49 C.F.R. §§ 37.5(a)-(b), (f), 37.29(c).

86. Title III regulations also specifically require that private entities providing transportation services permit service animals to accompany people with disabilities in vehicles and facilities. 49 C.F.R. §§ 37.5(f), 37.37(f), 37.167(a), (d); 28 C.F.R. § 36.302(c)(1).

87. Defendants violate Title III of the ADA by refusing to provide transportation services to blind individuals with service animals, including Plaintiffs, who can physically access UberX vehicles. Defendants therefore violate Title III of the ADA by denying Plaintiffs full and equal access to the services, facilities, privileges, advantages, and accommodations of Defendants' UberX transportation service.

88. In addition to operating specified public transportation within the meaning of Section 304 of the ADA, Defendants' UberX service is also a demand responsive system within the meaning of Section 302 of the ADA. 42 U.S.C. § 12182(b)(2)(c). By operating a demand responsive system that dispatches drivers who unlawfully discriminate and refuse to transport

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Plaintiffs and other blind customers with service animals on the basis of disability, Defendants

2   violate Title III and regulations applicable to demand responsive systems within the meaning of

3   Section 302 of the ADA. 49 C.F.R. §§ 37.3, 37.21(a)(3), 37.167(a), (d); 28 C.F.R. §

4   36.302(c)(1).

5        89.     The regulations implementing Title III of the ADA require that private entities

6   operating demand responsive transportation systems, including demand responsive systems that

7   are also specified public transportation, must train personnel to proficiency so that they operate

8   vehicles safely and properly assist and treat individuals with disabilities. 49 C.F.R. § 37.173.

9        90.     On information and belief, Defendants also violate Title III of the ADA by failing

10   to train Defendants' personnel to proficiency so that they properly assist and treat Plaintiffs and

11   other blind customers with service animals.

12        91.     Title III of the Americans with Disabilities Act also prohibits discrimination on

13   the basis of disability by owners, operators, lessees, and lessors of places of public

14   accommodation. 42 U.S.C. § 12182(a).

15        92.     Defendant Uber, in cooperation with Defendants Rasier, LLC, and Rasier-CA,

16   LLC, owns, operates, or leases vehicles providing taxi service and specified public transportation

17   within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D

18   § 37.29. The vehicles providing taxi services owned, operated, or leased by Uber are places of

19   public accommodation within the meaning of Title III of the ADA. 42 U.S.C. §§ 12181(10),

20   12184(a); 28 C.F.R. § 36.104. Except for modifications to vehicles providing taxi services for

21   the purpose of wheelchair accessibility, all of the antidiscrimination provisions of Title III of the

22   ADA apply to the goods, services, facilities, privileges, advantages, and accommodations of

23   vehicles providing taxi services.

24        93.     Title III prohibits entities that own, operate, lease, or lease to places of public

25   accommodation from excluding, on the basis of disability, individuals with disabilities from

26   participating in or benefiting from the goods, services, facilities, privileges, advantages, or

27

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-04086**
**FIRST AMENDED COMPLAINT**            28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  accommodations of public accommodations or otherwise discriminating against a person on the

2  basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

3      94.    By failing to adopt policies and practices that will prevent or reduce

4  discrimination against blind individuals with service animals in the provision of the UberX taxi

5  service, Defendants violate Title III of the ADA by excluding Plaintiffs on the basis of disability

6  from enjoying the services, privileges, advantages, or accommodations of UberX vehicles.

7      95.    Under Title III, it is also unlawful for entities that own, operate, lease, or lease to

8  places of public accommodation to afford, on the basis of disability, an individual or class of

9  individuals with disabilities with an opportunity to participate in or benefit from a good, service,

10  facility, privilege, advantage, or accommodation that is not equal to that afforded other

11  individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

12      96.    Defendants violate Title III of the ADA by providing Plaintiffs and other blind

13  individuals who use service animals an opportunity to participate in or benefit from the services,

14  privileges, advantages, or accommodations of UberX vehicles that is not equal to that afforded

15  other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

16      97.    Title III further prohibits entities that own, operate, lease, or lease to places of

17  public accommodation from providing, on the basis of disability, an individual or class of

18  individuals with a good, service, facility, privilege, advantage, or accommodation that is

19  different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28

20  C.F.R. § 36.202(c).

21      98.    By operating a taxi service that dispatches drivers who unlawfully discriminate

22  against and refuse to transport blind individuals with service animals, Defendants violate Title III

23  of the ADA because Uber provides Plaintiffs, on the basis of disability, with services, privileges,

24  advantages, and accommodations of UberX vehicles that are different or separate from that

25  provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

26      99.    It is a violation of Title III for entities that own, operate, lease, or lease to places

27  of public accommodation to fail to make reasonable modifications in policies, practices, or

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 procedures when such modifications are necessary to afford such goods, services, facilities,

2 privileges, advantages, or accommodations to individuals with disabilities, unless the entity can

3 demonstrate that making such modifications would fundamentally alter the nature of such goods,

4 services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(a)(ii);

5 28 C.F.R. § 36.302(a).

6      100. By failing to modify practices, policies, and procedures to ensure that drivers of

7 UberX vehicles are properly trained and do not refuse to transport blind individuals with service

8 animals, Defendants are denying Plaintiffs full and equal access to UberX vehicles.

9      101. In addition, it is a violation of Title III to utilize, directly or through contractual or

10 other arrangements, standards or criteria or methods of administration that have the effect of

11 discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(d); 28 C.F.R. § 36.204.

12      102. By administering Defendants' UberX taxi service in a manner that results in blind

13 individuals who use service animals being denied access to the UberX service on the basis of

14 disability, Defendants are denying Plaintiffs full and equal access to the services, privileges,

15 advantages, and accommodations of UberX vehicles because Defendants are utilizing methods of

16 administration that have the effect of discriminating on the basis of disability.

17      103. The actions of Defendants were and are in violation of the Americans with

18 Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Many

19 members of Plaintiff NFB of California, including Plaintiff Kelly, and other blind persons,

20 including Plaintiff Pedersen, have been and continue to be denied access to Defendants' services

21 on multiple occasions when they attempt to use Uber's UberX transportation service. Defendants

22 have failed to take any equitable steps to remedy Uber's discriminatory conduct, and

23 Defendants' violations of the ADA are ongoing. Defendants' unlawful actions also violate the

24 ADA by deterring members of Plaintiff NFB of California, including Plaintiff Michael Hingson,

25 from attempting to access the UberX taxi service. Unless the Court enjoins Defendants from

26 continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable

27 harm.

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-04086**
**FIRST AMENDED COMPLAINT**      30

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

104.    Plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

## Violation of the California Unruh Civil Rights Act

## (California Civil Code §§ 51 & 52)

105.    Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

106.    The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the state of California. Cal. Civ. Code § 51(b).

107.    The network of Uber vehicles providing transportation services to the general public in California is a business establishment within the jurisdiction of the state of California, and as such is obligated to comply with the provisions of the California Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.*

108.    The Unruh Act provides, *inter alia*, that a violation of the ADA, 42 U.S.C. §§ 12101, *et seq.*, also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

109.    Defendants' discriminatory conduct alleged herein includes, *inter alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

110.    The actions of Defendants were and are in violation of the Unruh Civil Rights Act, California Civil Code §§ 51, *et seq.* Members of Plaintiff NFB of California, including Plaintiff Hingson, are aware of Defendants' unlawful actions, and their knowledge of this discrimination has deterred members of Plaintiff NFB of California, including Plaintiff Hingson, from attempting to access the UberX taxi service on several occasions. Moreover, many members of NFB of California and other blind persons, including Plaintiffs Kelly and Pedersen, have been and continue to be denied access to Defendants' services on multiple occasions when

1  they attempt to use Uber's services. Therefore Plaintiffs are entitled to injunctive relief

2  remedying the discrimination pursuant to California Civil Code § 52. Unless the Court enjoins

3  Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to

4  suffer irreparable harm.

5       111.    Plaintiffs Kelly, Hingson, and Pedersen are also entitled to statutory minimum

6  damages pursuant to California Civil Code § 52 for each and every offense in violation of the

7  Unruh Act. Cal. Civ. Code § 52(b).

8  WHEREFORE, Plaintiffs pray for relief as set forth below.

9                          **THIRD CAUSE OF ACTION**

10          **Violation of the California Disabled Persons Act**

11               **(California Civil Code §§ 54-54.3)**

12      112.    Plaintiffs incorporate by reference the foregoing allegations as though fully set

13  forth herein.

14      113.    California Civil Code §§ 54-54.3 guarantee, *inter alia*, that persons with

15  disabilities are entitled to full and equal access, as other members of the general public receive,

16  to accommodations, advantages, facilities, and privileges of all "common carriers," "motor

17  vehicles," "places of public accommodation" and "other places to which the general public is

18  invited" within the jurisdiction of California. Cal. Civ. Code § 54.1(a)(1).

19      114.    It is a violation of California Civil Code §§ 54-54.3 to prevent service dogs from

20  accompanying individuals with disabilities in any common carriers, motor vehicles, places of

21  public accommodation, or other places to which the general public is invited. Cal. Civ. Code §

22  54.2(a)-(b). Any violation of the ADA is also a violation of California Civil Code § 54.1. Cal.

23  Civ. Code § 54.1(d).

24      115.    UberX vehicles providing transportation services to the general public are

25  common carriers, motor vehicles, places of public accommodation or other places to which the

26  general public is invited under California Civil Code § 54.1(a)(1).

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

116.    Defendants are violating the rights of Plaintiffs to full and equal access to common carriers, motor vehicles, places of public accommodation, or other places to which the general public is invited under California Civil Code §§ 54-54.3 by denying blind riders with service dogs full and equal access to the accommodations, advantages, facilities, and privileges of Uber vehicles providing the UberX taxi service. Defendants are also violating California Civil Code §§ 54-54.3 in that their actions are a violation of the ADA. Members of Plaintiff NFB of California, including Plaintiff Hingson, are aware of Defendants' unlawful actions, and their knowledge of this discrimination has deterred members of Plaintiff NFB of California, including Plaintiff Hingson, from attempting to access the UberX taxi service on several occasions. Moreover, many members of NFB of California and other blind persons, including Plaintiffs Kelly and Pedersen, have been and continue to be denied access to Defendants' services on multiple occasions when they attempt to use Uber's services.

117.    Plaintiffs thus seek declaratory relief based on Defendants' violation of Plaintiffs' rights under California Civil Code §§ 54-54.3.

118.    Plaintiffs Kelly, Hingson, and Pedersen are also entitled to statutory minimum damages for each violation of California Civil Code §§ 54-54.3(a).

119.    Plaintiffs do not seek relief, injunctive or otherwise, under California Civil Code § 55.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief on Behalf of Plaintiffs)

120.    Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

121.    An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendants deny, that by failing to adopt policies and procedures that would prevent drivers of Uber vehicles that provide the UberX taxi service from denying rides to Plaintiffs and other blind individuals with service animals,

1    Defendants fail to comply with applicable laws, including but not limited to Title III of the

2    Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, California Civil Code §§ 51-52,

3    and California Civil Code §§ 54-54.3.

4          122.   A judicial declaration is necessary and appropriate at this time in order that each

5    of the parties may know their respective rights and duties and act accordingly.

6    WHEREFORE, Plaintiffs request relief as set forth below.

7                                 **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiffs pray for judgment as follows:

9          123.   A permanent injunction pursuant to the Americans with Disabilities Act, 42

10   U.S.C. §§ 12181, *et seq.*, and the Unruh Act, California Civil Code §§ 51-52, requiring

11   Defendants to take the steps necessary to ensure that Uber's drivers who provide UberX taxi

12   services do not unlawfully refuse to transport blind individuals with service animals, including

13   Plaintiffs.

14         124.   A declaration that Defendants discriminate against blind persons by failing to

15   provide blind riders, including Plaintiffs, with full and equal access to the services, facilities,

16   privileges, advantages, and accommodations of Uber vehicles providing taxi services in violation

17   of Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.*, California Civil Code §§ 54-54.3, and

18   California's Unruh Act, California Civil Code §§ 51-52.

19         125.   For Plaintiffs Kelly, Hingson, and Pedersen, damages in an amount to be

20   determined by proof, including all applicable statutory damages pursuant to California Civil

21   Code § 52(a) or California Civil Code § 54.3.

22         126.   An order awarding Plaintiffs reasonable attorneys' fees and costs, as authorized

23   by 42 U.S.C. § 12188, California Civil Code § 52, and California Civil Code § 54.3; and

24         127.   For such other and further relief as the Court deems just and proper.

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    DATED:  November 12, 2014          Respectfully submitted,

2

3                                        DISABILITY RIGHTS ADVOCATES

4

5                                        _____
                                         Michael Nunez
6

7

8                                        TRE LEGAL PRACTICE

9

10                                       _____
                                         Timothy Elder
11                                       Attorneys for Plaintiffs

12

DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
(510) 665-8644

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28