1  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
2  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
3  EMILY E. O'CONNOR, Bar No. 279400
   eoconnor@littler.com
4  LITTLER MENDELSON, P.C.
   650 California Street
5  20th Floor
   San Francisco, California 94108.2693
6  Telephone:   415.433.1940
   Facsimile:   415.399.8490
7
   Attorneys for Defendants
8  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, AND RASIER-CA, LLC
9
                   UNITED STATES DISTRICT COURT
10
                 NORTHERN DISTRICT OF CALIFORNIA
11

12
13  NATIONAL FEDERATION OF THE          Case No.  3:14-cv-04086-NC
    BLIND OF CALIFORNIA, MICHAEL
14  KELLY, MICHAEL HINGSON, and         **DEFENDANTS' NOTICE OF MOTION**
    MICHAEL PEDERSEN,                   **AND MOTION TO DISMISS PLAINTIFFS'**
15                                      **FIRST AMENDED COMPLAINT AND/OR**
                Plaintiffs,             **FOR A MORE DEFINITE STATEMENT;**
16                                      **MEMORANDUM OF POINTS AND**
         v.                             **AUTHORITIES IN SUPPORT THEREOF**
17
    UBER TECHNOLOGIES, INC., RASIER,    **[F.R.C.P. 12(b)(1), 12(b)(6), 12(e)]**
18  LLC, and RASIER-CA, LLC,
                                        Date:      February 5, 2015
19              Defendants.             Time:      1:00 p.m.
                                        Location:  Courtroom A, 15th Floor
20                                                 San Francisco Federal Courthouse

21                                      Trial Date:  None set.
                                        Complaint Filed:  September 9, 2014
22                                      FAC Filed: November 12, 2014

23
24
25
26
27
28

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

Case No. 3:14-cv-04086-NC

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ............................................................................................. 2

II.   FACTUAL BACKGROUND ............................................................................ 3

    A.    Uber And Rasier ................................................................................... 3

    B.    The UberX Platform ............................................................................ 4

    C.    UberX, As A "TNC", Complies With Requirements Imposed By The California Public Utilities Commission ............................................ 6

III.  DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED ................ 7

    A.    Plaintiffs NFB And Hingson Lack Standing And Their Claims Should Be Dismissed Pursuant To FRCP 12(b)(1) ............................................ 7

        1.    Dismissal Of The First Cause Of Action, As To Plaintiffs NFB And Hingson, Is Warranted Because They Lack Standing .................... 7

        2.    The Second Cause Of Action, As To Plaintiffs NFB And Hingson, Must Be Dismissed Because They Lack Standing To Sue Under The Unruh Civil Rights Act, Even If They Had Standing Under The ADA ....... 18

        3.    Plaintiff Hingson Has No Standing Under The Disabled Persons Act .......... 19

        4.    The Fourth Cause Of Action For Declaratory Relief Necessarily Fails Because Plaintiffs NFB and Hingson Lack Standing .................................... 20

    B.    Plaintiff Pedersen's Claims Should Be Dismissed Pursuant to FRCP 12(b)(1) For Failure To Sufficiently Establish Standing ......................................... 20

    C.    All Plaintiffs' First, Second, Third And Fourth Causes Of Action Should Be Dismissed To The Extent They Allege Existence Of A Public Accommodation ................................................................................... 22

        1.    The Uber app and website are not places of public accommodation ............. 22

        2.    Defendants do not own, lease or operate a place of public accommodation ................................................................................... 23

IV.  CONCLUSION ............................................................................................... 25

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

i.

Case No. 3:14-cv-04086-NC

# TABLE OF AUTHORITIES

Page(s)

CASES

*Access Now, Inc. v. Southwest Airlines*
   227 F. Supp. 2d 1312, 1321 (S.D. Fl. 2002), aff'd, 385 F.3d 1324, 1329 (11th Cir. 2004) ....23

*Adiutori v. Sky Harbor International Airport,*
   880 F. Supp. 696 (D. Ariz. 1995), aff'd op., 103 F.3d 137 (9th Cir. 1996) ............................24

*Alexander v. Circus Circus Enters., Inc.,*
   972 F.2d 261 (9th Cir. 1992) ............................................................................................7

*Angelucci v. Century Supper Club,*
   41 Cal. 4th 160 (2007) ...................................................................................................18

*Arnold v. Mut. Of Omaha Ins. Co.,*
   202 Cal. App. 4th 580 (2011) ..........................................................................................6

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ..................................................................................................21

*Balistreri v. Pacifica Police Dep't,*
   901 F. 2d 696 (9th Cir. 1988) .........................................................................................22

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................7, 22

*Bowden v. Redwood Institute for Designed Educ., Inc.,*
   1999 U.S. Dist. LEXIS 2881 (N.D. Cal. 1999) .................................................................19

*Celano v. Marriott Int'l, Inc.,*
   2008 U.S. Dist. LEXIS 6172 (N.D. Cal. 2008) .................................................................13

*Chapman v. Pier I Imps. (U.S.), Inc.,*
   631 F.3d 939 (9th Cir. 2011) .....................................................................................14, 15

*Clark v. Burger King Corp.,*
   255 F. Supp. 2d 334 (D.N.J. 2003) ...................................................................................8

*Clark v. McDonald's,*
   213 F.R.D. 198 (D. N.J. 2003) ..............................................................................8, 17, 18

*Cox v. Ocean View Hotel Corp.,*
   533 F.3d 1114 (9th Cir. 2008) ........................................................................................10

*Crow Tribe of Indians v. Campbell Farming Corp.,*
   828 F. Supp 1468 (D. Mont. 1992), *aff'd,* 31 F. 3d 768 (9th Cir. 1994) ................................10

*Cullen v. Netflix, Inc.*,
  880 F. Supp. 2d 1017 (N.D. Cal 2012) .................................................................23

*DeLil v. El Torito Restaurants*,
  1997 U.S. Dist. LEXIS 22788 (N.D. Cal. 1997) ...................................................15

*Donald v. Cafe Royale, Inc.*,
  218 Cal. App. 3d 168 (1990) .................................................................................20

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 (9th Cir. 2008) ...............................................................................15

*Ernst & Young v. Depositors Economic Protection Corp.*,
  45 F. 3d 530 (1st Cir. 1995) ..................................................................................20

*Federal Sav. and Loan Ins. Corp. v. Musacchio*,
  695 F. Supp. 1053 (N.D. Cal. 1988) ......................................................................21

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ...............................................................................16

*Frame v. Merril Lynch, Pierce, Fenner, & Smith, Inc.*,
  20 Cal. App. 3d 668 (1971) ...................................................................................11

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982)..................................................................................................7

*Hous. Rights Ctr., Inc. v. Moskowitz*,
  2004 U.S. Dist. LEXIS 28885 (C.D. Cal 2004)....................................................19

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)..................................................................................................10

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977).....................................................................................8, 9, 11, 12

*In Re: Managed Care Litigation*,
  2003 U.S. Dist. LEXIS 23035 (S.D. Fla. 2003), *aff'd by Klay v. Pacificare Health Sys. Inc.*, 389 F. 3d 1191 (11th Cir. 2004) .............................................................11, 12

*Koire v. Metro Car Wash*,
  40 Cal. 3d 24 (1985) ..............................................................................................18

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983)..................................................................................................14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................21

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE            iii.
DEFINITE STATEMENT

Case No. 3:14-cv-04086-NC

*Martin v. International Olympic Committee*,
740 F. 2d 670 (9th Cir. 1984) ...................................................................................19

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*,
221 Cal. App. 3d 1377 (1990) .............................................................................18, 19

*Molski v. Arby's Huntington Beach*,
359 F. Supp. 2d 938 (C.D. Cal. 2005) ....................................................................16

*Moreno v. G&M Oil Co.*,
88 F. Supp. 2d 1116 (C.D. Cal 2000) ................................................................17, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983) ..................................................................................................9, 10

*Moyer v. Walt Disney World Co.*,
146 F. Supp. 2d 1249 (M.D. Fla. 2000) ..................................................................16

*Neitzke v. Williams*,
490 U.S. 319 (1989) ................................................................................................22

*O'Bryan v. Holy See*
556 F.3d 361, 376 (6th Cir. 2009) .............................................................................7

*Pickern v. Holiday Quality Foods, Inc.*,
293 F.3d 1133 (9th Cir. 2002) .................................................................................15

*Resnick v. Magical Cruise Co.*,
148 F. Supp. 2d 1298 (M.D. Fla. 2001) ..................................................................16

*Reyes v. Atlantic Richfield*,
12 F.3d 1464 (9th Cir. 1993) ...................................................................................19

*Robertson v. Dean Witter Reynolds, Inc.*,
749 F. 2d 530 (9th Cir. 1984) .................................................................................22

*Savage v. Glendale Union High School*,
343 F.3d 1036 (9th Cir. 2003) ..................................................................................7

*SIDA of Hawaii, Inc. v. NLRB*,
512 F. 3d 853 (9th Cir. 1975) ...................................................................................6

*Silvas v. E\*Trade Mortg. Corp.*,
421 F. Supp. 2d 1315 (S.D. Cal. 2006) ..................................................................22

*Small v. General Nutrition Cos.*,
388 F. Supp. 2d 83 (E.D.N.Y. 2005) .......................................................................13

*Southwest Research Institute v. UIAB*,
81 Cal. App. 4th 705 (2000) .....................................................................................6

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE          iv.          Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

*Spann v. Colonial Village, Inc.*,
   899 F. 2d 24 (D.C. Cir. 1990) ..................................................................................8

*Sprewell v. Golden State Warriors*,
   266 F. 3d 979 (9th Cir. 2001) ................................................................................22

*Surrey v. TrueBeginnings, LLC*,
   168 Cal. App. 4th 414 (2008) ................................................................................18

*Urhausen v. Longs Drug Stores California, Inc.*
   155 Cal. App. 4th 254 (2007) ................................................................................20

*Vernon v. Drexel, Burnham & Co., Inc.*,
   52 Cal. App. 3d 706 (1975) ...................................................................................11

*Vondersaar v. Starbucks Corp.*,
   2013 U.S. Dist. LEXIS 122064 (C.D. Cal. 2013) ................................................13

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...........................................................................................7, 13

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) ...............................................................................23

*Young v. Facebook Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................23

**STATUTES**

Federal Arbitration Act , 9 U.S.C. § 2 ..............................................................................9

Declatory Judgment Act, 28 U.S.C.A. § 2201 ................................................................20

Americans with Disabilities Act, 42 U.S.C. § 12101 ............................................... passim

Cal. Civ. Code § 51 ..........................................................................................................18

Cal. Civ. Code § 54 ....................................................................................................19, 20

Cal. Civ. Code § 55 ..........................................................................................................20

**OTHER AUTHORITIES**

California Public Utilities Code ...................................................................................4, 24

Fed. Rule Civ. Proc. 12(b)(1) ..............................................................................1, 3, 7, 20

Fed. Rule Civ. Proc. 12(b)(6) ...............................................................................1, 3, 22

Fed. Rule Civ. Proc. 12(e) .....................................................................................1, 21

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE          v.          Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

Fed. Rule Civ. Proc. 57 ................................................................................................20

U.S. Const. Art. III ...............................................................................................8, 21

Firmwide:130363231.5 073208.1034

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on February 5, 2015, in Courtroom A, 15th Floor of the U.S. District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, at 1:00 p.m., or as soon thereafter as counsel may be heard, Defendants UBER TECHNOLOGIES, INC., RASIER, LLC and RASIER-CA, LLC will move the Court to dismiss this action, pursuant to Federal Rule of Civil Procedure Rules 12(b)(1) and (b)(6) and/or for a more definite statement pursuant to Federal Rule of Civil Procedure Rule 12(e) based on the following grounds:

1.      Plaintiffs National Federation of the Blind of California's ("NFB") and Michael Hingson's ("Hingson") are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack standing to sue.  Neither Plaintiff meets the threshold Constitutional or statutory standing requirement necessary to seek injunctive or declaratory relief sought.

2.      Plaintiff Michael Pedersen's ("Pedersen") First through Fourth Causes of Action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to sufficiently plead standing.  Alternatively, Pedersen should be required to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) on the grounds that the FAC is too vague and ambiguous as to the basis for his standing for Defendants to file a proper responsive pleading.

3.      As to all Plaintiffs, even if Plaintiffs NFB, Hingson and Pedersen could demonstrate the requisite standing to sue, Plaintiffs' First, Second, Third and Fourth Causes of Action are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent it is based on the allegation that Uber's app or website constitute a place of public accommodation or that Defendants own, lease or operate a place of public accommodation under the ADA.

The motion will be based upon this notice of motion and motion and upon Defendants' memorandum of points and authorities, Defendants' request for judicial notice filed herewith, the declaration of Michael Colman filed herewith, the pleadings and papers filed herein, and any other matters considered by the Court.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

Case No. 3:14-cv-04086-NC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant Uber Technologies, Inc. ("Uber") is a technology company that offers a smartphone application ("app") that connects passengers looking for transportation to independent transportation providers looking for passengers.  Specifically, Uber provides the technology that allows passengers and transportation providers to make a "match" based on their location and passengers' vehicle preference.  Raiser, LLC and Rasier-CA, LLC are wholly-owned subsidiaries of Uber that provide lead generation services via Uber's uberX platform to independent transportation providers who operate cost-efficient, every-day vehicles.[1]

As stated in Uber's motion to dismiss Plaintiffs' initial Complaint, Defendants' mission is to connect its users to safe, reliable rides as efficiently as possible.  Defendants value all of its users, but are on the cutting edge of expanding accessibility for individuals with disabilities to a variety of reliable transportation options.  Among other things, this includes, in some cities, exploring partnerships with taxi and limousine companies that offer wheelchair accessible vehicles as a means of increasing the availability of these vehicles to disabled users of the Uber app.  Plaintiffs do not dispute that Uber's technology has greatly increased the mobility and freedom of Uber users with disabilities, particularly the blind; nor could they.  In fact, Plaintiffs' allegations that Defendants have somehow failed to meet their obligations to accommodate blind individuals with service animals have no merit whatsoever.

However, the Court need not reach the merits of Plaintiffs' allegations to conclude that the First Amended Complaint (the "FAC"), just like the initial Complaint, is fatally flawed and subject to dismissal.

The FAC highlights the clear intention by Plaintiff NFB to circumvent the arbitration agreement in place between Uber users and Defendants.  Despite identifying in the FAC numerous NFB members who use the Uber app and have allegedly been denied access to transportation because of their service animals, not one of them is named as an individual Plaintiff.  Instead, the

---

[1] The Rasier entities shall be referred to as "Rasier."  Collectively, Uber and Rasier shall be referred to as "Defendants."

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1   three named Plaintiffs are all individuals who have not accepted Defendants' Terms of Use and the

2   arbitration agreement contained therein. This is because the arbitration agreement plainly requires

3   individual arbitration of this dispute between Defendants and those NFB members who are Uber

4   users, meaning those individuals are not entitled to relief from this Court and NFB cannot sue on

5   their behalf.

6        The existence of this arbitration agreement is fatal to NFB's associational standing as to the

7   rest of its membership as well. NFB cannot seek relief on behalf of those individuals bound by the

8   arbitration agreement, but also cannot pick and choose between those members on whose behalf it

9   seeks relief. Accordingly, the only way the Court can provide the relief sought by NFB

10  appropriately tailored to those individuals entitled to relief is to require *individual participation* of

11  NFB members. NFB therefore does not meet the test for associational standing formulated by the

12  Supreme Court and its claims must be dismissed.

13       Alternatively, NFB must be dismissed for lack of standing because it has no legal right to

14  pursue the sweeping relief it asks the Court to impose upon Defendants, including regulating the

15  conduct of thousands of independent transportation providers using its platform to book passengers.

16       Defendants also move to dismiss Plaintiff Hingson on the grounds that he lacks standing

17  because he has not suffered cognizable legal injury under the ADA, Unruh or the DPA. Similarly,

18  Plaintiff Pedersen's claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1)

19  for failure to sufficiently establish standing.

20       Finally, all Plaintiffs' ADA and derivative state law claims should also be dismissed pursuant

21  to Federal Rule of Civil Procedure 12(b)(6) to the extent Plaintiffs allege Uber's app or website is a

22  place of public accommodation or that Defendants own, lease or operate a place of public

23  accommodation.

24  **II.   FACTUAL BACKGROUND**

25      **A.   Uber And Rasier.**

26       As stated in the Complaint, Uber has developed a smartphone application ("app") that

27  enables its customers to use their smartphones to request pre-arranged transportation services.

28  (FAC, ¶ 27.) Defendants offer the Uber app as a tool to facilitate pre-arranged transportation

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                    3.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

services, and license the use of the app to independent transportation providers.  (Declaration of Michael Colman, ["Colman Decl."], ¶¶ 3-5, Exh. A.)[2]  Defendants do not own, lease or operate any vehicles for transporting users, and do not employ people to operate vehicles.  (Colman Decl., Exh. A; Defendants' Request for Judicial Notice ["RJN"], Exh. A at 24.)[3]

## B.   The UberX Platform.

Among the transportation options available through the app, the uberX platform connects users to independent transportation providers operating cost-efficient, everyday vehicles.[4]  (Colman Decl., ¶ 5.)

Individuals seeking to use the Uber app to request a ride must first agree to Uber's User Terms and Conditions.  (Colman Decl., ¶ 8, Exh. B.)  Once a user agrees to the User Terms and Conditions, he or she can use the app to select the type of service (e.g., uberX) he or she desires. After the service is selected, the user can request a ride from available transportation providers on that platform.  (*Id.*)

The User Terms and Conditions include an arbitration provision that requires disputes to be resolved through final and binding, ***individual*** arbitration.  (*Id.*)  The arbitration provision states, in relevant part, as follows:

> You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation, validity thereof or the use of the Services…will be settled by binding arbitration between you and Uber…You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action or representative proceeding. Further, unless both you and Uber otherwise agree in writing, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding.

(Colman Decl., ¶ 8, Exh. B at § 6.)

Plaintiff Michael Hingson has not created an Uber user account, agreed to the User Terms and Conditions, or taken a ride booked through the uberX platform.  (FAC, ¶ 67.)  Plaintiffs Michael

---

[2] Exhibit A to the Declaration of Michael Colman is the Rasier Software Sublicense & Online Services Agreement.
[3] Exhibit A to Defendants' RJN is the California Public Utilities Commission's "Decision Adopting Rules and Regulations to Protect Public Safety While Allowing New Entrants to the Transportation Industry."
[4] Only transportation arranged through the uberX platform is at issue in this case.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1    Kelly and Michael Pederson have also not created Uber user accounts or agreed to the User Terms

2    and Conditions.  (FAC, ¶ 23, 25.)  However, nearly all the NFB members referenced in paragraphs

3    42 through 63 of the First Amended Complaint are alleged to be Uber users, and are therefore bound

4    by the arbitration agreement set forth in the User Terms and Conditions.

5         Similar to the passengers who use the Uber app, any independent transportation provider who

6    wishes to access Uber's uberX software platform to book passengers must enter into a "Software

7    Sublicense & Online Services Agreement" ("Sublicense Agreement") with the applicable Rasier

8    entity (in California: Defendant Rasier-CA, LLC).  (Colman Decl., ¶ 6, Exh. A.)  There are several

9    thousand transportation providers authorized to use the uberX platform to book passengers who are

10   currently operating in California.  (Colman Decl., ¶ 7.)

11        The very outset of the Sublicense Agreement states that transportation providers

12   independently operate their own transportation businesses.  The Sublicense Agreement is explicit

13   that any relationship between Defendants and third party transportation providers is *solely* in the

14   nature of a contractual relationship between separate business ventures:

15
         You acknowledge and agree that Company's provision to you of the
16       Driver App and the Uber Services creates a direct business relationship
         between Company and you.  Company does not, and shall not be
17       deemed to, direct or control you generally or in our performance under
         this Agreement, specifically, including in connection with your
18       provision of Transportation Services, your acts or omissions, or your
         operation and maintenance of your Vehicle.  You retain the sole right
19       to determine when and for how long you will utilize the Driver App or
         the Uber Services...You acknowledge and agree that you have
20       complete discretion to provide services or otherwise engage in other
         business or employment activities.
21
         ...
22
         **Relationship of Parties**
23
         [T]he relationship between the parties under this Agreement is solely
24       that of independent contractors.  The parties expressly agree that: (a)
         this Agreement is not an employment agreement, nor does it create an
25       employment relationship, between Company and you; and (b) no joint
         venture, partnership, or agency relationship exists between Company
26       and you.

27   (*Id.* at 2.4, 13.1.)

28   / / /

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                5.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

**C.**     **UberX, As A "TNC", Complies With Requirements Imposed By The California Public Utilities Commission.**

In September 2013, the California Public Utilities Commission ("CPUC") promulgated new rules applicable to transportation network companies ("TNCs"). (Defendants' RJN, Exh. A.) The CPUC defines TNC as follows: "an organization…operating in California that provides prearranged transportation services for compensation using an online-enabled application ('app') or platform to connect passengers with drivers using their personal vehicles." (*Id.* at 65.) In promulgating these rules, the CPUC expressly distinguished "taxi services" from the transportation that can be arranged through the uberX platform:

> …1) before a passenger can request a ride, the passenger must download the software application, provide identification information and agree to the TNC service agreement, and 2) for a particular trip, the passenger must input information regarding current location, and finally, 3) a TNC driver cannot be hailed on the street similar to a taxicab where no information is shared until the passenger enters the vehicle.

(*Id.* at p. 66.)

The CPUC explained that it recognizes and regulates three modes of passenger transportation for compensation: (1) taxi services (regulated by cities and/or counties), (2) charter-party carrier services and (3) passenger-stage companies (regulated by the CPUC). (*Id.* at 65.) It found that Uber, with respect to Rasier and the uberX platform only, is a TNC, and required to obtain a Class P charter-party carrier permit. (*Id.* at 72.) As stated by the CPUC, unlike other charter-party carriers, Uber is "not permitted to itself own vehicles used in its operation or own fleets of vehicles." (*Id.* at 24.)

Defendants are obligated to comply with certain safety requirements as it relates to the transportation providers who offer transportation services through the uberX platform. (*Id.* at 26-29.) However, as a matter of law, these controls do not alter the independent business relationship between Defendants and the third party transportation providers who offer transportation using the uberX platform.[5] Beyond these requirements, and subject to the terms of the Sublicense Agreement,

---

[5] *SIDA of Hawaii, Inc. v. NLRB*, 512 F. 3d 853, 862-863 (9th Cir. 1975) ("the fact that a putative employer incorporates into its regulations controls required by a government agency does not establish an employer-employee relationship"); *see also, Southwest Research Institute v. UIAB*, 81 Cal. App. 4th 705, 709 (2000) (compliance with FAA and EPA training requirements not evidence of control); *Arnold v. Mut. Of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 588-589

LITTLER MENDELSON, P.C.
550 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                    6.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

Defendants are contractually prohibited from exercising control over the transportation service provided.

## III.   DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED

### A.   Plaintiffs NFB And Hingson Lack Standing And Their Claims Should Be Dismissed Pursuant To FRCP 12(b)(1).

Plaintiffs have the burden of establishing standing sufficient to defeat this motion to dismiss. *Savage v. Glendale Union High School,* 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  For jurisdictional purposes, a court "may not assume the truth of the allegations in a pleading which are contradicted" by other record evidence.  *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992).  Moreover, as to the uncontroverted allegations in the Complaint, the Court need not accept as true legal conclusions or inferences that are unsupported by the facts set out in the Complaint.  *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009).  The complaint must contain "sufficient jurisdictional facts to state a claim which is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007).

### 1.   Dismissal Of The First Cause Of Action, As To Plaintiffs NFB And Hingson, Is Warranted Because They Lack Standing.

#### a.   Plaintiff NFB lacks standing to sue in its own right.

NFB appears to assert (though not clearly) it has standing to sue in its own right (*i.e.* organizational standing): NFB "sues in furtherance of its extensive efforts and expenditure of resources in advancing its mission to improve independence of the blind."  (FAC, ¶ 22.)  The FAC asserts that Defendants' alleged failure to accommodate discrimination against NFB's members frustrates NFB's mission and diverts its resources.  NFB lacks standing under this theory.

The Supreme Court has held that a plaintiff generally must assert his or her own legal rights and interests and may not rest his or her claim for relief on the legal rights or interests of third parties.  *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975).  When asserting standing on its own behalf, an organization must be able to demonstrate some injury ***to the association itself*** that meets the constitutional standing requirements.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n.19

---

(2011) (training required only with respect to compliance with state law directives regarding insurance sales did not constitute evidence of control).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

1  (1982).

2      NFB's vague, unsupported assertions regarding "frustration of mission" and the "diversion of

3  resources" fall well short of establishing that NFB *itself* suffered an injury-in-fact sufficient to confer

4  organizational standing. *Clark v. McDonald's*, 213 F.R.D. 198, 209 (D. N.J. 2003) (in ruling that a

5  disability rights organization asserting it suffered a "frustration of mission" injury did not have

6  organizational standing, the court emphasized that the alleged injury was the result of defendant's

7  purported discrimination against others, not the organization itself); *Spann v. Colonial Village, Inc.*,

8  899 F. 2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury

9  necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule

10  otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no

11  real limitation.")

12      Indeed, in describing NFB's mission, NFB alleges that it seeks to "take any [ ] action which

13  will improve the overall condition and standard of living of the blind." (FAC, ¶ 22.) Given NFB's

14  stated mission to "take any action" to achieve equality for the blind, the instant litigation seemingly

15  *advances*, rather than frustrates NFB's mission. *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334,

16  344 (D.N.J. 2003) (where ADA advocacy organization alleged it suffered drain of resources due to

17  legal efforts directed against discrimination, the court found that the organization had failed to show

18  an impairment to its mission that would constitute an injury in fact and stated that, "absent evidence

19  to the contrary, it appears that [the organization] is an organization whose primary purpose is ADA

20  litigation"). Therefore, NFB cannot rely on organizational standing as a basis for asserting its First

21  Cause of Action under the ADA.

22              **b.    Plaintiff NFB lacks associational standing.**

23      Even where an association lacks standing to sue in its own right because it has not itself

24  suffered an injury-in-fact, it will nevertheless have "standing to bring suit on behalf of its members

25  when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it

26  seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the

27  relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State*

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT                                  8.                          Case No. 3:14-cv-04086-NC

*Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Associations suing in a representative capacity are bound by the same limitations and obligations as the members that they represent. *Id.* at 342-343.

### (1)   Certain NFB members are contractually obligated to individually arbitrate these claims against Defendants

NFB purports to sue on behalf of its members who have been denied access to or deterred from using the uberX service to book transportation. (FAC, ¶ 22.) Plaintiffs contend that NFB members use the uberX service (*see* FAC ¶ 40), and identify a number of specific NFB members who have clearly created an account to use the app (*see* FAC ¶¶ 42-63). As a pre-condition to creating an account, these NFB members must necessarily have agreed to the User Terms and Conditions, and are therefore bound by the arbitration agreement contained therein. (Colman Decl., ¶ 8, Exh. B.) The arbitration agreement provides as follows:

> You agree that any dispute, claim or controversy arising out of or relating to these Terms or the breach, termination, enforcement, interpretation, validity thereof or the use of the Services[6]...will be settled by **binding arbitration between you and Uber**...You acknowledge and agree that you and Uber are each waiving the right to a trial by jury or to participate as a plaintiff or class in any purported class action **or representative proceeding**. Further, unless both you and Uber otherwise agree in writing, **the arbitrator may not consolidate more than one person's claims**, and may not otherwise preside over any form of any class or representative proceeding.

(Colman Decl., ¶ 8, Exh. B at § 6.)

Under the Federal Arbitration Act (FAA), arbitration agreements "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This provision reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* 460 U.S. 1, 24-25 (1983) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") There are only two gateway issues that need to be decided by a court: (1) whether an applicable

---

[6] The Terms and Conditions broadly define "Services" as follows: "applications, websites, content, products and services...made available in the United States and its territories and possessions by Uber Technologies, Inc. and its subsidiaries and affiliates." The agreement goes on to state that "the Services constitute a technology platform that enables users of Uber's mobile applications or websites provided as part of the Services...to arrange and schedule transportation and/or logistics services with third party providers of such services, including independent third party transportation providers...under agreement with Uber or certain of Uber's subsidiaries." (Colman Decl., ¶ 8, Exh. B.) As noted above, Rasier, LLC and Rasier-CA, LLC are wholly owned subsidiaries of Uber Technologies, Inc.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT                    9.                    Case No. 3:14-cv-04086-NC

1  agreement to arbitrate exists; and (2) whether the disputes at issue are covered by the arbitration

2  agreement. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002). All other issues are

3  for the arbitrator to decide. *Id.*

4      The two gateway issues for the Court to determine are undisputed here. A valid agreement to

5  arbitrate exists as between those members of NFB who have signed up for an Uber account because

6  each such member must first agree to the User Terms and Conditions before using the app to request

7  transportation. The User Terms and Conditions expressly include Uber's subsidiaries. Therefore,

8  there is no question a valid agreement to arbitrate exists as between at least some of NFB's members

9  and Defendants.

10      The dispute at issue is also clearly covered by the arbitration agreement, which covers any

11  dispute arising out of the use of the app. NFB contends that drivers using the uberX platform refuse

12  to transport blind individuals with service animals and that Defendants have failed to implement

13  procedures to remedy such instances. (FAC, ¶ 75.) NFB also asserts that its members have

14  difficulty accessing Uber's website and that the app's customer rating system disparately affects

15  blind passengers. (FAC, ¶¶ 47, 58, 64.)

16      Because an arbitration agreement exists, and the claims at issue are covered by the

17  agreement, it is presumed to be valid and enforceable. *Cox v. Ocean View Hotel Corp.*, 533 F.3d

18  1114, 1119 (9th Cir. 2008). Accordingly, to the extent individual Uber user NFB members wish to

19  advance any of the foregoing claims against Defendants, those claims must be pursued individually

20  in arbitration.[7]

21      Those NFB members bound by the arbitration provision cannot escape their commitment to

22  arbitrate by having a representative sue on their behalf, and NFB cannot represent those individuals

23  in this lawsuit because those individuals have no right to sue in Court. *See Crow Tribe of Indians v.*

24  *Campbell Farming Corp.*, 828 F. Supp 1468 (D. Mont. 1992), *aff'd*, 31 F. 3d 768 (9th Cir. 1994)

25  (Tribe did not have representational standing to assert interests of general membership where

26  individual members' claims were barred by statute of limitations); *see also Moses H. Cone Mem'l*

27  _____

28  [7] This motion is not intended to prejudice Uber's right to compel any party bound by the arbitration agreement to arbitrate these claims consistent with the terms of the arbitration agreement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
-an Francisco, CA 94108.2693
415.433.1940

*Hosp.*, 460 U.S. at 20.[8]  To permit NFB to contravene the agreement between Uber and its users by representing its member Uber users in this case would be contrary to the strong public policy favoring arbitration.

In addition to suing on behalf of its members who are Uber users bound by the Arbitration Agreement, NFB purports to sue on behalf of members like Plaintiff Michael Kelly and Manveen Chahal (*i.e.* individuals who do not have Uber user accounts, and thus are not bound by the Arbitration Agreement, but who have allegedly been denied service when traveling with companions who *do* have Uber accounts.)  (FAC, ¶ 1, 23.)  In short, NFB seeks to sue on behalf of a membership which includes ***both*** individuals who are parties to the arbitration agreement and individuals who are not parties to the arbitration agreement.[9]

Furthermore, NFB cannot opt to proceed on behalf of only a portion of its membership (*i.e.* those not bound by the Arbitration Agreement) without relinquishing its claim to associational standing.  *See In Re: Managed Care Litigation*, 2003 U.S. Dist. LEXIS 23035, *39 (S.D. Fla. 2003), *aff'd by Klay v. Pacificare Health Sys. Inc.*, 389 F. 3d 1191 (11th Cir. 2004) ("Associations may not pick and choose the members that they represent…An association that abandons some of its allegedly injured members no longer purports to be 'representative' of its membership."); *see also, Maryland Optometric Association v. Davis Vision, Inc. et al.* (Defendants' RJN, Ex. B.) Representation of only part of its membership violates the prudential standing requirement set forth in the third prong of the *Hunt* test, which permits an organization like NFB to sue only when it can obtain prospective relief on behalf of ***all*** its allegedly injured members without individual

---

[8] Indeed, what NFB seeks to do here is analogous to cases where a class action representative attempts to represent putative class members who are bound by an arbitration agreement.  For years, California courts have recognized that people with arbitration agreements cannot be members of a class action in a judicial forum.  *See Frame v. Merril Lynch, Pierce, Fenner, & Smith, Inc.*, 20 Cal. App. 3d 668 (1971) (court ruled that putative class members who were party to an arbitration agreement were bound to arbitrate because it would be "inappropriate to allow [putative class members] to evade the terms of the agreement simply by bringing their action together as a 'class' rather than as individuals"); *Vernon v. Drexel, Burnham & Co., Inc.*, 52 Cal. App. 3d 706, 716 (1975) (court compelled the arbitration of the claims of a named class representative stating that "a class action cannot be used to subvert an otherwise enforceable agreement to arbitrate contained in a valid contract merely because other individuals, who might qualify as members of a class, were subject to the same provision.").  The same result is warranted here.  NFB sits in the "shoes" of its members and cannot seek relief on behalf of parties to an arbitration agreement.

[9] The FAC lists at least eight individual NFB members who were allegedly refused service when attempting to book a ride using the uberX platform.  All but two of those individuals have signed up for Uber accounts and are thus bound by the arbitration agreement.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

1    participation.

2        *In Re: Managed Care Litigation* is instructive.  2003 U.S. Dist. LEXIS 23035 at *38.  There,

3    medical associations sought injunctive relief on behalf of their respective memberships.  *Id.*  Because

4    some association members were bound by arbitration clauses with respect to the claims asserted and

5    some were not, the associations attempted to bring suit only on behalf of members who were not

6    bound.  *Id.*  The court rejected the associations' approach and found that associational standing was

7    lacking because under *Hunt*, individual participation would be required.  *Id.* at *40-41.  The court

8    stated as follows: "participation of individual members is unavoidable.  The only way for the Court

9    to determine which members have claims not subject to arbitration and what prospective relief might

10   be appropriate for those members is for each member to participate and defend against a motion to

11   compel arbitration."  *Id.*

12       Individual participation would likewise be required here to determine whether the member is

13   entitled to relief through NFB's representation or only on an individual basis in arbitration.  The only

14   way for NFB to proceed is to divide its membership, ***which it cannot do*** without sacrificing the

15   associational standing requirements under the *Hunt* test.  NFB must therefore be dismissed based on

16   a lack of standing.

17                    **(2)    NFB lacks the broad associational standing necessary to
                              secure the relief it seeks**
18
19       NFB's claim to associational standing fails for additional reasons as well.  In the FAC

20   Plaintiffs list the names of ten other individuals who are *not* identified as NFB members but who

     were allegedly refused service by drivers using the uberX platform.[10]  Six of those individuals were
21
     allegedly refused service by transportation providers who were booked using uberX in non-
22
     California cities.  (FAC, ¶¶ 56-61.)  Plaintiffs cannot base NFB's claim for associational standing on
23
     the claims of individuals who are not members of the organization or on alleged instances of
24
     discrimination that occurred outside of California.  Accordingly, allegations regarding non-NFB
25
     members and non-California individuals should be dismissed and disregarded for purposes of
26

27   ---

     [10] These individuals are as follows: Michael Pedersen, Robert Schulenburg, Richard Rueda, Thomas Foley, Sarah
28   Outwater, Mark Cadigan, Kristin Fleschner, Melissa Riccobono, Mariea Harris, Dimitrios Kouniaris, Leena Dawes.
     (FAC, ¶¶ 8, 52-63.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                    12.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

1   assessing NFB's standing.

2           The remaining allegations, specific to actual NFB members in California, are also
3   insufficient to confer the broad relief sought by NFB.  Even assuming the individual NFB members
4   satisfy the standing requirements on behalf of specific members as to specific transportation
5   providers by asserting "actual notice" of discrimination by those transportation providers, it does not
6   follow that they (or by extension NFB) have standing to assert a generalized grievance as to each
7   and every transportation provider offering his or her services on the uberX platform statewide.
8   *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (when the asserted harm is a 'generalized grievance'
9   shared in substantially equal measure by all or a large class of citizens, that harm alone normally
10  does not warrant exercise of jurisdiction).

11          Yet, the relief sought by NFB is ***virtually unlimited***, and requested as to each of the several
12  thousand transportation providers operating in California.  This is fatal to NFB's claim.

13          In *Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83 (E.D.N.Y. 2005), the court held that a
14  disability rights organization lacked associational standing.  There, plaintiff Disabled in Action
15  ("DIA") brought suit against GNC alleging that various features of many of GNC's approximately
16  55 stores in New York City were not sufficiently accessible to the disabled.  *Id.* at 85.  Defendant
17  moved to dismiss the complaint and argued that DIA lacked associational standing.  *Id.*  The court
18  agreed, and dismissed the complaint.  *Id.* at 97.  The court explained as follows, "because
19  associational standing exists only insofar as organization members have standing, ***associational***
20  ***standing may not be broader or more extensive than the standing of the organization's members***.
21  Thus, the association would only have standing with respect to the specific stores at which the [DIA]
22  member identified in the amended complaint has standing." *Id.* at 98 (emphasis added).[11]

23  _____

24  [11] Here, Plaintiffs do not assert a common corporate policy, applicable across California, that violates the ADA.  To the
    contrary, NFB *admits* that blind individuals regularly successfully book rides with independent transportation providers
25  who use the uberX platform, but allege a lack of uniform compliance with the ADA by those transportation providers.
    Accordingly, the case at hand is unlike cases where courts have found standing on the basis of a common corporate
26  policy. *See, e.g., Vondersaar v. Starbucks Corp.*, 2013 U.S. Dist. LEXIS 122064 (C.D. Cal. 2013) (Court found plaintiff
    class representative who sought to bring class claims pertaining to all California Starbucks locations based on Starbucks'
27  standard, and allegedly discriminatory, counter design, had standing to sue under the ADA); *Celano v. Marriott Int'l,
    Inc.*, 2008 U.S. Dist. LEXIS 6172 *16-19 (N.D. Cal. 2008) (mobility disabled plaintiffs had standing to assert ADA
28  claim as to all California Marriott golf courses where they alleged that identical policies regarding accessible golf carts
    existed at all golf courses owned and operated by Marriott).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE          13.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

Here, NFB appears to seek injunctive relief with respect to the entire uberX platform and every single transportation provider offering services on that platform in California.[12]  Accordingly, the Complaint improperly seeks to confer associational standing on NFB that is far more extensive than the standing of its members.  Because NFB cannot establish associational standing to recover the relief it seeks, its First Cause of Action should be dismissed.

**c.    Plaintiff Hingson has not suffered an injury-in-fact and does not face an immediate threat of repeated injury.**

To establish standing to bring this Complaint, Hingson must demonstrate (1) that he has suffered an injury-in-fact; (2) that the injury is traceable to Uber's actions; and (3) that the injury can be redressed by a favorable decision.  *Chapman v. Pier I Imps. (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  In addition, "to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [plaintiff] must demonstrate a 'real and immediate threat of repeated injury in the future.'"  *Id.*  Similarly, as the Supreme Court held in *Los Angeles v. Lyons*, 461 U.S. 95, 108-109 (1983), a plaintiff cannot establish standing to sue for injunctive relief merely by alleging that there is a policy and practice of discriminating generally.  Instead, a plaintiff must show he is ***likely*** to suffer injury in the future related to his disability.  Hingson does not and cannot meet this standard.

Hingson admits that he has not created an Uber user account, which means that he has yet to agree to the User Term and Conditions, a condition precedent to even being authorized to request a ride via the uberX platform.

Hingson has never himself been denied transportation services or received a poor rating from a transportation provider booked using the Uber app, and he does not (and cannot) allege that he is somehow barred from accessing the Uber app itself.  Furthermore, Hingson has not alleged that Uber maintains a blanket rule banning service animals nor has he alleged that *all* drivers on the uberX platform refuse to transport blind individuals or mishandle service animals.  Hingson admittedly

---

[12] The FAC states that NFB of California is a "duly organized nonprofit association of blind Californians" and a "California State affiliate" of a national organization.  (FAC, ¶ 22.)  NFB states that it sues on behalf of its members, who presumably reside in California.  (FAC ¶¶ 1, 22.)  Accordingly, Defendants read the FAC as seeking relief with respect to the uberX platform in California only.  However, to the extent NFB seeks an injunction as to all transportation providers offering their services on the uberX platform nationwide, the relief sought is plainly inappropriate.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

1   asserts standing based on the "deterrent effect" doctrine.

2        Under the deterrent effect doctrine, "a disabled individual suffers a cognizable injury if he is

3   deterred from visiting a noncompliant public accommodation *because he has encountered barriers*

4   *related to his disability there*." *Chapman*, 631 F.3d at 949 (emphasis added); *see, e.g., Pickern v.*

5   *Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1138 (9th Cir. 2002) (applying deterrent effect doctrine

6   and finding plaintiff had suffered an "actual injury" for standing purposes where plaintiff had

7   encountered accessibility barriers on a past visit to a market which deterred him from returning to

8   the market even though he preferred to shop there); *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1040

9   (9th Cir. 2008) (court found that plaintiff had standing where he had visited a 7-Eleven store on ten

10  to twenty prior occasions but was currently deterred from visiting the store because of the

11  accessibility barriers he had personally encountered in past visits).

12       Hingson claims he has been, and continues to be, deterred from creating a Uber user account

13  and requesting rides through the uberX platform based on the fact that he "knows of" various

14  instances where uberX drivers refused to transport blind individuals with service animals.  (FAC, ¶

15  67.)  The initial complaint cited only to Hingson's general awareness of instances where drivers

16  refused to transport blind passengers.  In response to Uber's motion to dismiss, Plaintiffs amended

17  the complaint to assert that Hingson obtained his information regarding Uber's allegedly

18  discriminatory practices via his "regular contact" with other NFB members.  This slight amendment

19  does not confer standing on Hingson as it does not alter the fact that he has not alleged a single

20  encounter or first-hand knowledge of any barrier to receiving transportation, along with his service

21  animal, arranged through the Uber app.

22       While a disabled person is not required to engage in a futile gesture if there is "actual notice"

23  that the defendant will discriminate, here Hingson has only alleged *general, second-hand*

24  *knowledge* of *various instances* where uberX drivers allegedly refused to transport blind individuals

25  with service animals.[13]  *DeLil v. El Torito Restaurants*, 1997 U.S. Dist. LEXIS 22788, *12-13 (N.D.

26

27  [13] For example, Paragraph 67 of the FAC states "Through his regular contact with members of NFB of California and other members of the blind community, Mr. Hingson has known of specific refusals by UberX drivers to transport

28  individuals with guide dogs…Mr. Hingson regularly attends events where fellow blind attendees with service animals are having trouble using the uberX service."

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE          15.          Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

1  Cal. 1997) (while a plaintiff need not repeatedly suffer discrimination in order to assert her rights,

2  "ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real

3  and immediate threat of future harm."); *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1303

4  (M.D. Fla. 2001) (court found plaintiffs did not have standing because "even if Plaintiffs had alleged

5  a concrete intention to cruise on one of [cruise line's] vessels, they would still lack the requisite

6  reasonable grounds for their alleged belief that they would suffer discrimination. In short, there is no

7  record evidence that Plaintiffs had knowledge at the inception of this suit of any alleged violations

8  ***from personal observation or expert findings***."); *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d

9  1249, 1254 (M.D. Fla. 2000) (court found that plaintiff lacked standing to assert ADA claims where

10  plaintiff did not visit the defendant amusement parks and provided "no evidence save inadmissible

11  hearsay to show 'actual notice' of the alleged ADA violations at [the amusement parks]."). This is

12  insufficient as a matter of law to confer standing to bring these claims.

13  Even if second-hand knowledge was legally sufficient to cause deterrence, Hingson fails to

14  identify any specific passengers who were refused service. Likewise, Hingson fails to identify

15  individual drivers who allegedly refused rides to blind individuals with service animals or

16  mishandled service animals. His general awareness that certain transportation providers on the

17  uberX platform (though not *all*) allegedly discriminated against blind individuals with service

18  animals cannot constitute "actual notice" of discrimination on the part of every transportation

19  provider on the uberX platform.

20  Hingson's alleged injury is the quintessential "conjectural or hypothetical" injury: *if* he set up

21  an Uber account, agreed to the User Terms and Conditions, and requested a ride on the uberX

22  platform, he ***might*** be denied access or ***might*** receive a poor rating. This is insufficient to establish

23  standing to pursue individual claims under the ADA or his derivative claims under state law. *Molski*

24  *v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 946 (C.D. Cal. 2005) ("***past exposure*** to illegal

25  conduct does not in itself show a present case or controversy regarding injunctive relief…if

26  unaccompanied by any continuing, present adverse effects") (emphasis added); *cf. Fortyune v. Am.*

27  *Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004) (where wheelchair bound plaintiff

28  attended up to four movies per week and theater's discriminatory seating policy was ongoing, the

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE          16.          Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

1    court concluded plaintiff had established a "real and immediate threat" that the injury would be

2    repeated sufficient to permit him to pursue injunctive relief).

3         The *McDonald's* case, cited *supra*, is instructive here.  There, the complaint, brought by

4    advocacy organization Access Today and individual plaintiff Clark, alleged that Clark had visited

5    numerous McDonald's restaurants in New Jersey and encountered various barriers.  *McDonald's*,

6    213 F.R.D. at 203.  The plaintiffs also alleged that other members of the advocacy organization

7    Access Today had visited McDonald's restaurants in New Jersey and Pennsylvania and encountered

8    various barriers.  *Id.*  Similar to the relief sought here, the plaintiffs sought injunctive relief against

9    all the McDonald's-brand restaurants throughout the United States.  *Id.*  Defendants moved to

10   dismiss the complaint primarily on the grounds that the plaintiffs lacked standing.  *Id.* at 204.

11   Individual plaintiff Clark did not allege actual notice of any ADA violation at any of the

12   McDonald's restaurants **he had not visited**.  *Id.* at 230 (emphasis added).  Instead, like Hingson,

13   Clark alleged only that the discriminatory features of the restaurants were "generally known."  *Id.*

14        With respect to that allegation, the court stated "it would be unreasonable for the Court to

15   infer 'actual notice' of an ADA violation at a particular restaurant that Clark has not visited from

16   whatever general knowledge he may possess about discriminatory features said to be commonplace

17   at McDonald's restaurants."  *Id.*  Based on the lack of standing, the Court dismissed the claims

18   brought by plaintiff Clark as to any restaurant Clark had not visited.  *Id.* at 234.  Here, Hingson has

19   not attempted to ride in *a single* vehicle available on the uberX platform.

20        In *Moreno v. G&M Oil Co.*, 88 F. Supp. 2d 1116 (C.D. Cal 2000), the court reached a similar

21   conclusion.  There, a plaintiff who sued G&M Oil Co. for an ADA architectural barrier violation at

22   one gas station, moved to amend his complaint to add claims about similar barrier violations at 82

23   other gas stations owned by defendant.  *Id.* at 1116.  The court held as follows: "there is no showing

24   this Plaintiff was subjected to or about to be subjected to discrimination at the 82 additional gas

25   stations."  *Id.* at 1117.  Accordingly, the Court denied the motion for leave to amend stating that the

26   plaintiff lacked standing to assert a claim based on a generalized grievance of architectural barriers

27   at gas stations owned by G&M Oil where plaintiff was not personally discriminated against.  *Id.* at

28   1118.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

17.

Case No. 3:14-cv-04086-NC

*McDonald's* and *Moreno* mandate the same result here.  Because Hingson failed to establish both an injury-in-fact and an immediate threat of repeated injury, he lacks standing to bring any claim for injunctive relief under the ADA.  Therefore, his claims must be dismissed.

> **2.    The Second Cause Of Action, As To Plaintiffs NFB And Hingson, Must Be Dismissed Because They Lack Standing To Sue Under The Unruh Civil Rights Act, Even If They Had Standing Under The ADA.**

> **a.    Plaintiff Hingson lacks standing because he has not himself been the victim of discrimination.**

Under the Unruh Civil Rights Act ("Unruh"), disabled individuals are entitled to full and equal access to the accommodations, advantages, facilities, privileges or services of covered entities. Cal. Civ. Code § 51, *et seq.*  Unruh authorizes an "aggrieved person" to sue for injunctive relief or damages.  Hingson does not qualify as an "aggrieved person" because he has never ***personally*** been denied service, received a poor rating, or otherwise been discriminated against in his use of the uberX service.  In fact, he ***cannot even use*** the uberX service because he has not created a Uber user account or agreed to the User Terms and Conditions.

The cases interpreting Unruh "have consistently held that an individual plaintiff has standing to bring claims thereunder only if he or she ***has been the victim of the defendant's discriminatory act.***"  *Surrey v. TrueBeginnings, LLC*, 168 Cal.  App.  4th 414, (2008) (court held that individual who sued a defendant online matchmaking service after he "became aware" of discriminatory business practices even though he never subscribed to or utilized its online services did not have standing under Unruh) (emphasis added); *see also Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007), ("a plaintiff cannot sue for discrimination in the abstract, but must ***actually suffer*** the discriminatory conduct."); *Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal. App. 3d 1377, 1383 (1990) (determining that standing under the Unruh extends only to persons "actually denied full and equal treatment by a business establishment.").

Because Hingson did not attempt to or actually create an account in order to request a ride using uberX, he did not suffer discrimination in any sense other than "in the abstract" and his Unruh claim fails. *See also Koire v. Metro Car Wash*, 40 Cal. 3d 24, 34 (1985) (under Unruh, injury occurs when the discriminatory policy is applied to the plaintiff.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

18.

Case No. 3:14-cv-04086-NC

**b.      Plaintiff NFB lacks associational and organizational standing.**

Like Hingson, NFB lacks standing to seek an injunction under Unruh.  As described above, NFB lacks associational standing to pursue the claims it asserts in this lawsuit.  As an additional ground for denial, NFB is not itself an "aggrieved party" under Unruh and accordingly, it does not have standing to sue in its own right.  As noted above, a cause of action under Unruh is individual in nature.  *Martin v. International Olympic Committee*, 740 F. 2d 670, 677 (9th Cir. 1984) ("the rights protected by the act are enjoyed by all persons, *as individuals*.").  Unruh confers standing "upon the victims of the discriminatory practices…the California courts have not seen fit to endorse a more expansive interpretation of these standing requirements." *Midpeninsula Citizens for Fair Housing*, 221 Cal. App. 3d at 1386 (nonprofit organization lacked standing to sue apartment complex owners for allegedly discriminatory rental practices because the organization's civil rights had not personally been violated).

As described above, NFB lacks standing to sue in its own right.  It therefore cannot seek an injunction to compel enforcement of Unruh based on the injuries allegedly suffered by its members and its Second Cause of Action must be dismissed.  *Reyes v. Atlantic Richfield*, 12 F.3d 1464, 1471 (9th Cir. 1993) (court denied the existence of representative standing under Unruh, and ruled that a franchisee lacked standing to bring a racial discrimination suit on behalf of accountants and cashiers working at the franchise); *Bowden v. Redwood Institute for Designed Educ., Inc.*, 1999 U.S. Dist. LEXIS 2881 *14-16 (N.D. Cal. 1999) ("plaintiff, not claiming membership in the asserted protected class, namely the disabled, may not…sue as a representative of the students under [] Unruh"); *Hous. Rights Ctr., Inc. v. Moskowitz*, 2004 U.S. Dist. LEXIS 28885 *9-10 (C.D. Cal 2004) (Non-profit corporation that sued defendants to redress alleged housing discrimination did not have standing to sue under Unruh, as standing is limited to "persons aggrieved" and public agency plaintiffs).

**3.      Plaintiff Hingson Has No Standing Under The Disabled Persons Act.**

Hingson's Third Cause of Action under the DPA for monetary damages must be dismissed. (FAC, ¶ 118.)

The DPA (Cal. Civ. Code sections 54-54.3) creates a private cause of action for damages. California courts have held that Section 54.3 incorporates a heightened standing requirement.

*Urhausen v. Longs Drug Stores California, Inc.* 155 Cal. App. 4th 254, 262 (2007). To maintain an action for damages pursuant to section 54.3, an individual must establish that he was denied equal access **on a particular occasion**.[14] *Donald v. Cafe Royale, Inc.*, 218 Cal. App. 3d 168, 183 (1990) (to recover monetary damages under Civil Code Section 54.3, plaintiff must show "he or she **was denied equal access on a particular occasion**") (emphasis added); *Urhausen*, 155 Cal. App. 4th at 262 (to maintain an action for damages under the DPA, plaintiff must show that "he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being…served and to purchase food…in the manner offered…[and] actually encountered access to seating inside…the restaurant that was not full and equal").

Here, Hingson **admits** that he never created an Uber user account, that he never requested a ride through the uberX platform, and that he has never been refused service by an uberX driver. (FAC, ¶ 24.) As such, Hingson failed to plead, and cannot plead, facts indicating that he suffered an actual denial of equal access on a particular occasion. Under well-settled California law, his claim for damages under the DPA must be dismissed for lack of standing.

    **4.**     **The Fourth Cause Of Action For Declaratory Relief Necessarily Fails Because Plaintiffs NFB and Hingson Lack Standing.**

Plaintiffs seek a declaration that Uber discriminates against blind persons in violation of the ADA, Unruh and the DPA. (FAC, ¶ 111.) Federal Rule of Civil Procedure 57 permits parties to obtain a declaratory judgment to determine their rights and obligations in cases involving actual controversies. However, Rule 57 (and the related Declaratory Judgment Act)[15] does not expand the District Court's jurisdiction. Therefore, because Plaintiffs NFB and Hingson lack standing to pursue their First, Second and Third Causes of Action, their Fourth Cause of Action for declaratory relief also fails.

    **B.**     **Plaintiff Pedersen's Claims Should Be Dismissed Pursuant to FRCP 12(b)(1) For Failure To Sufficiently Establish Standing.**

Pursuant to F.R.C.P. 12(b)(1), Defendants move to dismiss Plaintiff Michael Pedersen for

---

[14] The FAC explicitly states that Plaintiffs do not seek injunctive relief under section 55. (FAC, ¶ 119.)

[15] Courts have held that the federal Declaratory Judgment Act, 28 U.S.C.A. §2201 et seq., is "mirrored by" and "functionally equivalent" to Rule 57. *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F. 3d 530, 534, n.8 (1st Cir. 1995).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
-an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE     20.      Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

1    lack of subject matter jurisdiction. Pedersen bears the burden of satisfying the case or controversy

2    requirement of Article III by demonstrating his standing to sue at each stage of the litigation. *See*

3    U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Pedersen has not

4    done so here.

5        Pedersen claims that he has been and will continue to be denied access to uberX on the basis

6    of his using a service animal. (FAC, ¶ 1, 8, 25.) However, Pedersen acknowledges that he never

7    signed up for his own Uber user account. Rather, Pedersen claims that his wife has an account and

8    that she has booked rides for him via the uberX platform on "multiple" occasions. (FAC, ¶ 25, 71.)

9    The FAC does not name Pedersen's wife or any of the transportation providers who allegedly

10    refused him service. The FAC includes only vague allegations regarding unspecified occasions

11    where Pedersen allegedly attempted to utilize the Uber account of another unnamed individual.

12    Defendants are unable to identify Pedersen's wife or otherwise determine or verify whether the FAC

13    references a valid Uber account. In short, Pedersen's standing to sue is tenuously based on injuries

14    allegedly suffered as a result of his use of an unidentifiable person's unidentifiable account.

15        Accordingly, Pedersen's claims are far too vague and unspecific to enable Defendants to

16    determine whether standing to sue exists. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

17    (where Plaintiffs include no more than "'naked assertion[s]' devoid of 'further factual

18    enhancement,'" they fail to articulate why they are plausibly entitled to relief). Plaintiff Pedersen is

19    required to allege sufficient facts to inform Defendants of the nature of the claims and the parties

20    against whom they are being made. Defendants are unable to prepare a meaningful response to

21    Pedersen's allegations because it is not clear he has standing to assert the claims in the first place.

22    Accordingly, the FAC should be dismissed as to Pedersen. Alternatively, Defendants respectfully

23    move for an order requiring Pedersen to provide a more definite statement pursuant to F.R.C.P 12(e)

24    on the grounds that the FAC is too vague and ambiguous for Defendants to file a proper responsive

25    pleading. *See Federal Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal.

26    1988) ("The proper test in evaluating a motion under Rule 12(e) is whether the complaint provides

27    the defendant with a sufficient basis to frame his responsive pleadings.")

28    / / /

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                    21.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

**C.      All Plaintiffs' First, Second, Third And Fourth Causes Of Action Should Be Dismissed To The Extent They Allege Existence Of A Public Accommodation.**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570; *see* Fed. R. Civ. P. 12(b)(6).

Dismissal can be based on the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F. 2d 696, 699 (9th Cir. 1988); *see also Robertson v. Dean Witter Reynolds, Inc.*, 749 F. 2d 530, 533-534 (9th Cir. 1984). While the Court must assume the Complaint's factual allegations are true, "legal conclusions need not be taken as true merely because they are cast in the form of factual allegations." *Silvas v. E*Trade Mortg. Corp.*, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001). Rule 12(b)(6) also "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).

Even if the Court determines that one or more of the Plaintiffs have standing, it should nevertheless dismiss Plaintiffs' Complaint to the extent it is based on the contentions that Uber's app or website constitute a place of public accommodation or that Defendants' own, lease or operate a place of public accommodation.

Title III of the ADA provides generally that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A place of public accommodation means a facility, operated by a private entity, whose operations affect commerce and fall within one of twelve enumerated categories. *See* Section 42 USC § 12181(7)(A)-(L).

**1.      The Uber app and website are not places of public accommodation.**

As Plaintiffs admit, Uber "uses smart phone software applications to arrange rides between

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT                              22.                        Case No. 3:14-cv-04086-NC

passengers and its fleet of drivers[.]"  (FAC, ¶ 27.)  Websites, smartphone applications, virtual spaces or any variation thereof are not listed among Title III's twelve "places of public accommodation."  *See* 42 USC § 12181(7)(A)-(L).  These twelve categories are exclusive.  If an entity does not fit into one of the categories, the entity is not a place of public accommodation.

Under Ninth Circuit law, a "place of public accommodation" is a physical place.  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of public accommodation are "actual, physical places."); *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017 (N.D. Cal 2012) (streaming video library was a website, not an actual physical place, and under judicial precedent, it was not a place of public accommodation under the ADA); *Young v. Facebook Inc.*, 790 F. Supp. 2d 1110 (N.D. Cal. 2011) (finding that Facebook was not place of public accommodation in Title III claim by mentally disabled plaintiff alleging failure to provide reasonable customer service upon deactivation of her account).  Courts have largely rejected attempts to wedge virtual environments into the ADA's definition of public accommodations or expand the ADA's applicability to non-physical structures even when the entity has an actual physical location.  *See Access Now, Inc. v. Southwest Airlines*, Co., 227 F. Supp.  2d 1312, 1321 (S.D. Fl. 2002) (noting cyberspace is a unique medium, with no particular geographical location, and therefore www.southwest.com was not place of public accommodation like ticket counter or travel agency), aff'd, 385 F.3d 1324, 1329 (11th Cir. 2004).  Uber's smartphone application, which is licensed by Rasier to the independent transportation providers who use the uberX platform to book passengers, and website exist solely in a virtual environment.  Accordingly, the app, the lone "service" Uber provides, is not a place of public accommodation under Title III as a matter of law.  Likewise, Uber's website, which simply provides information regarding the app and an avenue for individuals to submit feedback regarding the app, is not a public accommodation.

### 2.  Defendants do not own, lease or operate a place of public accommodation.

Plaintiffs also allege that the ***vehicles*** offering transportation services through the uberX platform are places of public accommodation.  (FAC, ¶ 92.)  However, Defendants do not own, lease or operate these vehicles.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

Throughout the FAC, Plaintiffs state that uberX is a "taxi service" and that Uber owns, operates or leases a fleet of vehicles. Neither of these allegations is true, and, in fact, both are directly and expressly contradicted by the rules promulgated by the California Public Utilities Commission ("CPUC") governing "Transportation Network Companies" (TNCs), rules that Plaintiffs themselves rely upon in the FAC. (FAC, ¶ 39.)

As stated in the FAC, in September 2013, the CPUC issued a ruling designating uberX as a TNC. (RJN Exh. A at 25.) In finding that TNCs are charter-party carriers within the meaning of the California Public Utilities Code, the CPUC expressly distinguished "taxi services," which are regulated by cities and/or counties, and "charter-party carrier services" subject to regulation by the CPUC. (*Id.* at 11.) The CPUC also made clear that "[u]nlike taxi cabs, which may pick up passengers via street hails, PU Code § 5360.5 requires that charter party carriers operate on a prearranged basis. We find that TNCs operate on a prearranged basis." (*Id.* at 20.)

The CPUC's Rules go on to state that a TNC like uberX is "*not permitted to itself own vehicles used in its operation or own fleets of vehicles.*" *Id.* at p. 24 (emphasis added). Plaintiffs contend that the vehicles themselves are places of public accommodation yet the CPUC has effectively ruled that Uber does not own or operate those "places of public accommodation."

*Adiutori v. Sky Harbor International Airport*, 880 F. Supp. 696 (D. Ariz. 1995), aff'd without op., 103 F.3d 137 (9th Cir. 1996) is instructive. There, the plaintiff asserted that a skycap company providing services at an airport was bound by the requirements of the ADA by virtue of the fact that it was a private entity providing a service in a "terminal, depot, or other station used for specified public transportation," which are public accommodations under the ADA. *Id.* at 704. In ruling that the skycap company did not operate a place of public accommodation and, hence, could not be sued under Title III of the ADA, the district court pointed out that the ADA "does not state that it applies to entities which merely provide a service in a place of public accommodation, e.g. a terminal, etc.-- it only applies to entities which own, lease or operate a place of public accommodation." *Id.* There was no evidence that the skycap company owned, leased, or operated the terminal at the airport; it possessed only a permit to conduct business in the terminal. *Id.* Accordingly, the court ruled there was no basis to hold the company liable under Title III of the ADA. *Id.*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE
DEFINITE STATEMENT

24.

Case No. 3:14-cv-04086-NC

1    Similarly, Defendants' role is merely to offer to passengers and transportation providers a

2    service (*i.e.* use of the app to connect with potential passengers) that is used to access the place of

3    public accommodation: the transportation providers' vehicles.  Because the Uber app itself (or the

4    website for that matter) is not a place of public accommodation, and given that the CPUC has ruled

5    that Defendants legally cannot own a fleet of vehicles (*i.e.* the places of public accommodation per

6    Plaintiffs' FAC), Plaintiffs have failed to allege sufficient facts to show that Defendants own, lease,

7    or operate ***a place*** of public accommodation.

8    To the extent Plaintiffs' ADA claim is premised on that contention, it must be dismissed.  To

9    the extent Plaintiffs' remaining Causes of Action are based on the allegation that Defendants

10   services constitute a place of public accommodation or that Defendants own, lease or operate a

11   public accommodation as defined by the ADA, Plaintiffs' claims fail and should be dismissed for the

12   same reasons described above.

13   **IV.   CONCLUSION**

14   As to Plaintiffs NFB and Hingson, Defendants respectfully request that the FAC be

15   dismissed in its entirety due to the failure to establish standing to sue under the ADA, Unruh or the

16   DPA.  As to Plaintiff Pedersen, Defendants respectfully request that the FAC be dismissed in its

17   entirety for failure to establish standing to sue under the ADA, Unruh or the DPA.   Finally,

18   Defendants request that as to all Plaintiffs, the FAC be dismissed to the extent based on the

19   allegation that Defendants' services constitute a public accommodation or that Defendants own,

20   operate or lease a place of public accommodation.

21   Dated: December 3, 2014

22

23                                          */s/Andrew M. Spurchise*
                                            ANDREW M. SPURCHISE
24                                          LITTLER MENDELSON, P.C.
                                            Attorneys for Defendants
25                                          UBER TECHNOLOGIES, INC., RASIER,
                                            LLC, RASIER-CA, LLC
26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
an Francisco, CA 94108.2693
415.433.1940

DEFS' NOTICE OF MTN AND MTN TO
DISMISS FAC AND/OR FOR MORE                    25.                    Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT