1   LAURENCE PARADIS (CA BAR NO. 122336)
    MICHAEL NUNEZ (CA BAR NO. 280535)
2   Disability Rights Advocates
    2001 Center Street, Fourth Floor
3   Berkeley, California  94704-1204
    Telephone:    (510) 665-8644
4   Facsimile:    (510) 665-8511
    TTY:          (510) 665-8716
5   Email:        mnunez@dralegal.org
    Email:        lparadis@dralegal.org
6
    TIMOTHY ELDER (CA BAR NO. 277152)
7   TRE Legal Practice
    4226 Castanos Street
8   Fremont, CA 94536
    Telephone:    (410) 415-3493
9   Facsimile:    (888) 718-0617
    Email:        telder@trelegal.com
10
    Attorneys for Plaintiffs
11
                    UNITED STATES DISTRICT COURT
12
                    NORTHERN DISTRICT OF CALIFORNIA
13

14

15  NATIONAL FEDERATION OF THE BLIND          Case No. 3:14-cv-04086-NC
    OF CALIFORNIA, MICHAEL KELLY,
16  MICHAEL HINGSON, and MICHAEL             **PLAINTIFFS' MEMORANDUM OF**
    PEDERSEN,                                 **POINTS AND AUTHORITIES IN**
                                              **OPPOSITION TO DEFENDANTS'**
17              Plaintiffs,                   **MOTION TO DISMISS PLAINTIFFS'**
                                              **FIRST AMENDED COMPLAINT**
18  v.                                        **AND/OR FOR A MORE DEFINITE**
                                              **STATEMENT**
19  UBER TECHNOLOGIES, INC., RASIER,
    LLC, and RASIER-CA, LLC,                  Date:     February 5, 2015
20                                            Time:     1:00 pm
                Defendants.                   Place:    Courtroom A, 15th Floor
21                                            Judge:    Honorable Magistrate Judge
                                                        Nathanael Cousins
22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1

# TABLE OF CONTENTS

2  I. INTRODUCTION ...................................................................................................... 1

3  II. LEGAL STANDARD ................................................................................................ 2

4  III. ARGUMENT ............................................................................................................ 2

5        A.    NFBC Possesses Both Representational and Individual Standing to
              Pursue Its Claims Challenging Uber's Policies and Practices
6             Across California. .......................................................................................... 2

7               1.    NFBC Possesses Representational Standing to Pursue Claims
                     on Behalf of Its Members ............................................................... 2
8
                2.    NFBC Possesses Standing to Pursue Its ADA Claims on Its
9                    Own Behalf ...................................................................................... 7

10              3.    NFBC Has Standing To Seek Changes in Uber's Policies
                     and Practices Across California. .................................................... 8
11
        B.    Plaintiff Hingson Possesses Standing ......................................................... 10
12
        C.    Plaintiff Pedersen Has Pled Definite Factual Detail to Justify
13            Standing to Pursue His claims. .................................................................... 14

14      D.    In Deciding Uber's 12(b)(6) Motion The Court Should Not Rely
              On the Extraneous Evidence of Uber's Driver and User
15            Agreements. ................................................................................................. 15

16      E.    Plaintiffs Have Pled Valid ADA and State Law Claims ............................. 16

17              1.    Defendants' Motion Fails to Defeat Plaintiffs' ADA Claims ....... 16

18              2.    Defendants Also Fail to Defeat Plaintiffs' State Law Claims ...... 24

19  IV. CONCLUSION ........................................................................................................ 25

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

# TABLE OF AUTHORITIES

**Cases**

*Adiutori v. Sky Harbor Int'l Airport*
   880 F. Supp. 696 (D. Ariz. 1995) ........................................ 23

*Arnold v. United Artists Theatre Circuit, Inc.*
   866 F. Supp. 433 (N.D. Cal. 1994) ...................................... 13

*Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*
   159 F.3d 1178 (9th Cir. 1998) ......................................... 3, 5

*Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*
   950 F.2d 1401 (9th Cir. 1991) ....................................... 3, 4, 5

*Baughman v. Walt Disney World Co.*
   685 F.3d 1131 (9th Cir. 2012) ......................................... 16

*Beery v. Hitachi Home Elecs., Inc.*
   157 F.R.D. 477 (C.D.Cal.1993) ........................................ 14

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................... 2

*Bowden v. Redwood Institute for Designed Educ., Inc.*
   No. C98-1312, 1999 WL 138889 (N.D. Cal. March 9, 1999) ............... 7

*Brooklyn Ctr. for Independence of Disabled v. Bloomberg*
   980 F. Supp. 2d 588 (S.D.N.Y. 2013) ................................... 2

*Castaneda v. Burger King Corp.*
   597 F.Supp.2d 1035 (N.D. Cal. 2009) ............................... 14, 24

*Celano v.  Marriott International, Inc.*
   2008 WL 239306 (N.D. Cal. Jan. 28, 2008) ............................. 9

*Clark v. McDonald's*
   213 F.R.D. 198 (D. N.J. 2003) ........................................ 12

*Coal. of Human Advocates for K9's and Owners v. City and County of San Francisco*
   No. C-06-1887 MMC, 2007 WL 641197 (N.D. Cal. Feb. 27, 2007) .......... 6

*Comm. for Immigrant Rights of Sonoma Cnty. v. County of Sonoma*
   644 F.Supp.2d 1177 (N.D. Cal. 2009) .................................. 3

*Darensburg v. Metro. Transp. Comm'n*
   611 F.Supp.2d 994 (N.D. Cal. 2009) ................................... 3

*Davoll v. Webb*
   194 F.3d 1116 (10th Cir. 1999) ...................................... 10

*Doran v. 7–Eleven, Inc.*
  524 F.3d 1034 (9th Cir. 2008) ................................................................ 3, 10, 11, 12

*Doud v. Yellow Cab Co. of Reno, Inc.*
  No. 3:13–cv–00664–MMD–WGC, 2014 WL 4302552 (D. Nev. Aug. 28, 2014) .............. 9, 16

*EA Indep. Franchisee Assoc., LLC, v. Edible Arrangements Int'l, Inc.*
  No. 3:10–cv–1489 (WWE), 2011 WL 2938077 (D. Conn. July 19, 2011) ................................ 5

*Edmond v. U.S. Postal Serv. Gen. Counsel*
  949 F.2d 415 (D.C. Cir. 1991) ................................................................................ 19

*Everest & Jennings, Inc. v. Am. Motorists Ins. Co.*
  23 F.3d 226 (9th Cir. 1994) .................................................................................... 2

*Harris v. Amgen, Inc.*
  770 F.3d 865 (9th Cir. 2014) .................................................................................. 2

*Hernandez v. County of Monterey*
  ----F.Supp.3d ----, 2014 WL 4843945 (N.D. Cal. 2014) ...................................... 19, 22

*Hunt v. Wash. State Apple Adver. Comm'n*
  432 U.S. 333 (1977) .............................................................................................. 3

*In re Managed Care Litigation* ............................................................................................
  298 F. Supp. 2d 1259 (S.D. Fla. 2003) .................................................................... 5

*In re Managed Care Litigation*
  No. 00–MD–1334, 2003 WL 22410373 (S.D. Fla. Sept. 15, 2003) ............................. 5

*Int'l Broth. of Teamsters v. U.S.*
  431 U.S. 324 (1977) ............................................................................................ 11

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. Brock*
  477 U.S. 274 (1986) ......................................................................................... 4, 5

*Kohler v. CJP, Ltd.*
  818 F.Supp.2d 1169 (C.D.Cal. 2011) .................................................................... 10

*Lee v. City of Los Angeles*
  250 F.3d 668 (9th Cir. 2001) ............................................................................... 15

*Lentini v. Cal. Ctr. for the Arts, Escondido*
  370 F.3d 837 (9th Cir. 2004) ............................................................................... 22

*Neff v. Am. Dairy Queen Corp.*
  58 F.3d 1063 (5th Cir. 1995) ............................................................................... 22

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*
  221 Cal. App. 3d 1377 (1990) ............................................................................... 6

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

*Molski v. M.J. Cable, Inc.*
481 F.3d 724 (9th Cir. 2007) ........................................................................ 13

*Moreno v. G&M Oil Co.*
88 F. Supp. 2d 1116 (C.D. Cal 2000) ........................................................... 12

*Munson v. Del Taco, Inc.*
46 Cal.4th 661 (Cal. 2009) ........................................................................... 13

*Nat'l Fed'n of the Blind v. Target Corp.*
582 F.Supp.2d 1185 (N.D. Cal. 2007) ...................................................... 6, 25

*Navarro v. Block*
250 F.3d 729 (9th Cir. 2001) ........................................................................ 19

*Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*
406 F.Supp.2d 1120 (S.D. Cal. 2005) ......................................................... 3, 6

*Parks School of Business, Inc. v. Symington*
51 F.3d 1480 (9th Cir. 1995) .......................................................................... 2

*PGA Tour, Inc. v. Martin*
532 U.S. 661 (2003) ...................................................................................... 20

*Pickern v. Holiday Quality Foods Inc.*
293 F.3d 1133 (9th Cir.2002) ....................................................................... 10

*Pinchback v. Armistead Homes Corp.*
907 F.2d 1447 (4th Cir. 1990) ...................................................................... 11

*Resnick v. Magical Cruise Co.*
148 F. Supp. 2d 1298 (M.D. Fla. 2001) ........................................................ 12

*Reyes v. Atlantic Richfield*
12 F.3d 1464 (9th Cir. 1993) .......................................................................... 7

*Rodriguez v. Barrita, Inc.*
10 F.Supp.3d 1062 (N.D. Cal. 2014) ............................................................ 13

*Smith v. Pacific Props. & Dev. Corp.*
358 F.3d 1097 (9th Cir.2004) ..................................................................... 7, 8

*Spector v. Norwegian Cruise Line Ltd.*
545 U.S. 119 (2005) ................................................................................. 17, 21

*Toomer v. City Cab*
443 F.3d 1191 (10th Cir., 2006) ................................................................... 17

*Toomer v. City Cab*
No. 2:04 CV 397 DAK, 2005 WL 67091 (D. Utah Jan. 10, 2005) ................. 18

*U.S. v. Ritchie*

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

342 F.3d 903 (9th Cir. 2003) ...................................................... 15

*Urhausen v. Longs Drug Stores California, Inc.*
  155 Cal.App.4th 254 (Cal. App. 1 Dist. 2007) ................................... 13

*Valle del Sol Inc. v. Whiting*
  732 F.3d 1006 (9th Cir. 2013) .................................................. 8

*Warth v. Seldin*
  422 U.S. 490 (1975) ............................................................ 6

*Weyer v. Twentieth Century Fox Film Corp.*
  198 F.3d 1104 (9th Cir. 2000) ................................................. 21

**Statutes**

42 U.S.C. § 12101(b)(1)-(2) ..................................................... 10

42 U.S.C. § 12181(10) .......................................................... 17

42 U.S.C. § 12181(7) ...................................................... 19, 20, 21

42 U.S.C. § 12182(a) ........................................................... 19

42 U.S.C. § 12182(b) ........................................................... 18

42 U.S.C. § 12184 .............................................................. 18

Cal. Civ. Code § 51(f) ......................................................... 24

Cal. Civ. Code § 54(c) ......................................................... 24

Cal. Civ. Code § 54.1(a)(1) .................................................... 25

Cal. Civ. Code § 55.56 ......................................................... 13

Cal. Civ. Code § 51(f) ......................................................... 13

Cal. Civ. Code § 52(c) ......................................................... 13

Cal. Civ. Code § 55.31(a)(2) ................................................... 13

**Other Authorities**

ADA Title III Technical Assistance Manual, III-3.12000 .......................... 21

Black's Law Dictionary (9th ed. 2009) ........................................ 22

H.R. Rep. No. 101-485 (III) (1990). ............................................ 20

**Regulations**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

28 C.F.R. § 36.104 ............................................................................................................... 22

28 C.F.R. § 36.202(a) ........................................................................................................... 23

28 C.F.R. § 36.204 ............................................................................................................... 23

28 C.F.R. § 36.207 ............................................................................................................... 21

28 C.F.R. § 36.302(c)(7) ...................................................................................................... 20

49 C.F.R. § 37.167(d) .................................................................................................... 16, 18

49 C.F.R. § 37.21 ..................................................................................................................18

49 C.F.R. § 37.23(d) ............................................................................................................ 18

49 C.F.R. § 37.29 .......................................................................................................... 17, 18

49 C.F.R. § 37.3 ................................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Uber, one of the nation's largest transportation providers, attempts to dodge facing the widespread discrimination that this case challenges: the provision of substandard, second-class transportation service to an entire class of blind people. Defendants' efforts fall short because Plaintiffs possess standing. Defendants argue that NFBC lacks standing because some of its members would be subject to arbitration. This view, a position that no court in the Ninth Circuit has ever adopted, runs contrary to the Ninth Circuit's clear and consistent pronouncement that associations possess representational standing to pursue injunctive and declaratory relief for the affected segment of their constituency, which is precisely the relief that Plaintiff NFBC seeks here on behalf of its members. Defendants do not dispute that Plaintiff Kelly has standing, and Plaintiff Pedersen provided ample facts to support his standing to pursue claims. Both individuals have been denied rides because of their disability on numerous occasions, and, by reason of their disabilities, continuously receive substandard, unreliable service from Defendants. Plaintiff Hingson has standing because he knows about the widespread discrimination against blind guide dog users and as a result, has been and continues to be deterred from seeking access to UberX transportation.

The reason that Defendants fervently oppose Plaintiffs' standing is clear. Defendants seek to avoid liability for their systemic discrimination against blind individuals who use guide dogs, something they cannot do. Sighted users of the UberX transportation service can reliably request a car and receive a ride, while blind users with guide dogs must engage in transportation roulette, each time wondering whether the driver will refuse to transport them because of their guide dogs. This can only be cured through systemic relief, which is unavailable through arbitration. Plaintiffs in this action are not bound to arbitration, have standing, and have alleged valid claims under anti-discrimination laws. Absent the relief that Plaintiffs seek, no blind customer with a guide dog will receive equal access to UberX in California.

Defendant suggests that it bears no responsibility here because it does not force UberX drivers to discriminate. This view reflects a wooden interpretation of the ADA. The ADA

addresses the exclusion of persons with disabilities from equal participation in the important aspects of public life, whether the exclusion is intentional or the result of "benign neglect." *See Brooklyn Ctr. for Independence of Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 597 (S.D.N.Y. 2013).

Provisions of the ADA applicable to transportation services and public accommodations and state law prohibit the discrimination at issue here. The Court should therefore deny Defendants' motion to dismiss.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must simply "provide the grounds of his entitle[ment] to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alteration in original). In this analysis, the court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. *See, e.g.*, *Harris v. Amgen, Inc.*, 770 F.3d 865, 874 (9th Cir. 2014). A court ruling on such motions must also draw all reasonable inferences in favor of the plaintiff. *Everett & Jennings, Inc. v. Am. Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).

Thus, the First Amended Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiffs could prove no legal theories or set of facts entitling them to relief. *See, e.g.*, *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (A plaintiff need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

## III.    ARGUMENT

### A.    NFBC Possesses Both Representational and Individual Standing to Pursue Its Claims Challenging Uber's Policies and Practices Across California.

#### 1.    NFBC Possesses Representational Standing to Pursue Claims on Behalf of Its Members.

When evaluating standing in civil rights cases, "the court should take a broad view of standing…especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1039-

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

40 (9th Cir. 2008). An association has standing to pursue claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The Ninth Circuit has declined to read additional requirements into the *Hunt* standard. *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1409 (9th Cir. 1991) (declining to require unanimity of interests amongst association members for representational standing) *overruled on other grounds by United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 545 (1996). As discussed below, NFBC has standing to pursue its claims here because many of its members possess standing, the goals of the litigation are germane to NFBC's purpose, and participation of NFBC's individual members is unnecessary.

The participation of an association's individual members is unnecessary where the association seeks only injunctive and declaratory relief. *Assoc. Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998); *Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F.Supp.2d 1120, 1127 (S.D. Cal. 2005) (holding that participation of an association's individual members was unnecessary for association to litigate claims for declaratory and injunctive relief challenging physical access barriers at restaurant); *Comm. for Immigrant Rights of Sonoma Cnty. v. County of Sonoma*, 644 F.Supp.2d 1177, 1194 (N.D. Cal. 2009) (rejecting defendant's argument that participation of association's members was necessary to determine whether the challenged conduct, immigration enforcement policies, caused any harm); *Darensburg v. Metro. Transp. Comm'n*, 611 F.Supp.2d 994, 1038-39 (N.D. Cal. 2009) (participation of association's members unnecessary when association does not seek damages). This is because such relief is presumed to inure to the benefit of its injured members. *Hunt*, 432 U.S. at 343.

Participation of individual NFBC members is unnecessary for NFBC to pursue the relief that it seeks. Plaintiff NFBC seeks declaratory relief and an injunction that would compel Uber to change its policies and practices across California. This relief is not unique to individual

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   members. All injured members with standing would benefit from this relief. Furthermore, the

2   relief would be the same regardless of whether NFBC represented a small number or a large

3   number of members in California.

4        In addition, the participation of individual NFBC members is unnecessary to litigate

5   NFBC's claims. NFBC challenges the policies, practices, and methods of administration that

6   Defendants (collectively, "Uber") use to provide the UberX service as discriminatory. NFBC

7   does not challenge each individual instance of discrimination that its members have experienced.

8   Involvement of individual members is unnecessary where the claims target centralized policies

9   or methods of administration, even where such policies have different impacts on the rights of

10  different association members. *See Int'l Union, United Auto., Aerospace and Agr. Implement*

11  *Workers of Am. v. Brock*, 477 U.S. 274, 287-88 (1986) (union had standing to challenge

12  Secretary of Labor's interpretation of Trade Act's Trade Readjustment Allowance eligibility

13  where each member's injury was based on individual benefits determinations issued by different

14  state agencies, and where some members had received improper benefits determinations and had

15  thus been injured, others had received proper benefits so experienced no injury, and others had

16  yet to receive benefits determinations). Thus this litigation will not require a factual inquiry for

17  each member that NFBC represents.

18       NFBC's representational standing here is based on its members who possess standing.

19  Associations can obtain standing to represent the interests of only a portion of their membership.

20  *Coal. For Econ. Equity*, 950 F.2d at 1409 (association of construction contractors, consisting of

21  both members injured by and benefiting from challenged statute, had representational standing to

22  challenge constitutionality of ordinance setting bid-preference for minority-owned businesses).

23       The Court should decline Uber's invitation to read a new requirement into the *Hunt*

24  standard. Uber argues that the participation of individual NFBC members is necessary here to

25  determine which members must arbitrate their claims. Defs.' Mem. P&A Supp. Mtn. to Dismiss

26  ("Defs.' Mtn.") 9-12. Under the rule that Uber advances, an association seeking standing to

27  litigate claims for prospective relief would lack representational standing if even *one* of its

28  members was required to arbitrate claims. No court in the Ninth Circuit has ever adopted such a

1    rule.[1] This dramatic narrowing of associational standing would also contradict controlling

2    authority holding that individual participation of members is unnecessary for the type of claims

3    and relief at issue here and Ninth Circuit authority declining to impose additional requirements

4    for representational standing beyond the *Hunt* factors. *Brock*, 477 U.S. at 287-88; *Metro. Water*,

5    159 F.3d at 1181; *Coal. for Econ. Equity*, 950 F.2d at 1409.

6           Furthermore, *In re Managed Care Litigation*, No. 00–MD–1334, 2003 WL 22410373

7    (S.D. Fla. Sept. 15, 2003) on which Uber relies is of little import.[2] In a later order denying

8    defendants' motion to dismiss, the court held that the association had representative standing,

9    rejecting defendant's argument that individual participation by the association's members was

10   necessary to address whether members were subject to arbitration. *In re Managed Care*

11   *Litigation*, 298 F. Supp. 2d 1259, 1307-08 (S.D. Fla. 2003).[3] In addition, other courts have held

12   that associations possess standing even when some of their members must arbitrate claims. *EA*

13   *Indep. Franchisee Assoc., LLC, v. Edible Arrangements Int'l, Inc*, No. 3:10–cv–1489 (WWE),

14   2011 WL 2938077 at *2 (D. Conn. July 19, 2011). Defendants' reliance upon cases holding that

15   individuals subject to arbitration agreements cannot seek judicial relief through participation in a

16   class action is similarly misplaced – this is not a class action and NFBC's claim for

17   representational standing is based on standing of members who have not agreed to binding

18   arbitration. Defs.' Mtn. 11.

19   _____

20   [1] Such a rule is also inconsistent with the broader *Hunt* framework: Under the first prong of the
     *Hunt* test an association can have standing even if only *one* member has standing, which
21   indicates that courts need not assess each member's standing to allow the association to proceed
     in a representative capacity.

22   [2] Defendant similarly relies on *Maryland Optometric Association v. Davis Vision, Inc.* Plaintiffs
     are aware of no court in the Ninth Circuit that has followed *Davis Vision*, and for the reasons
23   discussed above, following *Davis Vision* would contradict controlling authority finding
     representational standing for the types of claims asserted and relief sought here.

24   [3] Even if the *Managed Care* court's earlier order on defendant's motion to compel arbitration is
     at all relevant, it is clearly distinguishable in that the arbitration agreements and claims were
25   intertwined in a much more complicated manner than those at issue here: different association
     members were subject to different arbitration agreements and only some of plaintiffs' claims
26   were subject to the arbitration clauses. In contrast, only a uniform arbitration agreement is at
     issue here, and determining which NFBC members are subject to arbitration requires
27   determining only which NFBC members have Uber accounts. Such determinations are no more
     complex than individual determinations in other cases where courts found representational
28   standing where only some association members were injured.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Finally, Defendants do not and cannot dispute that NFBC satisfies the other two

2  requirements of the Hunt analysis. Defs.' Mtn. 8-11. First, at least one association member must

3  possess standing, and Defendants do not dispute that NFBC members, including Plaintiff Kelly,

4  possess standing.[4] *Id.*; *Warth v. Seldin*, 422 U.S. 490, 511 (1975); *Nat'l Fed'n of the Blind v.*

5  *Target Corp.*, 582 F.Supp.2d 1185, 1191 (N.D. Cal. 2007). Furthermore, this litigation, which

6  aims to ensure that blind customers receive full and equal access to Uber's UberX transportation

7  service, is germane to NFBC's mission to "achieve the integration of the blind into society on a

8  basis of equality with the sighted" because prevailing would "enable blind individuals to travel in

9  the same way that many sighted individuals travel." First Am. Compl. ECF No. 17 ("FAC") ¶

10  22; *Brick Oven*, 406 F.Supp.2d at 1127 (action challenging physical access barriers at restaurant

11  was germane to organizational Plaintiff's purpose to advance civil rights of minorities with

12  disabilities).

13    In addition, NFBC has standing to pursue its Unruh Act claims on behalf of its members.

14  The associational standing doctrine and the *Hunt* analysis discussed above are applicable to

15  Unruh Act claims. *Nat'l Fed'n of the Blind*, 582 F.Supp.2d at 1192 (applying Hunt analysis to

16  find that association had standing to pursue federal and state disability claims on behalf of

17  members); *Coal. of Human Advocates for K9's and Owners* v. City and County of San

18  Francisco, No. C-06-1887 MMC, 2007 WL 641197 (N.D. Cal. Feb. 27, 2007) (applying *Hunt*

19  analysis to find that advocacy group for dog owners had associational standing to bring claims

20  under ADA and state disability law, including Unruh Act). Because NFBC has representational

21  standing to pursue its ADA claims, NFBC also has standing to pursue its Unruh Act claims.

22    Defendants' suggestion that associational standing is not permitted for Unruh Act claims

23  is inaccurate. Defs.' Mtn. 19. In *Midpeninsula Citizens for Fair Housing v. Westwood Investors*,

24  221 Cal. App. 3d 1377, 1387, 1388 (1990), the court found that the housing association lacked

25  associational standing because it failed to identify any members who were "aggrieved persons,"

26

27    _____
[4] NFBC also possesses standing based on the standing of Plaintiff Hingson, discussed below,
28  who is an NFBC member.

1    having named not a single member who sought housing or planned to seek housing at the

2    challenged facility. Here, Plaintiff NFBC has identified numerous members of the organization

3    who have been harmed, including members with independent standing to pursue claims. FAC ¶¶

4    66, 67, 42-44, 45, 46, 48, 49, 50, 51. The other cases Defendants rely upon are inapplicable

5    because the plaintiffs were not membership associations. *See Reyes v. Atlantic Richfield*, 12 F.3d

6    1464, 1471 (9th Cir. 1993) (franchisees lacked standing to represent their accountants and

7    cashiers); *Bowden v. Redwood Institute for Designed Educ., Inc.*, No. C98-1312, 1999 WL

8    138889 (N.D. Cal. March 9, 1999) at *4-5 (teacher lacked representative standing to sue on

9    behalf of students).

10        Thus NFBC has standing to pursue its ADA and state claims, and the Court should deny

11   Defendants' motion to dismiss these claims.[5]

12            2.    <u>NFBC Possesses Standing to Pursue Its ADA Claims on Its Own Behalf.</u>

13        An organization can establish injury in fact for individual standing on its own behalf if it

14   can demonstrate (1) frustration of its organizational mission, and (2) diversion of its resources to

15   combat the particular problem in question. *Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097,

16   1105 (9th Cir.2004).[6] In addition, when analyzing organizational standing in a motion to dismiss,

17   Courts must "presume that 'general allegations embrace those specific facts that are necessary to

18   support a claim.'" *Id.* at 1106.

19        NFBC satisfies these requirements. First, discrimination here against NFBC's members

20   and other blind individuals frustrates NFBC's mission. NFBC's mission is "to achieve the

21   integration of the blind into society on a basis of equality with the sighted; and to take any other

22   action which will improve the overall condition and standard of living of the blind." FAC ¶ 22.

23   Discrimination against NFBC's members and other blind individuals in the provision of the

24   UberX transportation service frustrates this mission by limiting its members and other blind

25

26   _____
     [5] If the Court finds that NFBC possesses representational standing, it need not consider whether
27   NFBC has standing on its own behalf.

     [6] Defendants do not dispute that the causation and redressibility requirements are satisfied here.
28   Defendants' Motion at 7-8.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

individuals' ability to travel independently. *See* FAC ¶ 22; *cf. Pacific Props.*, 358 F.3d at 1105.

(organizational Plaintiff sufficiently alleged frustration of mission to challenge physical access

barriers in housing complexes where Plaintiff's purpose was to ensure compliance with housing

access laws and availability of accessible housing).

This discrimination against NFBC members also frustrates NFBC's mission by (1)

delaying and interfering with attendance at, and transportation to and from, NFBC's convention

and meetings; and (2) limiting the transportation options available to NFBC members traveling

in connection with NFBC's advocacy work. FAC ¶ 24, 53-54, 67; *see Valle del Sol Inc. v.*

*Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013) (finding frustration of mission where challenged

law prohibiting transportation of unauthorized immigrants would deter organization's staff from

carrying out one of organization's activities, bussing individuals to events).

Discrimination against NFBC's members has also caused NFBC to divert resources away

from NFBC's other activities. FAC ¶ 22. These allegations are sufficient because at this stage of

the litigation, courts must presume that "general allegations embrace those specific facts that are

necessary to support a claim." *Pacific Props.*, 358 F.3d at 1106.[7]

    3.    <u>NFBC Has Standing To Seek Changes in Uber's Policies and Practices<br>Across California.</u>

NFBC possesses standing to seek changes in Uber's policies and practices across

California. As discussed below, the UberX service is a single, unified transportation service.

Plaintiffs challenge discrimination that results from (1) Uber's use of policies and practices that

negatively and disparately impact Plaintiffs' access to UberX, and (2) Uber's failure to adopt

policies and practices that would end discrimination against customers with guide dogs. FAC ¶¶

11, 64, 65, 75, 82, 84, 90, 94, 96, 98, 100, 102. It is appropriate to order an operator of a

transportation service covered by the ADA to modify its policies and practices on a regional

basis where, as here, plaintiffs challenge discrimination that flows from those practices and

---

[7] If necessary, Plaintiffs can plead additional facts concerning NFBC's diversion of resources,
such as the fact that NFBC has sent representatives to testify at California Public Utility
Commission hearings concerning the discrimination that its members have experienced when
attempting to use UberX, thereby  diverting representatives away from other advocacy.

DISABILITY RIGHTS ADVOCATES<br>2001 CENTER STREET, FOURTH FLOOR<br>BERKELEY, CALIFORNIA 94704-1204<br>(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

policies. *Doud v. Yellow Cab Co. of Reno, Inc.*, No. 3:13–cv–00664–MMD–WGC, 2014 WL 4302552 at *6, 9 (D. Nev. Aug. 28, 2014) (issuing preliminary injunction requiring Defendant taxi operator to modify its driver training concerning people with disabilities to end discriminatory denials of service against Plaintiffs). Standing to seek statewide relief here is appropriate because statewide relief would efficiently end the discrimination at issue in a uniform manner.

 *Celano v. Marriott International, Inc.*, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008) is instructive. There the plaintiffs challenged discrimination at multiple sites, including sites that the named plaintiffs never visited, resulting from uniform company-wide policies failing to take steps to accommodate plaintiffs. *Id.* at *7. The court held that company-wide relief was appropriate because the actions and failures to act applied company-wide and had similar effects at all of defendant's sites. *Id.* Like plaintiffs in *Celano*, the various instances of discrimination that NFBC's members with standing have experienced here all result from Uber's centralized corporate decision declining to take steps to ensure that UberX drivers accommodate blind customers with guide dogs. Thus, as with *Celano*, modifications to Uber's policies and practices on a California-wide basis are necessary to fully address the discrimination.

 In addition, statewide injunctive relief is the only way that NFBC—or any blind individual—can effectively obtain equal access to Defendants' transportation services in California. Drivers constantly join and leave the UberX service. *See* FAC ¶ 32. Furthermore, the particular driver who will respond to a service request is unpredictable as it depends on the constantly changing location of the vehicles and the customer's location. Thus, relief with respect to an individual driver or group of drivers would not ensure an end to the disability-based discrimination that Plaintiffs face here.[8]

---

[8] Plaintiffs FAC describes instances of discrimination experienced by blind individuals outside of California and by blind individuals who are not NFBC members to demonstrate the widespread nature of the discrimination and therefore that changes in Uber's policies and practices are necessary to address the discrimination. Plaintiffs also offer these experiences to demonstrate the plausibility of Plaintiff Hingson's claim of deterrence. For these reasons, striking these allegations is inappropriate.

The fundamental difference between the way that customers access (1) transportation systems such as UberX, and (2) fixed brick and mortar retail establishments, demonstrates why Uber's reliance on cases limiting standing to challenge barriers across retail establishments miss the mark. Defs.' Mtn. 13. Applying this approach to limit standing to individual vehicles in a transportation system rather than the transportation system itself would also run counter to the Ninth Circuit's command to construe standing in ADA cases broadly to effectuate the ADA's mandate to end widespread discrimination against people with disabilities. 42 U.S.C. § 12101(b)(1)-(2); *Doran*, 524 F.3d at 1043 ( "the enforcement scheme of Title III of the ADA would be severely undermined" if plaintiffs could challenge only ADA violations that plaintiffs directly encountered).

### B.   Plaintiff Hingson Possesses Standing.

#### a.   *Plaintiff Hingson Possesses Standing to Pursue His ADA Claims.*

If a plaintiff can show that "he was deterred from visiting the accommodation on specific past occasions when he otherwise would have visited it because of the known barriers there, or that he was deterred from patronizing certain areas of the accommodation or engaging in specific activities there because of those barriers, he has established an injury in fact sufficient for purposes of Article III standing[.]" *Doran*, 524 F.3d at 1041 n. 4 (interpreting *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir.2002). "Once a plaintiff has. . . become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Id.* A plaintiff's deterrence allegations must only "give[] rise to a plausible inference that" the plaintiff "will be deterred from the purported violation from visiting the" public accommodation in the future. *Kohler v. CJP, Ltd.*, 818 F.Supp.2d 1169, 1174 (C.D.Cal. 2011). Deterrence-based standing applies in challenges to discriminatory conduct. *Davoll v. Webb*, 194 F.3d 1116, 1132–33 (10th Cir. 1999) (holding that disabled employee is not require to initiate the interactive process leading to reasonable accommodation where employer has made clear that it will not engage in that process).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Application of deterrence-based standing here is appropriate because blind customers

2    with guide dogs are injured each time they use Uber, not only when a driver refuses to transport

3    the customer. Each time a blind customer with a guide dog requests UberX transportation, that

4    customer faces uncertainty and anxiety regarding whether the oncoming UberX driver will refuse

5    to transport him. That uncertainty itself is an injury, and Hingson would face it each time he

6    requests a ride. *Doran*, 524 F.3d at 1042-43 (uncertainty concerning the scope and extent of an

7    ADA violation is "itself an actual, concrete and particularized injury under the deterrence

8    framework of standing").

9    Hingson has sufficiently pled deterrence-based standing. First, Hingson has knowledge of

10   Uber's discrimination sufficient for deterrence-based standing. Hingson acquired knowledge of

11   widespread discrimination directly from other blind individuals who personally experienced the

12   discrimination that Hingson challenges. FAC ¶ 67. Knowledge based on information obtained

13   from others is sufficient for claims of deterrence where Plaintiffs challenge policies and practices

14   related to discriminatory conduct, rather than physical access barriers. *See Pinchback v.*

15   *Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990) (plaintiff had standing to challenge

16   property owner's refusal to sell property to racial minorities where plaintiff had been "reliably

17   informed" about the discrimination by "real estate agent with no official ties" to property owner

18   and was deterred from offering to purchase property); *Int'l Broth. of Teamsters v. U.S.*, 431 U.S.

19   324, (1977) (employees deterred from applying for promotions could obtain relief in an action

20   challenging pattern of employment discrimination in promotions).

21   In addition, Hingson has suffered a concrete and particularized injury because he has

22   been deterred from using UberX services by Uber's discrimination. *See Doran*, 524 F.3d  1040.

23   Plaintiff Hingson has alleged that he possesses knowledge that UberX drivers have discriminated

24   against specific blind individuals with guide dogs, people similarly situated to him, by refusing

25   to transport them. FAC at ¶ 67. In addition, this knowledge has deterred him from attempting to

26   use the UberX service on specific prior occasions. FAC at ¶¶ 68-71.

27   Furthermore, Plaintiff Hingson's injury is actual and imminent, and he faces a sufficient

28   likelihood of future harm. Plaintiff Hingson continues to be deterred from using the UberX

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    service, and he intends to use UberX once Uber changes its policies and practices to end

2    discrimination against blind customers with guide dogs. FAC at ¶ 72. This allegation is far more

3    than plausible. Hingson routinely travels and relies on transportation services similar to UberX

4    during his travels. FAC ¶ 24. He also owns a smart phone capable of running the Uber mobile

5    application, downloaded the Uber mobile application onto his phone, and possesses a credit card

6    that he can use to pay for the UberX service. FAC ¶¶ 24, 67. Thus, Hingson could easily request

7    UberX service at any time. Deterrence-based standing exists even where Plaintiffs face far

8    greater burdens to encounter ADA violations. *Doran*, 524 F.3d at 1041 (disabled plaintiff had

9    deterrence-based standing to challenge physical access barriers at public accommodation that

10   was over 500 miles from his home). Furthermore, Hingson is deterred from using UberX on

11   specific future occasions. FAC ¶ 72. In addition, while Hingson does not know when an UberX

12   driver would refuse to transport him if he used UberX, this uncertainty concerning the scope and

13   extent of the discrimination is an injury in fact. *Doran*, 524 F.3d at 1042-43.[9]

14           This case is unlike *Resnick v. Magical Cruise Co*., 148 F. Supp. 2d 1298, 1303 (M.D. Fla.

15   2001). First, the Eleventh Circuit, unlike the Ninth Circuit, had not fully endorsed deterrence

16   standing. Even if it had, the Court concluded that, unlike Hingson, the Plaintiff did not have any

17   knowledge concerning the barriers he challenged. *Id.* at 1302-03. In addition, Resnick and the

18   other district court cases on which Defendant relies to argue that Plaintiff Hingson's knowledge

19   is inadequate were not analyzed under a deterrence-based standing analysis and are therefore

20   inapposite. Thus, the Court should sustain Hingson's claims.

21                  ***b.***    ***Hingson Also Has Standing to Pursue His State Law Claims.***

22           Likewise, Plaintiff Hingson is a "person aggrieved" with standing to bring suit

23

24   ─────────────────────────
     [9] Defendants' reliance on *Moreno v. G&M Oil Co.*, 88 F. Supp. 2d 1116 (C.D. Cal 2000), and

25   *Clark v. McDonald's*, 213 F.R.D. 198 (D. N.J. 2003), which dealt with networks of restaurants
     and retail establishments, is thus misplaced. There, barriers were localized because they were in

26   fixed, known locations, and individuals choose which brick and mortar public accommodations
     they visit. In contrast, the discrimination and deterrence here is with respect to the UberX

27   transportation service in California as a whole because each time a guide-dog user requests
     transportation, he is subject to uncertainty and potential discrimination, as the UberX driver is

28   unpredictable.

─────────────────────────

under the Unruh Act, because he has demonstrated that Defendants discriminate against him under the ADA. Cal. Civ. Code §§ 51(f), 52(c). A violation of the ADA is a violation of the Unruh Act, and a person aggrieved by the Unruh Act may bring a claim. Cal. Civ. Code § 51(f); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

Deterrence claims like Hingson's have long been recognized in Unruh cases premised on ADA violations, and are recognized in the statutory provisions that control Unruh and DPA damages claims. Cal. Civ. Code § 55.56; *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 437 (N.D. Cal. 1994) (DPA and Unruh Act provide remedy for deterrence claims; disabled individuals should not have to make a "futile and probably humiliating gesture of showing up and asking to be accommodated").[10] *Supra*, section III.B.a. Thus, Hingson is a "person aggrieved" with standing to sue under Unruh.

A person has standing under the DPA for damages recovery in "situations where 'the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion.'" *Rodriguez v. Barrita, Inc.*, 10 F.Supp.3d 1062 (N.D. Cal. 2014) (*citing Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 633 (Cal. 2009); Cal. Civ. Code § 55.56; *Arnold* 866 F. Supp. at 439 (DPA damages provision applies to claims based on deterrence).[11]  In addition, Deterrence-based standing is recognized in provisions of the California Civil Code applicable to DPA access claims. Civil Code § 55.31(a)(2).

Thus Hingson has standing here to pursue his damages claims under the DPA because he has identified specific occasions when he would have used the UberX service but for his knowledge of the discrimination against blind customers with guide dogs in the provision of the

---

[10] Cases cited to by Defendants are distinguishable because the incorporation of the ADA into Unruh puts disability discrimination in a unique position relative to other types of discrimination under Unruh. The Legislature's intent in adding subdivision (f), the ADA provision, to the Unruh Act "was to provide disabled Californians injured by violations of the ADA with the remedies provided by section 52." *Munson*, 46 Cal.4th at 664.

[11] The cases upon which Defendants rely are irrelevant because they do not address deterrance-based standing. *See, e.g.*, *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal.App.4th 254, 263 (Cal. App. 1 Dist. 2007) (Plaintiff did not have standing to contest in-store access barriers that were not accessed because she fell before reaching store entrance.).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

UberX service. FAC ¶¶ 67, 68-71.

### C. Plaintiff Pedersen Has Pled Definite Factual Detail to Justify Standing to Pursue His Claims.

Pedersen has suffered injury in fact because UberX drivers have discriminated against him. FAC at ¶¶ 8, 25, 74, 103, 110, 116. He faces a real and immediate threat of repeated injury in the future because Defendants have failed to change their policies and practices to end discrimination against blind customers with guide dogs. Id. at ¶¶ 8, 25, 103, 110, 116. He has also satisfied the causation and redressability requirements. FAC at ¶¶ 11, 75, 84, 94, 103, 110, 123.

"Rule 12(e) motions are disfavored and rarely granted." *Castaneda v. Burger King Corp.*, 597 F.Supp.2d 1035, 1045 (N.D. Cal. 2009). Rule 12(e) "is aimed at unintelligibility rather than lack of detail," and granting Rule 12(e) motions "is only appropriate when the defendants cannot understand the substance of the claim asserted." *Beery v. Hitachi Home Elecs., Inc.*, 157 F.R.D. 477, 480 (C.D.Cal.1993). "If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied." *Castaneda*, 597 F.Supp.2d at 1045 quoting *Beery*, 157 F.R.D. at 480.

Plaintiff Pedersen's allegations are quite clear, despite Defendants' assertions to the contrary. An UberX driver refused to transport Plaintiff Pedersen from his home in San Francisco during the morning of September 12, 2014 because he was traveling with his guide dog. FAC ¶ 74. His wife used her Uber account to request this and other trips for him. FAC ¶ 25, 74. UberX drivers have also refused to transport him because of his guide dog on other occasions. FAC ¶¶ 8, 25, 73. These allegations are sufficient for Defendants to "understand the substance" of the disability discrimination claims that Pedersen asserts. Defendants can easily obtain through discovery the additional information that they complain is absent, such as the other dates on which UberX drivers refused to transport him and his wife's name. See *Castaneda*, 597 F.Supp.2d at 1045 (denying Defendant's Rule 12(e) motion and explaining that Defendants could learn through discovery the dates on which disabled Plaintiff encountered access barriers).

**D.    In Deciding Uber's 12(b)(6) Motion the Court Should Not Rely On the Extraneous Evidence of Uber's Driver and User Agreements.**

When deciding a Rule 12(b)(6) motion, the Court must consider only three sources: (1) the allegations and documents within the four corners of the Complaint; (2) public records properly subject to judicial notice; and (3) uncontested documents incorporated by reference whose contents are necessarily relied upon by the complaint.[12] *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, the Court must disregard the Declaration of Michael Colman, the User Terms of Service ("ToS"), and the driver Sublicense Agreement, which Uber offers in support of its motion to dismiss. Colman Decl. ECF No. 25.1, Exhs. A, B; Defs' Mtn.  at 4-5. These agreements are not identified in the pleadings, are not public records subject to judicial notice, and are not necessarily relied upon in the Amended Complaint. Uber's purpose for offering these agreements, at most, is to raise contested issues of fact that should be addressed on summary judgment, not on a Rule 12(b)(6) motion.

Uber attaches the Sublicense Agreement to make factual assertions about whether Uber operates a service covered by disability nondiscrimination statutes. Defs' Mtn. pp. 3-4 & 23-24. Plaintiffs have alleged how Uber operates its service based upon Uber's actual practices, which are independent of how Defendants characterize their legal relationship to their drivers. FAC ¶¶ 32-38. Plaintiffs neither referenced nor relied on this agreement in the Amended Complaint.

Uber also attaches its ToS to assert that an arbitration provision limits Plaintiffs' standing. Defs' Mtn. pp. 4-5. The ToS and its alleged arbitration provision are not referenced in the Complaint and are not relied upon by Plaintiffs' claims. This is because Plaintiffs have alleged that they use UberX transportation and suffered discrimination without ever encountering, reading, or agreeing to Defendants' ToS. FAC ¶ 29. Because none of Plaintiffs' claims necessarily rely upon the contents of Uber's proffered agreements, the court must

---

[12] A document may be incorporated by reference only when it is extensively referred to in the complaint or forms the basis of plaintiff's claim, such as a coverage plan in a dispute about insurance coverage. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   disregard Uber's extrinsic evidence.

2       **E.    Plaintiffs Have Pled Valid ADA and State Law Claims.**

3           1.    Defendants' Motion Fails to Defeat Plaintiffs' ADA Claims.

4               *a.    Plaintiffs Have Established Valid Claims Against Defendants As
                Providers Of Specified Public Transportation Services For
5               Discriminating In The Provision Of The UberX Transportation
                Service.*

6

7       Title III of the ADA prohibits discrimination "on the basis of disability in the full and

8   equal enjoyment of specified public transportation services." 42 U.S.C. § 12184(a). To

9   successfully allege an ADA claim under this section, Plaintiffs must show that: 1. Plaintiffs are

10  disabled; 2. Defendants are private entities that are primarily engaged in the business of

11  transporting people and whose operations affect commerce; 3. Defendants employed a

12  discriminatory policy or practice; and 4. Defendants discriminated against Plaintiffs based on

13  their disabilities by failing to make reasonable modifications necessary to accommodate their

14  disabilities. *Doud*, 2014 WL 4302552 at *4.

15      Plaintiffs' claims here satisfy these requirements. Defendants discriminate by refusing to

16  transport Plaintiffs with their guide dogs, and providing Plaintiffs inferior and unreliable access

17  to their transportation services. *See* FAC ¶¶ 6, 8, 22-23, 25, 48, 66, 73-74; 49 C.F.R. § 37.167(d);

18  *see Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135–37 (9th Cir. 2012) (providing

19  disabled Plaintiff with inferior level of access was insufficient to satisfy Title III of ADA). In

20  addition, Defendants have failed to make the reasonable modifications necessary to

21  accommodate Plaintiffs' disabilities—to adopt policies and procedures that would end

22  discrimination against Plaintiffs. FAC at ¶¶ 75-76. Finally, as discussed below, Defendants are

23  providers of taxi services or other specified public transportation, primarily engaged in the

24  business of transporting people, and Defendants' services affect commerce.

25      The ADA covers an extremely broad range of transportation providers as "providers of

26  specified public transportation." Specified public transportation is "transportation by bus, rail, or

27  any other conveyance (other than by aircraft) that provides the general public with general or

28  special service (including charter service) on a regular and continuing basis." 42 U.S.C. §

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   12181(10). Specified public transportation includes a wide range of conveyances and

2   transportation, including taxi companies. *See, e.g.*, *Toomer v. City Cab*, 443 F.3d 1191 (10th

3   Cir., 2006) (taxi operator); *see also Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129

4   (2005) (cruise ships).

5           Under the plain text of the ADA, Defendants' UberX service provides

6   "transportation…by conveyance…that provides the general public with general or special service

7   (including charter service) on a regular and continuing basis," and is therefore a specified

8   transportation service. 42 U.S.C. § 12181(10). UberX customers, members of the general public,

9   regularly request transportation, and Defendants then provide them with transportation. FAC ¶¶

10   29-31. Like other covered transportation providers, Defendants control and facilitate who may

11   request transportation, the method of request, the dispatching of drivers, who may serve as

12   drivers, which vehicles may be used to provide the transportation, and controls the billing of

13   customers, payment of drivers, and other aspects of the service. FAC ¶¶ 30-38. Thus, Defendants

14   provide specified transportation services to the general public.

15           Defendants are also primarily engaged in the business of transporting members of the

16   public, and Defendants' transportation service affects commerce. Defendant Uber and its

17   subsidiaries Defendants Rasier and Rasier-CA are for-profit businesses primarily engaged in

18   arranging and providing transportation services to customers. FAC ¶¶ 27-28, 29-38. Defendants'

19   transportation service affects commerce, as it operates in numerous metropolitan areas, and

20   involves thousands of vehicles in California. FAC ¶¶ 27, 29.

21           Defendants are also subject to Section 12184 as providers of a taxi service within the

22   meaning of the ADA. 49 C.F.R. § 37.29. ADA regulations define "taxi" broadly, including

23   "transportation services that involve calling for a car and a driver to take one places (e.g.,

24   limousine services…)" 49 C.F.R. Part 37 App. D, Section 37.29. Defendants' UberX service is a

25   taxi service within the meaning of these regulations, as the service "involve[s] calling for a car

26   and a driver to take one places."[13] FAC ¶¶ 30-31.[14] A taxi service is subject to the requirements

27   

28   _____

[13] The Department of Transportation implementing regulations are the controlling regulations in the arena of transportation provision. "The provisions of this part shall be interpreted in a manner

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   that apply to entities primarily engaged in the business of providing a demand responsive

2   transportation service—*i.e.* providers of specified transportation. 49 C.F.R. § 37.29(a); *Toomer v.*

3   *City Cab*, No. 2:04 CV 397 DAK, 2005 WL 67091 at *2 (D. Utah Jan. 10, 2005).

4       Section 12184 applies to an entity such as Uber, which is seeking to join in if not

5   supplant traditional taxi service companies by providing specified transportation services on a

6   regular and continuing basis, even if UberX drivers are independent contractors as Uber alleges.

7   A private entity providing demand responsive transportation service "under contract or other

8   arrangement (including, but not limited to, a grant, subgrant, or cooperative agreement) with

9   another private entity" is subject to Section 12184 and its implementing regulations. 49 C.F.R. §

10  37.23(d). In addition, if a "parent private company is not primarily engaged in the business of

11  transporting people, or is not a place of public accommodation, but a subsidiary company or an

12  operationally distinct segment of the company is primarily engaged in the business of

13  transporting people, the transportation service provided by the subsidiary or segment" is subject

14  to Section 12184 and its regulations. 49 C.F.R. § 37.37(f).

15      Plaintiffs have sufficiently alleged that Defendants are subject to Section 12184, and

16  discriminated against Plaintiffs in violation of Section 12184.[15] Thus, the Court should deny

17  Defendants' motion to dismiss Plaintiffs' ADA and state law claims. In addition, because

18  Plaintiffs have valid claims under Section 12184, the court need not resolve whether Uber is

19

20

---

21  that will make them consistent with applicable Department of Justice regulations. In any case of
22  apparent inconsistency, the provisions of this part shall prevail." 49 C.F.R. § 37.21.

[14] Because the ADA's regulations define taxi services, the California Public Utility
23  Commission's classification of UberX is not relevant here.

[15] As an alternative, the ADA transportation provisions would apply even if Defendants were not
24  covered by 42 U.S.C. § 12184. The ADA prohibits discrimination by Operators of demand
    responsive transportation systems, even if those operators are not subject to section 12184. 42
25  U.S.C. §§ 12182(b).  Defendants operate a demand responsive system because they operate a
    "system of transporting individuals" that "does not operate on a fixed route." FAC ¶¶ 29-31; 49
26  C.F.R. § 37.3. Operators of demand responsive systems not covered by Section 12184 must also
    permit service animals to accompany individuals with disabilities in vehicles. 49 C.F.R. §
27  37.167(d). Thus, Defendants are violating requirements applicable to operators of demand
    responsive systems.
28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 subject to the provisions of Title III of the ADA applicable to public accommodations.[16]

2          **b.    Plaintiffs Have Valid Claims Against Uber As An Operator Of**
            **Public Accommodations Subject To Title III Of The ADA, For**
3          **Discriminating In The Provision of Goods, Services, Privileges,**
            **Advantages, And Accommodations Of The Public**
4          **Accommodations That It Operates.**

5          Even if the Court concludes that Defendants are not subject to the provisions of Title III

6 that are specifically applicable to transportation providers, the Court should deny Defendants'

7 motion to dismiss Plaintiffs' ADA and state law claims because Uber is subject to the general

8 provisions of the ADA that are applicable to places of public accommodation.[17] Title III of the

9 ADA prohibits owners, operators, lessors, and lessees from discriminating against people with

10 disabilities in the full and equal enjoyment of the services, privileges, advantages, and

11 accommodations of places of public accommodation. 42 U.S.C. § 12182(a). This provision

12 covers "service establishments" such as a "travel service." 42 U.S.C. § 12181(7)(f).

13          Uber violates Title III of the ADA because it operates places of public accommodation

14 that unlawfully deny service to Plaintiffs. To establish a valid claim under the public

15 accommodations provisions of Title III of the ADA, a Plaintiff must plead that:  "(1) the plaintiff

16 was disabled within the meaning of the Act; (2) the plaintiff was discriminated against on the

17 basis of that disability; and (3) the defendant owns, leases or leases to or operates a place of

18 public accommodation." *Hernandez v. County of Monterey*, ----F.Supp.3d ----, 2014 WL

19 4843945 at *5 (N.D. Cal. 2014). Defendants do not, and cannot, dispute that Plaintiffs are

20

21 _____
[16] When a Plaintiff alleges several legal theories supporting a single cause of action the trial court
22 may not dismiss that cause of action based on a failure to state a claim under only one of the
theories. *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 419-20 (D.C. Cir. 1991)
23 (holding trial court in error for dismissing Fourth Amendment claim on failure to state a claim
under one theory without addressing remaining two legal theories); *see also Navarro v. Block*,
24 250 F.3d 729, (9th Cir. 2001) (same).

25 [17] The Court may find that operation of the UberX service subjects Defendants to both (1) the
provisions of Title III that are applicable to transportation providers, and (2) the provisions that
26 apply to public accommodations. *Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S. 119, 129
(2005) (holding that cruise ship was subject to both public accommodations provisions and
27 transportation provisions of Title III of the ADA); *see also Cal. Council of the Blind v. County of
Alameda*, 985 F.Supp.2d 1229, 1244-45 (N.D. Cal. 2013) (holding that the ADA and
Rehabilitation Act regulate access to electronic voting machines even where the Help America
28 Vote Act also regulates disability access to those voting machines).

1   disabled within the meaning of Title III or that denying blind customers access to places of

2   public accommodations because of their guide dogs constitutes discrimination under the ADA.

3   *See* Defs' Mtn. at 23-25; 28 C.F.R. § 36.302(c)(7). Instead, Defendants argue they do not own or

4   operate UberX vehicles and thus do not operate places of public accommodation.

5       As discussed below, UberX vehicles are places of public accommodation, and Uber

6   operates those places of public accommodation.[18]

7                   **(1)     UberX Vehicles Are Places Of Public Accommodation.**

8       The concept of place of public accommodation "should be construed liberally" to ensure

9   that people with disabilities receive "'equal access' to the wide variety of establishments

10  available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 677 (2003).

11      UberX vehicles are places of public accommodation because they are places and they are

12  service establishments that affect commerce. A public accommodation is an entity that affects

13  commerce and fits within at least one of twelve enumerated categories of private businesses. 42

14  U.S.C. § 12181(7). Service establishments such as travel services are public accommodations. 42

15  U.S.C. § 12181(7)(f). First, UberX vehicles indisputably affect commerce. ADA Technical

16  Assistance Manual 1994 Supplement III-1.200.

17      Second, UberX vehicles easily fit into the twelve categories of public accommodations

18  because they are service establishments. A plaintiff must only establish that an entity falls into

19  one of the twelve general categories of public accommodations listed in the statute. H.R. Rep.

20  No. 101-485(III), at 54 (1990) ("A person alleging discrimination does not have to prove that the

21  entity being charged with discrimination is similar to the examples listed in the definition.

22  Rather, the person must show that the entity falls within the overall category."). UberX vehicles

23  are service establishments because they provide transportation services. Inclusion of "travel

24  service" in the list of examples of service establishments demonstrates that the ADA

25

26  ────────────────

    [18] Defendants also argue at length that Uber's website and mobile applications are not places of
27  public accommodation. Defs.' Mtn. at 22-23. However, Plaintiffs' complaint does not allege that
    either Uber's website or its mobile application are places of public accommodation. As such, the
28  Court need not resolve that question here.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  contemplates covering vehicles that provide publicly available transportation services. 42 U.S.C.

2  § 12181(7)(f). That the U.S. Department of Justice has treated taxi services as public

3  accommodations further bolsters this conclusion. Settlement Agreement Under the ADA

4  between United States and Yellow Cab Drivers Assoc. of Salt Lake City, DJ 202-77-34 at ¶ 4,

5  available at http://www.ada.gov/yellocab.htm?.

6      Finally, UberX vehicles are places of public accommodation because they are physical

7  places. People can touch, enter, and exit UberX vehicles. Thus, there is a connection between the

8  service at issue, transportation, and physical places, the UberX vehicles. *Weyer v. Twentieth*

9  *Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000).

10      That Defendants acknowledge that UberX vehicles are places of public accommodation

11  is unsurprising. Defs.' Mtn. at 25. UberX vehicles are like other places of public accommodation

12  that courts have evaluated. First, UberX vehicles are conveyances, and courts have held that

13  other conveyances are public accommodations. *Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S.

14  119, 129 (2005) (cruise ship was place of public accommodation where activities on ship fall

15  within several of the twelve categories of public accommodation); *see also* ADA Title III

16  Technical Assistance Manual III-1.200 (public accommodations provisions of ADA applicable

17  to cruise ships).

18      In addition, even if some UberX vehicles are privately owned and sometimes used for

19  personal activities, these facts would not alter the conclusion that they are places of public

20  accommodation when providing the UberX service. The key considerations in determining

21  whether a place is a place of public accommodation is if and how it is used by members of the

22  general public, not its ownership or its private uses. *See* 28 C.F.R. § 36.207; H.R. Rep. No. 101-

23  485 (III), at 54 (1990) (place of public accommodation in a private residence is covered by Title

24  III, even when the portion used for the public accommodation is also used for residential

25  purposes).

26      The Department of Justice's regulations confirm that UberX vehicles are places of public

27  accommodation. The regulations define "place of public accommodation" as "a facility operated

28  by a private entity whose operations affect commerce and fall within at least one of the [12]

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  categories" listed in the ADA. 28 C.F.R. § 36.104. A "facility" is "all or any portion of buildings,

2  structures, sites, complexes, equipment, rolling stock or *other conveyances*, roads, walks,

3  passageways, parking lots, or other real or *personal property*, including the site where the

4  building, property, structure, or equipment is located." *Id.* (emphasis added). A conveyance is

5  "something that carries people or things from one place to another." Merriam-Webster

6  Dictionary. Personal property is any "movable or intangible thing that is subject to ownership

7  and not classified as real property." Black's Law Dictionary (9th ed. 2009). UberX vehicles are

8  facilities because they are conveyances and personal property. Therefore, UberX vehicles are

9  places of public accommodation under the regulations because they are facilities, service

10  establishments, and affect commerce.

> **(2)    Uber Operates Places of Public Accommodation Because It Operates UberX Vehicles.**

11

12  The Ninth Circuit defines operators of public accommodations broadly. *Hernandez*, 2014

13  WL 4843945 at *5. Under the ADA, to "operate" means to "control or direct the functioning of"

14  or to "conduct the affairs of; manage." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837

15  (9th Cir. 2004). A private entity faces liability as an operator of a place of public accommodation

16  when it has authority to control the ADA violation at issue. *Id.* (holding that, in action brought by

17  plaintiff who was denied admission to concert hall with her service dog, defendant Director of

18  Sales and Event Services at concert hall was liable as operator of public accommodation because

19  defendant had authority over concert hall's admissions).

20  Uber is an operator of UberX vehicles within the meaning of the ADA. Uber operates

21  UberX vehicles because Uber has control over the ADA violation at issue, refusal to provide

22  service to blind customers. Uber controls this ADA violation because Uber has control over

23  which driver is dispatched to transport each customer, the procedures that drivers must follow to

24  cancel rides, whether drivers can cancel rides at all, and the immediate consequence that a

25  driver's cancelling a ride has on that driver. *See* FAC ¶¶ 27, 30, 32, 34-35, 38. Thus, Uber can

26  end the discrimination that Plaintiffs experience by better screening and training drivers that are

27  dispatched to transport them, by altering driver ride cancellation procedures, altogether

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   preventing drivers from cancelling rides, or altering the consequences that result when drivers

2   cancel rides. *See* FAC ¶¶ 11, 72, 75.

3         Uber also "operates" UberX vehicles because Uber "directs the functioning" of UberX

4   drivers and vehicles when they are traveling to and transporting Uber customers. Uber decides

5   which of its drivers may transport each customer, and Uber specifies how quickly each UberX

6   driver should pick up each customer. FAC ¶ 38. Uber routinely provides UberX drivers with

7   turn-by-turn directions to customers' destinations. For each trip that each UberX driver provides,

8   Uber monitors and records nearly every detail of the trip, and Uber uses this data to evaluate

9   drivers. FAC ¶¶ 35, 38. Uber also proscribes certain driver conduct while UberX drivers are

10  transporting customers. FAC ¶ 38. Moreover, Uber decides how much each customer will be

11  charged for each trip and how much it will compensate the driver for the trip, and Uber, not the

12  driver, provides each customer with a fare receipt. FAC ¶ 38. Furthermore, Uber collects written

13  feedback from every customer concerning each UberX driver's performance after every trip.

14  FAC ¶ 38.[19]

15        Even if, as Uber alleges, UberX drivers are independent contractors, it would not alter

16  this conclusion. A public accommodation "shall not subject an individual or class of individuals

17  on the basis of a disability. . . directly, or through *contractual, licensing, or other arrangements*,

18  to a denial of the opportunity of the individual or class to participate in or benefit from the goods,

19  services, facilities, privileges, advantages, or accommodations of a place of public

20  accommodation." 28 C.F.R. § 36.202(a) (emphasis added); *see also* 28 C.F.R. § 36.204. ("public

21  accommodation shall not, directly or through *contractual or other arrangements*, utilize

22  standards or criteria or *methods of administration* that have the effect of discriminating on the

23  basis of disability") (emphasis added).

24        Defendants incorrectly assert that the California Public Utility Commission prohibits

25

26  ───────────────

27  [19] Defendants' reliance on *Adiutori v. Sky Harbor Int'l Airport*, 880 F. Supp. 696, 704 (D. Ariz. 1995) (holding that defendant employer of skycaps working in terminal were not liable under the ADA where plaintiff failed to assert, or to provide evidence demonstrating, that defendant operated public accommodation) is inapt.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  Defendants from operating UberX vehicles. Defs.' Mtn.TD at 24. The Commission ruled that

2  Uber cannot own UberX vehicles. Defs.' RJN Exh. A, CPUC Decision, 24. The commission did

3  not rule that Uber does not, or cannot, operate UberX vehicles. *Id.* That the Commission

4  prohibits Uber from owning UberX vehicles in California is not relevant to whether Uber

5  operates UberX vehicles within the meaning of the ADA.

6       In fact, the commission's ruling treats Uber, with respect to UberX, and other similar

7  transportation providers as responsible for the conduct of their drivers. See CPUC Decision, 26

8  (ordering that Uber obtain commercial liability insurance policies that cover incidents involving

9  vehicles and drivers while they are providing UberX service). If anything, that a regulatory body

10 with expertise regulating transportation providers treats Uber as responsible for the actions of its

11 drivers while they are providing UberX service supports the conclusion that Uber operates

12 UberX vehicles. Moreover, disputes concerning whether the control that defendants' exercise

13 over UberX drivers is sufficient to make Defendants operators of places of public

14 accommodation would raise fact specific questions more appropriate for determination at later

15 stages of this proceeding. *See Castaneda v. Burger King Corp.*, 597 F.Supp.2d 1035, 1044 (N.D.

16 Cal. 2009) (inquiring into whether a defendant exercises sufficient control to be an "operator" of

17 a public accommodation at the pleading stage was improper).

18      UberX vehicles are places of public accommodation, and Uber operates those places of

19 public accommodation. Thus, even if the Court declines to apply Section 12184 of the ADA to

20 Uber's operation of the UberX service, the Court should deny Defendants' Motion to Dismiss

21 Plaintiffs' claims.

22              2.    Defendants Also Fail to Defeat Plaintiffs' State Law Claims.

23      Because the Court should deny Defendants' motion to dismiss Plaintiffs' ADA claims, it

24 should also deny Defendants' motion to dismiss Plaintiffs' Unruh Act and Disabled Persons Act

25 claims. Cal. Civ. Code § 51(f) (violation of ADA constitutes violation of Unruh Act); Cal. Civ.

26 Code § 54(c) (violation of ADA constitutes violation of DPA). Moreover, Plaintiffs also have

27 independent DPA claims, and the Court should decline to dismiss these claims regardless of its

28 resolution of Defendants' motion to dismiss Plaintiffs' ADA claims.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Uber is subject to the DPA independent of the ADA. The DPA requires that "individuals

2    with disabilities" receive "full and equal access" to "all common carriers…motor vehicles…or

3    any other public conveyances or modes of transportation …places of public

4    accommodation…and other places to which the general public is invited." Cal. Civ. Code §

5    54.1(a)(1). The DPA's equal access requirement applies regardless of whether the transportation

6    is "private, public, franchised, licensed, contracted, or otherwise provided." Cal. Civ. Code §

7    54.1(a)(1). The DPA's scope of coverage is broader than that of the ADA. *Nat'l Fed'n of the*

8    *Blind*, 582 F. Supp. 2d at 1196. Defendants are subject to the DPA because UberX is a covered

9    "mode of transportation" and because UberX vehicles are "motor vehicles," "modes of

10   transportation," and "other places" to which the general public is invited. FAC ¶¶ 29-31.

11    Defendants have violated the DPA by outright refusing to provide Plaintiffs access to

12   their vehicles and therefore UberX on numerous occasions. FAC ¶¶ 41-55. Uber has provided,

13   and continues to provide, inferior access to the UberX transportation service by subjecting guide-

14   dog users to an unreliable version of its transportation service, a reduced number of drivers who

15   are willing to transport them, drivers who mishandle guide-dogs, and the delay, humiliation, and

16   frustration of being excluded by reason of their disability. FAC ¶¶ 49, 50, 55, 63, 64. Thus, the

17   Court should deny Defendant's motion to dismiss Plaintiffs' state law claims.

18   **IV.    CONCLUSION**

19    Given the increasingly preeminent role that Uber and other similar services play in the

20   transportation industry, confining the ADA to traditional taxi services would leave disabled

21   Americans more marginalized than they were in 1990. Nothing in the ADA, Unruh Act, or

22   Disabled Persons Act entitles Uber, with thousands of vehicles providing service to tens of

23   thousands of Californians, to an exemption from the mandate that transportation providers and

24   public accommodations must provide equal access to their services.

25

26   DATED:  December 17, 2014                    Respectfully submitted,

27

28                                               DISABILITY RIGHTS ADVOCATES

1

2

_____

3      Michael Nunez
4      Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644