1  VANITA GUPTA, Acting Assistant Attorney General
   EVE L. HILL, Deputy Assistant Attorney General
2  REBECCA B. BOND, Chief
   KATHLEEN P. WOLFE, Special Litigation Counsel
3  KEVIN J. KIJEWSKI, Deputy Chief
   MEGAN E. SCHULLER, Trial Attorney, CSBN 281468
4       U.S. Department of Justice
        950 Pennsylvania Avenue, N.W. - NYA
5       Washington, DC  20530
        Telephone: (202) 307-0663
6       Facsimile: (202) 305-9775
        Megan.Schuller@usdoj.gov
7  MELINDA HAAG, United States Attorney, CSBN 132612
   ALEX G. TSE, Chief, Civil Division, CSBN 152348
8  SARA WINSLOW, Assistant United States Attorney, DCBN 457643
9       450 Golden Gate Avenue, Box 36055
        San Francisco, CA  94102
10      Telephone: (415) 436-6925
        Facsimile: (415) 436-6748
11      Sara.Winslow@usdoj.gov
   ATTORNEYS FOR UNITED STATES
12

13              **IN THE UNITED STATES DISTRICT COURT**
             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14                   **SAN FRANCISCO DIVISION**

15 NATIONAL FEDERATION OF THE BLIND OF      ) No. 3:14-cv-04086-NC
   CALIFORNIA, MICHAEL KELLY, MICHAEL       )
16 HINGSON, and MICHAEL PEDERSON,           )
                                            ) **STATEMENT OF INTEREST OF**
17                                          ) **THE UNITED STATES OF AMERICA**
         Plaintiffs,                        )
18                                          ) **Date**:    February 5, 2015
         v.                                 )
19                                          ) **Time**:    1:00 p.m.
   UBER TECHNOLOGIES, INC., RASIER, LLC,    )
20 and RASIER-CA, LLC,                      )
                                            ) **Judge**:   The Hon. Nathanael M. Cousins
21                                          )
         Defendants.                        )
22                                          )
                                            )
23 _____  )

24

25

26

27

28

1
2

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**INTRODUCTION**

3   In its First Amended Complaint ("Complaint"), Plaintiffs National Federation of the
4 Blind ("NFB") of California, Michael Kelly, Michael Hingson, and Michael Pederson
5 (collectively, "Plaintiffs") allege that Defendants Uber Technologies, Inc., Rasier, LLC, and
6 Rasier-CA, LLC ("Defendants" or "Uber") have violated Title III of the Americans with
7 Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, by denying blind individuals with service
8 animals full and equal access to Defendants' UberX transportation service.  Compl. ¶¶ 1, 87,
9 102, 103 (ECF No. 17).  Plaintiffs allege that Uber provides several different demand responsive
10 transportation services, all of which are initiated by communicating with Uber through a mobile
11 software application for smart phones.  Compl. ¶¶ 29, 88.  The Complaint focuses on
12 Defendants' "UberX" transportation system—one of Uber's most cost-effective demand
13 responsive services.  Compl. ¶¶ 2, 29, 88.  Plaintiffs allege that "UberX drivers are refusing to
14 transport many blind individuals who use service animals."  Compl. ¶ 3.  Some UberX drivers
15 also allegedly "seriously mishandle guide dogs" and "harass blind customers with guide dogs."
16 Compl. ¶ 4.  In response to complaints lodged with Uber about these allegations, Uber allegedly
17 fails to respond, does not take steps to address the discrimination, and frequently denies
18 responsibility for the discrimination.  Compl. ¶ 5.  Plaintiffs allege that, as a result, blind persons
19 "have been and continue to be denied access to Defendants' services on multiple occasions when
20 they attempt to use Uber's UberX transportation service."  Compl. ¶ 103.

21   Plaintiffs' Complaint pleads four causes of action, including one expressly based on the
22 ADA.[1]  The ADA claim alleges that Defendants violated Title III of the ADA generally, as well
23

24 [1] Notably, two of the other causes of action are based on California laws that incorporate the
25 ADA by reference, and the fourth cause of action is a request for declaratory relief based, in part,
 on Title III of the ADA.  Compl. ¶¶ 108-09, 114, 121-22.  Thus, it appears all of Plaintiffs'
26 causes of action are directly or indirectly based on the ADA.  But, for purposes of this Statement
 of Interest, we only discuss the first cause of action, which alleges direct violations of the ADA.

27          - 1 -

28

1  as two specific provisions of Title III: 42 U.S.C. § 12182, which prohibits disability

2  discrimination by public accommodations, and 42 U.S.C. § 12184, which prohibits disability

3  discrimination by certain transportation service providers.   Compl. ¶¶ 77-104.   Defendants

4  moved to dismiss on various grounds, including under Federal Rule of Civil Procedure 12(b)(6)

5  for failure to state a claim.   In their brief, Defendants explain that they move to dismiss each

6  cause of action, including the ADA claim, "to the extent it is based on the allegation that Uber's

7  app or website constitute a place of public accommodation or that Defendants own, lease or

8  operate a place of public accommodation under the ADA."  Defs.' Mot. to Dismiss at 1, 22 (ECF

9  No. 25).

10        Defendants' motion is ambiguous, however, as to whether they move to dismiss the ADA

11  claim (and Complaint) in full or in part.   Defendants appear to imply that, if the Court determines

12  that they are not a public accommodation, then the Court should dismiss Plaintiffs' ADA claim

13  (and the Complaint) in full.  Defs.' Mot. to Dismiss at 1, 22-25.  Any such implication would

14  reflect a misunderstanding about the scope of Title III's coverage.   The success of Plaintiffs'

15  ADA claim is not dependent on a finding that Defendants are a public accommodation, because

16  § 12184 of Title III of the ADA applies to private entities that are primarily engaged in providing

17  transportation services regardless of whether the private entity is a public accommodation.  *See*

18  42 U.S.C. § 12184.   Furthermore, because coverage under this provision of Title III is not

19  dependent upon coverage under any other provision, even if Defendants were not covered as a

20  public accommodation under § 12182, they still could be covered as a transportation service

21  provider under § 12184.   The United States respectfully submits this Statement of Interest to

22  clarify the proper interpretation and application of the ADA with respect to this issue.[2]

23

24

_____

25  [2] The United States takes no position on any other issues currently before the Court.  We seek

26  only to clarify any possible confusion regarding the scope of Title III's coverage as a result of
    Defendants' motion to dismiss.  Accordingly, we do not address herein the issue of whether,
    under the facts alleged in the Complaint, Uber is a public accommodation.

27                                          - 2 -

## I.    INTEREST OF THE UNITED STATES

Under 28 U.S.C. § 517, the Attorney General may send any officer of the United States Department of Justice "to attend to the interests of the United States in a suit pending in a court of the United States…."  The United States Department of Justice ("DOJ") is the federal agency charged with primary responsibility for enforcing Title III of the ADA and its implementing regulations.  *See* 42 U.S.C. § 12188(b) (2008); 28 C.F.R. §§ 36.502-36.504 (2010); 49 C.F.R. § 37.11 (1996); 49 C.F.R. pt. 37, app. D § 37.11 (2014).  Consistent with this statutory charge, DOJ has an interest in supporting the ADA's proper interpretation and application; furthering the statute's explicit congressional intent to provide clear, strong, consistent, and enforceable standards addressing discrimination against individuals with disabilities; and ensuring that the United States plays a central role in enforcing the standards established in the ADA.  *See* 42 U.S.C. § 12101(b).

The United States' interests are particularly strong here, where Plaintiffs allege discriminatory denial of full and equal access to transportation—an issue that goes to the very heart of the ADA's goals "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency" for individuals with disabilities. 42 U.S.C. § 12101(a)(7). The right to travel with one's service animal is critical to achieving these goals.  *See* 49 C.F.R. § 37.167; *see also Tamara v. El Camino Hosp.*, 964 F. Supp. 2d 1077, 1087 (N.D. Cal. 2013) (finding that separating an individual from his or her service animal can cause irreparable harm and deprive that individual of independence).  Accordingly, the United States respectfully requests that the Court, in resolving Defendants' Motion to Dismiss, consider the interpretation of Title III and the applicable regulation as set forth in this Statement of Interest.[3]

## II.    DISCUSSION

While Title III is routinely characterized as the public accommodation title of the ADA,

---

[3] The United States does not intend to attend the February 5 hearing unless the Court requests its presence.

its reach is much broader.  Title III of the ADA prohibits discrimination on the basis of disability by a range of entities, including public accommodations and, as applicable here, private entities primarily engaged in providing transportation services.  *See* 42 U.S.C. §§ 12182, 12184.  This latter category is covered by § 12184 of Title III, which is not contingent on an entity's status as a public accommodation.

## A. SECTION 12184 COVERS TAXI AND OTHER DEMAND RESPONSIVE TRANSPORTATION SERVICES

The statute and applicable regulation define coverage under 42 U.S.C. § 12184 to include most types of transportation provided by private companies.  Section 12184 prohibits discrimination "on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."  42 U.S.C. § 12184(a).  The term "specified public transportation" is broadly defined as transportation by any "conveyance" (other than aircraft) "that provides the general public with general or special service (including charter service) on a regular and continuing basis."  42 U.S.C. § 12181(10).

Congress directed the Secretary of Transportation to issue regulations to implement the Title III transportation provisions, including § 12184.  42 U.S.C. § 12186(a).  Pursuant to this mandate, the United States Department of Transportation ("DOT") promulgated 49 C.F.R. Part 37 and accompanying guidance that explains DOT's construction and interpretation of its implementing regulation.  49 C.F.R. pt. 37, app. D.  *Cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (concluding that an agency's interpretation of its regulations is "controlling unless plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("Considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.").

The DOT regulation broadly defines the types of transportation services subject to Title

- 4 -

1   III.  The regulation and guidance clarify that such services include any transportation services

2   provided by private entities that involve calling for a vehicle and a driver to take one places,

3   including taxi services.  *See* 49 C.F.R. § 37.29; 49 pt. 37, app. D § 37.29 ("For purposes of this

4   section, other transportation services that involve calling for a car and a driver to take one places

5   … are regarded as taxi services.").  The DOT regulation includes a specific provision for private

6   entities providing taxi service and explains why they are covered by § 12184 of Title III:

7   Because they are "private entities primarily engaged in the business of transporting people which

8   provide demand responsive service."  49 C.F.R. § 37.29.  The definition of "demand responsive"

9   service or system is far from limited to just taxi service, however; it is in fact quite expansive,

10  referring to "any system of providing transportation of individuals by a vehicle, other than … a

11  fixed route system."[4]  42 U.S.C. § 12181(3); 49 C.F.R. § 37.3.

12        In addition, the regulation defines what it means to "operate" a "demand responsive"

13  system (or non-fixed route transportation system); in this context, "operates" includes "the

14  provision of transportation services by a … private entity itself or by a person under a contractual

15  or other arrangement or relationship with the entity."  49 C.F.R. § 37.3.  Thus, an entity may

16  operate a demand responsive system even if it does not itself provide transportation services, if it

17  does so through a contractual relationship with another entity or even individual drivers.  Indeed,

18  as explained in the DOT guidance, while an entity may contract out its service, it may not

19  contract away its ADA responsibilities.  *See* 49 C.F.R. pt. 37, app. D § 37.23; *see also* 49 C.F.R.

20  § 37.23(d).

21      **B.  DISCRIMINATION UNDER § 12184 INCLUDES DENYING OR PROVIDING**
        **UNEQUAL SERVICE TO INDIVIDUALS WITH SERVICE ANIMALS**
22

23        Under § 12184, discrimination is defined broadly to include refusing to provide

24  transportation service, or providing unequal service, to individuals with disabilities who can

25  physically access the vehicle.  49 C.F.R. §§ 37.5, 37.29(c).  The DOT regulation expressly states

26  [4] A fixed route system operates along a prescribed route according to a fixed schedule, like a
    train or a fixed-route bus.  42 U.S.C. § 12181(4); 49 C.F.R. § 37.3.

27                                                   - 5 -

28

that such entities "shall permit service animals to accompany individuals with disabilities in vehicles." 49 C.F.R. § 37.167(d). Discrimination also includes the imposition or application of eligibility criteria that screen out an individual with a disability, or any class of individuals with disabilities, from fully enjoying the transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered. 42 U.S.C. § 12184(b)(1); 49 C.F.R. § 37.5(f).

Private entities that provide transportation services also have affirmative obligations under the ADA. Such entities must make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the transportation services. 42 U.S.C. § 12184(b)(2)(A). And every private entity that operates a taxi service or other demand responsive system must "ensure that personnel are trained to proficiency, as appropriate to their duties, so that they … properly assist and treat individuals with disabilities who use the service in a respectful and courteous way, with appropriate attention to the difference among individuals with disabilities." 49 C.F.R. § 37.173.

## C. PLAINTIFFS NEED NOT SHOW THAT UBER IS A PUBLIC ACCOMMODATION TO SUCCEED ON THEIR CLAIM UNDER § 12184

Private entities primarily engaged in providing transportation services are covered by § 12184 of Title III, irrespective of whether they are also public accommodations. Section 12182, in contrast, sets out statutory requirements applicable only to "public accommodations." Section 12182 includes general and specific prohibitions of discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[5]  42 U.S.C. § 12182. Sections 12182

---

[5] Section 12182 also includes specific prohibitions addressing discrimination in the provision of certain types of transportation services operated by private entities that are *not* primarily engaged in the business of transporting people. 42 U.S.C. § 12182(b).

1  and 12184 of Title III are premised on and impose separate and distinct requirements, and

2  coverage under one permits but does not necessitate coverage under the other.[6]

3     Within this statutory and regulatory framework, Plaintiffs can prevail on their ADA claim

4  by demonstrating that (1) Plaintiffs have standing to sue under the ADA; (2) Defendants provide

5  specified public transportation services and are primarily engaged in the business of transporting

6  people, 42 U.S.C. § 12184; and (3) Defendants, directly or through a contractual or other

7  relationship, discriminated on the basis of disability as proscribed by § 12184 and the applicable

8  regulation.  *See* 42 U.S.C. § 12184; 49 C.F.R. §§ 37.5, 37.23; *see also Doud v. Yellow Cab Co.*,

9  2014 U.S. Dist. LEXIS 120243, *11-12 (D. Nev. Aug. 28, 2014).  Importantly, Plaintiffs do not

10 need to show that Defendants are public accommodations or operate a place of public

11 accommodation to succeed on their ADA claim under § 12184.

12                    **III.   CONCLUSION**

13    Because Defendants' alleged failure to provide transportation services to customers with

14 service animals directly implicates the ADA's statutory and regulatory protections for

15 individuals with disabilities, the United States requests that this Court consider the Title III

16 framework discussed in this Statement of Interest when analyzing the pending motion to dismiss.

17

18

19

20

21

22

---

23 [6] While coverage under Title III can be premised on either § 12182 or § 12184, these provisions
   are not mutually exclusive; entities to which § 12184 applies also may be subject to the public
24 accommodations provision of Title III.  49 C.F.R. § 37.21; 49 C.F.R. pt. 37, app. D § 37.21; *see,
   e.g.*, *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 129 (2005) ("Although the statutory
25 definitions of 'public accommodation' and 'specified public transportation' do not expressly
   mention cruise ships, there can be no serious doubt that the NCL cruise ships in question fall
26 within both definitions under conventional principles of interpretation.").

27                          - 7 -

28

1    Respectfully submitted this 22nd day of December, 2014.

2

3    MELINDA HAAG                    VANITA GUPTA
   United States Attorney                Acting Assistant Attorney General

4    Northern District of California        Civil Rights Division

5    /s/ Sara Winslow                   EVE L. HILL
   SARA WINSLOW                 Deputy Assistant Attorney General

6    Assistant United States Attorney      Civil Rights Division
   Northern District of California

7    450 Golden Gate Avenue, Box 36055    REBECCA B. BOND

8    San Francisco, CA 94102            Chief
   Telephone:  (415) 436-6925          KATHLEEN P. WOLFE

9    Facsimile:  (415) 436-6748           Special Litigation Counsel
   Sara.Winslow@usdoj.gov           KEVIN J. KIJEWSKI

10                                      Deputy Chief
                                     Disability Rights Section

11                                      Civil Rights Division

12

13                                    /s/ Megan E. Schuller
                                   MEGAN E. SCHULLER

14                                    Trial Attorney
                                   Disability Rights Section

15                                    Civil Rights Division
                                   U.S. Department of Justice

16                                    950 Pennsylvania Avenue, N.W. – NYA
                                   Washington, DC  20530

17                                    Telephone:  (202) 307-0663
                                   Facsimile:  (202) 305-9775

18                                    Megan.Schuller@usdoj.gov

19                                    Counsel for the United States of America

20

21

22

23

24

25

26

27                           - 8 -

28