1  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
2  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
3  EMILY E. O'CONNOR, Bar No. 279400
   eoconnor@littler.com
4  LITTLER MENDELSON, P.C.
   650 California Street
5  20th Floor
   San Francisco, California  94108.2693
6  Telephone:    415.433.1940
   Facsimile:    415.399.8490
7
   Attorneys for Defendants
8  UBER TECHNOLOGIES, INC.,
   RASIER, LLC, AND RASIER-CA, LLC
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12  NATIONAL FEDERATION OF THE          Case No.  3:14-cv-04086-NC
    BLIND OF CALIFORNIA, MICHAEL
13  KELLY, MICHAEL HINGSON, and         **DEFENDANTS' REPLY TO PLAINTIFFS'**
    MICHAEL PEDERSEN,                   **OPPOSITION TO MOTION TO DISMISS**
14                                      **PLAINTIFFS' FIRST AMENDED**
                   Plaintiffs,          **COMPLAINT AND/OR FOR A MORE**
15                                      **DEFINITE STATEMENT**
          v.
16                                      **[F.R.C.P. 12(b)(1), 12(b)(6), 12(e)]**
    UBER TECHNOLOGIES, INC., RASIER,
17  LLC, and RASIER-CA, LLC,            Date:       February 5, 2015
                                        Time:       1:00 p.m.
18                 Defendants.          Location:   Courtroom A, 15th Floor
                                                    San Francisco Federal Courthouse
19
                                        Trial Date:  None set.
20                                      Complaint Filed:  September 9, 2014
                                        FAC Filed: November 12, 2014
21

22

23

24

25

26

27

28

DEFS' REPLY TO PLTFS' OPP TO MTN TO
DISMISS FAC AND/OR FOR MORE                          Case No. 3:14-cv-04086-NC
DEFINITE STATEMENT

# TABLE OF CONTENTS

PAGE

I.   INTRODUCTION ........................................................................................................... 1

II.  DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED ................................. 1

    A.   Plaintiffs NFB And Hingson Lack Standing And Their Claims Should Be
        Dismissed Pursuant To FRCP 12(b)(1) ........................................................... 2

        1.   NFB Lacks Associational Standing ................................................. 2

        2.   Even If NFB Possessed Associational Standing, It Is Not Entitled To
            The Broad Relief It Seeks ............................................................... 6

        3.   NFB Lacks Standing To Sue In Its Own Right Because It Has Not
            Sufficiently Alleged An Injury In Fact ............................................ 7

        4.   Hingson Lacks Standing To Sue Because He Has Not, And Cannot,
            Allege Actual Notice Of ADA Violations ........................................ 9

        5.   Both NFB And Hingson Lack Standing To Sue Under Unruh And The
            Second Cause Of Action Must Be Dismissed ................................. 11

        6.   Hingson Also Lacks Standing To Pursue A Claim Under The DPA ........... 12

    B.   At A Minimum, Pedersen Must Provide A More Definite Statement Pursuant
        To FRCP 12(e) ........................................................................................... 13

    C.   Uber Does Not Own, Lease Or Operate A Place Of Public Accommodation ........... 14

III. CONCLUSION ........................................................................................................... 15

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

i.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access 123, Inc. v. Markey's Lobster Pool, Inc.*,
  2001 U.S. Dist. LEXIS 12036 (D.N.H. 2001) ...................................................3

*Access 4 All, Inc. v. G & T Consulting Co., LLC*,
  2008 U.S. Dist. LEXIS 30594 (S.D.N.Y. 2008)................................................10

*American Express Co. v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013).........................................................................................5

*Arnold v. United Artists Theatre Circuit, Inc.*,
  866 F. Supp. 433 (N.D. Cal. 1994) ...................................................................13

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (2009).........................................................................................9

*Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*,
  950 F. 2d 1401 (9th Cir. 1991) ...........................................................................3

*AT&T Mobility LLC, v. Concepcion*,
  131 S. Ct. 1740 (2011).........................................................................................5

*Autism Soc'y v. Fuller*,
  2006 U.S. Dist. LEXIS 33979 (W.D. Mich. 2006).............................................7

*Bailey v. United States*,
  642 F. 2d 344 (9th Cir. 1981) .............................................................................2

*Celano v. Marriott Int'l, Inc.*,
  2008 U.S. Dist. LEXIS 6172 (N.D. Cal. 2008) ..................................................6

*Clark v. McDonald's*,
  213 F.R.D. 198 (D. N.J. 2003)........................................................................6, 7

*Daubert v. A 1 Tours & Travel*,
  2006 U.S. Dist. LEXIS 41831 (E.D. Cal. 2006)...............................................10

*Davis Vision, Inc. v. Maryland Optometric Ass'n*,
  187 Fed. Appx. 299 (4th Cir. 2006)................................................................5, 4

*Davoll v. Webb*,
  194 F. 3d 1116 (10th Cir. 1999) .......................................................................11

*DDFA of South Florida, Inc. v. Dunkin' Donuts, Inc.*,
  2002 WL 1187207 (S.D. Fla. 2002) ...................................................................4

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

*Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*,
    2003 U.S. Dist. LEXIS 51545 (S.D.N.Y. 2003)........................................................3

*Donald v. Cafe Royale, Inc.*,
    218 Cal. App. 3d 168 (1990) ...........................................................................13

*Doran v. 7–Eleven, Inc.*,
    524 F. 3d 1034 (9th Cir. 2008) ........................................................................10

*Doud v. Yellow Cab Co. of Reno, Inc.*,
    2014 WL 4302552 (D. Nev. 2014) ....................................................................6

*EA Indep. Franchisee Assoc., LLC, v. Edible Arrangements Int'l, Inc*,
    2011 WL 2938077 (D. Conn. 2011) ..................................................................5

*El Rescate Legal Services, Inc. v. Executive Office of Immigration*,
    959 F. 2d 742 (9th Cir. 1992) ..........................................................................8

*Freezor v. Chico Lodging, LLC*,
    422 F. Supp. 2d 1179 (E.D. Cal. 2006)..............................................................10

*Friends for American Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*,
    284 F. 3d 575 (5th Cir. 2002) ..........................................................................4

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)......................................................................................8

*Hoepfl v. Barlow*,
    906 F. Supp. 317 (1995) (E.D. Va. 1995)...........................................................7

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)................................................................................2, 3, 4

*In re Managed Care Litigation*,
    2003 U.S. Dist. LEXIS 23035 (S.D. Fla. 2003)....................................................4

*In re Managed Care Litigation*,
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) ..............................................................4

*Int'l Broth. of Teamsters v. U.S.*,
    431 U.S. 324 (1977)....................................................................................11

*Kohler v. CJP, Ltd.*,
    818 F. Supp. 2d 1169 (C.D. Cal. 2011) ............................................................10

*Kreisler v. Second Ave. Diner Corp.*,
    2012 U.S. Dist. LEXIS 129298 (S.D.N.Y. 2012).................................................10

*La Asociacion de Trabajadores de Lake Forest v. Lake Forest*,
    624 F. 3d 1083 (9th Cir. 2010) ........................................................................8

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

ii.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

*Mack v. South Bay Beer Distributors, Inc.*,
   798 F. 2d 1279 (9th Cir. 1986) ...........................................................................1

*McEntee v. Henderson*,
   154 F. Supp. 2d 1286 (S.D. Ohio 2001) ...........................................................14

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*,
   221 Cal. App. 3d 1377 (1990) .....................................................................11, 12

*Molski v. Conrad's Rest.*,
   2005 U.S. Dist. LEXIS 34279 (C.D. Cal. 2005) ..............................................12

*Moreno v. G&M Oil Co.*,
   88 F. Supp. 2d 1116 (C.D. Cal 2000) ............................................................6, 7

*Moses H. Cone Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................5

*National Coalition Gov't of Burma v. Unocal, Inc.*,
   176 FRD 329 (C.D. Cal. 1997) ..........................................................................2

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
   713 F. Supp. 2d 734 (N.D. Ill. 2010) .................................................................4

*Parr v. L&L Drive-Inn Restaurant*,
   96 F. Supp. 2d 1065 (D. Haw. 2000) ...............................................................10

*Pickern v. Holiday Quality Foods, Inc.*,
   293 F.3d 1133 (9th Cir. 2002) ...........................................................................9

*Pinchback v. Armistead Homes Corp.*,
   907 F. 2d 1447 (4th Cir. 1990) ........................................................................11

*Resnick v. Magical Cruise Co.*,
   148 F. Supp. 2d 1298 (M.D. Fla. 2001) ...........................................................11

*Reycraft v. Lee*,
   177 Cal. App. 4th 1211 (2009) .........................................................................13

*Rodriguez v. Barrita, Inc.*,
   10 F. Supp. 3d 1062 (N.D. Cal. 2014) .............................................................13

*Small v. General Nutrition Cos.*,
   388 F. Supp. 2d 83 (E.D.N.Y. 2005) .....................................................3, 6, 8, 10

*Smith v. Pacific Props. & Dev. Corp.*,
   358 F. 3d 1097 (9th Cir. 2004) ...........................................................................8

*Spector v. Norwegian Cruise Line, Ltd.*,
   545 U.S. 119 (2005) ..........................................................................................15

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

iii.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

*Surrey v. TrueBeginnings, LLC,*
    168 Cal. App. 4th 414 (2008) ............................................................12

*Valle del Sol Inc. v. Whiting,*
    732 F. 3d 1006 (9th Cir. 2013) ..........................................................8

*W.G. Nichols, Inc. v. Ferguson,*
    2002 U.S. Dist. LEXIS 10707 (E.D. Pa. 2002) ...............................7

*Walker v. City of Lakewood,*
    272 F. 3d 1114 (9th Cir. 2001) ..........................................................9

**STATUTES**

42 U.S.C. § 12101 ...................................................................... passim

42 U.S.C. § 12181(7) ...............................................................14, 15

42 U.S.C. § 12181(7)(F) ................................................................14

42 U.S.C. § 12182(a) ...............................................................14, 15

42 U.S.C. § 12182(b)(2)(C) ...........................................................14

42 U.S.C. § 12184 ..........................................................................14

42 U.S.C. § 12184(a) ......................................................................15

42 U.S.C. § 12188(a)(1) ...................................................................7

Civ. Code § 52 ................................................................................12

Civ. Code § 54 et seq. ....................................................................13

Civ. Code § 54.3 .......................................................................12, 13

Civ. Code § 55 ................................................................................12

Civ. Code § 55.31(a)(2) ..................................................................12

Civ. Code § 55.56 ...........................................................................13

**OTHER AUTHORITIES**

Fed. Rule Civ. Proc. 12(b) ..............................................................14

Fed. Rule Civ. Proc. 12(b)(1) .......................................................1, 2

Fed. Rule Civ. Proc. 12(b)(6) .....................................................1, 14

Fed. Rule Civ. Proc. 12(e) ..............................................................13

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

iv.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

## I.     INTRODUCTION

In their Opposition, Plaintiffs do not dispute that they are attempting to circumvent the arbitration agreement in place between Uber users and Defendants, nor do they contest the validity of this agreement or the fact that the agreement covers the instant dispute.  The fact that most, and perhaps nearly all, NFB members on whose behalf NFB brings this lawsuit are bound to arbitrate this dispute directly with Uber on an individual basis is fatal to NFB's claim that it has standing to sue in a representative capacity.  Plaintiffs cite no persuasive or controlling authority to rebut the numerous federal courts holding that the existence of a binding arbitration agreement, even for just some members, defeats associational standing.  Likewise, NFB has failed to allege facts to show that the organization itself has suffered an injury-in-fact sufficient to confer standing to sue in its own right.  NFB must therefore be dismissed from this case with prejudice.

As to Hingson, Plaintiffs fail to present any authority in support of their position that second-hand knowledge regarding an alleged discriminatory barrier or practice is sufficient to confer standing, even under a deterrence-based injury theory.  Accordingly, Hingson must also be dismissed with prejudice.

Pedersen's claims must also be dismissed because he has failed to provide, even in opposition to Defendants' motion, sufficient detail to establish standing.

Finally, because Defendants do not operate a place of public accommodation as defined under the ADA, the Court should dismiss the First through Fourth Causes of Action as to all Plaintiffs to the extent those claims are based on that theory of recovery.

## II.    DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED

In addition to moving to dismiss under Rule 12(b)(6) for failure to state a claim, Defendants contend that Plaintiffs lack standing to sue and move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Plaintiffs assert that the Court should not rely on extraneous evidence in deciding Defendants' motion.  (Opp., 15.)  First, in ruling on Defendants' Rule 12(b)(6) motion, the Court may consider the CPUC's decision, as the decision is properly the subject of judicial notice, which Plaintiffs do not dispute.  *See Mack v. South Bay Beer Distributors, Inc.*, 798 F. 2d 1279, 1282 (9th Cir. 1986) (court may take judicial notice of records of administrative bodies).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

Because a court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the Court is free to weigh evidence to determine the existence of its jurisdiction. *Bailey v. United States*, 642 F. 2d 344, 347 (9th Cir. 1981) (A district court may rely on affidavits and other evidentiary material to make factual findings in deciding a question of jurisdiction under Rule 12(b)(1)). Plaintiffs do not dispute the facts presented by Defendants. Accordingly, the Court can and should consider the Declaration of Michael Colman (and its supporting exhibits) as well as Defendants' Request for Judicial Notice. *See, e.g., National Coalition Gov't of Burma v. Unocal, Inc.*, 176 FRD 329, 337 (C.D. Cal. 1997) (On motion to dismiss for lack of standing to sue on claims asserted in complaint, it is appropriate to consider supplemental allegations of fact set forth in affidavits).

### A. Plaintiffs NFB And Hingson Lack Standing And Their Claims Should Be Dismissed Pursuant To FRCP 12(b)(1).

#### 1. NFB Lacks Associational Standing.

NFB lacks standing to sue on behalf of its members under the test set forth by the Supreme Court in *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).[1] In their opposition, Plaintiffs allege that NFB has standing because "many" NFB members possess standing notwithstanding the existence of the arbitration agreement between Uber and its users. (Opp. 3.) This is a significant overstatement. As addressed extensively below, because NFB cannot secure relief on behalf of the individuals bound by arbitration agreements with Uber, NFB's standing with respect to other individuals allegedly injured by Uber's alleged failure to accommodate is virtually non-existent. For example, NFB member Hingson lacks standing. Similarly, because Pedersen is not an NFB-member, his claims cannot form the basis of NFB's standing. Likewise, non-NFB members and non-California individuals cannot provide a basis to establish NFB's standing.[2] NFB's

---

[1] Under the *Hunt* test, an association has standing to pursue claims on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343.

[2] As Defendants argued initially, allegations regarding non-NFB members and non-California individuals should be disregarded for purposes of assessing NFB's standing. (MTD, 12.) In opposition, Plaintiffs contend that the allegations are proper because they demonstrate the "widespread" nature of the alleged discrimination and bolster Hingson's claim of deterrence. (Opp., 8.) Defendants maintain that the references are improper because NFB cannot possibly secure any relief based on claims asserted by non-members and non-California individuals. Under the *Hunt* test, NFB's standing is analyzed with reference to the standing of its members only, not other interested or related individuals. Plaintiffs' allegations only unfairly prejudice Uber in the defense of these allegations and they must be disregarded.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

2.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

standing therefore appears to be based on the two remaining NFB members discussed in the FAC, Michael Kelly and Manveen Chahal. As non-Uber users, Kelly and Chahal's own claims to standing are tenuous at best: they are not even authorized to use the Uber app to request transportation. Under these circumstances, NFB simply cannot be permitted to pursue statewide injunctive or declaratory relief against Uber based on the alleged injuries suffered by a few individuals. *See Access 123, Inc. v. Markey's Lobster Pool, Inc.*, 2001 U.S. Dist. LEXIS 12036 *11 (D.N.H. 2001) (Plaintiff organization had not demonstrated that any member, other than the individual plaintiff, would have standing to bring claims against the defendant and thus court noted, "[i]n this case, Access 123 is merely repeating the claims brought by [individual plaintiff], himself. [Individual plaintiff] appears to be the better party to assert his own claims"); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145 *33 (S.D.N.Y. 2003) (dismissing associational plaintiff because its claims were identical to named plaintiffs and individuals were "better plaintiffs.")

Plaintiffs nevertheless contend that NFB has standing so long as a single NFB member has standing. (Opp., 5.) *Hunt* does ***not*** stand for the proposition that an organization may identify a single member with standing and thereafter secure broad associational standing. The case law is clear that standing, if any, cannot be "broader or more extensive" than that of its members. *See, e.g., Small v. General Nutrition Cos.*, 388 F. Supp. 2d 83, 98 (E.D.N.Y. 2005).

Plaintiffs counter by arguing "unanimity" within the membership is not required to establish associational standing. *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F. 2d 1401, 1409 (9th Cir. 1991) (court permitted an association of construction contractors to challenge the constitutionality of a statute where its membership included both individuals injured by and benefiting from the statute.) However, the "conflict" at issue in *Coal. for Econ. Equity* centered on the fact that the organization's individual members had various different views regarding a potential statute and may have been impacted differently as a result of any remedies secured by the organization. The court found this was not sufficient to defeat standing because, as the court held: "an organization's internal conflicts properly should be resolved through its own internal procedures." *Coal. for Econ. Equity*, 950 F. 2d at 1409. At issue here, however, is not an internal

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

3.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

dispute between NFB members, but the fact a presumptive majority of impacted members have already agreed with Uber to pursue the relief NFB seeks on their behalf in arbitration on an individual basis.  In other words, these members are ***contractually prohibited*** from having NFB pursue the claims alleged in this lawsuit in Court on any sort of representative basis.

Because NFB's membership includes numerous individuals bound to arbitrate their claims, participation of individual members is necessary to determine: (1) which members are bound to arbitrate and which are not; (2) whether there are a sufficient number of non-bound members on whose behalf it would be appropriate to have NFB pursue claims in a representative capacity; and (3) even if so, whether relief can be crafted in a way that does not circumvent the contractual arrangement between Uber and its NFB-member users.  Therefore, NFB cannot satisfy the third prong of the *Hunt* test.[3]

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734 (N.D. Ill. 2010) is instructive.  There, the court stated that associations suing in a representative capacity are bound by the same limitations that bind their members and held that a plaintiff association lacked standing because it was inappropriate to allow the association to pursue claims on behalf of its members who were subject to arbitration.  *Id.* at 744-745.  More specifically, the court held: "because at least some of [the association's] members signed provider agreements that include arbitration clauses (an assertion that plaintiffs do not dispute), then the participation of individual members is required to determine whether which if any of their claims are subject arbitration, and [the association] fails to satisfy the third element of the *Hunt* test."  *Id.* at 744.

The other cases most analogous to the present situation are those cited by Defendants in their motion: *Pa. Chiropractic Ass'n*, *In re Managed Care Litigation*, 2003 U.S. Dist. LEXIS 23035 (S.D. Fla. 2003)[4] and *Maryland Optometric Association v. Davis Vision, Inc. et al.* (*see* Defendants' RJN,

---

[3] Simply because NFB seeks injunctive and declaratory relief as opposed to damages, it does not automatically follow that participation of individual members is unnecessary.  (Opp. 3.)  Associational standing has been denied in other cases where organizations seek only injunctive or declaratory relief.  *See e.g. Friends for American Free Enterprise Ass'n v. Wal-Mart Stores, Inc.*, 284 F. 3d 575, 576 (5th Cir. 2002) (association lacked standing to seek injunctive relief for tortious interference claims because case required participation of individual members of association whose contracts differed); *DDFA of South Florida, Inc. v. Dunkin' Donuts, Inc.*, 2002 WL 1187207 *7 (S.D. Fla. 2002) (because participation of individual members was required, association lacked standing to seek declaratory relief related to breach of contract claims).

[4] Plaintiffs assert that *In re Managed Care Litigation* is irrelevant because of a later order at 298 F. Supp. 2d 1259 (S.D. Fla. 2003).  However, this subsequent order addressed only the remaining ***non-arbitrable claims*** not previously

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

4.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

Ex. B.)  Under these well-reasoned decisions, NFB cannot proceed on behalf of a portion of its membership without relinquishing its claim to associational standing.  Plaintiffs do not, and cannot, persuasively distinguish these cases.  In fact, the Fourth Circuit subsequently affirmed the district court's decision in *Maryland Optometric Association* that the plaintiff association lacked representational standing because some of its members were bound by arbitration clauses and others were not, thereby necessitating individual participation in the suit.  *Davis Vision, Inc. v. Maryland Optometric Ass'n,* 187 Fed. Appx. 299, 302-03 (4th Cir. 2006).

The reasoning behind these decisions is sound.  Permitting NFB to secure broad injunctive or declaratory relief on behalf of these members would effectively destroy the arbitration agreement by allowing NFB's members to circumvent their contractual obligation simply by designating a representative to pursue the relief in their place.  This result is contrary to the strong, well-established policy in favor of enforcing arbitration agreements.  *See American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310-2311 (2013) (recognizing the strong public policy in favor of arbitration and holding that the FAA does not permit courts to invalidate a contractual waiver of class arbitration on the ground that a plaintiff's cost of individually arbitrating a federal statutory claim exceeds potential recovery); *AT&T Mobility LLC, v. Concepcion*, 131 S. Ct. 1740, 1745 (2011); *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Because the arbitration agreements between Uber and its users cannot be disturbed, the only way NFB can pursue standing on behalf of non-bound NFB members is to abandon those members bound by the agreement whom NFB believes have also been injured.  However, this is contrary to the entire purpose of conferring associational standing upon an organization.

Finally, even if the Court were to endorse the notion that NFB can abandon some members to sue on behalf of only a portion of its membership, which the case law suggests it cannot do, the relief sought by NFB ***cannot be fashioned*** such that it applies to those individuals alone.  This is

---

dismissed.  The only other case offered involving members bound by arbitration agreements is *EA Indep. Franchisee Assoc., LLC, v. Edible Arrangements Int'l, Inc*, 2011 WL 2938077 (D. Conn. 2011).  There, the court offered no reasoning as to why the existence of an arbitration agreement did not defeat associational standing as to the plaintiff association's declaratory relief claim.  The decision was issued prior to *American Express Co. v. Italian Colors Restaurant* where the U.S. Supreme Court firmly upheld the enforceability of class and collective action waivers in arbitration agreements.  133 S. Ct. 2304, 2310-2311 (2013).  The circumstances here require a different result than in *Edible Arrangements*, one that is consistent with the weight of authority and recent Supreme Court precedent regarding the enforceability of class or representative action waivers.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

fatal to NFB's standing because, as stated above, an organization's standing cannot be "broader or more extensive" than that of its members.  *Small*, 388 F. Supp. 2d at 98.

### 2. Even If NFB Possessed Associational Standing, It Is Not Entitled To The Broad Relief It Seeks.

NFB also lacks standing because it cannot seek state-wide relief based on the fact that *some* drivers who utilize the uberX platform *sometimes* refuse to provide transportation services to blind individuals with service animals.  Plaintiffs cite to *Celano v. Marriott Int'l, Inc.*, 2008 U.S. Dist. LEXIS 6172 (N.D. Cal. 2008) to support their argument that because NFB is targeting Uber's allegedly discriminatory policies, a broad, state-wide injunction is appropriate.  However, in *Celano* the plaintiff identified **specific corporate policies** that applied to all Marriott golf courses in California.  Here, Plaintiffs do not similarly assert a common corporate policy, applicable across California.  Plaintiffs in fact **concede** that blind individuals successfully book rides with drivers who utilize the uberX platform.  The Opposition makes clear that Plaintiffs take issue with the conduct of individual drivers, not with a uniform "policy" of Uber's.

Likewise, *Doud v. Yellow Cab Co. of Reno, Inc.*, 2014 WL 4302552 *4 (D. Nev. 2014) is distinguishable.  (Opp., 9.)  There, the plaintiffs pointed to Yellow Cab's **uniform policy** of directing its taxi drivers to call wheelchair-adapted vehicles from its sister company any time the taxi drivers encountered customers using motorized scooters.  By way of an injunction, the plaintiffs sought modification of the common policy applicable to all Yellow Cab taxi drivers.  Here, there is no stated common policy that violates the ADA and links the thousands of independent third-party transportation providers together.

NFB's claims are more analogous to those asserted by the plaintiffs in *Clark v. McDonald's*, 213 F.R.D. 198 (D. N.J. 2003) and *Moreno v. G&M Oil Co.*, 88 F. Supp. 2d 1116 (C.D. Cal 2000). In those cases, the plaintiffs were not permitted to seek broad injunctive relief like that sought by NFB here because the plaintiffs made no showing that they were subjected to or about to be subjected to discrimination at restaurants and gas stations they never visited.  Here, the two members NFB can rely on to establish standing (*i.e.* Kelly and Chahal) have asserted only this: they *might* accompany another person with a Uber user account when that person attempts to book third-party

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

6.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1  transportation via the uberX platform and they *might* be refused service.  Under *McDonald's* and

2  *Moreno*, these allegations are clearly insufficient to permit NFB to seek a state-wide injunction.

3          **3.      NFB Lacks Standing To Sue In Its Own Right Because It Has Not**
                      **Sufficiently Alleged An Injury In Fact.**

4

5          Plaintiff NFB's vague assertions regarding frustration of mission and diversion of resources

6  do not sufficiently establish an injury-in-fact under the ADA.  Prudential standing principles bar

7  NFB from enforcing the ADA on its own behalf.  Accordingly, the First Cause of Action fails to the

8  extent it is based on the allegation that NFB has standing to sue in its own right.

9          NFB is limited in its ability to enforce the ADA on its own behalf given that Plaintiffs have

10  not alleged that NFB itself is being subjected to, or is under the threat of being subjected to,

11  discrimination.   In *McDonald's*, the court undertook an extensive analysis of the ADA and

12  concluded that the ADA does not permit an organization who has not itself been subjected to

13  discrimination to sue.  213 F.R.D. at 208-209.  The language of the ADA conferring a private right

14  of action for injunctive relief on "any person who is being subjected to discrimination on the basis of

15  disability" or "who has reasonable grounds for believing that such person is about to be subjected to

16  discrimination," erects a "prudential barrier precluding organizational standing."  *Id.*  The court

17  reached this conclusion notwithstanding the fact that it acknowledged the organization was in fact

18  suffering frustration of its mission because the ADA does not reference the rights of others when it

19  grants an aggrieved person the right to bring suit.  Rather, the available remedies are those afforded

20  to "any person who is being subjected to discrimination."  *See* 42 U.S.C. § 12188(a)(1).  In short, the

21  ADA authorizes plaintiffs to sue on their own behalf only to vindicate their *own* rights; multiple

22  other courts analyzing the purpose and structure of the ADA have reached the same conclusion.[5]

23

24  ---

    [5] *See e.g. Moreno*, 88 F. Supp. 2d at 1117 (concluding, as a matter of prudential standing, that the language of section 12188(a)(1) did not permit a plaintiff encountering architectural barriers at one gas station to assert claims on behalf of others similarly situated with respect to 82 other gas stations that the plaintiff had not visited); *Autism Soc'y v. Fuller*, 2006 U.S. Dist. LEXIS 33979 *48-49 (W.D. Mich. 2006) (Court found that disability rights organization alleging diversion of resources lacked standing to sue in its own right under the ADA and stated, "not every entity that is being tangibly harmed by an ADA violation has standing to sue under the ADA…This is so not due to the operation of any judicially fashioned standing limitation, but rather because Congress itself has limited the class of parties on which the ADA bestows rights"); *Hoepfl v. Barlow*, 906 F. Supp. 317, 324 (E.D. Va. 1995) ("the scheme Congress enacted to enforce the ADA envisions action by the Attorney General to obtain relief to benefit the disabled community at large. In enacting the statute, Congress did not intend to alter traditional rules governing when a plaintiff has standing to pursue her claim"); *W.G. Nichols, Inc. v. Ferguson*, 2002 U.S. Dist. LEXIS 10707 *51 (E.D. Pa. 2002) (finding that Congress

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

7.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1    Plaintiffs' reliance on *Smith v. Pacific Props. & Dev. Corp.*, 358 F. 3d 1097, 1105 (9th Cir.

2    2004) is misplaced because the plaintiff organization in *Smith* did not allege violations of the ADA,

3    which, as described above, entails a fundamentally different test to prove injury.  In *Smith*, the Ninth

4    Circuit held that an organization can establish injury in fact for individual standing on its own behalf

5    under the Fair Housing Act ("FHA") if the organization can demonstrate frustration of its mission

6    and diversion of its resources.[6]  (Opp., 7.)  Likewise, *Valle del Sol Inc. v. Whiting*, 732 F. 3d 1006,

7    1018 (9th Cir. 2013), the only other case Plaintiffs cited in support of their position, did not address

8    organizational standing in the ADA-context.[7]

9    However, even if the Court applied the *Smith* standard, as Plaintiffs contend it should, NFB's

10   allegations nevertheless fall short of establishing an injury in fact.  An organization has suffered

11   injury under this standard only where a defendant's illegal practices have "perceptibly impaired" the

12   plaintiff organization's ability to provide the services it was formed to provide.  *Havens Realty Corp.*

13   *v. Coleman*, 455 U.S. 363, 379 (1982); *El Rescate Legal Services, Inc. v. Executive Office of*

14   *Immigration*, 959 F. 2d 742, 748 (9th Cir. 1992) (plaintiff organization had standing to challenge

15   defendant's application of Bureau of Immigration Affairs policy where implementation of policy

16   "perceptibly impaired" organization's ability to assist Central American refugees in obtaining

17   asylum and avoiding deportation in immigration court proceedings).

18   NFB does not meet this standard.  First, as Defendants argued in the opening brief, NFB's

19   alleged injury cannot arise from its expenditure of resources on this suit.  *See La Asociacion de*

20   *Trabajadores de Lake Forest v. Lake Forest*, 624 F. 3d 1083, 1088 (9th Cir. 2010) (An organization

21   "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money

22   fixing a problem that otherwise would not affect the organization at all.  It must instead show that it

23   would have suffered some other injury if it had not diverted resources to counteracting the

24

25   limited organizational standing under the ADA to those entities that had suffered direct discrimination as a result of their
     known association with disabled persons).

26   [6] The language of the enforcement provision of Title III of the ADA is not nearly as broad as the enforcement provision

27   of the FHA.  *See Small*, 388 F. Supp. 2d at 93 (Court concluded that unlike the FHA, the language of the ADA "erected a
     prudential barrier precluding organizational standing to organizations that are not suffering, or under threat of suffering,
     direct discrimination.")

28   [7] In *Valle del Sol Inc.*, the plaintiff organization sought a preliminary injunction in an action challenging an Arizona
     statute aimed at criminalizing the harboring and transporting of unauthorized aliens in Arizona.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

8.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

problem"); *Walker v. City of Lakewood*, 272 F. 3d 1114, 1124 n.3 (9th Cir. 2001) ("standing must be established independent of the lawsuit filed by the plaintiff").

Even if NFB had adequately alleged that it devoted resources to combating Uber's alleged discrimination (which it did not), NFB also fails to allege specific facts indicating that those resources were diverted *away from* other activities—*i.e.*, that it has been unable to engage in conduct it otherwise would have. (Opp., 8.) Plaintiffs do assert that NFB's mission has been frustrated because Uber's alleged discrimination interferes with attendance at NFB's meetings and limits transportation options for individuals traveling in connection with NFB's advocacy work. However, these unspecific contentions fall short of establishing that NFB's ability to provide the services it was formed to provide has been "perceptibly impaired" by Uber's allegedly discriminatory practices. Moreover, these instances, if anything, constitute injury to members, not to NFB itself.

In sum, NFB's bare assertions regarding frustration of mission and the diversion of resources away from unidentified activities do not suffice to establish an injury-in-fact, particularly under the more rigorous standard applicable under the ADA. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")

For all the foregoing reasons, NFB lacks standing to sue in its own right and it should be dismissed from this case with prejudice.

### 4. Hingson Lacks Standing To Sue Because He Has Not, And Cannot, Allege Actual Notice Of ADA Violations.

Plaintiffs argue that Hingson may sue because under a deterrence-based theory, second-hand knowledge regarding a discriminatory barrier or practice is sufficient to confer standing. Plaintiffs' argument goes too far and must be rejected.

Under Ninth Circuit law, once a plaintiff obtains "actual notice" of discriminatory conditions, the fact that the plaintiff is thereafter deterred from visiting the location can constitute sufficient injury to confer standing: "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury under the ADA continues." *Pickern v. Holiday Quality Foods, Inc*., 293 F. 3d 1133, 1137 (9th Cir. 2002). Plaintiffs fail to cite a single

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1    case in the ADA-context (and Defendants have found no such case) where a plaintiff successfully

2    based "actual notice" of alleged discrimination on second-hand accounts.

3         In cases analyzing alleged deterrence-based injuries (including the *Kohler* case cited by

4    Plaintiffs), courts recognize that injury by deterrence contemplates some sort of initial personal

5    encounter with discrimination or personal knowledge of discrimination.  *Kohler v. CJP, Ltd.*, 818 F.

6    Supp. 2d 1169, 1174 (C.D. Cal. 2011) (plaintiff actually visited shopping center, personally viewed

7    the alleged barriers and thereafter asserted that he was deterred from entering the center because of

8    those barriers); *Parr v. L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1080-81 (D. Haw. 2000)

9    (once plaintiff either encountered discrimination or learned of the alleged violations through ***expert***

10   ***findings*** or ***personal observation*** of alleged physical barrier, he had "actual notice" that Defendant

11   did not intend to comply with the ADA); *Small*, 388 F. Supp. 2d at  88-89 (in holding that a

12   plaintiff's allegations of awareness of a barrier and resulting deterrence were sufficient to establish

13   standing, the Court explained: "[plaintiff] observed the architectural barriers to entry at the seven

14   stores because he regularly travels in their immediate vicinity.  Put differently, [plaintiff] appears to

15   argue that he had 'actual knowledge' of the barriers to entry at these seven stores.")[8]  Second-hand

16   knowledge obtained from other members is simply not sufficient to provide actual notice.

17        Plaintiffs also cite to *Doran v. 7–Eleven, Inc.*, 524 F. 3d 1034 (9th Cir. 2008) in support of

18   their position that Hingson's "uncertainty" regarding whether he might be refused service if he

19   actually sought to book a ride using the uberX service constitutes an injury-in-fact under the ADA.

20   (Opp., 11-12)  However, unlike Hingson, the plaintiff in *Doran **personally encountered*** several

21   barriers at a convenience store and thereafter alleged that he was deterred from revisiting the store.

22   *Id.* at 1042.  The court found that plaintiff had suffered "a legally cognizable injury for purposes of

23   Article III standing, the first time that he encountered architectural barriers at the [ ] 7-Eleven."  *Id.*

24   at 1042-1043.   The court's discussion regarding "uncertainty" addressed whether plaintiff had

---

[8] *See also, Freezor v. Chico Lodging, LLC*, 422 F. Supp. 2d 1179, 1181-1182 (E.D. Cal. 2006) (plaintiff who visited the defendant hotel, encountered accessibility barriers and as a consequence was deterred from visiting again sufficiently alleged standing); *Daubert v. A 1 Tours & Travel*, 2006 U.S. Dist. LEXIS 41831 *11 (E.D. Cal. 2006) (plaintiff's allegations that he made two attempts to obtain transportation services that were accessible and that he was thereafter deterred from trying again were sufficient to establish standing); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 2008 U.S. Dist. LEXIS 30594 *4, 13 (S.D.N.Y. 2008); *Kreisler v. Second Ave. Diner Corp.*, 2012 U.S. Dist. LEXIS 129298 *14 (S.D.N.Y. 2012).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

10.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

standing to challenge *other* potential ADA violations at 7-Eleven that he was unable to discover because he was deterred from revisiting the store after encountering various barriers. *Id.* *Doran* does not hold that uncertainty regarding the scope and extent of ADA violations is alone sufficient to establish an injury in fact—it must be in conjunction with actual notice.[9]

Plaintiffs also contend that the Court should disregard various cases cited by Defendants. (Opp., 12.)  For example, Plaintiffs state that the plaintiff in *Resnick v. Magical Cruise Co.*, 148 F. Supp. 2d 1298, 1303 (M.D. Fla. 2001) is unlike Hingson because there, the plaintiff did not have any knowledge concerning the alleged barriers he challenged.  Plaintiffs misstate the facts of *Resnick*.  In *Resnick*, the plaintiff *did* allege knowledge of the alleged barriers but the court held that because the plaintiff's knowledge was not based on personal observation or expert findings, it did not constitute the "actual knowledge" sufficient to confer standing. *Id.*  The same result is warranted here.  While Hingson alleges knowledge of Uber's allegedly discriminatory practices, he has not alleged "actual knowledge" of discrimination.  Accordingly, Hingson's claims must be dismissed with prejudice for lack of standing.

### 5.   Both NFB And Hingson Lack Standing To Sue Under Unruh And The Second Cause Of Action Must Be Dismissed.

#### a.   NFB Lacks Standing To Sue On Its Own Behalf Under Unruh.

NFB's associational standing under Unruh fails for the same reasons it fails under the ADA.  NFB also lacks standing to sue in its own right under Unruh because it has not demonstrated a violation of its own civil rights.  In opposition to Defendants' motion to dismiss, Plaintiffs contend only that NFB possesses standing to pursue ADA claims on its own behalf.  (Opp. 7-8.)  Presumably Plaintiffs no longer contend that NFB has standing to sue in its own right under Unruh.  In any event, the case law is clear that NFB's alleged injury (*i.e.* frustration of mission and diversion of resources) does not confer standing on NFB to sue in its own right under Unruh.  *See Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal. App. 3d 1377, 1383 (1990) (holding that

---

[9] The other cases Plaintiffs cite should be disregarded because they do not arise in the ADA-context.  *See Davoll v. Webb*, 194 F. 3d 1116, 1132–33 (10th Cir. 1999) (employment discrimination case); *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, (1977) (same).  Plaintiff also cites to another fair housing case: *Pinchback v. Armistead Homes Corp.*, 907 F. 2d 1447, 1452 (4th Cir. 1990).  As noted previously, the FHA and ADA are distinct statutes with different standing requirements.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

11.

Case No. 3:14-cv-04086-NC

1  Unruh was intended as a remedy only for individuals who actually suffered discrimination at the

2  hands of a business establishment); *Molski v. Conrad's Rest.*, 2005 U.S. Dist. LEXIS 34279 *3

3  (C.D. Cal. 2005) ("An organization cannot sue under California Civil Code § 52 as an 'aggrieved

4  person' without demonstrating a violation of its own civil rights").

5      As to Plaintiff NFB, the Second Cause of Action under Unruh fails because NFB lacks both

6  standing to sue on behalf of its members and standing to sue in its own right.

7          **b.     Hingson Does Not Possess Standing To Sue Under Unruh.**

8      Plaintiffs assert that Hingson has standing to pursue his ADA claim and that because a

9  violation of the ADA constitutes a violation of the Unruh Act, he has standing to sue under Unruh as

10  a "person aggrieved." (Opp., 13.) However, "a federal statute's standing requirements does not

11  determine the scope of standing provided by a California statute. Standing requirements will vary

12  from statute to statute based upon the intent of the Legislature and the purpose for which the

13  particular statute was enacted." *Midpeninsula Citizens*, 221 Cal. App. 3d at 1385 (discussing

14  definition of "person aggrieved" under Unruh). For purposes of standing under Unruh, the relevant

15  question is whether Hingson is a "person aggrieved." A plaintiff must ***actually suffer***

16  ***discriminatory conduct*** in order to be considered a "person aggrieved" with standing to sue for

17  Unruh claims. *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414 (2008) (Unruh standing

18  limited to victims of the defendant's discriminatory act). Hingson has never attempted to book a

19  ride using the uberX platform, has never personally been refused service and has never accompanied

20  another person in a vehicle booked using the uberX platform. Therefore, Hingson has not been the

21  victim of any discriminatory act, he is not a "person aggrieved" with standing to sue under Unruh,

22  and his Second Cause of Action must therefore be dismissed.

23          **6.     Hingson Also Lacks Standing To Pursue A Claim Under The DPA.**

24      Contrary to Plaintiffs' assertion, a cause of action for damages under the DPA does not

25  include deterrence claims.[10] The DPA's express language limits damages claims to those individuals

26  who are actually denied equal access. *See* Civ. Code § 54.3. Plaintiffs cite to Sections 55.31(a)(2)

27  and 55.56 as support for their position that deterrence-based claims are permissible. However, those

28

---

[10] Plaintiffs do not seek injunctive relief under Section 55. (FAC, ¶ 119.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

12.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1    sections apply to construction-related accessibility claims and even if they were applicable to the

2    allegations at issue here (which they are not), Plaintiffs did not assert claims under those sections.[11]

3    (FAC, ¶¶ 112-119, 124-125.)

4        Plaintiffs also rely on *Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 437

5    (N.D. Cal. 1994).  However, a recent California appellate court decision, *Reycraft v. Lee*, 177 Cal.

6    App. 4th 1211, 1226-1227 (2009), disagreed with the *Arnold* court's conclusion:

7        "Section 55 of the DPA most definitely provides the remedy of injunctive relief for
         deterrence claims, because it allows a disabled plaintiff who is "aggrieved or
8        potentially aggrieved" to file an action "to enjoin the violation." (§ 55.) As the court
         in *Arnold* recognized, section 54.3 of the DPA does not include any express language
9        that could be construed to include deterrence claims. Instead, a disabled plaintiff can
         file an action seeking "actual damages" against any person or business "who denies
10       or interferes with admittance to or enjoyment of" public places...[W]e must conclude
         the statutes as written were intended to provide two distinct remedies to disabled
11       plaintiffs depending on whether they were simply deterred (i.e., "potentially
         aggrieved") or actually denied equal access…In other words, we disagree with the
12       federal district court's analysis in *Arnold* and would have denied standing under
         section 54.3 to the plaintiffs in that case." *Id.*
13

14       In short, a disabled person has standing to pursue a damages claim under Section 54.3 only if

15   the defendant actually denied him or her equal access on a particular occasion.  *Donald v. Cafe*

16   *Royale, Inc.*, 218 Cal. App. 3d 168, 183 (1990) ("to maintain an action for damages pursuant to

17   section 54 et seq. an individual must take the additional step of establishing that he or she was

18   denied equal access on a particular occasion.")  Hingson's DPA claim therefore fails.

19       **B.    At A Minimum, Pedersen Must Provide A More Definite Statement Pursuant To
               FRCP 12(e).**
20

21       Pedersen asserts that the substance of his claims is clear and that Defendants may obtain

22   additional details regarding Pedersen's allegations through discovery.  (Opp., 14.)  Defendants'

23   argument is not merely that details are lacking (though they are).  Rather, Defendants contend that

24   because Pedersen lacks details regarding his alleged use of an unidentified person's unidentified

25   account, Defendants cannot even determine whether he has standing to sue in the first place.  The

26   uncertainty goes to the very issue of whether the court has the power to hear Pedersen's case.

27   _____
     [11] Plaintiffs also cite to *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062 (N.D. Cal. 2014) as support for their position that
28   Hingson can pursue a deterrence based claim under Section 54.3 of the DPA.  However, *Rodriguez* dealt with
     construction-related accessibility claims and addressed a disabled plaintiff's ability to assert deterrence based claims
     under Section 55.56 of the DPA, not Section 54.3.  *Id.* at 1076-1077.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

13.

Case No. 3:14-cv-04086-NC
DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1   Defendants should not be required to proceed to the discovery phase absent sufficient showing of

2   Pedersen's standing.  *See McEntee v. Henderson*, 154 F. Supp. 2d 1286, 1292 (S.D. Ohio 2001)

3   (plaintiff did not show how more time to obtain discovery would enable him to defeat jurisdictional

4   motion to dismiss for failure to state claim under FRCP 12(b), and, thus, employee was not entitled

5   to postponement of court's ruling on motion to obtain discovery).

6       Pedersen's claims should be dismissed for failure to sufficiently allege standing.

7   Alternatively, Defendants move for an order requiring Pedersen to provide a more definite

8   statement.

9       **C.     Uber Does Not Own, Lease Or Operate A Place Of Public Accommodation.**

10      Plaintiffs contend that Defendants are primarily engaged in the transportation business and/or

11  that Defendants operate a demand responsive transportation system.  (Opp., 16-18.)  Based on the

12  foregoing, Plaintiffs assert violations of 42 U.S.C. §§ 12184 and 12182(b)(2)(C).  Defendants

13  dispute Plaintiffs' allegations and contend these allegations are meritless.  However, for purposes of

14  this motion, Defendants contend only that Plaintiff's First, Second, Third and Fourth Causes of

15  Action should be dismissed ***to the extent*** they are based on the allegation that Uber owns, operates or

16  leases a place of public accommodation.[12]  *See* 42 U.S.C. § 12182(a).

17      Without question, Defendants do not own, operate or lease a "place of public

18  accommodation" under 42 U.S.C. § 12182(a).[13]  Despite Plaintiffs' arguments to the contrary, the

19  individual vehicles driven by third-party transportation providers who utilize the uberX platform to

20  book passengers are not places of public accommodation.   The twelve categories of covered

21  "facilities" are listed under Section 12181(7).  Without any supporting case law, Plaintiffs assert that

22  the vehicles should be considered a "travel service" under Section 12181(7)(F).  That contention

23  must be rejected because "travel service" is listed within a longer list of service establishments (*i.e.*

24  banks, beauty shops and gas stations) that does not include anything remotely similar to a moving

25

26  [12] Defendants note that a Statement of Interest describing the Title III framework was filed by the United States on
    December 23, 2014.  Defendants' motion seeks to dismiss Plaintiffs' claims under Rule 12(b)(6) only to the extent they

27  are dependent on the allegation that Defendants own, operate or lease a place of public accommodation.  Defendants
    recognize that Plaintiffs' ADA and derivative state law claims will not be dismissed in their entirety should the Court

28  grant this portion of the motion.
    [13] Plaintiffs do not contest Defendants' assertion that Uber's app and/or website do not constitute places of public
    accommodation.  Accordingly, Plaintiffs have waived any such arguments.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

14.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT

1    vehicle.  In *Spector v. Norwegian Cruise Line, Ltd.*, 545 U.S. 119, 129 (2005), the court's

2    determination that a cruise ship fell within the statutory definition of a place of public

3    accommodation rested on the fact that the ship offered the following: a hotel, restaurant and place of

4    recreation and exercise.  Each of the foregoing facilities is listed under Section 12181(7).  Plaintiffs

5    do not, and indeed cannot, plausibly assert that of the 12 categories of facilities listed under Section

6    12181(7), one of those facilities operates within the vehicles providing transportation services here.

7    The vehicles at issue in this case, which passengers occupy for minutes at a time, are entirely unlike

8    cruise ships.

9        Even if, as Plaintiffs contend, Defendants could be construed as "operating" the vehicles at

10   issue here, the vehicles do not themselves constitute places of public accommodation.  In short, the

11   ADA separately addresses discrimination against the disabled in the public accommodation context

12   (42 U.S.C. § 12182(a)) and discrimination against the disabled in transportation services (42 U.S.C.

13   § 12184(a)).  The foregoing makes clear that the public accommodation framework does not and

14   should not apply to Defendants.  Accordingly, the First through Fourth Causes of Action should be

15   dismissed for all Plaintiffs, in part, to the extent they are based on the contention that Defendants

16   own, operate or lease a place of public accommodation.

17   **III.    CONCLUSION**

18       Plaintiffs NFB and Hingson should be dismissed from this lawsuit with prejudice.  Plaintiff

19   Pedersen should be required to amend his allegations to more plainly establish the basis for his

20   standing.  Finally, Plaintiffs' claims should be dismissed in part to the extent based on the allegation

21   that Uber owns, leases or operates a place of public accommodation under the ADA.

23   Dated: December 24, 2014

24                                      /s/*Andrew M. Spurchise*
25                                      ANDREW M. SPURCHISE
                                        LITTLER MENDELSON, P.C.
26                                      Attorneys for Defendants
27                                      UBER TECHNOLOGIES, INC., RASIER, LLC,
                                        RASIER-CA, LLC

     Firmwide:130769280.3 073208.1034

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

15.

Case No. 3:14-cv-04086-NC

DEFS' REPLY TO PLTFS' OPP TO MTN TO DISMISS FAC AND/OR FOR MORE DEFINITE STATEMENT