UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA; MICHAEL KELLY; MICHAEL HINGSON; MICHAEL PEDERSEN,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.; RASIER, LLC; RASIER-CA, LLC,<br><br>Defendants. | Case No. 14-cv-04086 NC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

The National Federation of the Blind of California and three individuals allege that Uber and its California subsidiaries discriminate against blind persons by refusing to transport guide dogs. Plaintiffs charge that Uber's practices violate the Americans with Disabilities Act, the California Unruh Civil Rights Act, and the California Disabled Persons Act. Defendants move to dismiss the complaint for failure to establish standing and failure to state a claim, and also move for a more definite statement. Specifically, defendants allege that NFBC, Hingson, and Pedersen do not have standing to sue under the ADA or state law claims and that Uber is not a public accommodation under the ADA.

Guided by the policy of encouraging private enforcement of anti-discrimination statutes, the Court finds that plaintiffs have sufficiently alleged both standing and a plausible claim under the ADA and state law. Therefore, the Court DENIES the motion to dismiss on all grounds. Uber must answer the complaint.

Case No.: 14-cv-04086-NC

## I. BACKGROUND

UberX is a widely available transportation service that uses mobile software applications to arrange rides between passengers and Uber's fleet of UberX drivers. First Amended Complaint ("FAC"), Dkt. No. 17, at ¶ 2. To use UberX services, an individual must either (1) create a user account, and provide Uber with his phone number, credit card information, and email address, or (2) travel as the guest of an individual with an Uber user account. FAC ¶ 29. The customer then submits a request on behalf of himself and other passengers through Uber's mobile software application. FAC ¶ 30. Once Uber identifies the vehicle that will provide the customer with transportation, Uber notifies the customer via text message or through its smart phone application. FAC ¶ 30. The notification includes vehicle and driver identification information and an estimated time of arrival. FAC ¶ 30. When the vehicle has arrived, Uber notifies the customer, and the customer and passengers may board the vehicle. FAC ¶ 30. Uber provides several different transportation services in California, and UberX is one of Uber's most cost-effective transportation services. FAC ¶ 29. Those individuals who download Uber's mobile phone application agree to Uber's terms of service, including an agreement to submit all disputes to binding arbitration. Dkt. No. 25 at Exhibit A.

Plaintiff National Federation of the Blind of California ("NFBC") is a nonprofit association of blind Californians, which aims to achieve integration of the blind into society on a basis of equality with the sighted. FAC ¶ 22. Members of NFBC use UberX on Uber's smart phone application using text-to-speech technology. FAC ¶ 40. Additionally, members of NFBC use UberX as guests of UberX customers, without creating their own Uber account. FAC ¶ 43.

For example, Manveen Chahal is a NFBC member and does not have an Uber account. FAC ¶ 43. On May 21, 2014, Jamey Gump used the Uber mobile app to request an UberX vehicle for himself and Chahal. FAC ¶ 43. Both men had service animals with them. FAC ¶ 43. When the UberX vehicle pulled up to the curb, Gump and Chahal attempted to enter the vehicle and opened a passenger door. FAC ¶ 43. The UberX driver

Case No.:14-cv-04086-NC 2

began shouting "no dogs!" and cursed at the men. FAC ¶ 43. The UberX driver left without transporting Gump and Chahal. FAC ¶ 43.

Plaintiff Michael Kelly is blind, uses a guide dog, and is a member of NFBC. FAC ¶ 66. Kelly travels with his girlfriend, Brooklyn Rodden, who is also blind and uses a guide dog. FAC ¶ 66. Rodden has an Uber account that she uses to request UberX vehicles for herself and Kelly. FAC ¶ 66. On September 13, 2014, an UberX driver refused to transport Rodden and Kelly because of their guide dogs. FAC ¶ 66. Both intend to keep using UberX transportation services. FAC ¶ 66.

Plaintiff Michael Hingson is blind, uses a guide dog, and is a member of NFBC. FAC ¶ 67. Hingson does not have an Uber account and has not used UberX. FAC ¶ 67. On October 9-12, 2014, Hingson attended the annual state convention for NFBC in El Segundo, California. FAC ¶ 67. There, Hingson met attendees with service animals who were being denied transportation by UberX to and from the convention hotel. FAC ¶ 67. Hingson was deterred from using UberX on December 5, 2013, because he could not afford to be delayed by an UberX driver refusing to take his guide dog. FAC ¶ 67. Hingson would like to use UberX in the future, but does not believe that UberX is a reliable source of transportation. FAC ¶ 67.

Plaintiff Michael Pedersen is blind and uses a guide dog. FAC ¶ 73. On September 12, 2014, Pedersen's wife used her Uber account to request an UberX for Pedersen. FAC ¶ 73. Pedersen heard the UberX driver pulled up in front of his home, but the driver refused to transport Pedersen's guide dog. FAC ¶ 73. As a result, Pedersen missed his connection to a commuter shuttle and was late for work. FAC ¶ 73. Pedersen would like to keep using UberX without fear that he will be denied service and made late for work or other appointments. FAC ¶ 73.

Defendant Uber Technologies, Inc. is a for-profit transportation network company. FAC ¶ 27. Defendants Rasier LLC and Rasier-CA LLC are wholly-owned subsidiaries of Uber Technologies, Inc. that operate within the state of California. FAC ¶ 28. Defendants (collectively, "Uber") use smart phone software applications to arrange transportation

Case No.:14-cv-04086-NC 3

between passengers and its fleet of drivers. FAC ¶ 27.

Plaintiffs allege that Uber engages in discriminatory practices by permitting UberX drivers to deny access to blind individuals and their guide dogs. Plaintiffs bring claims under (1) Title III of the Americans with Disabilities Act ("ADA"); (2) California Unruh Civil Rights Act ("Unruh Act"); (3) California Disabled Persons Act ("DPA"); and (4) for declaratory relief.

The parties attended a hearing on the motion on March 3, 2015. All parties have consented to this Court's jurisdiction. Dkt. Nos. 6, 22.

## II. DISCUSSION

Uber brings a motion to dismiss on a variety of issues, boiling down to questions of (1) NFBC's associational standing to sue on behalf of its members; (2) Plaintiff Hingson's satisfaction of standing under the deterrent effect doctrine; (3) which plaintiffs are entitled to bring a claim under state law theories; (4) Plaintiff Pedersen's standing as to the likelihood of future harm; and (5) whether Uber falls within the scope of the ADA's regulation as a public accommodation. The Court will first address standing challenged under Rule 12(b)(1), then Uber's motion for a more definite statement under Rule 12(e), and finally, the motion to dismiss under Rule 12(b)(6).

### A. Standing

A Rule 12(b)(1) motion challenges subject matter jurisdiction, including a plaintiff's standing to sue, and the Court takes the allegations in the complaint as true. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The court must determine whether a lack of federal jurisdiction appears from the face of the complaint itself. *Thornhill Publ'g Co. v. General Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).

"Whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy is what has traditionally been referred to as the question of standing to sue." *Sierra Club v. Morton*, 405 U.S. 727, 731-32 (1972).

Case No.:14-cv-04086-NC 4

Standing under Article III of the Constitution has three basic elements: (1) an "injury in fact," which is neither conjectural nor hypothetical; (2) causation, such that a causal connection between the alleged injury and offensive conduct is established; and (3) redressability, or a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"The question whether the litigant is a 'proper party to request an adjudication of a particular issue,' is one within the power of Congress to determine." *Sierra Club*, 405 U.S. at 732 n.3 (1972) (citing *Flast v. Cohen*, 392 U.S. 83, 100 (1968)). When private enforcement suits "are the primary method of obtaining compliance" with a civil rights act, such as the ADA, courts must take a "broad view of constitutional standing." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)(citing *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972)).

### 1. NFBC's Associational Standing Under the ADA

The test for associational standing is set out in *Hunt v. Wash. State Apple Adver. Com'n*, 432 U.S. 333, 342 (1977): an association has standing when (1) its members would otherwise have standing to sue in their own right; (2) the interest it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. In *Hunt*, the Court stated that claims for declaratory and injunctive relief do not require individualized proof, thereby satisfying the third prong. *Id.* at 344.

NFBC meets the *Hunt* test for associational standing. First, the parties do not contest that at least plaintiff Kelly has standing to sue in his own right. Second, NFBC set out the purpose of its organization in the complaint, which is to achieve the integration of the blind into society on a basis of equality with the sighted. FAC ¶ 22. The Court finds this germane to the purpose of this litigation, which is to bring a private ADA enforcement suit to ensure that blind individuals have equal access to transportation services as sighted individuals. Third, because NFBC is seeking to represent its members only in claims for declaratory and injunctive relief, its claim is within the realm of associational standing

Case No.:14-cv-04086-NC 5

envisioned by the Supreme Court in *Hunt*. FAC ¶¶ 123-127.

Uber has presented in its briefing and at the hearing diverging case law which suggests that two factual scenarios may distinguish the current case from *Hunt*: (a) the presence of arbitration agreements covering some of NFBC's membership; and (b) the prudential consideration that NFBC is not the proper party, but rather, the individuals should be tasked with representing their own claims. Dkt. No. 25 at 10-12.

### a. Arbitration Agreements

Uber argues that NFBC's membership includes individuals who are bound by arbitration agreements with Uber. Dkt. No. 25 at 10. Therefore, NFBC's suit on behalf of all its members would violate the sanctity of those agreements by permitting bound members to litigate in court via their proxy, NFBC. *Id.* at 11.

The Court recognizes that "[a]n association has standing to sue or defend in such capacity, however, only if its members would have standing in their own right." *Arizonans for Official English v. Arizona*, 530 U.S. 43, 65-66 (1977). Uber draws the Court's attention to *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 744-45 (N.D. Ill. 2010), where the district court considered similar questions of whether an association lacked standing because some members of its association were bound by arbitration agreements. There, the Court found the third *Hunt* factor weighed in favor of individual claims because the association could not represent those members bound by arbitration agreements. *Id.* However, even under those circumstances, the Court recognized that the association would have standing to pursue claims on behalf of only the non-bound members. *Id* at n.6. Additionally, all of the members of the Pennsylvania Chiropractic Association were seeking monetary relief. *Id.* at 737-38.

Here, NFBC alleges that it only brings the claim on behalf of members who would have standing (therefore, the non-bound members), and it does not seek monetary relief. Dkt. No. 28 at 4; *see generally, Ass'n Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1409 (9th Cir. 1991) (finding that individual participation is not required even if there is disagreement among the organization's members when the

Case No.:14-cv-04086-NC 6

organization seeks declaratory and injunctive relief). The Court finds *Pennsylvania Chiropractic Association* distinguishable from this case, and thus not persuasive in establishing that an exception to *Hunt* should apply.

### b. Prudential Considerations

In addition to constitutional standing requirements, the Court must also weigh prudential considerations, inquiring whether the plaintiff seeks to protect another person's legal rights. *Allen v. Wright*, 468 U.S. 737, 751 (1984). A few district court cases have found that an organization is not the proper party to bring a claim where the organization was "merely repeating the claims" of the individuals. *Access 123, Inc. v. Markey's Lobster Pool, Inc.*, 2001 WL 920051 at *4 (D.N.H. Aug. 14, 2001); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003). In those cases, the organization only sought to represent the only one or two individuals who were plaintiffs as well. *Id.* Here, NFBC has joined with three individuals and claims to represent the interest of its membership at large. NFBC is not simply standing in for one of its members, but rather represents a broad membership base, which it alleges has sufficiently been injured by Uber. FAC ¶ 22. Therefore, the Court does not believe that prudential considerations preclude NFBC's associational standing.

Uber also argues that NFBC does not have standing to sue in its own right. Dkt. No. at 7-8. The Court declines to reach this issue because "even if the organization has not suffered injury to itself, it may have standing to assert the rights of its members." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Therefore, an association need not prove injury to itself. *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185, 1191-92 (N.D. Cal. 2007). NFBC has associational standing, so does not need to demonstrate standing to sue in its own right.

### 2. Hingson's Standing Under the ADA

In order to establish an injury in fact, the ADA does not require "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply." 42 U.S.C. § 12188(a)(1); *Pickern v. Holiday*

Case No.:14-cv-04086-NC    7

*Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). "Allegations that show plausible intention or desire to return to the place but for barriers to access are sufficient." *Pickern*, 293 F.3d at 1138. Interpreting *Pickern,* the Ninth Circuit clarified, "if a plaintiff can show either that he was deterred from visiting the accommodation on specific past occasions when he otherwise would have visited it because of the known barriers there . . . he has established an injury in fact." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2008).

In *Disabled in Action*, 2003 WL 1751785 at *7 n.4, the district court surveyed nationwide cases that considered the "intent to return" requirement and found that generally, "courts have held that plaintiffs lack standing to seek injunctive relief under the ADA when they have not stated an intention or desire to return . . . or have failed to show a likelihood of discrimination should they return to that place." Therefore, at the pleading stage, a plaintiff must allege (1) actual notice of discriminatory practices; (2) specific occasions when he was deterred from visiting the accommodation; (3) an intent to return; and (4) a likelihood of continued discrimination.

Here, Hingson alleges that "he has specific and general knowledge of the experiences of multiple Uber passengers with service animals who have been denied access." FAC ¶ 67. Specifically, he alleges that during the annual state convention for NFBC in El Segundo, California on October 9-12, 2014, he met "attendees with service animals who were experiencing denials when attempting to use UberX to travel to and from the convention hotel." FAC ¶ 67. In addition, he lists a number of specific dates and instances when he was deterred from using UberX. FAC ¶¶ 68-71. Hingson alleges that he would like to use UberX on March 9, 2015 during a business trip in Sacramento, but is deterred based on his belief of continued discrimination. FAC ¶ 72.

Uber argues that Hingson has not sufficiently demonstrated an injury in fact because he never attempted to use any Uber vehicles. Dkt. No. 25 at 14. In addition, Uber challenges Hingson's ability to demonstrate "actual notice" of Uber's alleged discriminatory practices that would be sufficient to invoke the *Pickern* "deterrence theory"

Case No.:14-cv-04086-NC          8

because not all Uber drivers turn away blind individuals and their service animals. *Id.*

The Court notes that the factual scenario presented here is different than that discussed in *Pickern* and *Doran*. Those cases envisioned physical barriers that prevented a disabled person from gaining equal access, which would be present until removed. Here, Hingson cannot know with certainty whether an Uber driver will accept or reject him and his service animal. However, the Court is guided by the policy emphasized in *Doran*.

In *Doran*, the Ninth Circuit reasoned that a plaintiff need only allege one instance of ADA violation to achieve standing, but could then challenge other ADA violations found in the course of discovery. 524 F.3d at 1047. The Court noted that "a rule limiting plaintiff to challenging the barriers he or she had encountered or personally knew about would burden business and other places of public accommodation with more ADA litigation, encourage piecemeal compliance with the ADA, and ultimately thwart the ADA's remedial goals of eliminating widespread discrimination against the disabled into the mainstream American life." *Id.*

The ADA directs this Court to relax its standard for injury in fact in order to discourage both piecemeal litigation and futile attempts at access. Hingson does not need to use Uber's services and risk being turned away when he has knowledge that disabled individuals with service animals have been turned away, and he believes there is a likelihood of continued discrimination. Accordingly, the Court finds that Hingson has alleged sufficient facts in the complaint, taken as true at the pleading stage, to demonstrate that he had actual notice of Uber's alleged discriminatory practice and that he was in fact deterred from using Uber's service.

### 3. Unruh Act Claims and the DPA

Uber argues that NFBC and Hingson are not "aggrieved persons" under Unruh and DPA, so do not have standing to assert those claims. Dkt. No. 25 at 18-20.

Plaintiffs' second and third claims are state law claims under the California Unruh Civil Rights Act (California Civil Code §§ 51, 52) and the California Disabled Persons Act (California Civil Code §§ 54-54.3). FAC ¶¶ 105-119. The Unruh Act and the DPA

Case No.:14-cv-04086-NC    9

incorporate ADA standards, so a "violation of the ADA also constitutes a violation of both the Unruh Act and the DPA." *Californians for Disability Rights v. Mervyn's LLC*, 165 Cal. App. 4th 571, 586 (2008); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007). The Unruh Act provides declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability. Cal. Civ. Code §§ 51, 52. The DPA provides for both monetary damages and attorney's fees. Cal. Civ. Code §§ 54-54.3. Therefore, a plaintiff who has standing to, and does prevail, on an ADA claim can also seek monetary relief under the Unruh Act and the DPA.

In fact, the California Supreme Court recognized that the DPA affords "greater protection compared to the ADA" because its "standing provision is broader than its federal counterpart." *Jankey v. Song Koo Lee*, 290 P.3d 187, 195 (Cal. 2012). "Under state law, because a plaintiff need only show he or she is 'aggrieved or potentially aggrieved' (§ 55) to seek injunctive relief, 'virtually any disabled person can bring an action to compel compliance with' state disability access guarantees." *Id*. (quoting *Urhausen v. Longs Drug Stores California, Inc.*, 155 Cal. App. 4th 254, 265 (2007)). Notably, California courts do not require "proof that a plaintiff intends to encounter or has been deterred from encountering a given architectural barrier" under the DPA. *Jankey*, 290 P.3d at 195. Although a plaintiff may have standing, he may not be sufficiently injured to recover monetary damages. *Urhausen*, 155 Cal. App. 4th at 265-66.

It is clear to the Court that these state law statutory provisions are meant to work in harmony with the ADA, whereby a plaintiff proving an ADA violation can seek monetary recovery for (1) his actual harm, and (2) his attorney's fees, two remedies not provided for under the ADA. Additionally, the Court follows the reasoning of its own district that an association establishing standing under the ADA will also have standing to pursue the state law claims. *Nat'l Fed'n of the Blind*, 582 F. Supp. 2d at 1192; *Coal. of Human Advocates for K9's and Owners v. City and Cnty. of San Francisco*, No. 06-cv-1887 MMC, 2007 WL 641197 (N.D. Cal. Feb. 27, 2007). Therefore, the Court finds that plaintiffs NFBC and Hingson do have standing to pursue their claims under both the Unruh Act and the DPA

Case No.:14-cv-04086-NC 10

because they have standing under the ADA.

### 4. Pedersen's Standing

Uber alleges that Pedersen's standing fails because his allegations are too vague. Dkt. No. 25 at 21. The complaint alleges that Pedersen's wife uses her Uber account to request rides for Pedersen. FAC ¶ 25. Pedersen alleges that he "has been denied access to UberX taxi services multiple times because of his service animal." FAC ¶ 25. Additionally, Pedersen provides an account of his September 12, 2014 attempt to use UberX where he was refused because of his service animal. FAC ¶ 74. Finally, Pedersen claims that he would like to continue using UberX. FAC ¶ 74. As noted in the discussion of plaintiff Hingson's standing, the ADA simply requires Pedersen to allege that he intends to use the service again and a likelihood of future discrimination. Pedersen has alleged what is required to demonstrate standing under the ADA.

Therefore, the Court denies Uber's motion to dismiss based on lack of standing.

## B. Motion For A More Definite Statement

Uber moves for an order requiring Pedersen to provide a more definite statement under Rule 12(e) as to his alleged harm. Dkt. No. 25 at 21.

A party may move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "A motion for a more definite statement attacks intelligibility, not simply lack of detail. For this reason, the motion fails where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011).

Uber argues that Pedersen's claims lack detail and that "[d]efendants cannot even determine whether he has standing to sue in the first place." Dkt. No. 30 at 13. As discussed above, the Court finds Pedersen's pleadings specific enough to establish his standing. Therefore, the Court similarly denies Uber's 12(e) motion.

//

### C. Uber's ADA Liability

Uber urges this Court to find that it is not a public accommodation under the ADA, placing it outside the scope of regulated businesses. Dkt. No. 25 at 22-25.

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When deciding whether to grant a Rule 12(b)(6) motion to dismiss, the Court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Therefore, the question is not whether plaintiff's assertions are factually accurate, but rather, whether taking the complaint as true, there exists a plausible legal claim.

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiffs have alleged Uber is liable under the ADA under 42 U.S.C. § 12182(b), as a "public accommodation," or 42 U.S.C. § 12184, as a "specified public transportation service." FAC ¶¶ 82, 91. Uber asserts only that it is not a "public accommodation" under the ADA, but does not ask the Court to dismiss the complaint as to the specified public transportation service claim. Dkt. No. 30 at n.12. The ADA lists twelve categories of

private establishments that are considered a "public accommodation" if they affect interstate commerce. 42 U.S.C. § 12181(7). Plaintiffs allege that Uber's operations fall under the "travel service" category, so Uber qualifies as a public accommodation. 42 U.S.C. § 12181(7)(f). Dkt. No. 28 at 19. The ADA does not define travel services.

In *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 13 (1st Cir. 1994), the First Circuit reviewed a district judge's dismissal of a complaint alleging that health care insurers constituted a public accommodation under the ADA. There, the Court discussed the meaning of "public accommodation" and reasoned that "[b]y including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physically enter an actual physical structure." *Id.* at 19. The First Circuit did not ultimately decide whether a health care insurer was a public accommodation, but rather found the term "public accommodation" vague and concluded that at the motion to dismiss stage, "it is unwise to go beyond the *possibility* that the plaintiff may be able to develop some kind of claim under Title III." *Id.* at 20. Similarly here, defendants have not cited any binding law that Uber's service is precluded from regulation as a "travel service" under § 12182(b). In the absence of clear law to the contrary, the Court finds that plaintiffs' allegations, when taken as true, demonstrate a plausible claim for Uber's ADA liability under § 12182.

The Court denies Uber's motion to dismiss and finds that the determination of Uber's potential liability under the public accommodation provision of the ADA requires more factual development.

### III. CONCLUSION

In conclusion, this Court is guided by two primary factors in denying the defendants' motion to dismiss. First, the ADA, the Unruh Act, and the DPA require the court to construe standing liberally. Second, at the pleading stage, the Court must take all facts pled in the complaint as true and consider whether the information provided is sufficient to allege a plausible claim. The ADA, the Unruh Act, and the DPA have granted

Case No.:14-cv-04086-NC        13

private citizens a broad right to enforce their mandates, and this Court has been instructed that disabled plaintiffs should not be required to engage in "futile" attempts at access. Therefore, the Court finds that plaintiffs have sufficiently alleged claims for discrimination under the ADA, the Unruh Act, the DPA, and for declaratory relief.

Uber has raised a number of concerns about the scope of the relief requested, particularly in regard to NFBC and Hingson on the state law grounds, as well as the relief sought on behalf of individuals allegedly bound by arbitration clauses. The Court's findings today do not preclude Uber from raising these defenses at a later stage of litigation.

Defendants have 14 days to answer the complaint. Fed. R. Civ. P. 12(a)(4)(A). The Court also sets a case management conference for June 3, 2015, at 10:00 a.m in Courtroom A, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California. The parties may participate by telephone by contacting the Courtroom Deputy in advance at (408) 535-5343.

**IT IS SO ORDERED.**

Dated: April 17, 2015

NATHANAEL M. COUSINS
United States Magistrate Judge

Case No.:14-cv-04086-NC         14