LAURENCE PARADIS – Cal. Bar No. 122336
JULIA MARKS – Cal. Bar No. 300544
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
Email:         lparadis@dralegal.org

TIMOTHY ELDER – Cal. Bar No. 277152
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California 94536
Telephone:    (410) 415-3493
Facsimile:    (888) 718-0617
Email:         telder@trelegal.com

MICHAEL W. BIEN – Cal. Bar No. 096891
MICHAEL S. NUNEZ – Cal. Bar No. 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California 94105-2235
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:         mbien@rbgg.com
               mnunez@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, MICHAEL KELLY, MICHAEL HINGSON, and MICHAEL PEDERSEN,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., RASIER, LLC, AND RASIER-CA, LLC,<br><br>Defendants. | Case No. 3:14-cv-04086-NC<br><br>**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS**<br><br>Judge:  Hon. Magistrate Nathaniel Cousins<br>Date:    June 8, 2016<br>Time:    1:00 PM<br>Crtrm.:  7, 4th Floor<br><br>Trial Date:        Jun. 13, 2016 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ......................................................................... 1

RELIEF SOUGHT ..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 2

INTRODUCTION ....................................................................................................... 2

THE PARTIES ............................................................................................................ 5

PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS ....................... 6

    A.    Prelitigation Stage And Initial Litigation ................................................. 6

    B.    Settlement Negotiations And Preparation For Trial .................................. 7

SUMMARY OF THE SETTLEMENT ....................................................................... 8

    A.    Enhanced Dissemination Of Information To Drivers. ............................... 8

    B.    Changes To Enforcement Practices Related To Nondiscrimination. ........... 8

    C.    Cleaning Fee Policy For Riders With Service Animals ............................. 9

    D.    Changes To Complaint Processing Procedures ......................................... 9

    E.    Revisions To Uber's Service Animal Policy ............................................ 10

    F.    Compliance Record Keeping And Testing ............................................... 10

    G.    Third-Party Monitor ............................................................................... 11

    H.    Duration Of The Agreement ................................................................... 12

    I.    Further Modifications To Uber's Policies, Practices, And Procedures ......... 12

    J.    Dispute Resolution Process .................................................................... 12

    K.    Compensation To NFB ........................................................................... 13

    L.    Payments To Individual Plaintiffs .......................................................... 13

    M.    Attorneys' Fees, Litigation Expenses, And Costs .................................... 13

    N.    Objecting To The Settlement Agreement ................................................ 14

    O.    Release Of Individual Damages Claims And Class Injunctive Claims ........ 14

ARGUMENT ...................................................................................................... 14

I.    CERTIFYING THE CLASS IS APPROPRIATE UNDER FED. R. CIV. P.
      23(a) AND (b)(2) ...................................................................................... 14

      A.   The Proposed Class Meets The Numerosity, Typicality,
           Commonality, And Adequacy Requirements Of Fed. R. Civ. P. 23(a) ........ 15

           1.   The Proposed Class Meets The Numerosity Requirement ................ 15

           2.   The Proposed Class Satisfies The Commonality Requirement.......... 16

           3.   The Proposed Class Satisfies The Typicality Requirement .............. 17

           4.   Class Representatives And Experienced Class Counsel Here
                Easily Meet The Adequacy Requirement.......................................... 18

           5.   The Ascertainability Requirement Does Not Apply Here, But
                Even If It Did, The Class Is Sufficiently Ascertainable.................... 20

      B.   The Proposed Class Meets the Requirements Of Rule 23(b)(2) .................. 21

II.   PRELIMINARILY APPROVING THE PROPOSED AGREEMENT IS
      APPROPRIATE ........................................................................................ 22

III.  THE COURT SHOULD DIRECT DISTRIBUTION OF THE NOTICE OF
      SETTLEMENT .......................................................................................... 25

IV.   THE COURT SHOULD APPROVE THE PROPOSED SCHEDULING
      ORDER...................................................................................................... 26

CONCLUSION.................................................................................................. 26

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abdullah v. U.S. Sec. Associates, Inc.*,
    731 F.3d 952 (9th Cir. 2012) ................................................................. 18

*Amone v. Aveiro*,
    226 F.R.D. 677 (D. Haw. 2005) ............................................. 17

*Astiana v Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ................................................ 22

*Baby Neal for and by Kanter v. Casey*,
    43 F.3d 48 (3rd Cir. 1994)................................................... 23

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
    249 F.R.D. 334 (N.D. Cal. 2008) ................................................ 23

*Dunakin v. Quigley*,
    99 F. Supp. 3d 1297 (W.D. Wash. 2015) ...................................... 22

*Evon v. Law Offices of Sidney Mickell*,
    688 F.3d 1015 (9th Cir. 2012) ................................................ 17, 19, 20

*Gay v. Waiters' & Dairy Lunchmen's Union*,
    489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 649 F.2d 531 (9th Cir. 1982)................ 17

*Grant v. Capital Management Services, L.P.*,
    10–cv–2471–WQH (BGS), 2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) ............ 24

*Gray v. Golden Gate Nat'l Recreational Area*,
    279 F.R.D. 501 (N.D. Cal. 2011) ................................................ 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................ 19, 21, 24

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................ 19

*Hernandez v. Cnty of Monterey*,
    305 F.R.D. 132 (N.D. Cal. 2015) ................................................ 18

*In re Abbott Laboratories Norvir Anti-Trust Litigation*,
    Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899 (N.D. Cal. Jun. 11,
    2007)................................................................................ 17

*In re Immune Response Securities Litigation*,
    97 F. Supp. 2d 1166 (C.D. Cal. 2007)................................................ 24

*In re LinkedIn User Privacy Litigation*,
    309 F.R.D. 573 (N.D. Cal. 2015) ................................................ 20

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS

*In re M.L. Stern Overtime Litig.*,
    07–CV–0118–BTM (JMA), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) .............. 24

*In re Yahoo Mail Litigation*,
    308 F.R.D. 577 (N.D. Cal. 2015) ........................................................................ 22

*Kim v. Space Pencil, Inc.*,
    C 11–03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ........................... 27

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ..................................................................... 24, 25, 27

*Lanovaz v. Twinings North America, Inc.*,
    2014 WL 1652338 (N.D. Cal. Apr. 24, 2014).................................................... 22

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................. 18

*Meyer v. Portfolio Recovery Associates, LLC*,
    707 F.3d 1036 (9th Cir. 2012) .......................................................................... 19

*Nat'l Fed'n of the Blind v. Target Corp.*,
    582 F. Supp. 2d 1185 (N.D. Cal. 2007)............................................................. 20

*Nat'l Fed'n of the Blind v. Uber Techs., Inc.*,
    103 F. Supp. 3d 1073 (N.D. Cal. 2015).............................................................. 16

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ..................................................................... 18, 19, 23

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................................. 27

*Shelton v. Bledsoe*,
    775 F.3d 554 (3d Cir. 2015) ............................................................................... 22

*Shook v. El Paso Cnty.*,
    386 F.3d 963 (10th Cir. 2004) ........................................................................... 22

*Wolph v. Acer Am. Corp.*,
    No. 09–01314, 2012 WL 993531 (N.D. Cal. Mar. 23, 2012) ................................. 22

## STATUTES

42 U.S.C. §§ 12101 *et. seq.* ........................................................................................ 6

Cal. Civ. Code §§ 51 *et. seq.* ...................................................................................... 6

Cal. Civ. Code §§ 54-54.3 ............................................................................................ 6

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS

1

### <u>RULES</u>

2

Fed. R. Civ. P. 23 ............................................................................... passim

3

4

### <u>OTHER AUTHORITIES</u>

5

1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002) ............................................................................................... 16

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on June 8, 2016 or as soon thereafter as the matter may be heard, Plaintiffs National Federation of the Blind of California, National Federation of the Blind, Michael Kelly, Michael Hingson, and Michael Pedersen (hereafter, collectively, "Plaintiffs") and Defendants Uber Technologies, Inc., Rasier LLC, and Rasier-CA LLC (hereafter "the Parties") will jointly move the Court for (1) approval to file Plaintiffs' Second Amended Complaint submitted herewith as Ex. 2 to the Declaration of Laurence Paradis ("Paradis Decl."), (2) preliminary approval of the proposed class settlement agreement ("the Agreement") submitted herewith as Ex. 1 to the Paradis Declaration, (3) an order certifying the proposed settlement class, (4) an order directing notice to the proposed settlement class, and for a scheduling order setting deadlines for objections and setting a fairness hearing, and (5) final approval of the agreement following a fairness hearing.

In support of this motion, the Parties state:

1. The Agreement represents a comprehensive settlement of the issues raised in the above-captioned case.
2. The Agreement offers a fair and equitable result to those affected by it.
3. The Agreement will result in significant long-term benefits both for individuals who are members of the proposed settlement class and for Defendants.

# RELIEF SOUGHT

The Parties respectfully request that the Court enter the attached proposed order:

1. Granting Plaintiffs leave to file the Second Amended Complaint attached as Ex. 2 to the accompanying Declaration of Laurence Paradis;
2. Conditionally certifying a settlement class for injunctive relief under Federal Rule of Civil Procedure 23(a) and (b)(2);
3. Granting preliminary approval of the Agreement so that the Parties may

1    proceed with notice to the class and to a fairness hearing for final approval of

2    the Agreement;

3    4.    Directing the proposed form of notice to the settlement class; and

4    5.    Setting a schedule for notice to the class, objections, and a fairness hearing

5    for final approval of the Agreement.

6    **MEMORANDUM OF POINTS AND AUTHORITIES**

7    **INTRODUCTION**

8    This lawsuit and the proposed class settlement agreement address Plaintiffs'

9    allegations of discrimination against blind individuals who travel with service animals in

10   the provision of transportation arranged through the Uber mobile software application.

11   The Agreement, attached as Exhibit 1 to the Declaration of Laurence Paradis ("Paradis

12   Decl."), is the product of thorough arm's length negotiations, several in-person settlement

13   meetings, a day-long JAMS mediation session, and exchange of information and numerous

14   proposals over the past eleven months. The Agreement provides for significant injunctive

15   relief that will modify Uber's policies, practices, and procedures to ensure that blind riders

16   with service animals receive reliable access to transportation arranged through the Uber

17   rider mobile application ("Uber Rider App"), comprehensive monitoring, a method to

18   adjust the injunctive relief to address unforeseen access issues that arise, and payment of

19   attorneys' fees and costs.  The Parties request an Order from the Court determining that the

20   settlement is fair and reasonable.

21   Under the Agreement, Uber will implement an array of policies and practices

22   nationwide to ensure that blind or visually-disabled riders with service animals ("Riders

23   with Service Animals") receive reliable access to transportation arranged through the Uber

24   app and to effectively address any discriminatory treatment that Riders with Service

25   Animals encounter from the transportation providers licensed to use the app ("Drivers")

26   when attempting to use the Uber Rider App.  Uber will revise its national service animal

27   policy to clarify that no exceptions exist for allergies or religious objections to the Drivers'

28   contractual and legal obligation to transport Riders with Service Animals, will require that

1    all Drivers who provide transportation through the Uber platform agree to transport riders

2    with service animals consistent with Drivers' legal obligation as a condition of continued

3    access to the Uber platform, and will adopt enhanced enforcement mechanisms,

4    terminating contractual relationships with Drivers who knowingly refuse to transport

5    Riders with Service Animals, thus preventing them from receiving trip requests through

6    the Uber platform.  Uber will also inform riders who submit service animal complaints

7    about the result of Uber's investigation of any complaint, including whether Uber severed

8    its contractual relationship with the driver.

9        The agreement also provides for comprehensive reporting and monitoring on a

10    national scale, and provides a procedure to further enhance the injunctive relief if

11    necessary.  Under the Agreement, Uber will retain and periodically report aggregate data

12    concerning service animal complaints, trip and enforcement data associated with each

13    report asserting that a driver refused to transport a rider with a service animal, and trip data

14    associated with each ride where Uber charged a rider with a service animal a cleaning fee.

15    The Agreement additionally provides for a third-party monitor who will review and

16    evaluate Uber's compliance with the Agreement.  Moreover, the Agreement allows the

17    Parties to modify the injunctive relief to address unforeseen service animal access issues

18    that class members encounter during the term of the agreement.

19        The Agreement is conditioned on certification of the following proposed class[1] for

20    settlement purposes:

21        All blind or visually disabled individuals nationwide who travel with the
         assistance of Service Animals and who have used, attempted to use, or been
22        deterred from attempting to use transportation arranged through the Uber
         Rider App.

23

---

24    [1] The Parties acknowledge and agree that Uber is not, by stipulating to a settlement on a
     class basis, waiving any right to seek enforcement of any arbitration agreement and class
25    action waiver and/or representative action waiver between any proposed class member (or
     anyone else) and Uber or any of its subsidiaries or affiliated entities in any other action or
26    in any other circumstances.  As this is a critical consideration to Uber in agreeing to a class
     settlement, the Parties request that any approval order expressly reference and confirm this
27    point.

28

1   The Parties stipulate that certification of the proposed class under Federal Rule of Civil

2   Procedure 23(a) and 23(b)(2) is appropriate for settlement purposes.  The settlement

3   contemplated herein would result in a single set of national policies, practices, and

4   procedures concerning transportation of Riders with Service Animals that is applicable to

5   all class members.  Similarly, the modifications to current policies, practices, and

6   procedures in the Agreement will enhance access to transportation arranged through the

7   Uber Rider App for all class members.

8          This settlement is fair, adequate, and reasonable.  The settlement process posed

9   difficult factual questions concerning crafting effective relief for the class while

10  accounting for Uber's existing business model, i.e., that the Drivers are independent

11  contractors.  The Parties effectively addressed this challenge by negotiating an agreement

12  at arm's length that provides significant benefits to the class and avoids protracted

13  litigation, while not altering the Drivers' relationships with Uber.  Accordingly, the Parties

14  respectfully request:  (1) approval to file Plaintiffs' Second Amended Complaint, which

15  adds the National Federation of the Blind as a plaintiff and expands the scope of the case

16  by asserting class allegations regarding access to all transportation nationwide arranged

17  through the Uber Rider App, (2) certification of the proposed settlement class under

18  Federal Rule of Civil Procedure 23(a) and 23(b)(2); (3) preliminary approval of the

19  settlement agreement; (4) an order approving notice to the class of the settlement

20  agreement and setting a fairness hearing; and (5) final approval of this agreement at the

21  time of the fairness hearing.  The Parties' counsel have negotiated the foregoing and agree

22  to the form and content.

23         The proposed class will upon final approval release all claims for injunctive or

24  declaratory relief relating to the subject matter of the Second Amended Complaint,

25  including claims under the Americans with Disabilities Act and any and all applicable state

26  disability access laws.  The named plaintiffs will also release any and all claims for

27  damages, while the class will not release any damage claims that may exist.

28

4

1

**THE PARTIES**

2   The National Federation of the Blind ("NFB"), a nonprofit corporation, is the

3 nation's oldest and largest association of blind persons.  NFB has affiliates in all fifty

4 states, the District of Columbia, and Puerto Rico.  NFB has approximately fifty thousand

5 members nationwide.  The National Federation of the Blind of California ("NFB-CA") is

6 an association of blind Californians and is the California State affiliate of the NFB.  The

7 mission of NFB and NFB-CA is to promote the vocational, cultural, and social advance-

8 ment of the blind and to achieve the integration of the blind into society on a basis of

9 equality with the sighted.  Securing reliable access to transportation, including using

10 modern technology, advances the goal of NFB and NFB-CA to ensure that blind individ-

11 uals may travel in the same way that sighted individuals travel.  *See* Declaration of Mark

12 Riccobono ¶ 3 ("Riccobono Decl."); Declaration of Mary Willows ¶ 3 ("Willows Decl.").

13   Individual plaintiffs Michael Pedersen and Michael Kelly are legally blind, reside in

14 California, use guide dogs, and allege that Drivers on the Uber platform refused to

15 transport them because of their service animals.  Plaintiff Kelly is a member of NFB-CA.

16 Individual Plaintiff Michael Hingson is a legally blind resident of California, uses a guide

17 dog, and is a member of NFB-CA.  Mr. Hingson alleges that he is deterred from

18 attempting to use transportation arranged through the Uber Rider App because he has

19 learned from others that Drivers on the Uber platform have refused to transport blind

20 Riders with guide dogs in California and elsewhere on many occasions.

21   Uber Technologies Inc. ("Uber") is a company that offers a smart phone application

22 ("Uber Rider App") that connects individuals looking for transportation ("Riders") with

23 independent transportation providers looking for passengers ("Driver Partners" or

24 "Drivers").  Uber's platform offers access to multiple different vehicle types based on the

25 rider's vehicle preference.  These categories currently include, for example, UberX,

26 UberPool, UberXL, UberBLACK, UberTaxi, UberSUV, UberSelect, and UberAccess.

27 Rasier LLC and Rasier-CA LLC (hereafter referred to collectively with Uber as "Uber")

28 are wholly-owned subsidiaries of Uber that provide lead generation services via Uber's

1  platform to driver partners.  Transportation arranged through the Uber Rider App is

2  available in over 150 metropolitan areas across most states.

3           **PROCEDURAL HISTORY AND SETTLEMENT NEGOTIATIONS**

4           NFB-CA and three blind individuals brought this action to challenge alleged

5  discrimination against blind Riders with guide dogs in the provision of transportation

6  arranged through the Uber Rider App.  Plaintiffs allege that Uber denies blind Riders with

7  Service Animals full and equal access to the transportation services that Uber makes

8  available to other Riders.  Plaintiffs allege that Uber has violated the Americans with

9  Disabilities Act, 42 U.S.C. §§ 12101 *et. seq.*, the California Unruh Civil Rights Act,

10  California Civil Code §§ 51 *et. seq.*, and the California Disabled Persons Act, California

11  Civil Code §§ 54-54.3.  Plaintiffs seek injunctive and declaratory relief under Plaintiffs'

12  ADA and Unruh Act claims.  Plaintiffs Kelly and Pedersen also seek statutory damages

13  under their state law claims in an amount ranging from $1,000 to $4,000 for each occasion

14  where a driver on the Uber platform allegedly refused to transport them because of their

15  service animals, and Plaintiff Hingson seeks statutory damages based on his state law

16  deterrence claims.

17           Uber has denied and continues to deny liability under the federal and state laws at

18  issue, and further asserts that its current policies, practices, and procedures meet its

19  obligations under applicable law.  Uber has also asserted defenses based on the

20  applicability of these laws to Uber.

21      **A.      Prelitigation Stage And Initial Litigation**

22           Prior to initiating this litigation, Plaintiffs notified Uber on June 3, 2014 that

23  Drivers on the Uber platform had refused to transport plaintiffs and many other blind

24  individuals because of their service animals.  The Parties met but were unable to resolve

25  the issue, and Plaintiffs initiated this litigation.

26           On September 9, 2014, Plaintiffs NFB-CA and Hingson filed this action in federal

27  court in San Francisco.  Plaintiffs filed a First Amended Complaint on November 12,

28  2014.  The FAC joined Plaintiffs Kelly and Pedersen and Defendants Rasier and

1   Rasier-CA.

2       On December 3, 2015, Defendants filed a Motion to Dismiss for failure to state a

3   claim against all Plaintiffs based on Plaintiffs' ADA claims and a Motion to Dismiss for

4   lack of standing against some of the Plaintiffs.  Plaintiffs opposed the motion.  On

5   April 17, 2015, this Court issued an order denying Uber's motion to dismiss Plaintiffs'

6   claims.  The Court held that all Plaintiffs possessed standing.

7           **B.       Settlement Negotiations And Preparation For Trial**

8       The Parties then complied with the procedures set forth in the Northern District's

9   General Order 56.  On May 1, 2015, the Parties exchanged initial disclosures, and

10  Defendants answered Plaintiffs' FAC.  On May 8, 2015, the Parties conducted a joint

11  inspection and review and held an initial in person settlement meeting.  The Parties held an

12  additional settlement meeting on June 18, 2015.  On August 10, 2015, the Parties held an

13  all-day mediation before Hon. Jamie Jacobs-May (ret.) at JAMS.  At the end of the

14  mediation, the Parties agreed to the parameters of a settlement with respect to non-

15  monetary terms and continued to pursue final settlement regarding all other terms.

16      On July 30, 2015, the Court opened discovery, and on August 13, 2015, the Court

17  set a trial date for April, 2016.  Because of the trial schedule, Plaintiffs pursued a two-track

18  approach, continuing to work toward settlement while preparing for trial.  In September,

19  2015, Plaintiffs provided Defendants with a written settlement proposal.  The Parties

20  continued to engage in settlement negotiations, exchanging settlement proposals and

21  holding conference calls to discuss these proposals.  In addition, beginning October 1,

22  2015, Plaintiffs served written discovery requests and noticed depositions.

23      In January 2016, the Parties reached an agreement on the key elements of a

24  settlement.  Shortly thereafter, the Parties stipulated and the Court ordered that the

25  discovery deadlines be vacated, and the Court rescheduled the trial for June 13, 2016.  The

26  Parties continued to negotiate the specific language of certain provisions of the Agreement

27  and addendums to the Agreement through early April of this year.

28

1

**SUMMARY OF THE SETTLEMENT**

2

The proposed settlement includes the following terms.

3

### A. Enhanced Dissemination Of Information To Drivers.

4

Uber agrees to enhance distribution of information to Drivers regarding their legal

5

and contractual obligation to transport Riders with Service Animals.  Uber will require that

6

new Drivers expressly confirm that they have reviewed, understand, and agree to comply

7

with their legal obligations as outlined in Uber's Service Animal Policy during the on-

8

boarding process and in Uber's mobile application for Drivers ("Driver App").  In

9

addition, both new and existing Drivers will be blocked from receiving trip requests from

10

Riders through the Uber platform until they confirm in an interactive popup notification in

11

the Uber Driver App that they are willing to transport Riders with Service Animals.

12

Drivers that indicate that they are unwilling to transport Riders with Service Animals will

13

be permanently blocked from receiving trip requests through the Uber platform and their

14

contractual relationships with Uber terminated.  Uber will also revise its written

15

agreements with Drivers to inform Drivers of their legal obligation to transport Riders with

16

Service Animals and the consequences of refusing to transport Riders with Service

17

Animals.

18

In addition, Uber will send quarterly email reminders to all Drivers for the term of

19

the Agreement reminding them of their legal obligation to transport Riders with Service

20

Animals.  Uber has and/or will provide Class Counsel with drafts of the quarterly email

21

reminders and draft revisions to the driver licensing agreement for review and feedback

22

before issuance.

23

### B. Changes To Enforcement Practices Related To Nondiscrimination.

24

Uber will adopt an enhanced enforcement policy, whereby Uber will permanently

25

terminate its contractual relationship with a driver and permanently terminate that driver's

26

ability to receive trip requests through the Uber platform if Uber determines that the driver

27

knowingly refused to transport a rider because that rider was accompanied by a service

28

animal anywhere in the United States.  Uber will also permanently terminate its contractual

1  relationship with a driver and permanently terminate that driver's ability to receive trip
2  requests through the Uber platform if Uber receives plausible complaints on more than one
3  occasion asserting that a driver unlawfully refused to transport Riders with Service
4  Animals because of the service animal anywhere in the United States, regardless of
5  whether the driver's refusal was knowing.

6       **C.     Cleaning Fee Policy For Riders With Service Animals**

7       Uber will not charge Riders with Service Animals cleaning fees for shedding by
8  their service animals.  Uber will not charge cleaning fees to Riders with Service Animals
9  for the first two reported messes involving the bodily fluid of the rider's service animal.
10  Riders with service animals will be able to contest cleaning fees.

11       **D.     Changes To Complaint Processing Procedures**

12       Uber will modify the incident reporting features within the Uber rider app and on
13  the Uber website to enhance Riders' ability to effectively and efficiently submit service
14  animal complaints.  Uber will modify the incident reporting form in the Uber Rider App so
15  that a user can easily mark the submission as a service animal complaint.  Uber will place a
16  link to a similar form that can be easily located from the homepage of Uber's website.  A
17  document presenting the design of the enhanced website and Rider App incident report
18  forms is attached to the Agreement as Addendum 3.

19       Uber will forward all service animal complaints that it receives to Uber's Access
20  Complaint Team, a team of employees dedicated to handling disability access complaints.
21  This team will review and evaluate every report asserting that a driver refused to transport
22  a rider with a service animal because of the service animal.  Uber will notify each rider
23  who submitted a service animal complaint that Uber is reviewing the complaint.  Uber will
24  make reasonable and good faith efforts to, within one week of receiving the complaint,
25  inform the complainant of the outcome of Uber's review of the complaint, including
26  whether Uber has terminated its contractual relationship with the driver who was the
27  subject of the complaint, and whether Uber has recorded the complaint.

28       Uber will reverse any cancellation or other fees that were charged in connection

1    with an incident that is the basis of a service animal complaint.  In addition, Uber will

2    provide the complaining rider with a $25 account credit if Uber terminates its relationship

3    with the driver who is the subject of the complaint.  Information will be distributed to the

4    blind community, either by Uber or in conjunction with NFB or NFB-CA, about the

5    enhanced methods for submitting service animal complaints, and Uber's policy to

6    reimburse complaining Riders for trip cancellation charges.

7        Uber will provide the Access Complaint Team and other employees who review

8    these complaints with a guidance document, attached as Addendum 2 to the Agreement,

9    that provides step-by-step instructions on evaluating a report that a driver refused to

10   transport a rider with a service animal because of the service animal.  This document also

11   provides guidance on when charging cleaning fees to Riders with Service Animals is

12   permissible.  Uber will train the Team on identifying situations where a driver has violated

13   Uber's service animal policy.

14       **E.       Revisions To Uber's Service Animal Policy**

15       Uber will adopt a revised written service animal policy that incorporates the

16   enhanced enforcement policy, enhanced procedures for investigating and acting on service

17   animal complaints, and the cleaning fee policy for Riders with Service Animals established

18   by the agreement.  The updated document also clarifies that there are no exceptions for

19   allergies or religious objections to Drivers' contractual and legal obligations to transport

20   Riders with Service Animals.  It further clarifies what questions Drivers may and may not

21   ask Riders with Service Animals about their service animals under applicable law.  The

22   updated policy is attached to the Agreement as Addendum 4.

23       **F.       Compliance Record Keeping And Testing**

24       Uber will collect and retain a national database of information to facilitate

25   monitoring compliance with the Agreement.  This information will include rider, driver,

26   and trip data associated with each report that asserts that a driver refused to transport a

27   rider with a service animal because of the service animal, and each ride that results in Uber

28   charging a rider with a service animal a cleaning fee.  It will also include information

concerning actions that Uber took with respect to the driver and the rider in connection with each service animal complaint.  Furthermore, it will include the number of service animal complaints that Uber received and the number of Drivers with whom Uber has terminated its contractual relationship due to violation of Uber's service animal policy during the reporting period.

Uber will report this data to Class Counsel quarterly for the first year of the term of the Agreement, biannually for the second year of the term, and annually for the remainder of the term.  However, if the number of service animal complaints significantly increases or if it is determined that Uber did not comply with the Agreement, Uber will resume reporting on a quarterly basis for the remainder of the Agreement's term.

NFB and NFB-CA will administer a compliance testing program for the term of the Agreement.  The testing program will deploy blind individuals with guide dogs across the United States who will request and take trips using the Rider App to evaluate Uber's compliance with the Agreement.

### G.     Third-Party Monitor

A monitor will be selected to review, evaluate, and report annually on Uber's compliance with the Agreement.  The monitor will propose further modifications to Uber's policies, practices, and procedures if the monitor concludes that Uber's policies, practices, and procedures are insufficient to ensure equal access for Riders with Service Animals.

The Parties will attempt to jointly select the monitor.  If the Parties are unable to select a monitor, the Parties will each submit three proposed candidates to the magistrate judge who retains jurisdiction to enforce the Agreement, and the magistrate judge will select the monitor.  This approach will be used to select a replacement monitor if necessary.

Uber will pay the monitor's reasonable fees and costs, which will be originally capped at $50,000 for the 3.5 year term of the Agreement, and an additional $35,000 for the 1.5 year extension period if the agreement's term is extended.  Negotiating increases to these caps is subject to the Agreement's dispute resolution process.

**H.    Duration Of The Agreement.**

The default term of the Agreement is 3.5 years.  However, if the Parties agree or the monitor determines that Uber did not substantially comply with the Agreement during the second and/or third year of the Agreement's term, the Agreement's term will extend by 1.5 years to a total of five years.

**I.    Further Modifications To Uber's Policies, Practices, And Procedures**

Beginning one year after the effective date of the Agreement, the Parties may negotiate additional modifications, upon Plaintiffs' request, to Uber's policies, practices, and procedures concerning transporting blind Riders with Service Animals.  The Parties included this provision to provide the flexibility to further enhance the injunctive relief if monitoring reveals it necessary, and to address unintended consequences of the relief or unforeseen service animal access issues that arise during the Agreement's term.  If the Parties reach an agreement on modifications, it will be memorialized in a binding written memorandum of understanding.  If the Parties are unable to reach an agreement, Plaintiffs may use the Agreement's dispute resolution process to attempt to secure additional modifications to Uber's relevant policies, practices, and procedures, but in no event will the modifications lessen the benefits or protections for members of the settlement class.

**J.    Dispute Resolution Process**

Enforcement of the Agreement will be subject to continuing jurisdiction of the Court.  The Parties request that, upon final approval of the Agreement, Magistrate Judge Cousins retain jurisdiction to oversee enforcement of the Agreement, including resolving disputes regarding Plaintiffs' request for attorneys' fees and costs for work performed after the effective date of the Agreement.  If Magistrate Judge Cousins is or becomes unavailable, the Parties request that the Court appoint another magistrate judge in the Northern District of California to retain jurisdiction over this matter.

The Agreement establishes a three-step procedure for resolving disputes.  First, the Parties will meet and confer to attempt to resolve the dispute.  If the Parties are unable to resolve the dispute within twenty-one days after Plaintiffs' raised the issue and if Uber is

1  willing to pay for a mediation, the Parties will submit the dispute for mediation at JAMS.

2  Finally, if the Parties are unable to resolve the dispute through mediation, or if the Parties

3  are unable to resolve the dispute through meeting and conferring within twenty-one days

4  after Plaintiffs first raised the issue and Uber is unwilling to pay the cost of a JAMS

5  mediation, the Parties will submit the matter to the magistrate judge who retains

6  jurisdiction to enforce the Agreement for binding resolution of the dispute.

7     **K.     Compensation To NFB**

8     Uber will make three annual payments of $75,000 to NFB during the first three

9  years of the Agreement's term.  If the term of the Agreement is extended to five years,

10  Uber will make a fourth payment of $75,000 to NFB at the beginning of the extended term.

11     **L.     Payments To Individual Plaintiffs**

12     Uber will pay a total of $45,000 which will be apportioned equally among the three

13  individual Plaintiffs, Michael Pedersen, Michael Kelly, and Michael Hingson.  These

14  payments will resolve the individual Plaintiffs' state law damages claims.

15     **M.     Attorneys' Fees, Litigation Expenses, And Costs**

16     No later than fourteen days before the deadline for class members to submit

17  objections to the Agreement, Class Counsel will move the Court for an award of

18  reasonable attorneys' fees and costs for their work on this matter up through the effective

19  date of the Agreement.  Class Counsel will include instructions for accessing this motion

20  in the notice to the class.  Uber agrees that the Plaintiffs are entitled to recover reasonable

21  attorneys' fees and costs for Class Counsel's work on this matter up through the effective

22  date of the Agreement, but Uber may dispute the amount of attorneys' fees and costs.

23     The Agreement establishes a procedure for recovery of Plaintiffs' reasonable

24  attorneys' fees and costs for work performed after the Agreement is executed for

25  monitoring and enforcement.  Beginning one year after the effective date, Class Counsel

26  will annually submit a request for reasonable fees, costs, and expenses for work performed

27  under this agreement.  If Uber contests the requested amount, the Parties will attempt to

28  negotiate a resolution.  The Parties will submit the dispute for resolution by the magistrate

1  judge who retains jurisdiction if the Parties are unable to resolve the dispute within 60

2  days.

3  **N.   Objecting To The Settlement Agreement**

4   If this agreement is preliminarily approved and the proposed settlement class is

5  certified, the Parties will distribute notice to the settlement class in the manner approved

6  by this Court within sixty (60) days from the date of the Court's order preliminarily

7  approving the agreement.  The notice to class members will describe the agreement and

8  inform them of their right to object to the agreement.  The notice disseminated to members

9  of the settlement class is attached as Exhibit 3 to the Paradis Declaration.  Uber will pay

10  KCC LLC, a class settlement administrator, to post the notice on a settlement website that

11  KCC will maintain for this settlement, and to publish the notice in publications distributed

12  by the National Federation of the Blind and the American Council of the Blind, the two

13  largest associations of blind persons in the country.

14  **O.   Release Of Individual Damages Claims And Class Injunctive Claims**

15  In exchange for the injunctive relief in this Agreement, Plaintiffs and the settlement

16  class agree to release any injunctive relief and declaratory relief claims against Uber

17  relating to the subject matter of the litigation.  The release will apply to claims that arose

18  before the effective date of the Agreement.

19  In exchange for the damages relief in the Agreement, the named Plaintiffs also

20  release all of their damages claims against Uber relating to the subject matter of the

21  litigation.  The settlement class, however, will not release any damages claims.

22  **ARGUMENT**

23  **I.   CERTIFYING THE CLASS IS APPROPRIATE UNDER FED. R. CIV. P. 23(a) AND (b)(2)[2]**

24

25  The Parties have stipulated to seek certification of the following settlement class at

26  [2] To be clear, Defendants join in this motion only for settlement purposes and do not waive

27  any defenses they might raise as to class certification or the standing of Plaintiffs to pursue the relief sought herein should settlement approval not be granted.

28

the time of the fairness hearing:

> all blind or visually disabled individuals nationwide who travel with the assistance of Service Animals and who have used, attempted to use, or been deterred from attempting to use transportation arranged through the Uber Rider App.

The proposed settlement class is coextensive with the proposed class set forth in the Second Amended Complaint.  The class includes all individuals with service animals who have been deterred from attempting to use transportation arranged through the Uber Rider App because the parties agree for settlement purposes that these persons have standing to allege that Uber has violated their rights under the ADA and equivalent state laws.  *Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1080-82 (N.D. Cal. 2015).

### A.  The Proposed Class Meets The Numerosity, Typicality, Commonality, And Adequacy Requirements Of Fed. R. Civ. P. 23(a)

Plaintiffs assert, and Defendants do not contest for purposes of settlement only, that the proposed class satisfies the four threshold requirements for class certification under Federal Rule of Civil Procedure 23(a).  These requirements are:  (1) numerosity of potential class members, (2) commonality of factual and legal issues among class members, (3) typicality of the class representatives' claims, and (4) adequate representation of class-wide interests by class representatives and class counsel.

### 1.  The Proposed Class Meets The Numerosity Requirement

A class meets the numerosity requirement if the class is so large that joinder of all members would be impracticable.  Fed. R. Civ. P. 23(a)(1); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (certifying class of 262 individuals); *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 649 F.2d 531 (9th Cir. 1982) (certifying class of 184 identified potential class members).  A class consisting of forty or more individuals may satisfy the numerosity requirement.  *Amone v. Aveiro*, 226 F.R.D. 677, 684-85 (D. Haw. 2005) (certifying class where thirty members had been identified and class likely had more than forty members).  When "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large,

1  the numerosity requirement is satisfied." *In re Abbott Laboratories Norvir Anti-Trust*
2  *Litigation*, Nos. C 04-1511 CW, C 04-4203 CW, 2007 WL 1689899, at *6 (N.D. Cal. Jun.
3  11, 2007) (quoting 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3
4  (4th ed. 2002)).

5      The proposed class has well over forty members, and likely includes hundreds or
6  thousands, easily satisfying the numerosity requirement.  Plaintiffs have identified seventy-
7  four blind individuals who use service animals and belong to the class.  Paradis Decl. ¶ 33.
8  There are likely hundreds or thousands of additional class members.  Approximately ten
9  thousand blind individuals use guide dogs in the United States, and blind individuals also
10  use service animals for other purposes.  *Id.*  Over one hundred thousand Drivers provide
11  transportation arranged through the Uber Rider App in over 150 metropolitan areas
12  nationwide.  Thus, Plaintiffs submit that hundreds or thousands of blind individuals who
13  travel with service animals across the United States have actually used, or have reason to
14  and the opportunity to use transportation arranged through the Uber Rider App.

15      **2.      The Proposed Class Satisfies The Commonality Requirement**

16      The Ninth Circuit construes the commonality requirement permissively.  To satisfy
17  this requirement, there must be "questions of law or fact common to the class."  Fed. R.
18  Civ. P. 23(a)(2).  "[A]ll that Rule 23(a)(2) requires is 'a single significant question of law
19  or fact'" that will "generate common answers[.]"  *Abdullah v. U.S. Sec. Associates, Inc.*,
20  731 F.3d 952, 957 (9th Cir. 2012) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,
21  589 (9th Cir. 2012)).  In civil rights actions, "commonality is satisfied where the lawsuit
22  challenges a system-wide practice or policy that affects all of the putative class members.
23  Under such circumstances, individual factual differences among class members pose no
24  obstacle to commonality."  *Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014); *Hernandez
25  v. Cnty of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) (commonality satisfied in
26  action including ADA claims where defendants operating jail had system-wide policies
27  and practices concerning inmate medical care, mental health care, and safety needs).

28      Here, Plaintiffs contend, and Defendants do not contest for settlement purposes

only, that the commonality requirement is satisfied because Uber has system-wide policies and practices related to transporting Riders with Service Animals.  Plaintiffs contend, and Defendants do not contest for settlement purposes only, that Uber has a single nationwide service animal policy, that Riders nationwide submit service animal complaints in a similar manner, and that Uber will, as part of the settlement, implement uniform practices and procedures nationwide for responding to complaints that Drivers have refused to transport Riders with Service Animals.  In addition, Drivers' refusal to transport blind Riders with Service Animals similarly affects members of the proposed class.  They are all either denied transportation and/or deterred from attempting to use transportation arranged through the Uber Rider App.  Plaintiff further contends, and Defendants do not contest for settlement purposes only, that the determination of whether Uber's policies and practices concerning transporting blind Riders with Service Animals comply with state and federal disability law will not vary based on the particular facts of each denial of service or instance of deterrence.

### 3.     The Proposed Class Satisfies The Typicality Requirement

The named class representatives must have claims that are typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Evon*, 688 F.3d at 1030 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Parsons*, 754 F.3d at 686 (typicality satisfied where named plaintiffs were state prisoners who asserted exposure, like other members of putative class, to risk of future harm by challenged policies and practices, even if named plaintiffs might have

1   previously suffered varying injuries or have differing healthcare needs).

2          Plaintiffs allege, and Defendants do not contest for settlement purposes only, that

3   the named Plaintiffs' claims are typical of those of the class.  Proposed class

4   representatives Michael Kelly, Michael Pedersen, and Michael Hingson all have the same

5   disability and travel using the same mobility aid as other class members.  They are blind

6   and use service animals.  Plaintiffs contend they have all also alleged the same injury as

7   other members of the class due to the same conduct.  Plaintiffs further contend they have

8   all alleged denial of transportation or deterrence from attempting to access transportation

9   through the Uber Rider App because Drivers on the Uber platform have refused to

10  transport Riders with Service Animals and because Uber has not adopted practices and

11  procedures adequate to prevent this conduct.  Kelly Decl. ¶¶ 5-6; Hingson Decl. ¶ 5;

12  Pedersen Decl. ¶ 4-5.  NFB and NFB–CA are each membership organizations and have

13  members who have been denied rides because they are blind persons using service animals

14  and members deterred from using transportation arranged through the Uber Rider App by

15  the practices at issue.  Each has a mission to support full integration and equal access for

16  blind persons.  Plaintiffs contend that neither the claims asserted nor the relief requested in

17  this action require participation of individual members because injunctive relief has been

18  the principle goal sought.  *Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185,

19  1192 (N.D. Cal. 2007) (holding that NFB and NFB-CA had standing to pursue claims on

20  behalf of class of blind persons).

21          **4.      Class Representatives And Experienced Class Counsel Here
                       Easily Meet The Adequacy Requirement**

22

23          Finally, named Plaintiffs and class counsel must both adequately represent the class

24  to satisfy Rule 23(a).  To establish adequacy, the named plaintiffs and class counsel must:

25  (1) not have conflicts of interest with the proposed class, and (2) prosecute the action

26  vigorously on behalf of the class.  *Evon*, 688 F.3d at 1031; *see also In re LinkedIn User*

27  *Privacy Litigation*, 309 F.R.D. 573, 584-85 (N.D. Cal. 2015) (adequacy requirement

28  satisfied where named plaintiff and other members of class shared interest in securing

1    relief, there was no evidence of conflicts of interest, named plaintiff demonstrated

2    willingness to vigorously prosecute case, and class counsel had relevant experience).

3         Plaintiffs contend, and Defendants do not contest for settlement purposes only, that

4    no conflicts exist between named Plaintiffs, Class Counsel, and the settlement class with

5    respect to the negotiation and consummation of the terms of this settlement.  All named

6    Plaintiffs and other class members seek the same relief here:  changes to Uber's policies

7    and practices that will ensure that they consistently receive full and equal access to

8    transportation arranged through the Uber Rider App.  By ensuring that all Drivers are

9    aware of and agree to comply with their legal and contractual obligation to transport Riders

10   with Service Animals and enhancing Uber's practices related to enforcing its agreements

11   with Drivers and the service animal policy, the proposed agreement is crafted to provide

12   such relief.

13        In addition, Plaintiffs contend that the named Plaintiffs and class counsel have

14   vigorously pursued relief for the class.  Named Plaintiffs have knowledge of the case and

15   of their duties as class representatives, and are willing to continue to prosecute this action

16   if necessary.  Riccobono Decl. ¶ 5; Willows Decl. ¶ 5; Kelly Decl. ¶ 7; Pedersen Decl. ¶ 6;

17   Hingson Decl. ¶ 6.

18        Only the individual named Plaintiffs receive damages under the Settlement.  These

19   damages payments are based on multiple instances in which they allege they have been

20   denied access to or been deterred from attempting to access transportation through the

21   Uber Rider App.  Pedersen Decl. ¶¶ 4-5; Kelly Decl. ¶¶ 5-6; Hingson Decl. ¶ 5.  The

22   damage payments are in exchange for a release of the individual plaintiffs' damages

23   claims.  The damage claims have always been secondary to the goal of seeking equal

24   access to the Uber transportation services, which the Agreement achieves for the class.

25   The compromise here that does not provide for damages to absent class members but does

26   not disturb their damage claims is reasonable.  Continuing to litigate the case for damages

27   purposes would not serve the best interests of the class.  *See* Paradis Decl. ¶ 20.

28        Plaintiffs contend that Class Counsel has vigorously pursued relief here on behalf of

the class through litigation and eventually through detailed arms-length settlement negotiations.  *See Hanlon*, 150 F.3d at 1021 (vigorous representation measured by "competency of counsel and … an assessment of the rationale for not pursuing further litigation").  Class Counsel has served as Class Counsel in numerous and varied disability rights cases across the country.  Paradis Decl. ¶¶ 8-14.  Based on Class Counsel's experience litigating disability claims concerning transportation access, the practices and procedures that this Agreement authorizes will successfully ensure that blind Riders with Service Animals will consistently receive full and equal access to transportation arranged through the Uber Rider App.  The relief that the Agreement provides demonstrates that further litigation is unnecessary to remedy the class claims.  In addition, attempting to reach a resolution through additional litigation could have taken years and, due to the novel nature of the claims, might not have yielded a resolution as favorable as that contained in the proposed settlement.

### 5.       The Ascertainability Requirement Does Not Apply Here, But Even If It Did, The Class Is Sufficiently Ascertainable

Plaintiffs allege, and Defendants do not contest for settlement purposes only, that the ascertainability requirement does not apply to classes certified under Rule 23(b)(2).  *In re Yahoo Mail Litigation*, 308 F.R.D. 577, 597 (N.D. Cal. 2015) (holding ascertainability requirement inapplicable to (b)(2) class and noting that Ninth Circuit has not ruled on the issue but other circuits have held the requirement inapplicable to (b)(2) classes); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1386 (W.D. Wash. 2015); *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015); *Shook v. El Paso Cnty.*, 386 F.3d 963, 972 (10th Cir. 2004) (explaining "lack of identifiability" of class members cannot defeat certification of a (b)(2) class and "many courts have found Rule 23(b)(2) well suited for cases where the composition of a class is not readily ascertainable").

Even if the Court concludes that the ascertainability requirement applies, Plaintiffs allege that the class here is ascertainable.  In this circuit, ascertainability may be satisfied if the class is defined with "objective criteria" and if it is "administratively feasible to

determine whether a particular individual is a member of the class." *Lanovaz v. Twinings North America, Inc.*, 2014 WL 1652338, at *2–3 (N.D. Cal. Apr. 24, 2014) (quoting *Wolph v. Acer Am. Corp.*, No. 09–01314, 2012 WL 993531, at *1–2 (N.D. Cal. Mar. 23, 2012)); *see also Astiana v Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (if "the class definition is sufficiently definite to identify putative class members," the challenges of administering the class will not defeat certification) (citations omitted).

Plaintiffs allege the proposed class satisfies this standard.  Membership in the class can be determined by a short list of common characteristics.  Class members must (1) have a vision disability, (2) travel with a service animal, and (3) have used, attempted to use, or been deterred from using transportation arranged through the Uber Rider App because of their service animal.  Plaintiffs further contend that determining whether a rider with a vision disability who uses a service animal belongs to the class as a deterred individual is simple:  that person must have learned of reports that Drivers had refused to transport other blind Riders who use service animals, and as a result of knowledge of such reports, declined to attempt to use transportation arranged through the Uber Rider App on a specific occasion.

**B.      The Proposed Class Meets the Requirements Of Rule 23(b)(2)**

Rule 23(b)(2) was designed to facilitate civil rights class actions.  *Parsons*, 754 F.3d at 686.  Plaintiffs assert, and Defendants do not contest for settlement purposes only, that it is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole."  *Id.* at 688 (certifying (b)(2) class of prisoners challenging defendant's centralized policies and practices of "uniform and statewide application" even where those practices "may not affect every member of the proposed class … in exactly the same way"); Fed. R. Civ. P. 23(b)(2).  Rule 23(b)(2) is "'almost automatically satisfied in actions primarily seeking injunctive relief.'"  *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3rd Cir. 1994)).  "Cases challenging an entity's policies and practices regarding access for the

disabled represent the mine run of disability rights class actions certified under Rule 23(b)(2)." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (certifying (b)(2) class of persons with disabilities challenging transportation agency's use of deficient design guidelines and provision of inaccessible facilities) (collecting cases).

Certifying the proposed settlement class under Rule 23(b)(2) is appropriate for settlement purposes because the Agreement will result in uniform class wide injunctive relief by modifying Uber's national policies and practices applicable to the overall class. Plaintiffs contend that Uber has and/or will have one set of national policies and practices concerning transportation of blind Riders with Service Animals.  All members of the proposed class are subject to the effects of these common policies and practices. Certification is also appropriate because the Agreement provides only injunctive relief to the class, and only incidentally includes payments to the individual named Plaintiffs to resolve their individual damages claims.

## II.     PRELIMINARILY APPROVING THE PROPOSED AGREEMENT IS APPROPRIATE

Federal Rule of Civil Procedure 23(e) conditions the settlement of any class action on court approval.  *Hanlon*, 150 F.3d at 1025.  Preliminary approval of a settlement allows the parties to efficiently determine whether the proposed settlement is "within the range of possible judicial approval[.]"  *Grant v. Capital Management Services, L.P.*, 10–cv–2471– WQH (BGS), 2013 WL 6499698, at *2 (S.D. Cal. Dec. 11, 2013) (quoting *In re M.L. Stern Overtime Litig.*, 07–CV–0118–BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009)).  A court may probe the parties' consensual agreement only "to ensure that it is 'fair, adequate, and free from collusion.'"  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (Quoting *Hanlon*, 150 F.3d at 1027.  In addition, there is a presumption of fairness when "the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place[.]."  *In re Immune Response Securities Litigation*, 97 F. Supp. 2d 1166, 1171 (C.D. Cal. 2007).

1    Courts consider the following factors to determine whether a settlement is fair,

2   adequate, and reasonable:  (1) the strength of the plaintiff's case; (2) the risk, expense,

3   complexity, and likely duration of further litigation; (3) the risk of maintaining class action

4   status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

5   completed and the stage of the proceedings; (6) the experience and views of counsel;

6   (7) the presence of a government participant; and (8) the reaction of the class members to

7   the proposed settlement.  *Lane*, 696 F.3d at 819.[3]

8    The proposed settlement is fundamentally fair, adequate, and reasonable.  By

9   implementing a set of policies, practices, and procedures concerning Riders with Service

10  Animals, the Agreement is crafted to provide the class with full and equal access to

11  transportation available through the Uber Rider App.  Uber will significantly enhance its

12  procedures for informing all new and existing Drivers in the United States about their legal

13  and contractual obligation to transport Riders with Service Animals, and require that every

14  driver nationwide agree to transport Riders with Service Animals and provide informed

15  consent to Uber's service animal policy as a condition of continuing to provide

16  transportation arranged through the Uber platform.  Uber will also enhance its service

17  animal enforcement practices and investigation and response practices.  The Agreement

18  provides for extensive third-party monitoring and testing, and provides a method to adjust

19  the injunctive relief if monitoring and testing indicate that modifications are necessary.  In

20  sum, this Agreement comprehensively addresses measures to ensure that class members

21  receive reliable access to transportation arranged through the Uber Rider App, and it

22  contains flexibility to address unanticipated service animal access issues that may arise

23  during the Agreement's term.

24   Additionally, all parties have concluded that the settlement is appropriate after

25

26  [3] The last two factors are not relevant here.  Although the government filed a Statement of
    Interest in this Action, the government did not participate in settlement negotiations and is
27  not a party to the settlement.  Preliminary approval also occurs before notice to the class.

28

exchanging pertinent information and weighing the benefits of this agreement against the risks, costs, and delay of continued litigation.  The Parties' thorough settlement discussions, which included two in-person settlement meetings, a day-long mediation at JAMS, and other exchanges of information, have provided them with ample information with which to evaluate the settlement agreement.  Paradis Decl. ¶¶ 15, 17-20.  For example, the Parties exchanged information concerning Uber's training of customer support staff, the on-boarding process for new Drivers on the Uber platform, internal procedures for investigating service animal complaints, the Uber Driver App, the Uber driver portal, and Uber's driver-rider matching process.  Paradis Decl. ¶¶ 19-20. Accounting for this information, the Parties concluded that the agreed upon modifications to Uber's policies, practices, and procedures will provide effective relief to the class while efficiently and expeditiously resolving disputed issues.

In contrast, additional litigation would involve uncertainty and delay for all parties. The extensive factual issues and novel legal issues in the case would involve extensive resources at trial, including the use of experts.  Both parties agree that the litigation risks presented by this case are significant.

Furthermore, counsel experienced in class action litigation crafted the proposed agreement.  Class counsel are well-qualified litigators with specialized expertise with major class actions to improve programmatic access for persons with disabilities to transportation and to other private and public entities.  Paradis Decl. ¶¶ 8-14.  Counsel for Defendants also possesses substantial experience defending corporate clients against class actions.  Counsel on both sides view this agreement as a successful compromise that will resolve class members' claims in a fair and efficient manner.

The Agreement is presumptively fair because its negotiation was thorough and conducted at arm's length.  The Parties attended several in-person settlement meetings and a full-day mediation, and exchanged several versions of the settlement agreement and addendums before arriving at language and remedies that all parties found acceptable. Class representatives attended the mediation and participated in settlement negotiations.

JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND RELATED MOTIONS

1  Pedersen Decl. ¶ 7; Hingson Decl. ¶ 7; Willows Decl. ¶ 6.  The named Plaintiffs have

2  reviewed the terms of the settlement agreement and fully support it.  Pedersen Decl. ¶ 8;

3  Kelly decl. ¶ 9; Hingson Decl. ¶ 8; Willows Decl. ¶ 7; Riccobono Decl. ¶ 7.  That the

4  Parties negotiated an agreement on the injunctive relief for the benefit of the proposed

5  Settlement Class while leaving determination of Plaintiffs' claims for attorney's fees and

6  costs for later negotiation and/or for the Court to determine further demonstrates the

7  absence of any collusion.

8  **III.    THE COURT SHOULD DIRECT DISTRIBUTION OF THE NOTICE OF**
        **SETTLEMENT**
9

10      Notice to a settlement class certified under Rule 23(b)(2) is within the Court's

11  discretion.  Fed. R. Civ. P. 23(c)(2)(a), (e)(1); *Kim v. Space Pencil, Inc.*, C 11–03796 LB,

12  2012 WL 5948951, at *4 (N.D. Cal. Nov. 28, 2012).  Notice provided under Rule 23(e)

13  must ""generally describe[ ] the terms of the settlement in sufficient detail to alert those

14  with adverse viewpoints to investigate and to come forward and be heard."  *Lane*, 696 F.3d

15  at 826 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

16      The Parties have agreed on a form of notice and a notice distribution plan that will

17  effectively inform the class about the settlement and their right to object.  The notice

18  summarizes the key components of the settlement and provides procedures for submitting

19  objections and for participating in the fairness hearing.  KCC LLC, the settlement

20  administrator, will maintain a settlement website during the notice period, and the Parties

21  will post the notice and Settlement Agreement on this website.  The website and the notice

22  will be compatible with screen reading technology that blind persons use to operate

23  computers.  Within sixty days of the order preliminarily approving the Agreement, KCC

24  will also publish the notice in the newsletters and magazines of the National Federation of

25  the Blind and the American Council of the Blind, the largest associations of blind persons

26  in the U.S.

27      Class Counsel will also distribute the notice.  Class Counsel will electronically mail

28  the notice in a screen reader compatible format to persons who contacted Class Counsel to

1  complain about access to transportation available through the Uber Rider App for Riders

2  with Service Animals and for whom Class Counsel has email addresses.  Class Counsel

3  will also post the notice on the websites of Disability Rights Advocates, Rosen Bien

4  Galvan & Grunfeld, LLP, and TRE Legal Practice for the duration of the notice period.

5  Class Counsel will arrange for the notice to be electronically mailed to the membership

6  email list serves for the NFB, the American Council of the Blind, the National Association

7  of Guide Dog Users, and Guide Dog Users, Inc.  Uber will also post a link to the

8  settlement notice on its news blog (newsroom.uber.com).

9         This distribution of the notice is likely to reach thousands of class members.  The

10  NFB's magazine is distributed to approximately 35,000 people.  Paradis Decl. ¶ 29.  Many

11  of the other publications through which notice will be distributed each are circulated to

12  thousands of individuals.  *Id.* ¶¶ 29-31.  Many recipients of these publications are class

13  members.  *Id.* ¶¶ 30-31.

14  **IV.   THE COURT SHOULD APPROVE THE PROPOSED SCHEDULING**
**ORDER**
15

16         The Parties are submitting herewith a proposed scheduling order including dates for

17  issuance of the notice, deadlines for objections, a date for the fairness hearing to determine

18  final approval of the agreement, and related orders and deadlines.  The Parties request that

19  the Court enter this proposed order with such changes as the Court deems appropriate.

20                                **CONCLUSION**

21         The proposed settlement will benefit individuals with vision disabilities who travel

22  with service animals nationwide.  Plaintiffs hope that this Agreement will serve as a model

23  for the ride sharing industry on ensuring access for Riders with Service Animals.  It is a

24  fair, reasonable, and adequate settlement of the claims at issue.  The Parties therefore

25  request that the Court approve filing of Plaintiffs' Second Amended Complaint,

26  conditionally certify the proposed settlement class, give preliminary approval to the

27  / / /

28  / / /

1  proposed agreement, approve the proposed notice, and issue the proposed scheduling

2  order, including setting a date for a fairness hearing.

3

4  DATED: April 29, 2016                     Respectfully submitted,

5                                            ROSEN BIEN GALVAN & GRUNFELD LLP

6

7                                            By: _____

8                                                Michael S. Nunez

9                                            Attorneys for Plaintiffs

10

11 DATED: April 29, 2016                     LITTLER MENDELSON, P.C.

12

13                                           By:   /s/
                                                 _____

14                                               Andrew M. Spurchise

15                                           Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILER'S ATTESTATION**

Pursuant to Civil Local Rule 5-1(i), I, Michael S. Nunez, attest that concurrence in the filing of this document has been obtained.

Michael S. Nunez