UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>Defendants. | Case No. 14-cv-04086 NC<br><br>**ORDER GRANTING MOTIONS TO AMEND THE COMPLAINT, CONDITIONALLY CERTIFY CLASS, AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 84 |

In 2014, the National Federation of the Blind of California, Michael Kelly, Michael Hingson, and Michael Pedersen sued Uber Technologies on behalf of all blind individuals in California who use a service animal and were denied rides or deterred from using Uber's transportation app. The parties reached a nationwide settlement of the injunctive claims, resulting in extensive changes to Uber's policy that requires drivers to transport service animals. The settlement provides a process for continued monitoring and enforcement of Uber's policies.

The parties move for preliminary approval of their class action settlement, and plaintiffs seek to amend the complaint to include nationwide claims. The Court finds that the settlement is fair, adequate, and reasonable. The Court GRANTS plaintiffs' motion for preliminary approval of the class action settlement and DIRECTS notice to be disseminated.

Case No. 14-cv-04086 NC

## I. BACKGROUND

### A. Plaintiffs' Allegations

UberX is a widely available transportation service that uses mobile software applications to arrange rides between passengers and Uber's fleet of UberX drivers. First Amended Complaint ("FAC"), Dkt. No. 17, at ¶ 2. To use UberX services, an individual must either (1) create a user account, and provide Uber with the customer's phone number, credit card information, and email address, or (2) travel as the guest of an individual with an Uber user account. FAC ¶ 29. The customer then submits a request through Uber's mobile software application. FAC ¶ 30. Once Uber identifies the vehicle that will provide the customer with transportation, Uber notifies the customer via text message or through its smart phone application. FAC ¶ 30. The notification includes vehicle and driver identification information and an estimated time of arrival. FAC ¶ 30. When the vehicle has arrived, Uber notifies the customer, and the customer and passengers may board the vehicle. FAC ¶ 30. Uber provides several different transportation services in California, and UberX is one of Uber's most cost-effective transportation services. FAC ¶ 29. Those individuals who download Uber's mobile phone application agree to Uber's terms of service, including an agreement to submit all disputes to binding arbitration. Dkt. No. 25 at Exhibit A.

Plaintiff National Federation of the Blind of California ("NFBC") is a nonprofit association of blind Californians, which aims to achieve integration of the blind into society on a basis of equality with the sighted. FAC ¶ 22. Members of NFBC use UberX on Uber's smart phone application using text-to-speech technology. FAC ¶ 40. Additionally, members of NFBC use UberX as guests of UberX customers, without creating their own Uber account. FAC ¶ 43.

Plaintiff Michael Kelly is blind, uses a guide dog, and is a member of NFBC. FAC ¶ 66. Kelly travels with his girlfriend, Brooklyn Rodden, who is also blind and uses a guide dog. FAC ¶ 66. Rodden has an Uber account that she uses to request UberX vehicles for herself and Kelly. FAC ¶ 66. On September 13, 2014, an UberX driver

refused to transport Rodden and Kelly because of their guide dogs. FAC ¶ 66.

Plaintiff Michael Hingson is blind, uses a guide dog, and is a member of NFBC. FAC ¶ 67. Hingson does not have an Uber account and has not used UberX. FAC ¶ 67. On October 9-12, 2014, Hingson attended the annual state convention for NFBC in El Segundo, California. FAC ¶ 67. There, Hingson met attendees with service animals who were being denied transportation by UberX to and from the convention hotel. FAC ¶ 67. Hingson was deterred from using UberX on December 5, 2013, because he could not afford to be delayed by an UberX driver refusing to take his guide dog. FAC ¶ 67. Hingson would like to use UberX in the future, but does not believe that UberX is a reliable source of transportation. FAC ¶ 67.

Plaintiff Michael Pedersen is blind and uses a guide dog. FAC ¶ 73. On September 12, 2014, Pedersen's wife used her Uber account to request an UberX for Pedersen. FAC ¶ 73. Pedersen heard the UberX driver pulled up in front of his home, but the driver refused to transport Pedersen's guide dog. FAC ¶ 73. As a result, Pedersen missed his connection to a commuter shuttle and was late for work. FAC ¶ 73. Pedersen would like to keep using UberX without fear that he will be denied service and made late for work or other appointments. FAC ¶ 73.

Defendant Uber Technologies, Inc. is a for-profit transportation network company. FAC ¶ 27. Defendants Rasier LLC and Rasier-CA LLC are wholly-owned subsidiaries of Uber Technologies, Inc. that operate within the state of California. FAC ¶ 28. Defendants (collectively, "Uber") use smart phone software applications to arrange transportation between passengers and its fleet of drivers. FAC ¶ 27.

**B.    Procedural History**

In September 2014, Plaintiffs sued Uber alleging that it engages in discriminatory practices by permitting UberX drivers to deny access to blind individuals and their guide dogs. Plaintiffs bring claims under (1) Title III of the Americans with Disabilities Act ("ADA"); (2) California Unruh Civil Rights Act ("Unruh Act"); (3) California Disabled Persons Act ("DPA"); and (4) for declaratory relief.

In December 2014, Uber moved to dismiss the complaint, arguing that individual plaintiffs and the NFBC did not have standing. Dkt. No. 25. In April 2015, the Court denied Uber's motion to dismiss and allowed the case to proceed. Dkt. No. 37.

Thereafter, the parties engaged in mediation in August 2015 with retired judge Jamie Jacobs-May. In January 2016, the parties reached an agreement on key elements of a settlement. The parties continued to negotiate the specific language of certain provisions through early April 2016.

Plaintiffs now move to (1) amend the complaint to add plaintiff National Federation of the Blind (the national branch of the organization); (2) conditionally certify the class; (3) preliminary approve the class action settlement; (4) appoint class counsel and class representatives; and (5) direct notice to the class. The Court held a preliminary approval meeting on June 16, 2016. The Court ordered supplemental briefing on the scope of the release, which the parties supplied. Dkt. Nos. 101, 107, 108.

### C. Jurisdiction

The Court has subject matter jurisdiction over plaintiffs' federal ADA claim and exercises supplemental jurisdiction over state law claims. 28 U.S.C. §§ 1331, 1367. All parties have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 6, 14.

### D. Overview of the Class Settlement

Broadly, the settlement provides for nationwide injunctive relief to riders with service animals by tightening and extending Uber's accommodation policies. In addition, the named plaintiffs, including NFB, will recover damages and attorneys' fees, while the class members will retain the right to pursue their own damages claims. The Court will retain jurisdiction to enforce the settlement and NFB and Uber will work together to ensure the terms of the settlement are enforced for three-and-a-half years. If the parties agree or the monitor determines that Uber did not substantially comply with the Agreement, the agreement's term will extend by one-and-a-half years.

//

### 1. Class Definition

NFB's proposed amended complaint seeks to certify the following class: "All blind or visually disabled individuals nationwide who travel with the assistance of Service Animals and who have used, attempted to use, or been deterred from attempting to use transportation arranged through the Uber Rider App."

While the number of class members is unknown, plaintiffs have identified seventy-four blind individuals who use service animals and belong to the class. Approximately ten thousand blind individuals use guide dogs in the United States. Over one hundred thousand Uber drivers provide transportation arranged through the Uber App in over 150 metropolitan areas nationwide. Plaintiffs proffer that there are likely hundreds or thousands of class members.

### 2. Monetary Payment to the Plaintiffs

The settlement provides for monetary compensation to the named plaintiffs and the NBF National, but it does not provide for class-wide monetary relief. Instead, the class will not waive their right to pursue damages claims. Plaintiffs Michael Pedersen, Michael Kelly, and Michael Hingson will each receive $15,000 to resolve their state law damages claims. Uber will also make three annual payments of $75,000 to NFB during the first three years of the agreement's terms. If the term of the agreement is extended, Uber will make a fourth payment of $75,000 to NFB at the beginning of the extended term.

### 3. Injunctive Relief

The injunctive relief provided for in the settlement is extensive. In total, Uber will be required to implement a variety of policies to inform drivers that they must provide rides to individuals with service animals and to enforce the policies. The injunctive relief falls into three main categories: (1) providing notice to drivers; (2) providing remedies for and systematic support to riders with service animals to report incidents; and (3) enforcing Uber's policy that drivers may not discriminate against riders with service animals.

//

### a. Notice to Drivers

Under the settlement agreement, Uber will require that new drivers expressly confirm that they have reviewed, understand, and agree to comply with their legal obligations as outlined in Uber's Service Animal Policy. In addition, drivers will be blocked from receiving trip requests from riders through the Uber platform until they confirm an interactive pop-up notification in the Uber driver app that they are willing to transport riders with service animals. Drivers that are unwilling will be permanently blocked from receiving trip requests through Uber. Uber will also send quarterly email reminders to all drivers of its policy requiring transportation of riders with service animals.

### b. Support to Riders with Service Animals

Uber will reverse the cancellation or other fees that were charged in connection with an incident that is the basis of a service animal complaint. Uber will not charge riders with service animals cleaning fees for shedding by their service animals. Uber will also not charge cleaning fees to riders with service animals for the first two reported messes involving the bodily fluid of the rider's service animal. Riders with service animals will be able to contest cleaning fees. Uber will make a good faith effort, within one week of receiving the complaint, to inform the complainant of the outcome of Uber's review of the complaint, including whether Uber has terminated its contractual relationship with the driver.

### c. Enforcement

Uber will adopt an enhanced enforcement policy, in which Uber will permanently terminate its contractual relationship with a driver and permanently terminate that driver's ability to receive trip requests through the Uber platform if Uber determines that the driver knowingly refused to transport a rider because that rider was accompanied by a service animal. Uber will also terminate its contractual relationship with a driver if it receives plausible complaints on more than one occasion asserting that a driver unlawfully refused to transport riders with service animals because of the service animal anywhere in the United States. A complaining rider with a service animal will receive $25 credit if Uber

terminates its relationship with the driver who is the subject of the complaint.

Finally, the parties have agreed to a third-party monitor who will have access to Uber reports about complaints. NFB will administer compliance testing. Uber will compensate the monitor, with fees capped at $50,000 for 3.5 years, and an additional $35,000 if the parties agree to the year-and-a-half extension.

### 4. Attorneys' Fees and Costs, and Administration Costs

Uber will pay reasonable fees for the cost of settlement administration. The parties request that KCC LLC be appointed as the settlement administrator. Additionally, NFB will request reasonable attorneys' fees and costs, which Uber may oppose as to the amount. NFB will annually request attorneys' fees associated with overseeing the administration of the settlement.

### 5. Release of Claims

The settlement agreement releases the following claims:

> Effective on the Effective Date of this Agreement, Plaintiffs and the Settlement Class, and each of their executors, successors, heirs, assigns, administrators, agents, and representatives, in consideration of the relief set forth herein, fully and finally release Uber Technologies, Inc., and all each of its subsidiaries subsidiary and/or affiliate entities operating anywhere in the United States, (including but not limited to Rasier, LLC and Rasier-CA, LLC) and each of their present, former or future officers, members, directors, shareholders, agents, employees, representatives, consultants, attorneys, parent companies, affiliates, predecessors, successors, and assigns, to the fullest extent allowable by law, from any and all equitable relief claims, rights, demands, charges, complaints, actions, suits, and causes of action, currently known or unknown, foreseeable or unforeseeable, whether based upon Title III of the ADA, the Unruh Act or Disabled Persons Act, or based upon any other federal, state or local law, rule or regulation, order, or ordinance relating to or concerning equal access for legally blind or visually disabled persons who travel with Service Animals, which were alleged, or which could have been alleged, in the Complaint or any other court or administrative proceeding relating to the subject matter of the Complaint, that arose on or before the Effective Date. This is intended to include claims for injunctive relief, declaratory relief, and attorneys' fees, costs and expenses relating to the current action. The named Plaintiffs also release all damage claims that arose up through the Effective Date. This release excludes damage claims by the Settlement Class.

Case No. 14-cv-04086 NC        7

Notably, the class retains their damages claims, but releases their injunctive claims.

### 6. Class Notice

Class notice will be administered primarily through KCC LLC, the settlement administrator. KCC will maintain a website during the notice period with the agreed-to notice containing all relevant information. Within sixty days of this order, KCC will publish the notice in the newsletters and magazines of the National Federation of the Blind and the American Council of the Blind, the largest associations of blind persons in the U.S. Class counsel will distribute notice by email in a screen reader compatible format to persons who contacted class counsel to complain. Class counsel will also post the notice on the websites of Disability Rights Advocates, Rosen Bien Galvan & Grunfeld, LLP, and TRE Legal Practice. The notice will also be electronically mailed to the membership email list serves for the NFB, American Council of the Blind, National Association of Guide Dog Users, and Guide Dog Users, Inc. Uber will also post a link to the settlement notice on its news blog.

## II. DISCUSSION

The Court addresses (A) the amended complaint; (B) conditional class certification; (C) preliminary approval of the settlement; (D) class notice; (E) the schedule.

### A. Amended Complaint

Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend its pleading with the opposing party's written consent. Where the parties have agreed to file an amended complaint as part of the class settlement, judges in this district have granted leave to amend, subject to the terms of settlement. *See Miller v. Ghirardeli Chocolate Co.*, 12-cv-04936 LB, 2014 WL 4978433, at *7 (N.D. Cal. Oct. 2, 2014) (granting leave to amend for settlement purposes, but voiding the amendment if no final settlement occurs); *Harris v. Vector Mktg. Corp.*, 08-cv-5198 EMC, 2011 WL 1627973, at *6 (N.D. Cal. Apr. 29, 2011) (approving stipulation and granting leave to amend complaint as part of order granting preliminary approval); *see also Ching v. Siemens Indus. Inc.*, 11-cv-4838 MEJ, 2013 WL 6200190, at *8 (N.D. Cal. Nov. 27, 2013)(same).

Case No. 14-cv-04086 NC      8

1   Here, the parties seek to amend the complaint to add National Federation of the
2   Blind to the complaint as a plaintiff and to broaden the class allegations to include a
3   nationwide class.
4   At the hearing, the Court expressed concern that broadening the scope of this case
5   from a California class action to a nationwide might overlap with other ongoing cases.
6   Counsel for both parties indicated that they knew of no other case nationwide with the
7   same set of claims, seeking the same relief. However, plaintiffs' counsel indicated that
8   there is one other case filed for injunctive relief and damages, which would become moot
9   as to the injunctive relief as a result of this settlement. *See Jolliff v. Uber Technologies,*
10  *Inc., et. al.*, Case No. 16-cv-605 GBL, dkt. no. 1 at ¶¶ 84-85 (E.D. Va.).
11  Thus, the Court finds that amendment of the complaint is appropriate and in the
12  interest of judicial efficiency to resolve nationwide claims in this litigation. The Court
13  GRANTS the motion to amend the complaint. Plaintiffs must file the second amended
14  complaint on the docket in a separate docket entry.

### B. Conditional Class Certification

Class certification requires that: (1) the class be so numerous that joinder of all members individually is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representative must be typical of the claims or defenses of the class; and (4) the person representing the class must be able fairly and adequately to protect the interests of all members of the class. Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003).

In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Plaintiffs here are seeking certification under Rule 23(b)(2). Plaintiffs assert that the action is maintainable under Rule 23(b)(2) which allows a class action to be certified when "members of a putative class seek uniform injunctive or declaratory relief from policies and practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 668 (9th Cir. 2014).

Case No. 14-cv-04086 NC           9

### 1. Numerosity

Here, plaintiffs have identified at least seventy-four class members and estimate that hundreds or thousands more individuals could be class members. The Court finds that the class is so numerous that joinder of all individuals members is impracticable.

### 2. Commonality

Here, there are questions of fact and law common to all class members, the answers to which will drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Although the facts of each individual's alleged discrimination are different, the essential facts and questions of law are common. Specifically, plaintiffs all seek to ensure that drivers using the Uber platform will reliably transport riders with service animals.

### 3. Typicality

For purposes of the typicality inquiry, the named plaintiffs' injuries need not be identical with those of the other class members, "only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Here, the Court acknowledges that the injuries of the organization, the individual plaintiffs, and the putative class members are fairly distinct. Each individual suffered a different type of offense, from deterrence to alleged abuse of a service animal. However, in the context of this specific class action settlement, plaintiffs do not seek to resolve the damages claims on behalf of the class members. Thus, the relevant injury is the denial of transportation or deterrence from transportation that plaintiffs seek to remedy through declaratory and injunctive relief. The Court finds that for the injunctive relief sought, the typicality requirement is satisfied.

### 4. Conflicts of Interest

Proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*,

1    150 F.3d at 1020.  Here, class representatives and class counsel participated in contested
2    motion to dismiss briefing and a hearing, began discovery, and mediated the dispute with a
3    third-party neutral.  Additionally, plaintiffs and their counsel have litigated other equal
4    access cases in the past for the purpose of seeking injunctive and declaratory relief on
5    behalf of blind individuals.  There appears to be no conflict of interest with the class.

### 5. Rule 23(b)(2)

Rule 23(b)(2) provides that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "[T]he primary role of this provision has always been the certification of civil rights actions." *Parsons*, 754 F.3d at 686.  In *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011), the Supreme Court elaborated that Rule 23(b)(2) concerns the "individual nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 687-88.

Here, the remedy of injunctive and declaratory relief sought is the same for all class members and will remedy their alleged injuries.  Plaintiffs seek to change Uber's policies to enforce consistency with the ADA and state law regulations requiring transportation providers to accommodate riders with service animals.  Thus, the relief sought is generally applicable to the class as a whole.  Additionally, the parties' settlement reflects policy changes that will allow all class members to benefit from the improved reliability of transportation provided by drivers and the Uber platform.

### C. Preliminary Approval of the Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement by a certified class.  Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska*

Case No. 14-cv-04086 NC                11

*P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), "[t]he purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, a settlement should only be approved if it is "fundamentally fair, adequate, and reasonable." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). In determining whether the proposed settlement meets this standard, the Court does not have the ability "to delete, modify, or substitute certain provisions. . . . The settlement must stand or fall in its entirety." *Id.* Due to the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a Court-designated class representative, settlement approval that takes place prior to formal class certification requires a higher standard of fairness. *Hanlon*, 150 F.3d at 1026.

"The Court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-cv-05198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

### 1. The Settlement Process

Here, the settlement appears to be the product of serious, informed, non-collusive negotiations. The parties had an all-day mediation before Hon. Jamie Jacobs-May (ret.) at JAMS in August 2015, after briefing and arguing a contentious motion to dismiss. Although the named plaintiffs will receive monetary compensation, the class does not waive its damages claims. Additionally, the parties have not agreed to the amount of attorneys' fees and costs counsel can recover. Instead, plaintiffs will move for attorneys' fees and costs, and defendants may oppose the amount requested. Ultimately, the Court will determine the amount of reasonable attorneys' fees. As a result, the Court finds that the concerns of collusion are not warranted in this case.

Case No. 14-cv-04086 NC 12

### 2. The Presence of Obvious Deficiencies

The Court expressed concern over two aspects of the settlement. First, the Court asked defendants to clarify the identities of all entities released under the settlement agreement. Defendants amended the release, dkt. no. 107, and clarified that "the only Released Parties with whom Settlement Class Members may have a contractual relationship are Uber Technologies, Inc. and a single subsidiary, Uber USA, LLC. From Defendants' perspective, it is unnecessary to identify any subsidiary entity specifically, as Uber Technologies, Inc. directly or indirectly wholly-owns all subsidiaries operating in the United States."

Second, the Court was concerned that class members will waive their rights under the ADA and all state and local laws. The Court requested that plaintiffs submit additional briefing to confirm whether any state disability laws provide greater protection then the ADA and California law. Plaintiffs confirmed for the Court that no state laws contain stricter requirements for access to transportation services than those outlined in the ADA and the Unruh Act (California law).

With these amendments and proffers, the Court is satisfied that there are no obvious deficiencies in the settlement.

### 3. Preferential Treatment

Incentive awards for class representatives, should the Court finally approve them, does not render the settlement unfair, as "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977). Here, each named plaintiff will receive $15,000 and release their damages claims, while NFB will receive $45,000. Class members will not receive any monetary benefits from the settlement, but will also not waive their right to pursue damages claims. The Court agrees with plaintiffs that this "preferential treatment" is properly categorized as a settlement of the named plaintiffs' claims in their entirety. Since plaintiffs' monetary recovery does not harm or take away value from the class claims as a whole, the Court finds that such

Case No. 14-cv-04086 NC    13

preferential treatment is permissible.

### 4. Whether the Settlement Falls Within the Range of Possible Approval

Finally, the Court must determine whether the proposed settlement falls within the range of possible approval. "To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, at *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)).

To determine whether an agreement is fundamentally fair, adequate, and reasonable, the Court may preview the factors that ultimately inform final approval: "[1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Id.* at *9 (citing *Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Here, the Court finds that the agreement is fundamentally fair, adequate, and reasonable because plaintiffs received nearly all the injunctive relief they sought. The Court notes that plaintiffs faced several additional hurdles to demonstrating a successful case, including navigating Uber's arbitration clause argument, maintaining standing, and obtaining class certification.

This is a complex case, which touches on cutting-edge questions at the intersection of the sharing economy, equal access, and constitutional law. The Court observes that if this case had proceeded, both parties would assume significant risks with voluminous discovery, burdensome motion practice, and novel legal issues.

///

### D. Class Notice

#### 1. Notice Administration

The parties have agreed to appoint KCC LLC as the notice administrator, and the parties will assist in disseminating the notice on their respective websites.

#### 2. Method of Providing Notice

KCC will publish the notice in the newsletters and magazines of the National Federation of the Blind and the American Council of the Blind, the largest associations of blind persons in the U.S. Class counsel will distribute notice by email in a screen reader compatible format to persons who contacted class counsel to complain. Class Counsel will also post the notice on the websites of Disability Rights Advocates, Rosen Bien Galvan & Grunfeld, LLP, and TRE Legal Practice. The notice will also be electronically mailed to the membership email list serves for the NFB, American Counseil of the Blind, National Association of Guide Dog Users, and Guide Dog Users, Inc. Uber will also post a link to the settlement notice on its news blog.

#### 3. Content of the Notice

Federal Rule of Civil Procedure 23 requires that "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Class counsel have assured the Court that all notices will be disseminated in accessible formats, either through screen reader compatible formats or in Braille print magazines. Class counsel also assure the Court that within the blind community, those individuals with service animals often subscribe to such magazines or remain in contact with service animal providers and trainers. The Court is satisfied that the notice will sufficiently reach class members.

Case No. 14-cv-04086 NC  15

### E. Schedule

The Court approves the parties' proposed schedule. Class members may object until October 13, 2016. The final approval hearing will be held on November 10, 2016, at 10:00 a.m. in Courtroom D in the San Francisco Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.

## III. CONCLUSION

In the Court's experience, a case involving injunctive relief that seeks a comprehensive change to a company's policies is often better resolved through the collaborative process of settlement, rather than the adversarial process of litigation. As plaintiffs note, the Uber app platform is a highly accessible and useful tool for riders with service animals, perhaps even more so than traditional transportation methods. By engaging in good faith negotiations, the parties have achieved an omnibus plan to eliminate discrimination in this accessible transportation platform for blind riders with service animals.

Thus, in conclusion, the Court GRANTS plaintiffs' motion and directs as follows:

1. Plaintiffs' request to amend the complaint is GRANTED. The second amended complaint must be filed on the docket within 7 days;

2. NFB, NFBC, Michael Kelly, Michael Hingson, and Michael Pederson are appointed as class representatives;

3. Disability Rights Advocates, TRE Legal Practice, and Rosen, Bien, Galvan & Grunfeld LLP are appointed as class counsel;

4. The class is certified as: "All blind or visually disabled individuals nationwide who travel with the assistance of Service Animals and who have used, attempted to use, or been deterred from attempting to use transportation arranged through the Uber Rider App."

5. The settlement is preliminarily approved;

6. KCC LLC is appointed as the settlement administrator;

7. KCC and the parties are directed to disseminate notice to the class members

Case No. 14-cv-04086 NC    16

1 within 60 days;

2     8.    The parties should make this Court order, the second amended complaint, and the settlement available on the appropriate websites in accessible formats. If this Court order or any other Court order in this case is not in the appropriate format to be accessible to a screen reader, the parties should notify the Court.

**IT IS SO ORDERED.**

Dated: July 13, 2016

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 14-cv-04086 NC      17