1  LAURENCE PARADIS (CA BAR NO. 122336) (lparadis@dralegal.org)
   JULIA MARKS (CA BAR No. 300544) (jmarks@dralegal.org)
2  Disability Rights Advocates
   2001 Center Street, Fourth Floor
3  Berkeley, CA 94704
   Telephone:      (510) 665-8644
4  Facsimile:      (510) 665-8511

5  TIMOTHY ELDER (CA BAR NO. 277152) (telder@trelegal.com)
   TRE Legal Practice
6  4226 Castanos Street
   Fremont, CA 94536
7  Telephone:      (410) 415-3493
   Facsimile:      (888) 718-0617

8
   MICHAEL BIEN (CA BAR NO. 96891) (mbien@rbgg.com)
9  MICHAEL NUNEZ (CA BAR NO. 280535) (mnunez@rbgg.com)
   Rosen Bien Galvan & Grunfeld
10 50 Fremont Street, 19th Floor
   San Francisco, CA 94105
11 Telephone:      (415) 433-6830
   Facsimile:      (415) 433-7104

12
   Attorneys for Plaintiffs
13

14
                  **UNITED STATES DISTRICT COURT**
15
                 **NORTHERN DISTRICT OF CALIFORNIA**
16

17

18
   NATIONAL FEDERATION OF THE BLIND         **Case No. 3:14-cv-4086 NC**
19 OF CALIFORNIA,  NATIONAL
   FEDERATION OF THE BLIND, MICHAEL          **SECOND AMENDED COMPLAINT FOR**
20 KELLY, MICHAEL HINGSON, and              **VIOLATIONS OF THE AMERICANS**
   MICHAEL PEDERSEN,                         **WITH DISABILITIES ACT, 42 U.S.C. §§**
21                                           **12101,** *et seq.,* **THE CALIFORNIA UNRUH**
                  Plaintiffs,                **CIVIL RIGHTS ACT, CAL. CIV. CODE**
22                                           **§§ 51 & 52, AND THE CALIFORNIA**
   v.                                        **DISABLED PERSONS ACT, CAL. CIV.**
23                                           **CODE §§ 54-54.3**
   UBER TECHNOLOGIES, INC.,
24
                  Defendant.
25

26

27

28

*(sidebar, left margin:)* DISABILITY RIGHTS ADVOCATES 2001 CENTER STREET, FOURTH FLOOR BERKELEY, CALIFORNIA 94704-1204 (510) 665-8644

**INTRODUCTION**

1.    This class action seeks to put an end to violations of the ADA committed by Uber Technologies, Inc., as well as its subsidiary and affiliate entities nationwide (collectively "Uber" or "Defendant") against blind individuals who use guide dogs. Plaintiffs National Federation of the Blind ("NFB") and National Federation of the Blind of California ("NFB-CA") sue on behalf of their members, including Plaintiff Kelly, who has been and will continue to be denied access to transportation services arranged through the Uber mobile software application ("Uber transportation services") and Plaintiff Hingson, who has been and continues to be deterred from using Uber transportation services, all because Uber has failed to ensure that blind riders with service animals, including many other members of Plaintiffs NFB and NFB-CA, can access Uber transportation services. Likewise, Michael Pedersen, a blind resident of San Francisco who uses a guide dog, also sues alongside Plaintiffs NFB and NFB-CA because Pedersen has been and will continue to be denied access to Uber transportation services on the basis of his using a service animal.

2.    Uber offers access to transportation services for sighted individuals throughout the United States.  Transportation arranged through the Uber mobile software application ("app") is highly cost-effective and widely available. Uber uses the app to arrange rides between passengers and its fleet of drivers in much the same way that a taxi dispatch arranges rides for customers.

3.    Drivers who use the Uber app ("drivers") are refusing to transport many blind individuals who use service animals, including members of NFB and NFB-CA. One driver denied rides to one blind woman on twelve separate occasions, while other drivers have refused service to a blind parent on her way to a pharmacy to get a prescription for her feverish toddler, abandoned blind travelers in extreme weather, and cancelled rides for discriminatory purposes and then charged the riders cancellation fees, all because these individuals were using guide dogs. Drivers have refused to transport Jamey Gump, Manveen Chahal, Cody Austin Meyer, Brooklyn Rodden, Michael Kelly, Jessie Lorenz, Jonathan Lyens, and Juanita Herrera (all blind

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    members of NFB-CA and NFB) because they use guide dogs. In total, Plaintiffs are aware of

2    more than 150 instances where drivers on the Uber platform refused to transport blind

3    individuals with service animals. Drivers who refused to transport these blind individuals did so

4    after they initially agreed to transport the riders. The Drivers denied the requested transportation

5    service after the drivers had arrived and discovered that the riders used service animals.

6         4.    In addition, some drivers mishandle guide dogs, harass blind customers with

7    guide dogs, or give low feedback scores to passengers with service animals even when drivers do

8    not outright deny the provision of transportation service. Blind customers with guide dogs have

9    been yelled at by drivers who are hostile toward their guide dogs. In addition, upon information

10   and belief, passengers with service animals receive lower average ratings from drivers. A lower

11   rating reduces the probability that a driver will agree to provide transportation to a passenger in

12   the future.

13        5.    Many of these blind individuals submitted written complaints to Uber concerning

14   the discriminatory treatment that they experienced. However, Uber has failed to notify most of

15   these individuals regarding whether Uber has thoroughly investigated their complaints,

16   disciplined the relevant drivers, or taken any other meaningful steps to ensure that these drivers

17   do not continue to unlawfully discriminate against them or other individuals with service

18   animals. Instead, Uber representatives often responded to these complaints by denying

19   responsibility for the discrimination. Meanwhile, many of these blind individuals experience

20   ongoing denials from multiple drivers.

21        6.    Plaintiff Kelly is blind, uses a guide dog, and is a member of NFB and NFB-CA.

22   Mr. Kelly travels in vehicles on the UberX platform with companions who use the Uber app. Mr.

23   Kelly and his companions have been denied access to UberX transportation services because of

24   the presence of Mr. Kelly's service animal.

25        7.    Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB and NFB-

26   CA. Mr. Hingson, a public speaker and best-selling author, travels extensively throughout

27   California and has traveled with a guide dog for decades. Mr. Hingson is aware of drivers'

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  widespread discrimination against blind individuals with service animals, and Mr. Hingson has

2  refrained and continues to refrain from creating an Uber user account or otherwise using Uber

3  transportation services because he fears experiencing similar discrimination. Mr. Hingson has

4  been deterred from using Uber on many specific occasions when it would have been convenient

5  for him to use Uber's app to arrange transportation.

6       8.    Plaintiff Pedersen is blind, uses a guide dog, and is a resident of San Francisco,

7  California. Mr. Pedersen has been denied access to Uber transportation services multiple times.

8  Mr. Pedersen would like to continue using Uber transportation services without fear that drivers

9  will refuse to drive him.

10       9.    When drivers deny rides to blind riders with service animals, blind individuals

11  experience several harms. They face unexpected delays, they must arrange alternate

12  transportation that is sometimes more costly, and they face the degrading experience of being

13  denied a basic service that is available to all other paying customers.

14       10.    In addition, Uber charges many blind riders with guide dogs cancellation fees

15  after drivers have unlawfully denied them service. These blind riders are also often placed in the

16  uncomfortable position of explaining to uninformed drivers that service animals are protected by

17  law and that blind people have the right to bring service animals into vehicles providing

18  transportation services to the public.

19       11.    Uber is violating basic equal access requirements under the ADA by failing to

20  implement policies and procedures that would prevent or reduce discrimination against blind

21  riders committed by drivers. Uber can implement policies and procedures, including policies and

22  procedures that leverage its mobile smart phone software applications, that would prevent or

23  reduce discrimination committed by drivers against blind riders with service dogs.

24       12.    Uber and other similar services are a critical transportation option for many blind

25  individuals. Due to distances between destinations and the limitations of public transportation

26  and paratransit, many blind persons must use transportation network company services to travel

27  from one place to another. The fact that vehicles on the Uber platform have frequently refused to

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**SECOND AMENDED COMPLAINT**   3

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  transport Plaintiffs Kelly and Pedersen and other blind riders with service animals, and that this

2  discrimination deters Plaintiff Hingson and other members of Plaintiffs NFB and NFB-CA with

3  service animals from using Uber, means that members of Plaintiff NFB and NFB-CA are denied

4  full and equal access to this critical mode of transportation.

5      13.    Due to the public's widespread adoption of smart phones, Uber and other

6  transportation network companies are quickly supplanting traditional taxi companies and

7  becoming the public's primary option for on-demand transportation services. Uber offers its app

8  to the public in many cities throughout the United States and is quickly expanding its scope of

9  service to more communities.

10     14.    Congress provided a clear and national mandate for the elimination of

11 discrimination against individuals with disabilities when it enacted the Americans with

12 Disabilities Act. Such prohibited discrimination includes discrimination in the provision of taxi

13 services and other transportation services.

14     15.    Plaintiffs NFB-CA and Hingson proposed to Uber that the parties avoid litigation

15 and instead attempt to resolve this matter through structured negotiations, but Defendant Uber

16 refused. Plaintiffs were ultimately unable to obtain a commitment by Defendant Uber to remedy

17 these barriers to full and equal access, prior to filing a lawsuit.

18                                **JURISDICTION**

19     16.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §

20 1331 and 42 U.S.C. § 12188, for Plaintiffs' claims arising under the Americans with Disabilities

21 Act, 42 U.S.C. §§ 12101, *et seq.*

22     17.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over the

23 Named Plaintiffs' pendent claims under the California Unruh Civil Rights Act (California Civil

24 Code §§ 51, *et seq.*), and the Disabled Persons Act (California Civil Code §§ 54-54.3).

25                                   **VENUE**

26     18.    Venue is proper in the Northern District pursuant to 28 U.S.C. §§ 1391(b)-(c).

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

19. Defendant is headquartered in the Northern District of California and is registered to do business in California. Defendant does business in the Northern District of California. Defendant offers access to on-demand transportation services in cities throughout California, including in the Northern District of California.

20. Defendant is subject to personal jurisdiction in the Northern District of California. Defendant has been and is committing the acts alleged herein in the Northern District of California, has been and is violating the rights of consumers with disabilities in the Northern District of California, and has been and is causing injury to consumers with disabilities in the Northern District of California.

21. Plaintiffs NFB and NFB-CA have many members who reside in the Northern District of California. In addition, Plaintiffs Hingson and Pedersen have experienced injury in the Northern District of California.

**PARTIES**

22. NFB-CA is a duly organized nonprofit association of blind Californians. It is the California State affiliate of the National Federation of the Blind. NFB-CA's mission is to promote the vocational, cultural, and social advancement of the blind; to achieve the integration of the blind into society on a basis of equality with the sighted; and to take any other action which will improve the overall condition and standard of living of the blind. Reliable access to modern, publicly available transportation services such as those available through the Uber app is critical to NFB-CA and its members. Securing access to the Uber transportation services advances NFB-CA's goal to promote integration of the blind into society on a basis of equality by enabling blind individuals to travel in the same way that many sighted individuals travel. Drivers have refused to transport members of NFB-CA because they have service animals. NFB-CA sues on behalf of its members who have been denied access to or deterred from using the Uber app due to unlawful discrimination against blind individuals with service animals. NFB-CA also sues in furtherance of its extensive efforts and expenditure of resources in advancing its mission to improve independence of the blind. Securing access to the Uber service advances this

mission because access to the Uber service enables blind individuals to travel more

independently. Thus, discrimination against members of NFB-CA and other blind individuals

who use service animals frustrates this mission of NFB-CA and results in the diversion of its

resources to address Defendant's and drivers' discriminatory practices.

23.    Plaintiff NFB, a national membership organization of blind persons, is a nonprofit

corporation duly organized under the laws of the District of Columbia, with its principal place of

business in Baltimore, Maryland. It has affiliates in all 50 states. The vast majority of its

approximately 50,000 members are individuals who are blind and disabled within the meaning of

the ADA. The purpose of the NFB is to promote the general welfare of blind Americans by

assisting blind individuals in their efforts to integrate themselves into society on terms of

equality and by removing barriers and changing social attitudes, stereotypes, and mistaken

beliefs about the limitations created by blindness. The NFB and many of its members have been

actively involved in promoting accessible technology and transportation for the blind, so that

blind persons can live and work independently in today's world. NFB members have

encountered and will continue to encounter discriminatory treatment and denials of service by

drivers because of their use of service animals. NFB sues on behalf of its members who have

been denied access to or deterred from using the Uber app due to unlawful discrimination against

blind individuals with service animals. Additionally, NFB sues in furtherance of its mission to

improve independence of the blind, since securing access to Uber service for its members and all

blind Americans promotes NFB's goal of enabling blind individuals to live independent lives

and integrate into society on an equal basis. Discrimination against NFB members and other

blind individuals who use service animals frustrates NFB's mission and results in the diversion

of resources to address Defendant's and drivers' discriminatory practices.

24.    Plaintiff Michael Kelly is blind, uses a guide dog, is a member of NFB and NFB-

CA, and currently resides in Sacramento, California. Mr. Kelly is a musician and virtuoso

electric bassist. Mr. Kelly often travels with his girlfriend, who has an Uber account. Mr. Kelly

and his girlfriend prefer to travel together when going out to eat or running errands in the

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Sacramento area. The Uber app potentially offers a convenient and affordable way for Mr. Kelly

2   and his girlfriend to travel, though this convenience is undermined by the discriminatory

3   practices of Uber. Mr. Kelly will continue to attempt to travel using the Uber app with his

4   girlfriend and other companions who use the Uber mobile application. Mr. Kelly and his

5   girlfriend have been and will continue to be denied access to Uber transportation services

6   because of the presence of Mr. Kelly's service animal.

7        25.    Plaintiff Michael Hingson is blind, uses a guide dog, is a member of NFB and

8   NFB-CA, and currently resides in Victorville, California. Mr. Hingson is a public speaker and a

9   best-selling author who has traveled with a guide dog for decades. Mr. Hingson regularly travels

10  and regularly uses taxis within California for work and leisure. Mr. Hingson often travels to Los

11  Angeles and Sacramento in connection with his advocacy work for NFB-CA. He also regularly

12  travels to San Francisco for personal and professional business. Though Mr. Hingson would like

13  to use the Uber transportation service, he is deterred from signing up for and attempting to use

14  the Uber app because of the discrimination that other blind guide dog users have experienced

15  when attempting to arrange Uber transportation services. Mr. Hingson owns and regularly uses

16  an iPhone capable of running the Uber iPhone application, and Mr. Hingson has a credit card that

17  he could use to pay for Uber transportation services.

18        26.    Plaintiff Michael Pedersen is blind, uses a guide dog, and currently resides in San

19  Francisco, California. Mr. Pedersen is employed as a software developer and regularly commutes

20  from his home in San Francisco to his place of work. Mr. Pedersen's wife has used her Uber

21  account to request rides for Mr. Pedersen as he is preparing to leave for work in the morning. Mr.

22  Pedersen has been denied access to Uber transportation services multiple times because of his

23  service animal. Mr. Pedersen will continue to attempt to travel using the Uber app. Mr. Pedersen

24  will continue to be denied access to Uber transportation services because of the presence of his

25  service animal.

26        27.    The term "Named Plaintiffs" used in this complaint means NFB-CA and NFB, on

27  behalf of themselves and their members with service animals who have been denied access to or

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   deterred from using the Uber app because of discrimination against blind persons with service

2   animals, Mr. Kelly, Mr. Hingson, and Mr. Pedersen, unless otherwise indicated. The term

3   "Individual Plaintiffs" used in this complaint means Mr. Kelly, Mr. Hingson, and Mr. Pedersen,

4   unless otherwise indicated.

5       28.   Defendant Uber Technologies, Inc., a for-profit technology company based in

6   California engineers a smart phone software application to arrange rides between passengers and

7   drivers in much the same way that a taxi dispatch arranges rides for customers. Uber's customers

8   request rides through Uber; the Uber app identifies an available driver to transport each

9   customer; the Uber app bills customers for their rides in Uber vehicles; Uber provides customers

10  with receipts; and Uber handles inquiries and complaints from customers concerning drivers and

11  transportation services.

12                    **CLASS ACTION ALLEGATIONS**

13      29.   Plaintiffs seek certification of the following nationwide class pursuant to

14  Fed.R.Civ.P. 23(a) and 23(b)(2): "all blind or visually disabled individuals nationwide who

15  travel with the assistance of service animals and who have used, attempted to use, or been

16  deterred from attempting to use transportation arranged through the Uber rider app."

17      30.   The persons in the Class are so numerous that joinder of all such persons is

18  impractical and the disposition of their claims in a class action is a benefit to the parties and to

19  the Court.

20      31.   The action involves common questions of law and fact affecting the parties to be

21  represented in that they all have been and/or are being denied their civil rights to full and equal

22  access to, and use and enjoyment of, the Uber app.

23      32.   The case arises out of Defendant's policies and practices of permitting ongoing

24  discrimination against guide dog users by individual drivers, of failing to implement protections

25  to ensure that drivers understand and comply with anti-discrimination law, and of failing to

26  provide adequate support and recourse to riders who are discriminated against.

27      33.   The claims of the Named Plaintiffs are typical of those of the Class.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    34.    Plaintiffs will fairly and adequately represent and protect the interests of the

2    members of the Class.  Plaintiffs have retained and are represented by counsel competent and

3    experienced in complex class action litigation, including class actions brought under the

4    Americans with Disabilities Act.

5    35.    Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2)

6    because Uber has acted or refused to act on grounds generally applicable to the Class, making

7    appropriate both declaratory and injunctive relief with respect to Named Plaintiffs and the Class

8    as a whole.

9    36.    References to "Plaintiffs" shall be deemed to include Named Plaintiffs, and each

10   member of the Class, unless otherwise indicated.

11   **FACTUAL ALLEGATIONS**

12   37.    Uber provides access to several different transportation products to members of

13   the general public in a rapidly expanding number of metropolitan areas across the United States.

14   Uber transportation products vary based on the type of vehicle providing the transportation. Uber

15   offers UberX, a cost-effective taxi-like option, UberPOOL, a carpooling product, UberXL and

16   UberSUV, a taxi-like option limited to large vehicles, UberBLACK, a black-car product,

17   UberTAXi, which connects riders to drivers who drive taxis, and UberSELECT, a luxury-car

18   product. All of these transportation options operate in a similar way: Uber uses mobile

19   applications to connect riders to available drivers and facilitate payments. To use the Uber app,

20   an individual must either (1) create a user account, and provide Uber with her phone number,

21   credit card information, and email address, or (2) travel as the guest of an individual with an

22   Uber customer account. Uber has developed mobile software applications for iPhones, Android

23   phones, and Windows phones that customers use to request transportation from Uber for

24   themselves and/or guests. A vehicle on the Uber platform is able to transport a single passenger

25   or group of passengers traveling together up to the safe capacity of the requested vehicle, which

26   is usually no more than four passengers.

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

38.     To use one of the Uber transportation services, a customer submits a request on behalf of himself or other passengers through one of Uber's platforms available on the app. Once Uber identifies the closest available vehicle, Uber notifies the requester either by text message or through its smart phone application. The notification includes the driver's name, customer rating, phone number, vehicle license plate number, make and model of the vehicle, and the driver's estimated time of arrival. Uber's mobile application allows the requesting customer to track the vehicle's location as the driver navigates to the requesting customer's identified pick-up address. Requesting customers may also submit the desired trip destination through Uber's mobile application.

39.     The Uber app notifies the requesting customer once his or her vehicle has arrived. The requester or any other associated passengers may then board the vehicle. If the requesting customer submitted the destination address, the app will supply the driver with turn-by-turn directions to the desired destination. If the requesting customer did not enter the destination into Uber's application, the passenger(s) provides the driver with the desired destination. The driver then begins the trip in the Uber software application and proceeds to the desired destination. When the vehicle arrives at the desired destination, the driver ends the trip in the Uber smart phone application.

40.     Uber decides who may access the app. Individuals who wish to use the driver app must undergo a criminal background check, undergo a driving record check, present their driver's license, vehicle registration, and driver's insurance, and complete various forms. Once an individual becomes a driver, the app controls which trip requests are transmitted to each driver. Uber also exercises control over termination of drivers' relationships with Uber, and Uber terminates drivers' contracts for several reasons, including for poor ratings from customers.

41.     Uber also controls who may use the rider application. Uber makes the Uber application available only to passengers when at least one requesting customer has a credit card and a smart phone that can run one of its mobile applications, creates an Uber account, and

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 requests a ride through Uber's mobile application. Customers cannot access the Uber platform by

2 physically hailing an Uber vehicle on the street.

3       42.     Uber has requirements for the type and age of the vehicle that drivers may use to

4 operate on the Uber app. In addition, in some jurisdictions, the vehicle a driver uses while on the

5 Uber platform must pass an inspection.

6       43.     Uber records many details about the demand-responsive transportation services

7 that drivers provide, including for each trip: (1) the pickup location, (2) the time of pickup, (3)

8 the drop off location, (4) the time of drop off, (5) the distance traveled, (6) the trip duration, and

9 (7) the customer's identity. Uber periodically reviews the driving records of drivers. Uber also

10 asks customers for written feedback after every ride that a driver provides, and Uber routinely

11 follows up with customers who express dissatisfaction. Customers who wish to lodge complaints

12 concerning drivers do so by contacting Uber.

13       44.     In addition, in some circumstances, Uber provides drivers with the option to use

14 iPhones loaded with Uber's smart phone application. When providing transportation services,

15 drivers use these phones to receive and respond to trip requests, receive GPS-based navigational

16 guidance, record the beginning and end of each trip, communicate with customers, and cancel

17 trips. In addition, Uber maintains general commercial liability insurance to cover claims

18 concerning incidents that occur while drivers are providing transportation services on the Uber

19 app.

20       45.     Customers do not pay drivers of Uber vehicles in cash. Instead, Uber

21 automatically charges a customer's credit card after the vehicle arrives at the desired destination.

22 Fares for Uber transportation services are based on the duration and distance of each trip and

23 other factors such as demand at the time and place of the ride, as determined by Uber's

24 algorithms. Uber keeps a percentage of each fare. Thus, Uber remits fares to drivers based on the

25 duration and distance of the trips that they provide to passengers. Payments are not transferred

26 directly from customers to drivers; rather, Uber collects and holds customer payments, deducts

27 fees, and then later transfers money to drivers.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

46.     On September 19, 2013, the California Public Utilities Commission ruled that Uber is a transportation network company with respect to the UberX service. The Commission requires that Uber possess a Class P Charter Party Carrier permit issued by the Commission to operate the UberX service in California. The Commission stated that Uber may not discriminate against people with disabilities in the operation of the UberX transportation service and required that Uber's website and mobile applications comply with Level AA of version 2.0 of the Web Content Accessibility Guidelines.

47.     Members of Plaintiffs NFB and NFB-CA and many other blind individuals use the Uber application.  Many of these individuals operate Uber's smart phone software application using text-to-speech technology that is built into iPhones. Text-to-speech software, commonly used by persons who are blind or visually impaired, enables blind persons to operate smart phones by translating visual information and text displayed on a touchscreen device into audible synthesized speech or into Braille on a portable electronic braille display.

48.     Drivers have refused on the basis of disability to transport many blind individuals with service animals, including members of Plaintiffs NFB and NFB-CA.

49.     For example, Jamey Gump is blind, uses a guide dog, and is a member of NFB and NFB-CA. On or about March 23, 2014, a driver refused to transport Mr. Gump in San Leandro, California from a work-related event to his home. On that occasion, Mr. Gump used the Uber mobile app to summon a vehicle. The driver pulled the vehicle up to where Mr. Gump was standing on the curb and, after noticing that Mr. Gump had a dog, said "no pets allowed." Mr. Gump tried to explain that his guide dog was a service animal and that the driver had a legal obligation to allow the service animal into the vehicle. Mr. Gump attempted to show the driver an official guide dog identification card issued by his guide dog's training program. The driver adamantly refused to let Mr. Gump into the vehicle and drove away.

50.     On or about May 21, 2014, another driver refused to transport Mr. Gump and a friend who also uses a service animal because of their service animals. On that occasion, Mr. Gump and Manveen Chahal, a friend and fellow member of NFB-CA who also uses a service

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   animal, were enjoying an evening at the Dutch Goose, a local pub in downtown Menlo Park,

2   California. Mr. Gump had planned to leave on a trip early the next morning and requested an

3   UberX ride to get to his home in Menlo Park because of the late hour. After the requested vehicle

4   had pulled up to the curb, Mr. Gump and Mr. Chahal attempted to enter the vehicle and opened a

5   passenger door. The driver began shouting "no dogs!" Mr. Gump tried to explain that their dogs

6   were service animals for their disabilities and were legally allowed in the vehicle. The driver

7   began shouting and cursing at Mr. Gump and Mr. Chahal in a language that Mr. Gump did not

8   understand. Mr. Chahal speaks the language and was offended by the profanity and insults. As

9   Mr. Gump attempted to enter the vehicle, the driver quickly accelerated the vehicle forward,

10  nearly injuring Mr. Gump's guide dog and causing an open passenger door to strike Mr. Chahal.

11  The driver then sped away and cancelled the ride request. Mr. Gump and Mr. Chahal

12  immediately called the police to file a report and used alternative transportation to travel home

13  approximately forty-five minutes later.

14          51.     On August 20, 2014, Mr. Gump requested an UberX ride to pick him up at 214

15  Van Ness Ave., San Francisco, California. Mr. Gump determined from the map in the Uber

16  iPhone application that his requested vehicle was about to turn onto his street. Mr. Gump then

17  went out to the curb with his guide dog in direct sight of the oncoming vehicle to intercept the

18  driver. Mr. Gump noticed a vehicle slow its speed to a near stop in front of him and then

19  accelerate again as it passed him on the curb. A few seconds later, Mr. Gump received a

20  notification on his phone that the driver had cancelled the ride. Mr. Gump then requested a

21  second UberX ride, but the exact same driver accepted the request to pick up Mr. Gump for a

22  second time. Again, a few seconds after Mr. Gump received confirmation that this same driver

23  was on the way, the driver cancelled on him for a second time.

24          52.     Mr. Gump wants to use the Uber application because it is available near his home,

25  an area with limited public transportation, and it would be convenient if it was reliably accessible

26  and non-discriminatory. However, after these experiences, he has been hesitant to use Uber so

27  frequently because he concluded that it is not a reliable transportation option for him.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    Notwithstanding Mr. Gump's repeated complaints to Uber about his negative experiences since

2    the initial discriminatory ride denial, his access to Uber services did not improve. Mr. Gump

3    hopes that Uber will change its policies and practices to better prevent discrimination against

4    passengers with service animals so that he can enjoy Uber with the same convenience and

5    reliability enjoyed by others.

6          53.    Cody Austin Meyer is blind, uses a guide dog, and is a member of NFB and NFB-

7    CA. A driver refused to transport Mr. Meyer on September 30, 2014. On that occasion, Mr.

8    Meyer was shopping at a grocery store in the Mission Valley Shopping Center in Fremont,

9    California and needed a way to transport his groceries back to his apartment. Mr. Meyer used the

10   Uber iPhone app to request a vehicle. A driver was assigned to pick Mr. Meyer up at the

11   shopping center. Mr. Meyer was standing on the curb in the shopping center waiting for the

12   driver when Mr. Meyer noticed a vehicle pull up near where he was standing and remain inactive

13   for an extended period of time. The driver then called Mr. Meyer's cell phone. When the driver

14   observed Mr. Meyers answering his cell phone, the nearby vehicle rolled a window down and

15   told Mr. Meyer "no dogs!" Mr. Meyer explained that it was a certified service animal and it was

16   illegal for the driver to refuse to take him. The driver then began to drive away. Mr. Meyer

17   warned that he would report this incident to Uber. The driver said "go ahead" and left.

18         54.    Mr. Meyer was then charged a cancellation fee. Because Mr. Meyer did not want

19   to risk being denied by yet another driver, Mr. Meyer went to the bus stop with his groceries to

20   catch the next bus. After a prolonged wait for the bus, Mr. Meyer called a friend to talk about the

21   incident and that friend eventually came to pick up Mr. Meyer using the friend's personal

22   vehicle. Using a computer equipped with screen reader software, software that enables blind

23   individuals to read and interact with text and controls on properly coded websites, Mr. Meyer

24   visited Uber's website the next day to submit a complaint. However, he had difficulty submitting

25   a complaint on Uber's website because of its inaccessible design. Mr. Meyer called the telephone

26   number listed on Uber's website and encountered a busy signal. Mr. Meyer was required to

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  spend an extended period of time composing and submitting a written complaint to Uber in order

2  to get the cancellation fee refunded.

3        55.    Brooklyn Rodden is blind, uses a guide dog, and is a member of NFB and NFB-

4  CA. A driver arranged using the Uber app refused to transport her and her boyfriend, Plaintiff

5  Michael Kelly, who also uses a service animal, on or about September 13, 2014. On that

6  occasion, Ms. Rodden used her Uber app to request a vehicle so that she and Plaintiff Kelly

7  could go out to dinner at Chicago Fire Pizza, a local pizza parlor in Sacramento, California.

8  When the requested driver arrived, Ms. Rodden and Plaintiff Kelly attempted to enter the vehicle

9  with their service animals and were refused access by the driver. Though Ms. Rodden and

10  Plaintiff Kelly explained that the driver's conduct was illegal, the driver maintained his refusal to

11  transport them because of their service animals and then drove away.

12        56.    Jessie Lorenz is blind, uses a guide dog, and is a member of NFB and NFB-CA. A

13  driver refused to transport Ms. Lorenz on or about November 30, 2012. On that occasion, Ms.

14  Lorenz was leaving a fundraising event at Chevys Fresh Mex restaurant located at 201 3rd Street

15  in San Francisco. Ms. Lorenz and a friend both felt tired and decided to use Uber to request a

16  vehicle to BART. Ms. Lorenz's blind friend uses a white cane instead of a service animal. When

17  the vehicle arrived, the driver said "I don't take dogs." Ms. Lorenz did not want to have an

18  argument with the driver, so she did not protest. The driver was willing to transport Ms. Lorenz's

19  blind friend, so he took the vehicle arranged using Uber. Ms. Lorenz then walked to BART

20  alone. After that experience, Ms. Lorenz decided not to continue using Uber because she has

21  other transportation options and does not want to deal with the potential hassle and humiliation

22  that accompanies being denied a ride by a driver.

23        57.    Jonathan Lyens is blind, uses a guide dog, and is a member of NFB and NFB-CA.

24  A driver refused to transport him from his home to a job interview in San Francisco, California

25  on or about February 20, 2014. On or about 8:30 a.m. on that date, Mr. Lyens requested UberX

26  transportation from his home in San Francisco. Uber notified Mr. Lyens that it had identified a

27  vehicle to transport him, and the app notified Mr. Lyens when the vehicle arrived at his home.

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Mr. Lyens then went with his guide dog to the street in front of his home to find his vehicle. Mr.

2   Lyens observed that a vehicle arrived at his home briefly after the app notified him that his

3   transportation had arrived. The app then notified Mr. Lyens that the driver had cancelled his ride,

4   and Mr. Lyens observed the vehicle in front of his home leave. As a result of this cancellation,

5   Mr. Lyens had to pay a higher fare for transportation to his interview. He was also late to his

6   interview because of the delay.

7       58.    Juanita Herrera is a blind college student, uses a guide dog, is a member of NFB

8   and NFB-CA, and resides in Southern California. Ms. Herrera is interested in using the UberX

9   service because it is more convenient and affordable than other taxi options. She attempted to use

10   the UberX service for the first time on August 7, 2014. She requested a ride from the Macy's

11   store located at 6200 Slauson Avenue in Culver City, California. She was standing in front of the

12   store waiting for her requested ride when a driver approached her and asked if she was waiting

13   for an Uber. She answered yes, and the driver asked if her dog was coming with her. She told

14   him that her dog would accompany her and that her dog is not a pet. She explained that her dog

15   is a service animal and that he was legally required to take both her and her service animal. The

16   driver ignored her plea and refused to let her service animal enter the vehicle. The driver told her

17   that he was leaving for his next passenger. He then left Ms. Herrera standing dejected on the curb

18   with her service animal. As a result, Ms. Herrera waited thirty minutes for a bus and then rode

19   the bus for 25 minutes to get to her destination. The trip takes ten minutes in a vehicle arranged

20   using Uber.

21       59.    Robert Schulenburg is blind, uses a guide dog, and resides in California. Drivers

22   have refused to transport Mr. Schulenburg on at least five separate occasions in several

23   California cities, including Santa Clara, San Jose, Campbell, and Sacramento, because of his

24   guide dog. When these drivers were willing to speak with him, Mr. Schulenburg explained to the

25   drivers that he had the legal right to bring his service animal with him, but the drivers ignored his

26   explanations, and many of the drivers informed him that they had not received training

27   concerning service animals. In addition, Uber has charged him cancellation fees after some

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   drivers refused to transport him, and Mr. Schulenburg has been forced to submit written

2   complaints to Uber to get these fees refunded. When drivers have refused to transport Mr.

3   Schulenburg, he has faced delays of up to thirty minutes as he awaits alternative transportation.

4   Mr. Schulenburg has submitted written complaints about these instances of discrimination to

5   Uber. However, Uber has failed to inform Mr. Schulenburg whether Uber took any steps to

6   ensure that these drivers would not unlawfully discriminate against him again or other

7   individuals with service animals. Instead, Uber responded to some of Mr. Schulenburg's

8   complaints by stating that Uber cannot control its drivers' conduct because the drivers are

9   independent contractors and by advising Mr. Schulenburg that he should inform drivers of their

10  legal obligation to allow his service animal to accompany him.

11      60.   Richard Rueda is blind, uses a guide dog, and resides in California. Mr. Rueda

12  attended the annual convention for NFB-CA, which was held in Southern California on October

13  9-12, 2014. In connection with Mr. Rueda's travels to and from that convention, at least two

14  different drivers refused to transport him because of his service animal. On October 10, 2014,

15  Mr. Rueda requested an UberX trip from his parents' home in Whittier, California to the NFB-

16  CA convention at the Embassy Suites in El Segundo. When the driver arrived, he stepped out of

17  his vehicle and informed Mr. Rueda that he would not transport dogs because he has had issues

18  with dogs in the past. In response, Mr. Rueda explained to the driver that his dog was a service

19  animal, not a pet. The driver repeated his objection, reentered his vehicle, and left the scene.

20      61.   Again, on October 12, 2014, Mr. Rueda requested a vehicle using Uber back to

21  his parents' home in Whittier. A driver accepted the trip request. Mr. Rueda called the driver to

22  inform her of his location and to inform her that he had a service animal. In response, the driver

23  stated that she could not transport him because of the dog and then canceled his ride request. Mr.

24  Rueda then requested a second Uber ride. Again, after Mr. Rueda spoke with this driver on the

25  phone, the driver canceled the trip. Mr. Rueda made a third attempt and requested a third Uber

26  ride. A driver named Jesus accepted his trip request and transported him without incident. When

27

28

1   Mr. Rueda told Jesus about drivers denying him rides, Jesus stated that he knew of other drivers

2   who refused to transport dogs because the drivers did not want dog hair in their cars.

3       62.   Thomas Foley is blind, uses a guide dog, and resides in California. A driver

4   refused to transport Mr. Foley on or about September 5, 2014. On that occasion, Mr. Foley used

5   the Uber app to request an UberX ride from his place of work in Berkeley, California on his way

6   to an appointment. He waited for his ride in front of the building. The Uber app notified Mr.

7   Foley that his vehicle, a Toyota Corolla, was arriving, and a few seconds later a car pulled up

8   about ten feet from him. Mr. Foley proceeded to the car, reached for the door, and shouted

9   "Uber?" The car then drove away. Approximately 30 seconds later, the Uber app informed Mr.

10  Foley that the driver had cancelled his ride. Mr. Foley then conferred with a sighted individual at

11  a nearby bus stop who confirmed that the car that just drove away was a Toyota Corolla and that

12  the driver looked at Mr. Foley and his guide dog shortly before leaving the scene. Mr. Foley was

13  late to his appointment because of this incident.

14      63.   Sarah Outwater is blind and uses a guide dog. Drivers refused to transport her in

15  Boston on at least twelve separate occasions between 2013 and 2014. Uber charged her

16  cancellation fees in some instances where the drivers refused to transport her. In addition, the

17  same driver refused to transport her on three of these occasions, despite an Uber representative's

18  prior assurances that Uber would address the driver's discriminatory practices.

19      64.   Mark Cadigan is blind and uses a guide dog. During the month of August 2014,

20  Mr. Cadigan was denied service by two drivers in the Boston area because of his service animal.

21  On both occasions, Uber charged Mr. Cadigan cancellation fees after the drivers cancelled the

22  trip. Mr. Cadigan was forced to submit written complaints to Uber and to wait one to three

23  business days to get these cancellation fees refunded. His written complaints also described the

24  discrimination that he experienced. Mr. Cadigan is unsatisfied with Uber's responses to his

25  complaints. He received no formal response on one occasion and was verbally told on the other

26  occasion that the driver had merely been reprimanded. Mr. Cadigan believes Uber does not

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  adequately or consistently discipline drivers when complaints are made to Uber customer service

2  representatives.

3       65.   Kristin Fleschner is blind and uses a guide dog. Drivers refused to transport her in

4  the Boston area because of her service animal on at least five separate occasions over the

5  previous year. On one of those occasions she was left stranded in the rain while trying to secure

6  replacement transportation. Ms. Fleschner was unable to submit a complaint on Uber's website

7  because of accessibility barriers in the design of that website that prevent a blind person from

8  using it with standard screen access software.

9       66.   Melissa Riccobono is blind and uses a guide dog. A driver refused to transport

10  Ms. Riccobono in the Baltimore, Maryland, area on October 8, 2014. On that occasion, Ms.

11  Riccobono needed to travel to a local pharmacy to pick up a prescription for her sick child, who

12  had a high fever. The driver that she had requested using Uber's app refused to take her because

13  of her service animal. The driver maintained his refusal even after Ms. Riccobono had explained

14  her rights and tried to change the driver's mind. Ms. Riccobono is a mother of three young

15  children and depends on reliable and timely transportation services to take care of her family.

16       67.   Mariea Harris is blind and uses a guide dog. A driver refused to transport Ms.

17  Harris in the Charlotte, North Carolina, area on October 25, 2014 because she uses a service

18  animal. Ms. Harris planned to use Uber to travel from her home to a local grocery store with a

19  friend who also uses a service animal. When the requested vehicle arrived, Ms. Harris received a

20  notification in the Uber app. Ms. Harris's friend who uses a service animal went outside to

21  intercept the vehicle. The driver refused to let Ms. Harris's friend into the vehicle because of her

22  guide dog. Ms. Harris then came out of the house with her guide dog and approached the vehicle

23  to talk to the driver through the open driver-side window. The driver told Ms. Harris that he did

24  not have to take the dogs because the vehicle was his own personal car. Ms. Harris explained that

25  the ADA required the driver to transport the dogs and that the driver could lose his job if he did

26  not comply. The driver disagreed, drove away, and canceled the trip request. Ms. Harris

27  attempted to go to Uber's website to file a complaint while she waited for alternative

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**SECOND AMENDED COMPLAINT**        **19**

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  transportation. Ms. Harris then experienced difficulty using Uber's website because of

2  accessibility barriers in its design that inhibited her from using her screen reader technology to

3  access the content on Uber's website.

4      68.    Dimitrios Kouniaris is blind and uses a guide dog. During August 2014, drivers

5  refused to transport Mr. Kouniaris on two occasions in Austin, Texas because of his service

6  animal. On both occasions, Mr. Kouniaris was stranded in temperatures of over 100 °F as he

7  waited for alternative transportation. Uber also charged Mr. Kouniaris a cancellation fee and

8  only refunded it after he complained. Mr. Kouniaris has since stopped using the UberX service

9  because he does not want to face the risk that additional drivers will refuse to transport him or

10  mistreat him because of his service animal. However, Mr. Kouniaris wants safe reliable access to

11  the UberX service.

12      69.    Plaintiffs are aware of other blind persons throughout the United States whom

13  drivers refused to transport because those individuals had service animals.

14      70.    Uber also employs a rating system of its customers that, on information and

15  belief, tends to disparately affect blind passengers with service animals and reduce their access to

16  the service. After every completed ride, Uber allows its drivers to rate each passenger on a scale

17  from one to five similar to the scale passengers are given to rate every driver after a ride

18  concludes. Upon information and belief, Uber will not match a driver to the passenger a second

19  time if the driver gives that passenger a low rating. Drivers can also review an assigned

20  passenger's average rating by other drivers before deciding whether to travel to pick up that

21  assigned passenger. When drivers do begrudgingly accept a passenger with a service animal who

22  has successfully persuaded a driver not to violate the law, the driver has an incentive to rate that

23  passenger lower on the rating scale, which will make it less likely that the app will assign that

24  same driver to that passenger again in the future. This creates a system in which blind passengers

25  with service animals have fewer options to connect with drivers.

26      71.    Many of the preceding blind individuals submitted written complaints to Uber

27  concerning the discriminatory treatment that they had experienced. However, Uber has failed to

28

---

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  inform most of these individuals whether Uber has fully investigated their complaints,

2  disciplined the relevant drivers, or taken any other meaningful steps to ensure that these drivers

3  do not unlawfully discriminate against other individuals with service animals. Uber

4  representatives instead informed many blind guide dog users that "the drivers are independent

5  contractors" and Uber "cannot control their actions" and advised blind guide dog users to "let

6  your driver know when he or she is on the way to your pickup location that you have a guide

7  dog[.]"

8        72.  Plaintiff Kelly is blind, uses a guide dog, and is a member of NFB and NFB-CA.

9  Plaintiff Kelly lives in the Sacramento, California area and regularly depends on transportation

10  services to travel for work and leisure. Mr. Kelly regularly travels with his girlfriend, Brooklyn

11  Rodden, who also is blind and uses a guide dog. Mr. Kelly's girlfriend has an Uber account that

12  she often uses to request UberX transportation services for her and Mr. Kelly to use. A driver

13  recently refused to transport Mr. Kelly and Ms. Rodden on September 13, 2014 because of their

14  guide dogs. Mr. Kelly and Ms. Rodden intend to keep using UberX transportation services. Mr.

15  Kelly wants Uber to change its policies and practices so that the denials of service that he and

16  Ms. Rodden experienced do not recur.

17        73.  Plaintiff Hingson is blind, uses a guide dog, and is a member of NFB and NFB-

18  CA. Mr. Hingson previously downloaded the Uber app onto his iPhone but ultimately decided

19  against creating an account and trying to use the service. Mr. Hingson learned that drivers often

20  refuse to transport blind individuals with service animals. Because of Mr. Hingson's position as

21  Vice President of the National Association of Guide Dog Users and his longstanding

22  involvement with membership activities within NFB-CA, he has specific and general knowledge

23  of the experiences of multiple Uber passengers with service animals who have been denied

24  access. Through his regular contact with members of NFB-CA and other members of the blind

25  community, Mr. Hingson has known of specific refusals by drivers to transport individuals with

26  guide dogs over the past year. Additionally, through his activities with NFB-CA, Mr. Hingson

27  regularly attends events where fellow blind attendees with service animals are having trouble

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

using the Uber service. For example, Mr. Hingson attended the annual state convention for NFB-CA, which was held at the Embassy Suites South, El Segundo, CA, on October 9-12, 2014. Mr. Hingson met convention attendees with service animals who were experiencing denials when attempting to use UberX to travel to and from the convention hotel. Mr. Hingson has refrained and continues to refrain from creating an Uber user account or otherwise using Uber transportation services because he fears experiencing similar discrimination.

74.     Mr. Hingson was deterred from using Uber on many specific occasions. For example, on or about December 5, 2013, Mr. Hingson was planning to travel to a job interview at an executive recruiting firm in San Francisco. At that time, Mr. Hingson was aware that Uber was available in San Francisco. However, because of a tight schedule, Mr. Hingson decided not to attempt to use the UberX service because he could not afford to be delayed by a driver refusing to take his guide dog. Instead, Mr. Hingson arranged for a taxicab well in advance of his transit and extended his trip so that he could use nondiscriminatory transportation services to travel to his appointment on time.

75.     Plaintiff Hingson was further deterred from using Uber on January 20, 2014. On that occasion, Mr. Hingson needed to quickly travel from the Ferry Building in San Francisco to a speaking engagement at Wells Fargo. Mr. Hingson could not risk arriving late for this important professional engagement. Mr. Hingson wanted to use UberX because of its general convenience and the quality of the vehicles. However, he was deterred from doing so because he did not want to wait for the vehicle to arrive and then discover that the driver would refuse to take his service animal.

76.     Plaintiff Hingson was similarly deterred from using Uber on or about May 15, 2014. Mr. Hingson needed to travel within San Francisco to a meeting with a press contact. Mr. Hingson wanted to use UberX to attend this meeting. However, Mr. Hingson wanted to be focused for this meeting and believed the stress of encountering a driver that refused to transport his service animal would cause him stress and negatively affect his performance at the meeting.

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

77.     Likewise, on or about September 28, 2014, Mr. Hingson traveled from Los Angeles to San Francisco to attend meetings with marketing consultants for the purpose of filming video footage. Mr. Hingson needed to coordinate his travel schedule with airline flights and maximize his time with these consultants during the trip. He wanted to use the UberX service, but could not afford to waste unnecessary time in transit caused by a driver refusing to take his service animal.

78.     Plaintiff Hingson would like to use Uber for future travel. Mr. Hingson travels extensively and would like to use Uber transportation services on upcoming trips. However, Uber is currently not a reliable source of transportation for Mr. Hingson because of the risk that a driver will refuse to transport him and his service animal. Mr. Hingson hopes that Uber will take responsibility for the conduct of drivers and prevent and minimize discrimination. Mr. Hingson would use Uber if Uber properly informed drivers of their legal obligations, adopted and enforced effective antidiscrimination policies, and provided blind passengers a convenient way to immediately report discrimination so that he has some assurance that Uber will be as reliable and convenient for him and his guide dog as it is for others.

79.     Plaintiff Pedersen is blind, uses a guide dog, and resides in San Francisco, California. Mr. Pedersen regularly uses transportation services, such as UberX, to commute to work. Over the previous year, drivers refused to transport Mr. Pedersen multiple times because of his guide dog.

80.     For example, on or about September 12, 2014, Mr. Pedersen's wife used her Uber account to request a vehicle for Mr. Pedersen as he was preparing to leave for work in the morning. Mr. Pedersen heard that the driver had pulled up in front of his home and went outside to enter the vehicle. Mr. Pedersen knocked on the window of the vehicle and asked, "Uber?" The driver said, "yes, but I don't take dogs." Mr. Pedersen explained that his dog was a service animal and the driver was legally required to transport him. The driver replied, "I don't care. It's not my problem." The driver then drove away and canceled the trip request. Mr. Pedersen's wife was charged a $5 cancellation fee. Mr. Pedersen then used Flywheel, a competing service, to

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   obtain alternative taxi service. Because of the delay caused by the driver, Mr. Pedersen missed

2   his connection to a commuter shuttle and was late for work. Mr. Pedersen would like to keep

3   using Uber without fear that he will be denied service and made late for work or other

4   appointments. Mr. Pedersen wants Uber to change its policies and practices so that he can enjoy

5   the same reliability and convenience that other riders without service animals enjoy.

6       81.     Uber is violating basic equal access requirements under both the ADA and state

7   law by failing to implement policies and procedures that would prevent or reduce discrimination

8   against blind riders committed by drivers. Uber can adopt and enforce policies and procedures

9   that would prevent or reduce discrimination against blind individuals with service animals,

10  including Plaintiffs.  These policies would include, but are not limited to, the following:

11          1.     Provide an accessible method for blind individuals with service dogs to

12                 immediately and efficiently report instances where drivers refuse to transport

13                 them on the basis of disability;

14          2.     Establish a procedure for quickly investigating complaints and informing

15                 such blind persons of the outcome of their complaints;

16          3.     Provide mandatory acknowledgment by drivers concerning legal access

17                 requirements applicable to service animals and explain to drivers the

18                 consequences for failing to comply with these legal obligations;

19          4.     Meaningfully discipline drivers who deny access to blind riders with

20                 service animals and permanently terminate drivers who violate service animal

21                 policies; and

22          5.     Randomly deploy blind testers who use guide dogs to proactively

23                 identify–for retraining or termination–drivers who refuse to transport individuals

24                 with disabilities because of the presence of their service animals.

25      82.     On June 3, 2014, Plaintiff NFB-CA and Plaintiff Hingson wrote to Defendant

26  Uber Technologies, Inc. to notify it about the unlawful discrimination in the provision of UberX

27  services to blind individuals with service animals. On July 16, 2014, Plaintiff NFB-CA and

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1   Plaintiff Hingson proposed to Defendant that the parties attempt structured negotiations to

2   resolve the issue without a lawsuit. On August 8, 2014, Defendant rejected Plaintiffs' proposal

3   for structured negotiations. Defendant has since then failed to take adequate measures to remedy

4   the discrimination, and drivers continue to discriminate against blind customers with service

5   animals.

**FIRST CAUSE OF ACTION**

**Violation of Title III of the Americans with Disabilities Act**

**(42 U.S.C. § 12101, *et seq.*)**

(Injunctive Relief on Behalf of Plaintiffs)

10      83.      Plaintiffs incorporate by reference the foregoing allegations as though fully set

11  forth herein.

12      84.      Members of Plaintiff NFB and NFB-CA including Plaintiffs Kelly and Hingson

13  are qualified individuals with disabilities within the meaning of Title III of the ADA. Plaintiff

14  Pedersen is also a qualified individual with a disability within the meaning of Title III of the

15  ADA. Members of the proposed Class are qualified individuals with disabilities within the

16  meaning of Title III of the ADA.

17      85.      Title III of the ADA prohibits discrimination on the basis of disability in the full

18  and equal enjoyment of specified public transportation services provided by a private entity that

19  is primarily engaged in the business of transporting people and whose operations affect

20  commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

21      86.      Defendant is primarily engaged in the business of transporting people within the

22  meaning of Title III of the ADA and its regulations. 42 U.S.C. § 12184(a). Defendant operates

23  specified public transportation within the meaning of Title III of the ADA and its regulations. 49

24  C.F.R. §§ 37.3, 37.29, App. D § 37.29. The operations of Defendant affect commerce.

25      87.      Title III prohibits private entities providing specified public transportation from

26  imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from

27  fully enjoying the specified transportation services provided by the entity, unless such criteria

28

1  can be shown to be necessary for the provision of the services being offered. 42 U.S.C. §

2  12184(b)(1); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.301(a).

3      88.    By operating a service that dispatches drivers who unlawfully discriminate and

4  refuse to transport blind individuals with service animals and by operating a customer rating

5  system that, on information and belief, reduces the number of drivers available to Plaintiffs and

6  other blind customers with service animals, Defendant violates Title III of the ADA because

7  Defendant screens out or tends to screen out Plaintiffs and other blind individuals with guide

8  dogs from fully enjoying the Uber platform.  42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

9      89.    It is a violation of Title III for private entities providing specified public

10  transportation to fail to make reasonable modifications in policies, practices, or procedures when

11  such modifications are necessary to afford the entity's goods, services, facilities, privileges,

12  advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate

13  that making such modifications would fundamentally alter the nature of such goods, services,

14  facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12184(b)(2)(a),

15  12182(b)(2)(a)(ii); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302(a).

16      90.    By failing to modify practices, policies, and procedures to ensure that drivers on

17  the Uber platform do not refuse to transport Plaintiffs and other blind individuals with service

18  animals, Defendant is denying Plaintiffs full and equal access to the specified public

19  transportation offered through Defendant's app.

20      91.    Title III regulations prohibit private entities providing taxi services and other

21  transportation services from discriminating by refusing to provide transportation services to

22  people with disabilities who can physically access vehicles. 49 C.F.R. §§ 37.5(a)-(b), (f),

23  37.29(c).

24      92.    Title III regulations also specifically require that private entities providing

25  transportation services permit service animals to accompany people with disabilities in vehicles

26  and facilities. 49 C.F.R. §§ 37.5(f), 37.37(f), 37.167(a), (d); 28 C.F.R. § 36.302(c)(1).

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

93.     Defendant violates Title III of the ADA by refusing to provide transportation services to blind individuals with service animals, including Plaintiffs, who can physically access vehicles on the Uber platform. Defendant therefore violates Title III of the ADA by denying Plaintiffs full and equal access to the services, facilities, privileges, advantages, and accommodations of Defendant's service.

94.     In addition to operating specified public transportation within the meaning of Section 304 of the ADA, Defendant's service is also a demand responsive system within the meaning of Section 302 of the ADA. 42 U.S.C. § 12182(b)(2)(c). By operating a demand responsive system that dispatches drivers who unlawfully discriminate and refuse to transport Plaintiffs and other blind customers with service animals on the basis of disability, Defendant violates Title III and regulations applicable to demand responsive systems within the meaning of Section 302 of the ADA. 49 C.F.R. §§ 37.3, 37.21(a)(3), 37.167(a), (d); 28 C.F.R. § 36.302(c)(1).

95.     The regulations implementing Title III of the ADA require that private entities operating demand responsive transportation systems, including demand responsive systems that are also specified public transportation, must train personnel to proficiency so that they operate vehicles safely and properly assist and treat individuals with disabilities. 49 C.F.R. § 37.173.

96.     On information and belief, Defendant also violates Title III of the ADA by failing to train Defendant's personnel to proficiency so that they properly assist and treat Plaintiffs and other blind customers with service animals.

97.     Title III of the Americans with Disabilities Act also prohibits discrimination on the basis of disability by owners, operators, lessees, and lessors of places of public accommodation. 42 U.S.C. § 12182(a).

98.     Defendant Uber, either directly or through its subsidiary or affiliate entities and/or through the Uber application, provides a transportation service and specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D § 37.29. Uber and the vehicles providing transportation services owned, operated,

or leased by drivers are places of public accommodation within the meaning of Title III of the ADA. 42 U.S.C. §§ 12181(10), 12184(a); 28 C.F.R. § 36.104. Except for modifications to vehicles providing transportation services for the purpose of wheelchair accessibility, all of the antidiscrimination provisions of Title III of the ADA apply to the goods, services, facilities, privileges, advantages, and accommodations of vehicles providing transportation services.

99.     Title III prohibits entities that own, operate, lease, or lease to places of public accommodation from excluding, on the basis of disability, individuals with disabilities from participating in or benefiting from the goods, services, facilities, privileges, advantages, or accommodations of public accommodations or otherwise discriminating against a person on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

100.     By failing to adopt policies and practices that will prevent or reduce discrimination against blind individuals with service animals by drivers in the provision of the Uber transportation services, Defendant violates Title III of the ADA by excluding Plaintiffs on the basis of disability from enjoying the services, privileges, advantages, or accommodations of vehicles on the Uber platform.

101.     Under Title III, it is also unlawful for entities that own, operate, lease, or lease to places of public accommodation to afford, on the basis of disability, an individual or class of individuals with disabilities with an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

102.     Defendant violates Title III of the ADA by providing Plaintiffs and other blind individuals who use service animals an opportunity to participate in or benefit from the services, privileges, advantages, or accommodations of vehicles on the Uber platform that are not equal to that afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

103.     Title III further prohibits entities that own, operate, lease, or lease to places of public accommodation from providing, on the basis of disability, an individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation that is

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1  different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28

2  C.F.R. § 36.202(c).

3       104.   By operating a service that dispatches drivers who unlawfully discriminate against

4  and refuse to transport blind individuals with service animals, Defendant violates Title III of the

5  ADA because Uber provides Plaintiffs, on the basis of disability, with services, privileges,

6  advantages, and accommodations of vehicles that are different or separate from that provided to

7  other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

8       105.   It is a violation of Title III for entities that own, operate, lease, or lease to places

9  of public accommodation to fail to make reasonable modifications in policies, practices, or

10  procedures when such modifications are necessary to afford such goods, services, facilities,

11  privileges, advantages, or accommodations to individuals with disabilities, unless the entity can

12  demonstrate that making such modifications would fundamentally alter the nature of such goods,

13  services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(a)(ii);

14  28 C.F.R. § 36.302(a).

15       106.   By failing to modify practices, policies, and procedures to ensure that drivers of

16  vehicles on the Uber platform are properly informed and do not refuse to transport blind

17  individuals with service animals, Defendant is denying Plaintiffs full and equal access to the

18  Uber platform.

19       107.   In addition, it is a violation of Title III to utilize, directly or through contractual or

20  other arrangements, standards or criteria or methods of administration that have the effect of

21  discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(d); 28 C.F.R. § 36.204.

22       108.   By administering Defendant's Uber transportation services in a manner that

23  results in blind individuals who use service animals being denied access to the service on the

24  basis of disability, Defendant is denying Plaintiffs full and equal access to the services,

25  privileges, advantages, and accommodations of vehicles on the Uber platform because Defendant

26  is utilizing methods of administration that have the effect of discriminating on the basis of

27  disability.

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
**Case No. 3:14-cv-4086**
**SECOND AMENDED COMPLAINT**       29

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    109.    The actions of Defendant were and are in violation of the Americans with

2 Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Many

3 members of Plaintiffs NFB and NFB-CA, including Plaintiff Kelly, and other blind persons,

4 including Plaintiff Pedersen and members of the proposed Class, have been and continue to be

5 denied access to Defendant's services on multiple occasions when they attempt to use Uber

6 transportation services. Defendant has failed to take any equitable steps to remedy Uber's

7 drivers' discriminatory conduct, and Defendant's violations of the ADA are ongoing.

8 Defendant's unlawful actions also violate the ADA by deterring members of Plaintiffs NFB and

9 NFB-CA, including Plaintiff Michael Hingson, and members of the proposed Class from

10 attempting to access the Uber transportation services. Unless the Court enjoins Defendant from

11 continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable

12 harm.

13 110.    Plaintiffs are entitled to injunctive relief. 42 U.S.C. § 12188.

14 WHEREFORE, Plaintiffs pray for relief as set forth below.

15                          **SECOND CAUSE OF ACTION**

16          **Violation of the California Unruh Civil Rights Act**

17                    **(California Civil Code §§ 51 & 52)**

18 (Injunctive Relief on Behalf of Named Plaintiffs and Damages on Behalf of Individual Plaintiffs)

19    111.    Plaintiffs incorporate by reference the foregoing allegations as though fully set

20 forth herein.

21    112.    The Unruh Civil Rights Act guarantees, *inter alia*, that persons with disabilities

22 are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all

23 business establishments of every kind whatsoever within the jurisdiction of the state of

24 California. Cal. Civ. Code § 51(b).

25    113.    The network of vehicles providing transportation services on the Uber platform to

26 the general public in California is a business establishment within the jurisdiction of the state of

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1 California, and as such is obligated to comply with the provisions of the California Unruh Civil

2 Rights Act, California Civil Code §§ 51, *et seq.*

3     114. The Unruh Act provides, *inter alia*, that a violation of the ADA, 42 U.S.C. §§

4 12101, *et seq.*, also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f).

5     115. Defendant's and drivers' discriminatory conduct alleged herein includes, *inter*

6 *alia*, the violation of the rights of persons with disabilities set forth in Title III of the ADA and

7 therefore also violates the Unruh Act. Cal. Civ. Code § 51(f).

8     116. The actions of Defendant and drivers were and are in violation of the Unruh Civil

9 Rights Act, California Civil Code §§ 51, *et seq.* Members of Plaintiff NFB-CA, including

10 Plaintiff Hingson, are aware of Defendant's unlawful actions, and their knowledge of this

11 discrimination has deterred members of Plaintiff NFB-CA, including Plaintiff Hingson, from

12 attempting to access the Uber application on several occasions. Moreover, many members of

13 NFB-CA and other blind persons, including Plaintiffs Kelly and Pedersen, have been and

14 continue to be denied access to transportation using Defendant's app on multiple occasions when

15 they attempt to use the Uber application. Therefore Plaintiffs are entitled to injunctive relief

16 remedying the discrimination pursuant to California Civil Code § 52. Unless the Court enjoins

17 Defendant from continuing to engage in these unlawful practices, Plaintiffs will continue to

18 suffer irreparable harm.

19     117. Individual Plaintiffs Kelly, Hingson, and Pedersen are also entitled to statutory

20 minimum damages pursuant to California Civil Code § 52 for each and every offense in violation

21 of the Unruh Act. Cal. Civ. Code § 52(b).

22 WHEREFORE, Named Plaintiffs pray for relief as set forth below.

23 **THIRD CAUSE OF ACTION**

24 **Violation of the California Disabled Persons Act**

25 **(California Civil Code §§ 54-54.3)**

26 (Declaratory Relief on Behalf of Named Plaintiffs and Damages on Behalf of Individual

27 Plaintiffs)

28

*NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, et al. v. UBER TECHNOLOGIES, INC., et al.*
Case No. 3:14-cv-04086
**SECOND AMENDED COMPLAINT**         31

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

118.    Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

119.    California Civil Code §§ 54-54.3 guarantee, *inter alia*, that persons with disabilities are entitled to full and equal access, as other members of the general public receive, to accommodations, advantages, facilities, and privileges of all "common carriers," "motor vehicles," "places of public accommodation" and "other places to which the general public is invited" within the jurisdiction of California. Cal. Civ. Code § 54.1(a)(1).

120.    It is a violation of California Civil Code §§ 54-54.3 to prevent service dogs from accompanying individuals with disabilities in any common carriers, motor vehicles, places of public accommodation, or other places to which the general public is invited. Cal. Civ. Code § 54.2(a)-(b). Any violation of the ADA is also a violation of California Civil Code § 54.1. Cal. Civ. Code § 54.1(d).

121.    Vehicles on the Uber platform providing transportation services to the general public are common carriers, motor vehicles, places of public accommodation or other places to which the general public is invited under California Civil Code § 54.1(a)(1).

122.    Defendant and drivers are violating the rights of Named Plaintiffs to full and equal access to common carriers, motor vehicles, places of public accommodation, or other places to which the general public is invited under California Civil Code §§ 54-54.3 by denying blind riders with service dogs full and equal access to the accommodations, advantages, facilities, and privileges of vehicles providing Uber transportation services. Defendant is also violating California Civil Code §§ 54-54.3 in that their actions are a violation of the ADA. Members of Plaintiff NFB-CA, including Plaintiff Hingson, are aware of Defendant's unlawful actions, and their knowledge of this discrimination has deterred members of Plaintiff NFB-CA, including Plaintiff Hingson, from attempting to access Uber transportation services on several occasions. Moreover, many members of NFB-CA and other blind persons, including Plaintiffs Kelly and Pedersen, have been and continue to be denied access to transportation on multiple occasions when they attempt to use the Uber app.

123.    Plaintiffs thus seek declaratory relief based on Defendant's violation of Named Plaintiffs' rights under California Civil Code §§ 54-54.3.

124.    Individual Plaintiffs Kelly, Hingson, and Pedersen are also entitled to statutory minimum damages for each violation of California Civil Code §§ 54-54.3(a).

125.    Plaintiffs do not seek relief, injunctive or otherwise, under California Civil Code § 55.

WHEREFORE, Named Plaintiffs pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**

(Declaratory Relief on Behalf of Plaintiffs)

126.    Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

127.    An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies, that by failing to adopt policies and procedures that would prevent drivers on the Uber platform that provide the Uber transportation services from denying rides to Plaintiffs and other blind individuals with service animals, Defendant fails to comply with applicable laws, including but not limited to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq*.

128.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiffs request relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

129.    A permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and the Unruh Act, California Civil Code §§ 51-52, requiring Defendant to take the steps necessary to ensure that drivers on the Uber platform who provide Uber transportation services do not unlawfully refuse to transport blind individuals with service animals, including Plaintiffs;

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644

1    130.    A declaration that Defendant discriminates against blind persons by failing to

2 provide blind riders, including Plaintiffs, with full and equal access to the services, facilities,

3 privileges, advantages, and accommodations of vehicles on the Uber platform providing

4 demand-responsive transportation services, including transportation services, in violation of Title

5 III of the ADA, 42 U.S.C. §§ 12181, *et seq.*, California Civil Code §§ 54-54.3, and California's

6 Unruh Act, California Civil Code §§ 51-52.;

7    131.    For Plaintiffs Kelly, Hingson, and Pedersen, damages in an amount to be

8 determined by proof, including all applicable statutory damages pursuant to California Civil

9 Code § 52(a) or California Civil Code § 54.3.

10    132.    An order awarding Plaintiffs reasonable attorneys' fees and costs, as authorized

11 by 42 U.S.C. § 12188, California Civil Code § 52, and California Civil Code § 54.3; and

12    133.    For such other and further relief as the Court deems just and proper.

13

14 DATED:  April 29, 2016                          Respectfully submitted,

15                                                 ROSEN BIEN
16                                                 GALVAN & GRUNFELD LLP

17

18                                                 By:  Michael S. Nunez

19                                                 TRE LEGAL PRACTICE

20

21

22                                                 By:  Timothy Elder

23                                                 DISABILITY RIGHTS ADVOCATES

24

25                                                 By:  Laurence Paradis
                                                   Attorneys for Plaintiffs
26

27

28

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, FOURTH FLOOR
BERKELEY, CALIFORNIA 94704-1204
(510) 665-8644