MARY-LEE SMITH – Cal. Bar No. 239086
JULIA MARKS – Cal. Bar No. 300544
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704-1204
Telephone:    (510) 665-8644
Facsimile:    (510) 665-8511
TTY:          (510) 665-8716
Email:        msmith@dralegal.org

TIMOTHY ELDER – Cal. Bar No. 277152
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California  94536
Telephone:    (410) 415-3493
Facsimile:    (888) 718-0617
Email:        telder@trelegal.com

MICHAEL W. BIEN – Cal. Bar No. 096891
MICHAEL S. NUNEZ – Cal. Bar No. 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        mbien@rbgg.com
              mnunez@rbgg.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, MICHAEL KELLY, MICHAEL HINGSON, and MICHAEL PEDERSON, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 3:14-cv-04086-NC <br><br> **NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS** <br><br> Judge:  Hon. Magistrate Nathanael Cousins <br> Date:   November 10, 2016 <br> Time:   10:00 a.m. <br> Crtrm.: D, 450 Golden Gate Avenue, San Francisco, CA 94102 <br><br> Trial Date:    None Set |

[3039480-14]

3:14-cv-04086-NC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES...................................... 2

INTRODUCTION ........................................................................................................ 2

STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(3)) .......................... 2

STATEMENT OF FACTS & PROCEDURAL BACKGROUND (L.R. 7-4(4)) ................ 3

    Phases Of The Litigation ........................................................................... 4

    A.    Pre-Litigation................................................................................ 4

    B.    Uber's Unsuccessful Motion to Dismiss ........................... 5

    C.    Dual Tracks Toward Trial or Settlement............................ 6

    D.    Class Settlement ........................................................................ 7

    E.    Reasonable Fees and Costs.................................................. 8

ARGUMENT.............................................................................................................. 8

I.    PLAINTIFFS' COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND EXPENSES UNDER THE TERMS OF THE SETTLEMENT AND FEDERAL AND STATE LAW .......................................................................... 8

II.    THE SUBSTANTIAL EFFORT EXPENDED BY PLAINTIFFS' COUNSEL ON THIS COMPLEX CASE WARRANTS THE REQUESTED LODESTAR ..................................................................................................... 9

    A.    The Time Spent Was Reasonable and Plaintiffs' Counsel Have Exercised Appropriate Billing Judgment Reductions ................................. 10

    B.    Defense Choices By Uber Made This a Time Consuming Case.................. 11

    C.    Plaintiffs' Achieved All of Their Litigation Objectives............................... 12

    D.    Class Counsel Have Provided Well-Documented, Detailed Records. .......... 13

    E.    Plaintiffs' Counsel Are Entitled to Reasonable Fees for Litigating This Fee Application. ....................................................................................... 14

    F.    The Rates Requested by Plaintiffs' Counsel Are Reasonable Given Evidence of the Market Rate for Comparable Attorneys in the San Francisco Bay Area. ...................................................................................... 14

III.    A MULTIPLIER TO ENHANCE THE REQUESTED LODESTAR IS REQUIRED TO FULLY COMPENSATE PLAINTIFFS' COUNSEL.................. 17

[3039480-14]

i

3:14-cv-04086-NC

A.   The Novelty and Difficulty of This Case of First Impression Warrants a Multiplier. ...................................................................................... 19

B.   The Quality of the Skill Displayed and the Extraordinary Results Warrant a Multiplier. ............................................................................. 19

C.   The Preclusion of Other Employment Warrants a Fee Multiplier. .............. 20

D.   The Contingent Risk of the Recovery Warrants a Multiplier. ...................... 21

E.   Even if the Multiplier Were Governed by Federal Law, A Multiplier Would Still Be Necessary in this Case. .......................................................... 21

IV.   PLAINTIFFS' COUNSEL IS ENTITLED TO RECOVER EXPENSES ............... 22

CONCLUSION............................................................................................................... 22

[3039480-14]

3:14-cv-04086-NC

ii

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barrios v. Cal. Interscholastic Fed'n,*
  277 F.3d 1128 (9th Cir. 2002) ................................................................. 8

*Beckman v. KeyBank N.A.,*
  293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................ 18

*Blackwell v. Foley,*
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) .............................................. 9, 15

*Buccellato v. AT&T Operations, Inc.,*
  No. C10–00463–LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................... 18

*Chabner v. United of Omaha Life Ins. Co.,*
  No. C-95-0447 MHP, (N.D. Cal. Jul. 9, 2001) ........................................ 17

*City of Oakland v. Oakland Raiders,*
  203 Cal. App. 3d 78 (1988) ................................................................. 18

*Ctr. for Biological Diversity v. Cty. of San Bernardino,*
  185 Cal. App. 4th 866 (2010) .............................................................. 18

*Davis v. City and Cty. of San Francisco,*
  976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d
  345 (9th Cir. 1993) ........................................................................... 14

*Davis v. Mason Cty.,*
  927 F.2d 1473 (9th Cir. 1991), *cert. denied*, 502 U.S. 899 ...................... 14

*Engel v. Worthington,*
  60 Cal. App. 4th 628 (1997) ................................................................. 9

*Gracie v. Gracie,*
  217 F.3d 1060 (9th Cir. 2000) ............................................................. 10

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553 (2004), *as modified* (Jan. 12, 2005) ...................... 14, 15, 17

*Harris v. Marhoefer,*
  24 F.3d 16 (9th Cir. 1994) .................................................................. 22

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ............................................................................ 8

*In re High-Tech Employee Antitrust Litigation,*
  No. 11–CV–02509–LHK (N.D. Cal. Sept. 2, 2015) ................................. 18

[3039480-14]

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

*Jordan v. Multnomah Cty.*,
   815 F.2d 1258 (9th Cir. 1987) ................................................................. 10

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
   78 F. Supp. 3d 1289 (C.D. Cal. 2015) ...................................................... 9

*Ketchum v. Moses*,
   24 Cal. 4th 1122 (2001) ............................................................. 9, 17, 21

*Laffite v. Robert Half Int'l, Inc.*,
   1 Cal. 5th 480 (2016) ............................................................................. 18

*Lieber v. Macy's West, Inc.*,
   No. C 96–2955 (N.D. Cal. Dec. 18, 2000) ............................................. 17

*Lovell v. Chandler*,
   303 F.3d 1039 (9th Cir. 2002) ............................................................... 22

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ................................................................. 17

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ..................................................................... 9

*Moralez v. Whole Foods Mkt., Inc.*,
   No. C 12-01072 CRB, 2013 WL 3967639 (N.D. Cal. July 31, 2013) ...................... 9

*Muniz v. United Parcel Serv., Inc.*,
   738 F.3d 214 (9th Cir. 2013) ................................................................... 9

*Nat'l Fed'n of the Blind v. Target Corp.*,
   Case No. 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009) .......... 17, 22

*Nat'l Fed'n of the Blind v. Uber Techs., Inc.*,
   103 F. Supp. 3d 1073 (N.D. Cal. 2015) ..................................................... 6

*Perdue v Kenny A.*,
   559 U.S. 542 (2010) ................................................................. 15, 17, 21, 22

*Perkins v. Mobile Housing Bd.*,
   847 F.2d 735 (11th Cir. 1988) ............................................................... 13

*PLCM Group, Inc. v. Drexler*,
   22 Cal. 4th 1084 (2000), *as modified* (June 2, 2000) .............................. 9

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010) ................................................................. 15

*Richard S. v. Dep't of Developmental Servs. of State of Cal.*,
   317 F.3d 1080 (9th Cir. 2003) ................................................................. 8

*Rodriguez v. Cty. of Los Angeles*,
   96 F. Supp. 3d 1012 (C.D. Cal. 2014) ..................................................... 18

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rose v. Bank of America Corp.*,
    Case No. 5:11-CV-02390 & 5:12-CV-04009-EJD (N.D. Cal. Aug. 29, 2014) ....... 18

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) ................................................................................................ 14

*Tavares v. S-L Distribution Co., Inc.*,
    No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Penn. May 2, 2016) ......................... 18

*Thompson v. Gomez*,
    45 F.3d 1365 (9th Cir. 1995) ................................................................................... 14

*Woods v. Carey*,
    722 F.3d 1177 (9th Cir. 2013) ................................................................................. 22


**STATUTES**

42 U.S.C. § 12205 ............................................................................................................ 8

Cal. Civ. Code § 52(a) ..................................................................................................... 8

Cal. Civ. Code § 54.3(a) .................................................................................................. 8


**OTHER AUTHORITIES**

Feingold, L., *Structured Negotiation, A Winning Alternative to Lawsuits* (ABA
    2016) ........................................................................................................................... 5

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 10, 2016, at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs will and hereby do move the Court for an Order awarding Plaintiffs' counsel their reasonable attorneys' fees and expenses in this case.

In this Motion Plaintiffs' counsel seek an award of fees based on a merits lodestar of $1,589,574. Plaintiffs request that this lodestar be adjusted upward by a multiplier of 2.0 based on the California law entitlement to an upward enhancement based on excellent results obtained, and a very high level of contingent risk. Plaintiffs' counsel also seek an award of expenses in the amount of $13,447.14. Plaintiffs' counsel further seeks an award of fees for preparation of this Motion in the amount of $87,938.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the supporting Declarations of Michael W. Bien, Timothy R. Elder, Mary Lee Kimber-Smith, Richard Pearl, Daniel Goldstein, Daniel S. Mason, Curtis L. Decker, Kirk Adams, the exhibits thereto, the pleadings and orders on file in this matter, and any oral argument or evidence permitted at any hearings on this motion.

DATED: September 19, 2016

Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/Michael W. Bien*
     Michael W. Bien

Attorneys for Plaintiffs

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

3      After over two years of litigation and negotiations, Uber users who use service

4  animals have achieved all of their litigation objectives and more.  Thanks to this

5  settlement, blind persons and others who rely on service animals to function independently

6  in the world now have nationwide access to what is so far the most important new

7  transportation innovation of the 21st Century—door-to-door car service that is available

8  on-demand, 24 hours a day, seven days a week.

9      The National Federation of the Blind ("NFB") reached out to leading disability

10  rights litigators to develop a strategy to achieve access to an entirely new industry, with

11  entirely new challenges.  Basic principles, such as whether disability laws even applied to

12  ride-sharing services, were themselves in question.  The defendant, Uber, is known to fight

13  hard against litigation like this, using the nation's most aggressive defense firms.  This

14  case was no exception.

15      Where, as here, litigants prevail in enforcing important civil rights, the Congress of

16  the United States and the California Legislature have determined that litigants should be

17  fully compensated for their attorney's fees and litigation expenses, using the same rates

18  and billing standards that apply in the private legal marketplace.  Those principles include

19  enhanced compensation in exceptional cases such as this one.

20      With this motion, Plaintiffs' counsel have fully documented and justified the

21  professional hours that were necessary to prevail in this case.  Plaintiffs' counsel has also

22  fully justified the multiplier enhancement sought here, of 2.0, that is twice the lodestar for

23  merits work.  This application should be granted in its entirety.

24      **STATEMENT OF ISSUES TO BE DECIDED (L.R. 7-4(3))**

25      1.      Whether Plaintiffs' counsel should be fully compensated at their reasonable

26  market rates for the hours necessary to prevail in this litigation.

27      2.      Whether federal and California law regarding lodestar enhancement require

28

2

1   an upward adjustment in the form of a 2.0 multiplier.

2   **STATEMENT OF FACTS & PROCEDURAL BACKGROUND (L.R. 7-4(4))**

3   The Plaintiffs and the conditionally certified Class are represented by Disability

4   Rights Advocates ("DRA"), Timothy Elder of the TRE Legal Practice ("TRE Legal"), and

5   Rosen Bien Galvan & Grunfeld, LLP ("RBGG"), collectively referred to as "Plaintiffs'

6   Counsel."

7   The fees claimed here are for the work necessary to develop Plaintiffs' claims,

8   secure a favorable ruling from this Court on Defendants' dispositive motions, advance

9   discovery to trial, and achieve a national resolution that remedies statutory violations of the

10  civil rights of every person with a disability who uses the Uber transportation platform

11  while traveling with a service animal in the United States.[1]  After two and a half years of

12  litigation, several settlement conferences and a JAMS mediation session, Plaintiffs settled

13  all of their claims with Defendants.

14  The National Federation of the Blind ("NFB"), a nonprofit corporation, is the

15  nation's oldest and largest association of blind persons, with over 50,000 members spread

16  through local chapters and affiliates in all fifty states, the District of Columbia, and Puerto

17  Rico.  The National Federation of the Blind of California ("NFB-CA") is an association of

18  blind Californians and is the California State affiliate of the NFB.  The mission of NFB

19  and NFB-CA is to promote the vocational, cultural, and social advancement of the blind

20  and to achieve the integration of the blind into society on a basis of equality with the

21  sighted.

22  Plaintiffs Michael Pedersen and Michael Kelly are blind Uber riders who allege that

23  Uber's drivers refused to transport them because of their guide dogs.  Plaintiff Michael

24  _____

25  [1] The Declaration of Timothy R. Elder in Support of Plaintiffs' Motion for Attorneys' Fees
26  and Expenses ("Elder Decl."), filed herewith, ¶¶ 22-73, provides a detailed description of
    the work performed by Plaintiffs' counsel in advancing this case.

27

28

[3039480-14]

1    Hingson is a blind person who alleges that he is deterred from relying on Uber for

2    transportation because he is aware that many Uber drivers have refused to transport

3    passengers with guide dogs.

4            Defendant Uber Technologies Inc. ("Uber") is a company that offers a smart phone

5    application ("Uber Rider App") that connects individuals looking for transportation

6    ("riders") with independent transportation providers looking for passengers ("driver

7    partners" or "drivers").  Joint Mtn. for Preliminary Approval of Class Settlement &

8    Related Mtns. 5-6, Dkt. No. 84.  Transportation arranged through the Uber Rider App is

9    available in over 150 metropolitan areas across most states.  *Id.* at 5.

10                              **Phases Of The Litigation**

11       **A.    Pre-Litigation**

12           In April 2014, DRA and TRE Legal began to investigate complaints that Uber

13   drivers were refusing to transport blind riders with service animals.  Declaration of

14   Timothy Elder ¶¶ 24-25 ("Elder Decl.").  They conducted outreach to NFB-CA members

15   and other segments of the blind community to evaluate the scope of the problem, factual

16   research to understand Uber's operations, and legal research concerning their potential

17   claims and Uber's possible defenses.  *Id.* ¶¶ 25-29.  As the attorneys with the lowest billing

18   rates, Michael Nunez and Timothy Elder performed all of the outreach and legal research.

19   *Id.* ¶ 27; Declaration of Mary-Lee Smith ¶¶ 16, 40 ("Smith Decl.").  A vast majority of the

20   factual research was assigned to paralegal Rachel Smith.  Elder Decl. ¶ 29; Smith Decl.

21   ¶ 40.

22           DRA sent an opening letter to Uber on June 3, 2014 identifying the discriminatory

23   treatment and proposing collaborating to devise improvements to Uber's services to

24   resolve the problem.  Elder Decl. ¶ 31.  At this time, DRA and TRE Legal also began to

25   interview NFB-CA members to identify appropriate individual plaintiffs to prepare to file

26

27

28

1    the case if Uber was unwilling to negotiate.  *Id.* ¶¶ 27-29.  The parties met in July 2014 to

2    discuss Plaintiffs' concerns.  *Id.* ¶ 33.  Plaintiffs proposed entering structured negotiations[2]

3    to resolve Plaintiffs' claims without litigation.  *Id.*  On August 8, 2014, Uber informed

4    Plaintiffs that Uber was unwilling to enter structured negotiations.  *Id.* ¶ 34.

5         With no alternative to litigation, Plaintiffs drafted and filed their complaint on

6    September 9, 2014.  *Id.* ¶¶ 29, 36.  After filing, Plaintiffs' counsel continued to speak with

7    blind individuals with guide dogs who had experienced denials of service to gather

8    evidence for the case.  *Id.* ¶¶ 37-38.  Uber filed a motion to dismiss on October 22, 2014.

9    Dkt. No. 9.  Plaintiffs analyzed this motion, and filed a First Amended Complaint adding

10   individual plaintiffs and factual allegations in response.  Dkt. No. 17.

11        **B.      Uber's Unsuccessful Motion to Dismiss**

12        Uber then renewed its Motion to Dismiss.  Dkt. No. 25.  It argued that Uber is not

13   subject to the public accommodations provisions of the Americans with Disabilities Act

14   ("ADA") because neither Uber's mobile app nor its website are places of public

15   accommodation, and it does not own, lease, or operate vehicles providing transportation.

16   *Id.* at 24-27.  At that time, no Court had addressed whether a "ride sharing" service like

17   Uber is a place of public accommodation under the ADA.  Declaration of Daniel F.

18   Goldstein ¶ 16 ("Goldstein Decl."); Smith Decl. ¶ 5.

19        Uber's motion also raised issues of first impression in the Ninth Circuit concerning

20   standing.  Relying on precedent outside this circuit, Uber contended that NFB-CA lacked

21   _____

22   [2] "Structured negotiations" refers to an alternative dispute resolution process that has been
     used successfully in other disability access cases over the past 20 years, particularly those
23   involving access to new technologies.  *See* Feingold, L., *Structured Negotiation, A
     Winning Alternative to Lawsuits* (ABA 2016).  In structured negotiations, the parties agree
24   to a set of deadlines and ground-rules for resolving the dispute without filing a lawsuit.
     The "structure" refers to the set of deadlines and ground-rules that keep the process
25   moving in the absence of the case management deadlines that would apply if a lawsuit
     were filed.  *Id.* at 59-67.
26

27

28

1  associational standing because some of its members had agreed to Terms of Service

2  requiring that they arbitrate claims.  *Id.* at 8-12.  Uber also asserted that Mr. Hingson

3  lacked standing under the deterrence doctrine because he had not experienced or directly

4  observed the service animal discrimination at issue.  *Id.* at 14-20.

5        The U.S. Department of Justice filed a Statement of Interest, arguing that ADA

6  provisions applicable to private transportation providers cover most transportation

7  provided by private entities, and that these provisions apply independent of whether the

8  ADA's public accommodations requirements apply.  Dkt. No. 29.

9        The Court denied Uber's motion.  *Nat'l Fed'n of the Blind v. Uber Techs., Inc.*, 103

10  F. Supp. 3d 1073, 1076 (N.D. Cal. 2015), Dkt. No. 37.  It held that Uber may be subject to

11  the ADA's public accommodations provisions as a travel service, and that NFB-CA had

12  associational standing even where some members had agreed to arbitrate claims.  *Id.* at

13  1079, 1083-84.  It also held that Mr. Hingson had standing where he had not experienced

14  or observed discriminatory treatment but had learned of it from others.  *Id.* at 1080-81.

15    **C.    Dual Tracks Toward Trial or Settlement**

16        After the Court denied Uber's motion to dismiss, Plaintiffs began settlement talks

17  with Uber.  Elder Decl. ¶¶ 47-48.  Between April and August 10, 2015, Plaintiffs first

18  complied with General Order 56, preparing initial disclosures and conducting the required

19  Joint Inspection and review, in-person settlement meeting, and mediation.  *Id.* ¶¶ 47-50.

20  During this process, Plaintiffs investigated the functionality of Uber's driver app and rider

21  app, the back-end operation and capability of Uber's platform, and Uber's relationship

22  with drivers to understand how best to craft an appropriate remedy.  *Id.* ¶¶ 48-49.

23  Plaintiffs sent Uber a proposed written settlement agreement on September 1, 2015.  *Id.*

24  ¶ 51.  Uber did not provide Plaintiffs a written counterproposal until November 24, 2015.

25  *Id.* ¶ 60.

26        Meanwhile, the Court set a trial for April 2016 and an abbreviated discovery

27  schedule, indicating that it would subsequently "inquire into the diligence of propounding

28

6

1   and responding to discovery," Dkt. No. 53, 56, so Plaintiffs began to prepare for trial.

2   Elder Decl. ¶¶ 57-60.  While Plaintiffs awaited Defendants' initial written response to their

3   settlement proposal, Plaintiffs served requests for production of documents,

4   interrogatories, requests for admission, deposition notices, and a request for inspection.  *Id.*

5   ¶ 61.  In November 2016, Plaintiffs also investigated and retained an expert in industrial

6   organizations.  *Id.*  To avoid expense, Plaintiffs agreed to Defendants' requests to delay

7   some discovery as the settlement negotiations progressed through the end of 2015.  *Id.*

8   ¶¶ 60, 62.

9          The parties reached an agreement on key terms of the settlement in January 2016.

10  *Id.* ¶ 53.  Plaintiffs then revised the draft settlement, drafted addendums to the settlement,

11  drafted a second amended complaint to add class allegations, and drafted the motion for

12  preliminary approval and supporting papers, while continuing to negotiate additional

13  details of the settlement.  *Id.* ¶¶ 53-54. Plaintiffs also continued to prepare for trial until the

14  parties finalized the settlement because, although the parties requested to vacate the trial

15  schedule on January 22, 2016, Dkt. No. 70, the Court did not vacate the trial schedule until

16  after the parties filed the motion for preliminary approval.  Elder Decl. ¶ 63; Dkt. No. 91.

17  It was reasonable and necessary for Plaintiffs to continue preparing for trial between

18  January and April 2016.  Elder Decl. ¶ 63.  Plaintiffs' counsel needed to ensure that

19  lingering discovery disputes did not languish, but were pushed forward in the meet and

20  confer process so that Plaintiffs would not be prejudiced in the event that settlement broke

21  down in the face of the looming June 2016 trial date.  *Id.*

22         **D.     Class Settlement**

23         The Settlement provides for significant injunctive relief that will modify Uber's

24  policies, practices, and procedures to ensure that blind riders with service animals receive

25  reliable access to transportation arranged through the Uber rider mobile application.  To

26  ensure that the changes are real and not just changes in written policies, the Settlement

27  requires that Uber communicate the new service animal policy to drivers, and that Uber

28

1  enforce it with termination from the mobile application when drivers violate it.  The

2  Settlement has a comprehensive complaint resolution process for users, as well as robust

3  testing and monitoring provisions, and provisions to modify the remedy as necessary.

4  Details of the Settlement's benefits for the class are discussed in the Joint Motion for

5  Preliminary Approval, Docket No. 84, at pages 8-14.

6       **E.**     **Reasonable Fees and Costs**

7       Rather than incorporate a fee amount within the settlement, the parties agreed that

8  Plaintiffs would move for an award of reasonable fees and costs and Defendant would

9  retain the right to contest the amount sought, but not the entitlement to an award.

10  Settlement Agreement, § 11-C, Dkt. No. 85-1.

11       After billing judgment reductions, from April 2014 through mid-September 2016,

12  Plaintiffs' counsel has expended over 3200 compensable professional hours, amounting to

13  approximately $1.68 million in fees.  Elder Decl., Exhs. A, B.  During the same period,

14  Plaintiffs' counsel incurred $13,447.14 in expenses.  *See id.* ¶ 86, Exh. I.

15                                              **ARGUMENT**

16  **I.**     **PLAINTIFFS' COUNSEL ARE ENTITLED TO ATTORNEYS' FEES AND**
          **EXPENSES UNDER THE TERMS OF THE SETTLEMENT AND FEDERAL**

17            **AND STATE LAW**

18       Plaintiffs are entitled to fees and costs under the ADA.  42 U.S.C. § 12205.  "[A]

19  prevailing plaintiff [under statutes with fee-shifting provisions] should ordinarily recover

20  an attorney's fee unless special circumstances would render such an award unjust."

21  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotations and citations omitted).

22  "A plaintiff 'prevails' when he or she enters into a legally enforceable settlement

23  agreement against the defendant."  *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128,

24  1134 (9th Cir. 2002); *see also Richard S. v. Dep't of Developmental Servs. of State of Cal.*,

25  317 F.3d 1080, 1088 (9th Cir. 2003).

26       Plaintiffs are also independently entitled to fees and costs under state law.  Cal. Civ.

27  Code § 52(a) (Unruh Act); Cal. Civ. Code § 54.3(a) (DPA).  Awarding attorneys' fees to

28

1    parties that prevail on claims brought under these laws is mandatory. *Engel v.*
2    *Worthington*, 60 Cal. App. 4th 628, 632-35 (1997) (Unruh Act); *Moralez v. Whole Foods*
3    *Mkt., Inc.*, No. C 12-01072 CRB, 2013 WL 3967639, at *2 (N.D. Cal. July 31, 2013)
4    (Unruh Act and DPA).  Obtaining damages in a court enforceable settlement agreement is
5    sufficient to establish prevailing party status under these laws. *Blackwell v. Foley*, 724 F.
6    Supp. 2d 1068, 1074 (N.D. Cal. 2010); *Moralez*, 2013 WL 3967639 at *2 (explaining that
7    fee award mandatory in case where Unruh Act and DPA claims settled).  Courts apply the
8    lodestar method to calculate a reasonable fee under these statutes. *K.M. ex rel. Bright v.*
9    *Tustin Unified Sch. Dist.*, 78 F. Supp. 3d 1289, 1297 (C.D. Cal. 2015) (Unruh Act); *Muniz*
10   *v. United Parcel Serv., Inc.*, 738 F.3d 214, 222 (9th Cir. 2013) ("[i]n general, California
11   courts … utilize the lodestar … approach to determine a proper fee award … in a civil
12   rights law suit.").  In addition, California law permits courts to award a multiplier to
13   augment the lodestar in certain cases. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001).

14          Here, Defendant agreed that Plaintiffs are entitled to an award of reasonable fees
15   and costs.  Settlement Agreement, § 11-C, Dkt. No. 85.1 (Uber "agrees not to dispute the
16   entitlement to reasonable Attorneys' Fees").  The only question, then, is what amount
17   should be awarded. For the reasons discussed below, Plaintiffs should be awarded the full
18   amount of their requested lodestar plus a multiplier of 2.0.

19   **II.     THE SUBSTANTIAL EFFORT EXPENDED BY PLAINTIFFS' COUNSEL
20            ON THIS COMPLEX CASE WARRANTS THE REQUESTED LODESTAR**

21          Under federal and California law, the calculation of the award is performed using
22   the lodestar method, i.e., the number of hours reasonably expended multiplied by the
23   reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)
24   (noting that "[t]he lodestar determination has emerged as the predominate element of the
25   analysis in determining a reasonable attorney's fee award") (internal quotation marks and
26   citation omitted); *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000), *as*
27   *modified* (June 2, 2000) ("the fee setting inquiry in California ordinarily begins with the

28

1 'lodestar'").  "In setting a reasonable attorney's fee, the district court should make specific

2 findings as to the rate and hours it has determined to be reasonable."  *Gracie v. Gracie*,

3 217 F.3d 1060, 1070 (9th Cir. 2000) (quotation omitted).

4     With this application and its supporting declarations, Plaintiffs' counsel have more

5 than met their burden of demonstrating that the hours are reasonable and that the rates

6 requested are in line with those prevailing in the community for similar services.  *Jordan v.*

7 *Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987).

8     **A.    The Time Spent Was Reasonable and Plaintiffs' Counsel Have**
       **Exercised Appropriate Billing Judgment Reductions**
9

10     The time Plaintiffs' attorneys expended on this case over the previous two and a

11 half years was appropriate given the intensity and nature of the litigation and settlement

12 negotiations.  After billing judgment reductions of 394.4 hours representing approximately

13 11% of the total billable hours, Plaintiffs' lodestar for merits work performed through

14 September 9, 2016 is $1,589,574, representing compensation for 3,085.1 hours of work

15 invested in this case.  Elder Decl. ¶ 84 Exhs. A, B.

16     The claimed hours are reasonable for a case of this magnitude and complexity.

17 Goldstein Decl. ¶ 20; Bien Decl. ¶¶ 10, 15, 16; Elder Decl. ¶¶ 22-73; Smith Decl. ¶¶ 23-

18 25.  The work included extensive pre-filing investigations, defeating Uber's Motion to

19 Dismiss on several grounds, exhausting the Northern District's General Order 56

20 disclosure and joint inspection procedures, attending a JAMS mediation, drafting a

21 proposed settlement, drafting and serving all needed discovery requests while settlement

22 talks were underway, preparing for trial, preparing the preliminary approval papers and

23 processing a steady flow of intake complaints from potential witnesses through the entire

24 process.  Elder. Decl. ¶¶ 26-29, 42-45, 47-54, 60-64.  Plaintiffs' counsel performed the

25 work needed to fully protect Plaintiffs' interests as this case proceeded on dual tracks

26 toward trial and settlement.  Elder Decl. ¶¶ 60-63; Smith Decl. ¶¶ 30, 42; Bien Decl. ¶ 18.

27     Plaintiffs' counsel regularly divided up their labor on the case to minimize

28

duplication of effort. Elder Decl. ¶ 4; Bien Decl. ¶ 18; Smith Decl. ¶ 30.  DRA led

prosecution of the case, bringing to bear extensive experience in litigating precedent-

setting disability rights class actions. Elder Decl.  ¶¶ 8-9; Smith Decl. ¶¶ 11, 18-19.

Timothy Elder led coordinating all interactions involving the National Federation of the

Blind and its key members and various interested groups, and drafting the settlement

agreement and the memorandum of points and authorities supporting the instant fee

motion.  Elder Decl. ¶¶ 4, 17, 19, 51, 71.  RBGG also played a critical role, crafting the

monitoring and reporting components of the settlement, drafting the mediation brief,

drafting the motion for preliminary approval and supporting papers, drafting addendums to

the settlement agreement, drafting supporting papers for and finalizing this motion,

drafting and revising written discovery papers, and handling other discovery tasks and

aspects of settlement negotiations.  Elder Decl. ¶ 4; Bien Decl. ¶¶ 15-16.  Attorneys

Nunez, Elder, and Marks, counsel with the lowest rates, performed nearly all of the legal

research, drafting, and day-to-day management of the case, and accordingly billed the

overwhelming majority of time claimed.  Bien Decl. ¶ 16; Smith Decl. ¶ 35; Elder Decl.

¶¶ 5, 73.  Whenever possible and appropriate, tasks were performed by paralegals.  Smith

Decl. ¶¶ 30, 40; Bien Decl. ¶ 17.

Such co-counsel arrangements are commonly used to prosecute important public

interest cases.  Nonprofits such as DRA regularly co-counsel with private firms to expand

their impact, increase litigation resources, and spread the risk of taking on precedent-

setting cases.  Smith Decl. ¶ 28.  By dividing tasks among the firms, class counsel

minimized duplication of effort, ensured that resources necessary for the successful

prosecution of this case were available throughout the litigation, and leveraged each firm's

relative strengths and efficiencies.  Elder. Decl. ¶¶ 2-21.

**B.    Defense Choices By Uber Made This a Time Consuming Case.**

Much of the time incurred by Plaintiffs' counsel could have been avoided but for

Defendant's choices at several key junctures.  First, Uber chose to rebuff Plaintiffs' initial

1   offer to enter into settlement negotiations without the expense of litigation.  Elder Decl.

2   ¶ 34.  Second, Uber chose to renew its unsuccessful motion to dismiss even after Plaintiffs

3   amended their Complaint to add additional parties and allegations that would make Uber's

4   motion very unlikely to prevail.  *Id.* ¶ 42.  Third, Uber delayed for over 84 days on

5   exchanging settlement drafts even while the court was admonishing the parties not to delay

6   in advancing discovery towards a rapidly approaching trial date.  *Id.* ¶ 60.  Finally, Uber

7   declined to draft any settlement documents, relying on Plaintiffs' counsel to draft

8   settlement and class preliminary approval papers.  *Id.* ¶ 53.  Uber could have chosen

9   differently to avoid expenditure of the Court and Plaintiffs' counsel's time as the phases

10   listed above were escalating.  Whatever the reasons behind Uber's choices, it cannot now

11   object to the reasonableness of compensating for the time it caused to be spent.

12       **C.**    **Plaintiffs' Achieved All of Their Litigation Objectives.**

13          Plaintiffs' counsel's effort is further justified given that Plaintiffs obtained

14   everything they sought through the litigation.  In Plaintiffs' opening letter, they sought a

15   number of specific policy changes from Uber:

16          1.     Mandatory specific training, developed through collaboration with the NFB

17   of California, for all drivers concerning legal access requirements related to service dogs;

18          2.     An accessible method within Uber's smart phone applications by which

19   blind individuals with service dogs can immediately and efficiently report instances where

20   Uber drivers refuse to transport them;

21          3.     A specific plan to investigate each complaint of denial of service submitted

22   by blind guide dog users;

23          4.     A specific plan to report back to complainants and the NFB of California the

24   outcome of each investigation concerning refusal to transport blind individuals with

25   service dogs, including the name of the driver under investigation and whether Uber has

26   disciplined or permanently severed relations with that driver;

27          5.     Specific procedures that Uber will implement to discipline drivers who

28

refuse to transport service dogs;

6.      A specific plan to monitor Uber drivers' compliance with disability access laws, such as by partnering with blind individuals with service dogs who would use Uber for the primary purpose of evaluating whether Uber drivers are providing service to blind individuals with service dogs; and

7.      Procedures that Uber will implement to permanently remove Uber drivers who refuse on more than one occasion to transport blind individuals with service dogs. Elder Decl. ¶ 31; Joint Mtn. for Preliminary Approval, Docket No. 84, at pages 8-14.

Plaintiffs negotiated for and secured much broader and more comprehensive relief than they initially demanded after Plaintiffs identified further needed changes through their ongoing investigation and settlement negotiations.  Elder Decl. ¶ 55.  For example, Plaintiffs initially demanded relief for only blind service dog users, but the settlement will benefit all service animal users nationwide.  Declaration of Curtis L. Decker ¶¶ 6-15 ("Decker Decl.").  The settlement also requires that Uber terminate drivers on a first offense where it is clear that the driver knew or should have known about the service animal, Settlement Agreement, Dkt. No. 85.1, § 5-A(1), and Uber will no longer automatically block pairing specific drivers and riders unless the rider requests it.  *Id.* § 5-B(7).  Plaintiffs did not seek relief in the complaint for all service animal users, a one-violation termination policy, or an end to automatic pair blocking in their initial demand, yet Plaintiffs obtained this and other additional forms of relief.

**D.      Class Counsel Have Provided Well-Documented, Detailed Records.**

Plaintiffs' counsel maintained contemporaneous time records showing discrete entries describing each item of work performed and recorded by tenths of an hour.  Elder Decl. ¶ 81; Smith Decl. ¶¶ 32, 34; Bien Decl. ¶ 19.  These records, supported by sworn declarations, are the type of evidence relied upon by federal courts in hundreds of fees decisions.  *See, e.g.*, *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988) ("Sworn testimony that, in fact, it took the time claimed is evidence of considerable weight

1   on the issue of the time required in the usual case….").  These records reflect the novel

2   issues involved, importance of the issues presented, necessary communications with class

3   members, risk of loss, and far-reaching implications of the case.

4           **E.**     **Plaintiffs' Counsel Are Entitled to Reasonable Fees for Litigating This Fee Application.**

5

6        Plaintiffs are also entitled to the fees incurred in preparing and litigating this fee

7   motion.  *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995); *Serrano v. Unruh*, 32

8   Cal. 3d 621, 644 (1982); *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004),

9   *as modified* (Jan. 12, 2005) ("it is well established that plaintiffs and their attorneys may

10   recover attorney fees for fee-related matters").  Plaintiffs' counsel have spent 242 hours to

11   prepare this application, but have written down all but 183.7 of those hours, leaving a fees-

12   for-fees claim of $87,938 to prepare this application through September 9, 2016.  No

13   multiplier is sought for this fees work.

14           **F.**     **The Rates Requested by Plaintiffs' Counsel Are Reasonable Given Evidence of the Market Rate for Comparable Attorneys in the San Francisco Bay Area.**

15

16        "Reasonable fees are … to be calculated according to the prevailing market rates in

17   the relevant community."  *Davis v. City and Cty. of San Francisco*, 976 F.2d 1536, 1545-

18   46 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993)

19   (internal quotations omitted).  The reasonableness of market rates is determined by

20   reference to the rates of "lawyers of reasonably comparable skill, experience, and

21   reputation" in the relevant community.  *Id.*  The "relevant community" is the forum district

22   for the action in which fees are sought.  *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th

23   Cir. 1991), *cert. denied*, 502 U.S. 899.

24        Under both federal and state law, when a prevailing plaintiff has incurred attorney's

25   fees over a number of years without payment, the proper rate to use in calculating the

26   lodestar is the current rate at the time of the award.  *Perdue v Kenny A.*, 559 U.S. 542

27

(2010); *Graham*, 34 Cal. 4th at 583; *Blackwell*, 724 F. Supp. 2d at 1078.

DRA, TRE Legal, and RBGG are located in the San Francisco Bay Area, so the reasonableness of rates charged should be determined by reference to rates currently charged by San Francisco Bay Area attorneys with commensurate skill, experience, and reputation.  Each of these firms works at the cutting edge of the law where they must establish new precedents as often as they rely on old ones.  Elder Decl. ¶¶ 8, 13, 15-16; Smith Decl. ¶¶ 11, 13-14, 18-21; Bien Decl. ¶¶ 10-11, 13, 24-26.  The relevant comparable marketplace analysis for civil rights fee awards looks not to the specific subject matter area, such as civil rights law or disabilities law, but rather to the levels of skill and complexity required in the litigation.  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010).

The market rates established here are presented in Table 1 below.

**Table 1, Rates**

| Class | Name | Graduation Year | Rate |
|---|---|---|---|
| Partner/Director | Michael Bien | 1980 | $900 |
| | Laurence Paradis | 1985 | $895 |
| | Ernest Galvan | 1997 | $740 |
| Attorney | Timothy Elder | 2010 | $475 |
| | Michael Nunez | 2011 | $460 |
| | Julia Marks | 2014 | $355 |
| Paralegal | Greg Gonzalez | N/A | $275 |
| | Layla Oghabian | N/A | $275 |
| | Kyle Ruiz | N/A | $275 |
| | Rachel Smith | N/A | $275 |

Plaintiffs have presented evidence through declarations that these rates are in line

1    with prevailing rates in the relevant marketplace.  Outside declarants, Mr. Pearl and

2    Mr. Mason, attest that the requested rates are well within the range of rates for attorneys in

3    the San Francisco Bay Area of comparable skill, qualifications, reputation, and experience

4    paid hourly in non-contingent cases.  Mason Decl. ¶ 12; Pearl Decl. ¶¶ 10-12.  The lead

5    attorneys on the case, Michael Bien and Mary-Lee Smith, also testify that they track rates

6    as part of their regular responsibilities, and that the rates set forth here are well within the

7    range of rates prevailing in the market.  Smith Decl. ¶ 36; Bien Decl. ¶ 8.

8         Mr. Pearl provides detailed evidence of law firm rates in the relevant marketplace.

9    Pearl Decl. ¶¶ 13-17, Exhs. B-F.  Mr. Pearl provides his own survey of rates at Paragraphs

10   13-17 of his declaration, as well as other publicly available surveys at Exhibits B through

11   F.  Mr. Pearl testifies that the rates sought here by Plaintiffs "are far *lower* than many of

12   the rates charged by the listed firms."  Pearl Decl. ¶ 15.  The attorneys at the Partner/

13   Director level, Paradis, Bien and Galvan, the requested rates range from $740 for Galvan

14   to $900 for Bien.  The rates for persons at similar experience levels in the body of the Pearl

15   Declaration range from a $625 to $920 for professionals at or near Galvan's level of

16   experience, and between $700 and $1,175 for professionals at or near Bien's and Paradis's

17   level of experience.  Pearl Decl. ¶¶ 13-17.

18        The rates in the Pearl Declaration for professionals at or near the level of experience

19   of Nunez and Elder range between $400 and $725.  The rates sought here for Nunez and

20   Elder, $460 and $475, respectively, are at the low end of this range.  For professionals

21   comparable to Marks, the rates in the Pearl Declaration range between $325 and $515,

22   again putting the $355 rate sought here at the low end of the range.  The paralegal rate of

23   $275 sought here is also well within the range documented by Pearl.

24        Other fee awards support the reasonableness of these rates.  DRA and RBGG have

25   regularly been awarded rates based on the rates charged by the major Bay Area law firms

26   that handle complex litigation.  Smith Decl. ¶ 37, Exhibits D-H; Bien Decl. ¶ 24.  Timothy

27   Elder of TRE Legal Practice has also been awarded a rate in the Northern District on par

28

[3039480-14]

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

1   with DRA and his work and qualifications are comparable to attorneys at DRA and RBGG

2   with similar years of experience.  Elder Decl. ¶ 80, Exhibit A; Smith Decl. ¶ 37; Bien

3   Decl. ¶ 36; Pearl Decl. ¶ 12; Mason Decl. ¶ 11; Goldstein Decl. ¶ 8.

4   **III.     A MULTIPLIER TO ENHANCE THE REQUESTED LODESTAR IS
            REQUIRED TO FULLY COMPENSATE PLAINTIFFS' COUNSEL**

5

6       The Court, in appropriate cases, may adjust the presumptively reasonable lodestar

7   figure.  *Graham*, 34 Cal. 4th at 579; *see also Perdue*, 559 U.S. at 554.  When a plaintiff

8   prevails on both federal and state claims, the court may look to California law on what

9   factors to consider when awarding a lodestar enhancement multiplier.  *Mangold v. Cal.*

10  *Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995); *Nat'l Fed'n of the Blind v. Target*

11  *Corp.*, Case No. 06-01802 MHP, 2009 WL 2390261, at *6 (N.D. Cal. Aug. 3, 2009)

12  ("When a party prevails under both federal and state law, the district court may apply the

13  more generous provisions of state law in calculating a fee award, such as including a

14  multiplier for contingent fee risk.").

15      Under California law, the lodestar may be adjusted based on factors that include:

16  "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in

17  presenting them, (3) the extent to which the nature of the litigation precluded other

18  employment by the attorneys, (4) the contingent nature of the fee award."  *Ketchum*, 24

19  Cal. 4th 1122, 1132.  California courts often award multiplier enhancements in civil rights

20  cases where one or more of these factors applies.  *See, e.g.*, *Target*, 2009 WL 2390261, at

21  *9 (in action brought by class of blind persons challenging access barriers on commercial

22  website, awarding 1.65 multiplier based on risk, skill of counsel, significance of result, and

23  preclusion of other employment); *Lieber v. Macy's West, Inc.*, No. C 96–2955 (N.D. Cal.

24  Dec. 18, 2000) (awarding a 1.75 multiplier based on risk and significance of relief in

25  disability rights class action that challenged physical access barriers to retail store);

26  *Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447 MHP, (N.D. Cal. Jul. 9, 2001)

27  (in disability rights action challenging discrimination in provision of health insurance,

28

1   awarding 1.75 multiplier based on risk and preclusion of other employment); *Ctr. for*

2   *Biological Diversity v. Cty. of San Bernardino*, 185 Cal. App. 4th 866, 897 (2010)

3   (concluding in an environmental action that "[t]he 1.5 requested is not excessive …;

4   multipliers can range from 2 to 4 or even higher"); *City of Oakland v. Oakland Raiders*,

5   203 Cal. App. 3d 78, 85–86 (1988) (affirming multiplier of 2.34 in eminent domain case).

6        As discussed below, awarding a 2.0 multiplier is appropriate here given the novel

7   and complex issues, the skill demonstrated and the exceptional results achieved, the

8   contingent nature of the fee award, and the preclusion of other employment.  A 2.0

9   multiplier is well within the range of recently approved multipliers.  *See, e.g.*, *Laffite v.*

10  *Robert Half Int'l, Inc.*, 1 Cal. 5th 480 (2016) (affirming 2.13 multiplier in common fund

11  lodestar check in wage-and-hour class action); *Rodriguez v. Cty. of Los Angeles*, 96 F.

12  Supp. 3d 1012, 1025-26 (C.D. Cal. 2014) (applying *Mangold* in mixed federal-state law

13  case and awarding 2.0 multiplier based on risk and difficulty of case and counsel's skill);

14  *In re High-Tech Employee Antitrust Litigation*, No. 11–CV–02509–LHK (N.D. Cal.

15  Sept. 2, 2015) (2.2 multiplier appropriate in common fund antitrust case against tech

16  companies); *Rose v. Bank of America Corp.*, Case No. 5:11-CV-02390 & 5:12-CV-04009-

17  EJD (N.D. Cal. Aug. 29, 2014) (2.59 multiplier granted in class action case under

18  Telecommunications Privacy Act); *Beckman v. KeyBank N.A.*, 293 F.R.D. 467, 482

19  (S.D.N.Y. 2013) (lodestar cross-check multiplier of 6.3 "near the higher end of the range

20  … allowed" but appropriate in common fund case that achieved early settlement that was

21  substantial in FLSA case); *Buccellato v. AT&T Operations, Inc.*, No. C10–00463–LHK,

22  2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (4.3 multiplier reasonable in FLSA

23  case that obtained "excellent and quick results"); *Tavares v. S-L Distribution Co., Inc.*,

24  No. 1:13-cv-1313, 2016 WL 1743268 (M.D. Penn. May 2, 2016) (lodestar multiplier check

25  supported by 2.29 multiplier in employee misclassification common fund case).

26

27

28

### A.    The Novelty and Difficulty of This Case of First Impression Warrants a Multiplier.

This case raised novel and complex legal issues.  When Plaintiffs filed this case, no court had addressed whether the ADA or California disability laws applied to a "ridesharing" business like Uber leveraging independent contractors driving their own vehicles.  Elder Decl. ¶ 42; Smith Decl., ¶ 5; Bien Decl. ¶ 30; Goldstein Decl. ¶¶ 16-18. The case also raised issues of first impression within the Ninth Circuit concerning standing:  whether NFB-CA had associational standing where some members had agreed to arbitrate claims, and whether learning of discrimination experienced by similarly situated persons with disabilities was adequate notice for deterrence standing.  Elder Decl. ¶ 42; Goldstein Decl. ¶¶ 17-18.  Further underscoring the novelty and importance of this case, the U.S. Department of Justice filed a Statement of Interest addressing the applicability of ADA private transportation provider requirements.  *See* Docket No. 29.

This Court has acknowledged the great significance of this lawsuit.  Order Granting Mtn. to Am. Compl., Conditionally Certify Class, and Preliminary Approval of Class Action, Dkt. No. 112 (describing this as a "complex case" touching on "cutting-edge questions at the intersection of the sharing economy, equal access, and constitutional law" and raising "novel legal issues.").

### B.    The Quality of the Skill Displayed and the Extraordinary Results Warrant a Multiplier.

Plaintiffs' Counsel secured the best possible results.  The settlement comprehensively addresses every aspect of Uber's relationship with drivers and riders to ensure that riders with service animals receive consistent and reliable access to Uber transportation.  Elder Decl. ¶ 55; Adams Decl. ¶¶ 10-15; Decker Decl. ¶¶ 10-15; Goldstein Decl. ¶¶ 11-15.  It will govern Uber's relationship with, and shape the behavior of, hundreds of thousands of drivers while accounting for their status as independent contractors.  The settlement can even adapt as Uber's services evolve, ensuring its

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS

1   continued effectiveness.  Goldstein Decl. ¶ 15; Decker Decl. ¶ 15; Adams Decl. ¶ 15.  It

2   will improve access for thousands of blind class members, many of whom must arbitrate

3   claims and were thus unable to pursue such systemic relief.  Such a significant result took

4   skill and commitment to the public interest by Plaintiffs' counsel.

5        Plaintiffs' counsel also obtained relief for thousands of people with disabilities

6   beyond the class.  The relief obtained here is calibrated to ensure that every person with a

7   service animal nationwide will receive reliable access to the nation's largest door-to-door

8   transportation service.  Adams Decl. ¶ 14; Goldstein Decl. ¶ 11; Decker Decl. ¶ 12.  Most

9   policy changes adopted by the settlement are generally applicable to any person using a

10  service animal whether or not they are class members.  Elder Decl. ¶ 55.  This result

11  benefits people with disabilities while promoting judicial economy.

12       Plaintiffs achieved this outstanding relief only after securing a published order

13  favorably addressing several issues of first impression in this circuit and nationwide.  It

14  construed the ADA's public accommodations provisions as applicable to "ride-sharing"

15  services, held associational standing is available even where some members must arbitrate

16  claims, and broadly construed deterrence standing for plaintiffs asserting federal and

17  California disability access claims.  The decision represents the first time that a court has

18  addressed applicability of the ADA's public accommodations provisions to a "ride-

19  sharing" business specifically, or to the sharing economy more generally.  Goldstein Decl.

20  ¶ 16.  The decision opens the door to further challenges to disability discrimination in the

21  sharing economy and as other businesses move to condition use of services on agreements

22  to arbitrate claims.  *Id.* ¶¶ 17-19.

23       **C.   The Preclusion of Other Employment Warrants a Fee Multiplier.**

24       A multiplier is also appropriate here to account for lost employment opportunities.

25  The abbreviated pretrial schedule and the complex settlement negotiations here forced

26  counsel to devote substantial time and resources to this case at the expense of taking on

27  additional work.  Elder Decl. ¶ 76-77; Smith Decl. ¶ 15; Bien Decl. ¶ 28.  These demands

28

1   significantly diminished the time Plaintiffs' counsel could have devoted to work for fee-

2   paying clients or other less risky contingent cases.  *Id.*

3       **D.      The Contingent Risk of the Recovery Warrants a Multiplier.**

4           Multipliers are awarded based in part on the contingent nature of the fee award.  "A

5   contingent fee must be higher than a fee for the same legal services paid as they are

6   performed.  The contingent fee compensates the lawyer not only for the legal services he

7   renders but for the loan of those services."  *Ketchum*, 24 Cal. 4th at 1132-33, (citations

8   omitted).  Where cases concern enforcement of important federal rights, "but little or no

9   damages, such fee enhancements may make such cases economically feasible to competent

10  private attorneys."  *Id.* at 1133.

11          Here, Plaintiffs' counsel devoted substantial resources to litigating and settling this

12  case, despite facing considerable contingency risk, further demonstrating that a multiplier

13  is appropriate.  Elder Decl. ¶¶ 4, 76-77; Goldstein Decl. ¶¶ 16-18.  Plaintiffs faced a real

14  risk that they would not prevail.  When they filed suit, no court had addressed whether a

15  service like Uber was subject to federal and California disability access laws, and Plaintiffs

16  faced adverse extra-circuit precedent concerning associational standing.  Goldstein Decl.

17  ¶¶ 16-18.  In addition, as a multi-billion dollar company, Uber's resources to aggressively

18  litigate dwarfed those of Plaintiffs.

19      **E.      Even if the Multiplier Were Governed by Federal Law, A Multiplier
                  Would Still Be Necessary in this Case.**
20

21          In 2010, the United States Supreme Court dispelled almost two decades of doubt

22  regarding the availability of multipliers under federal law.  *See Perdue*, 559 U.S. at 553-54

23  (holding that multipliers remain available under federal law "in those rare circumstances in

24  which the lodestar does not adequately take into account a factor that may properly be

25  considered in determining a reasonable fee.").  A multiplier remains available where

26

27

28

[3039480-14]

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS

1    necessary to achieve the objective of federal fee-shifting law to ensure that civil rights
2    litigants can attract competent counsel.[3]  *Id.* at 554.  Counsel contemplating complex
3    engagements such as this one cannot undertake them without some reasonable expectation
4    of additional compensation beyond market rates in the event of success; and Plaintiffs
5    would be unable to find quality counsel without the hope of this enhanced compensation.
6    Bien Decl. ¶ 29; Elder Decl. ¶ 76.

7    **IV.    PLAINTIFFS' COUNSEL IS ENTITLED TO RECOVER EXPENSES**

8            Prevailing federal litigants are entitled to recover statutory costs under 28 U.S.C.
9    § 1920, and all "out-of-pocket expenses that would normally be charged to a fee paying
10   client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and
11   citations omitted); *Woods v. Carey*, 722 F.3d 1177, 1180, n.1 (9th Cir. 2013).  The
12   requested costs in ADA cases properly include expert witness fees.  *Lovell v. Chandler*,
13   303 F.3d 1039, 1058-59 (9th Cir. 2002).

14           Plaintiffs requested expenses are properly recoverable.  The cost of retaining an
15   expert witness was reasonable given the dual track towards trial and settlement and
16   abbreviated discovery schedule.  Smith Decl. ¶ 42, Exh. I.  All other expenses are
17   recoverable statutory costs and ordinary out-of-pocket expenses, such as legal research,
18   travel, and copying.  Elder Decl., Exh. I.  The expenses sought amount to $13,447.14.

19   **V.     POST-JUDGMENT INTEREST RUNS FROM THE DATE OF
         ENTITLEMENT TO A FEES AWARD.**
20
21           Fees and expenses awards receive post-judgment interest from the date the court
22   determines entitlement to fees, even when the amount is not yet determined.  *Friend v.*
23   *Kolodzieczak,* 72 F.3d 1386 (9th Cir. 1995).  Entitlement to a fees award was determined
     on July 13, 2016, when the Court granted preliminary approval of the settlement.
24

25   [3] The Court here need not rely on federal law for determining a multiplier because the
26   California law factors are sufficient to support the enhanced lodestar request.  *See Target*,
     2009 WL 2390261, at *6.
27

1

2                                    **CONCLUSION**

3           For the foregoing reasons, Plaintiffs' Counsel respectfully requests that the Court

4    enter an award prevailing party fees and costs for work performed through September 9,

5    2016 in the following amounts, plus interest running from July 13, 2016:

6

| Category | Amount |
|----------|--------|
| Merits Lodestar, Hours x Rates | $1,589,574 |
| 2.0 Multiplier Enhancement | $1,589,574 |
| Expenses | $13,447.14 |
| Fees-Related Lodestar | $87,938 |
| TOTAL | $3,280,533.14 |

7

8

9

10

11

12

13

14   DATED: September 19, 2016          Respectfully submitted,

15                                       ROSEN BIEN GALVAN & GRUNFELD LLP

16                                       By: */s/Michael W. Bien*

17                                            Michael W. Bien

18                                       Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

[3039480-14]
28
                                                                    3:14-cv-04086-NC

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FEES AND COSTS