MARY-LEE SMITH – Cal. Bar No. 239086
JULIA MARKS – Cal. Bar No. 300544
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California  94704-1204
Telephone:     (510) 665-8644
Facsimile:     (510) 665-8511
Email:         msmith@dralegal.org

TIMOTHY ELDER – Cal. Bar No. 277152
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California  94536
Telephone:     (410) 415-3493
Facsimile:     (888) 718-0617
Email:         telder@trelegal.com

MICHAEL W. BIEN – Cal. Bar No. 096891
ERNEST GALVAN – Cal. Bar No. 196065
MICHAEL S. NUNEZ – Cal. Bar No. 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
50 Fremont Street, 19th Floor
San Francisco, California  94105-2235
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:         mbien@rbgg.com
               mnunez@rbgg.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, MICHAEL KELLY, MICHAEL HINGSON, and MICHAEL PEDERSEN, <br><br> Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., <br><br> Defendant. | Case No. 3:14-cv-04086-NC <br><br> **NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT** <br><br> Judge:   Hon. Magistrate Nathanael Cousins <br> Date:    December 1, 2016 <br> Time:    1:00pm <br> Crtrm.:  D, 450 Golden Gate Avenue, San Francisco, CA 94102 <br><br> Trial Date:   None Set |

3:14-cv-04086-NC

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

INTRODUCTION ................................................................................................................... 2

STATEMENT OF FACTS ...................................................................................................... 3

      A.    Procedural Background ......................................................................... 3

      B.    The Settlement ........................................................................................ 6

      C.    Notice Has Been Provided to the Class .............................................. 9

      D.    No Class Members Have Objected to the Settlement. ..................... 10

ARGUMENT ......................................................................................................................... 11

I.      LEGAL STANDARD FOR SETTLEMENT OF A CLASS ACTION ................... 11

II.     FINAL APPROVAL OF THE SETTLEMENT IS PROPER ................................. 12

      A.    The Benefits to the Class are Significant in Light of the Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation. .................... 12

      B.    The Settlement is Fair, Adequate, and Reasonable in Light of the Discovery Completed and the Stage of the Proceedings ............. 13

      C.    Experienced Class Counsel Endorse the Settlement. ......................... 14

      D.    No Class Members Objected to the Settlement ........ 15_Toc464743227

      E.    The Settlement Is the Product of Good Faith, Arms-Length Negotiations ........................................................................................ 15

CONCLUSION ....................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page**

## CASES

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................................................... 13, 16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011(9th Cir. 1998) ...................................................................................... 11

*In re Bluetooth Headset Products Liability Litigation*,
    654 F.3d 935 (9th Cir. 2011). ................................................................................. 12, 15

*In re Mego Financial Corporation Securities Litigation*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................................... 13

*In re Omnivision Technologies, Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................. 11, 15

*In re Pacific Enterprises Securities Litigation*,
    47 F.3d 373 (9th Cir. 1995) ........................................................................................ 14

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 11

*Satchell v. Federal Express Corp.*,
    No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ........................... 16

## STATUTES

*Americans with Disabilities Act*,
    42 U.S.C. § 12101 *et seq.* .................................................................................... 3, 15

*California Unruh Civil Rights Act*,
    Cal. Civ. Code § 51 ....................................................................................................... 3

*California Disabled Persons Act*,
    Cal. Civ. Code § 54 ....................................................................................................... 3

*Class Action Fairness Act of 2005*,
    28 U.S.C. § 1715. ....................................................................................................... 10

## RULES

Fed. R. Civ. P. 23(e) .......................................................................................... 11, 12, 16

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 1, 2016, at 1:00 p.m., or as soon thereafter as the matter may be heard, Plaintiffs the National Federation of the Blind, the National Federation of the Blind of California, Michael Kelly, Michael Pedersen, and Michael Hingson, on behalf of themselves and a class of those similarly situated, move the Court for final approval of the proposed class settlement agreement ("Settlement") submitted herewith and incorporated herein by reference in the above-captioned matter. Defendant Uber Technologies, Inc. does not oppose this Motion.

Plaintiffs respectfully request that the Court enter the attached proposed order (1) finding the proposed Settlement's terms and conditions are fair, adequate, and reasonable; and (2) approving the Settlement.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, the supporting Declaration of Julia Marks, the exhibits thereto, the pleadings and orders on file in this matter, and any oral argument or evidence permitted at any hearings on this Motion.

DATED: October 27, 2016         Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

By: _____

Mary-Lee K. Smith

Attorneys for Plaintiffs

3:14-cv-04086-NC

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The proposed class settlement agreement ("Settlement") in this case will dramatically improve access to Uber's transportation services for blind and visually-impaired people nationwide who travel with service animals. Uber provides efficient, convenient, and affordable transportation to consumers around the country, but passengers with guide dogs have faced denials of service and discrimination by drivers on the platform. The changes embodied in this Settlement will ensure that drivers in this important and growing sector of the transportation ecosystem will provide equal, non-discriminatory service to people traveling with service animals.

Plaintiffs the National Federation of the Blind ("NFB"), the National Federation of the Blind of California ("NFB-CA"), Michael Kelly, Michael Pedersen, and Michael Hingson, on behalf of themselves and a class of those similarly situated (collectively, "Plaintiffs") and Defendant Uber Technologies, Inc. ("Uber") (collectively, "Parties") came to this Settlement after protracted negotiations and exchange of information through the General Order 56 process.

The Settlement requires a comprehensive set of changes to Uber's policies and practices. Uber will use multiple channels to inform drivers about their obligation to transport disabled individuals with service animals, will require drivers to affirm their understanding of this obligation and agree to comply, will implement a strict removal policy for drivers who discriminate, will improve complaint response and customer service, and will modify other policies that affect individuals with service animals, such as cleaning fees. Uber agrees to collect data related to alleged discrimination against service animal users, to provide the data to a third-party monitor, and to pay NFB to send blind users out as testers to ensure that discrimination on the Uber platform is decreasing.

On July 13, 2016, this Court conditionally certified the proposed class and preliminarily approved the proposed Settlement. Dkt. No. 112. The Parties distributed

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

1  notice to the class in accordance with the Court's preliminary approval order. No persons

2  have objected to the Settlement.

3       In light of these facts and as discussed below, Plaintiffs respectfully request that the

4  Court find the Settlement to be fair, adequate, and reasonable, and grant final approval.

5  Uber does not oppose this motion.

6                          **STATEMENT OF FACTS**

7       **A.    Procedural Background**

8       Plaintiffs brought this case against Uber seeking relief for alleged repeated denials

9  of service in the Uber transportation network to blind passengers traveling with guide

10  dogs. Dkt. No. 1. Plaintiffs alleged violations of the Americans with Disabilities Act, 42

11  U.S.C. § 12101 *et seq.* ("ADA"), the California Unruh Civil Rights Act, Cal. Civ. Code §§

12  51 & 52, and the California Disabled Persons Act, Cal. Civ. Code §§ 54-54.3.

13       The lawsuit was filed September 9, 2014 by NFB-CA, on behalf of its members,

14  and Michael Hingson, who is blind and travels with a guide dog, and who alleges that he

15  was deterred from using the Uber network because of the frequent discriminatory denials

16  of service to which individuals like him are subject. Dkt. No. 1. Plaintiffs amended their

17  complaint in November 2014 to add two additional Plaintiffs, Michael Kelly and Michael

18  Pedersen, both of whom alleged that they were denied service by transportation providers

19  on the Uber platform because they were blind and traveling with service animals. Dkt. No.

20  17. NFB, on behalf of its members participated in settlement negotiations and joined as an

21  additional Plaintiff in April 2016. Dkt. Nos. 84, 113. NFB, along with its California

22  affiliate NFB-CA, is an association of blind individuals that works to promote vocational,

23  cultural, and social advancement and to achieve the integration of blind people into society

24  on an equal basis with sighted people. Many NFB and NFB-CA members travel with

25  service animals and have either used Uber transportation and were allegedly denied service

26  or were deterred from using Uber transportation because of their knowledge of the alleged

27  recurrent discrimination.

28

3

1    Uber is a company that connects passengers who seek transportation ("Riders") to

2    independent transportation providers ("Drivers") via a smartphone application ("Uber

3    Rider App"). Uber connects Riders and Drivers in many metropolitan areas around the

4    United States, and provides an affordable and convenient way to procure transportation.

5    Plaintiffs sought injunctive relief that would require Uber to take the steps

6    necessary to ensure that Drivers do not refuse to transport blind individuals with service

7    animals, in violation of the ADA and California state law. Dkt. No. 17, ¶ 123. Plaintiffs

8    also sought damages for the alleged discrimination experienced by Mr. Hingson, Mr.

9    Pedersen, and Mr. Kelly. Dkt. No. 17, ¶ 125.

10   Uber moved to dismiss Plaintiffs' complaint, arguing that Plaintiffs lacked standing

11   and that Uber vehicles were not places of public accommodation under the ADA. Dkt. No.

12   9. Plaintiffs amended their complaint, and Uber again moved to dismiss. Dkt. Nos. 17, 25.

13   On April 17, 2015, the Court denied Uber's motion to dismiss on all grounds. Dkt. No. 37.

14   Plaintiffs undertook significant factual investigation and received information from

15   the Defendant through the General Order 56 process. Following the motion to dismiss, the

16   Parties exchanged initial disclosures on May 1, 2015, and Plaintiffs supplemented their

17   disclosures on July 14, 2015. Declaration of Julia Marks in Support of Plaintiffs'

18   Unopposed Motion for Final Approval of Settlement ("Marks Decl.") ¶ 6. The Parties met

19   to review Uber's App, website for Drivers, and system for bringing new Drivers onto the

20   platform on May 8, 2015, and Uber provided additional information on its policies and

21   practices during settlement negotiations. Marks Decl. ¶¶ 7, 8. Plaintiffs propounded

22   discovery requests and noticed depositions, but postponed depositions because of the

23   promising progress of settlement negotiations. Marks Decl. ¶ 9. Plaintiffs' counsel

24   collected stories and documents from more than 80 blind individuals, throughout the

25   country, who reported denials of service by Drivers while traveling with their guide dogs.

26   Marks Decl. ¶ 4.

27   The Parties engaged in extensive thorough, informed, arm's-length negotiations.

28

3:14-cv-04086-NC

4

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

1   The Parties held settlement discussions on May 8, 2015 and on June 18, 2015. Marks Decl.

2   ¶ 7. On August 10, 2015, the Parties participated in mediation with Hon. Jamie Jacobs-

3   May (ret.) at JAMS. Marks Decl. ¶ 8. Plaintiffs provided Defendant with a written

4   settlement proposal based on progress at the mediation. The Parties exchanged redlines of

5   the settlement agreement and engaged in additional discussion of settlement terms during

6   the fall of 2015. Marks Decl. ¶ 10.

7        The Parties came to an agreement on the key terms of the Settlement in January

8   2016. Marks Decl. ¶ 12. The Parties agreed that the Settlement would be most effective as

9   a class settlement, to ensure that the policy improvements would be consistent across

10   Uber's national markets and that individuals with service animals across the country would

11   gain relief from the alleged discrimination. The Parties agreed upon and sought conditional

12   certification for a settlement class ("Class") of "all blind or visually disabled individuals

13   nationwide who travel with the assistance of Service Animals and who have used,

14   attempted to use, or been deterred from attempting to use transportation arranged through

15   the Uber Rider App." Settlement, attached to Marks Decl. as Exh. A, at § 1.

16        The Parties filed their Joint Motion for Preliminary Approval of Class Settlement

17   and Related Motions on April 29, 2016. Dkt. No. 84. In response to concerns the Court

18   raised regarding the scope of the release, the Parties modified the Settlement release

19   language in Section 14.A to clarify the released entities, and agreed to modified notice

20   requirements and deadlines. Dkt. No. 111. The parties also submitted supplemental

21   briefing about the scope of released claims. Dkt. No. 101. The Court granted leave to file a

22   second amended complaint to include class allegations, granted preliminary approval of

23   the Settlement, and conditionally certified the Class on July 13, 2016. Dkt. No. 112.

24        The Plaintiffs and the Class are represented by Disability Rights Advocates

25   ("DRA"), Rosen Bien Galvan & Grunfeld ("Rosen Bien"), and TRE Legal Practice ("TRE

26   Legal") (collectively, "Class Counsel").

27

28

5

3:14-cv-04086-NC

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

**B.    The Settlement**

The Settlement will provide relief to Plaintiffs through implementation of the following terms.[1]

     1. Enhanced Dissemination of Information to Drivers

Under the Settlement, Uber will require that all Drivers confirm that they understand their obligation to provide equal service to disabled Riders with service animals. Uber will require all Drivers to navigate through an interactive pop-up notification in the mobile application that Drivers use to receive ride requests ("Driver App"). The pop-up will provide information about service animals and the obligation to provide equal service. Drivers will have to accurately answer a series of questions regarding Uber's service animal policies and affirm their willingness to transport Riders with service animals. If Drivers fail to complete these screens, Uber will block them from the Driver App, so that they cannot provide service on the platform. Settlement § 4.B. Uber will also send quarterly emails to Drivers reminding them of their obligation to transport Riders with service animals, and will update the Driver licensing agreement to explain the obligation. *Id.*

Uber will also add a statement confirming that new Drivers agree to transport passengers with service animals and a link to the Service Animal Policy to its online Driver sign-up process. Settlement § 4.A.

     2. Changes to Enforcement Practices

To enhance Drivers' compliance with their legal and contractual obligations, Uber will improve its enforcement policies for violations of its service animal policy. Under the Settlement, Uber will block a Driver from the platform if the Driver knowingly refuses to transport a Rider because of a service animal. Uber will review every report of a ride

---

[1] A detailed summary of the Settlement is included in the Parties' Joint Motion for Preliminary Approval of Class Settlement and Related Motions. Dkt. No. 84, pp. 9-14.

denial based on the presence of a service animal to determine whether the Driver involved violated the policy. Settlement § 5.A. If Uber determines that a Driver knowingly denied service to a Rider with a service animal because of that service animal, Uber will permanently block that Driver from the platform.  If Uber concludes that a Driver did not knowingly deny service to a Rider with a service animal because of that service animal, but Uber receives more than one complaint alleging denial because of a service animal, Uber will permanently block that Driver from the platform, without further inquiry. Settlement § 5.A.

### 3.    Complaint Processing and Response

Uber will also make it easier for Riders to report denials of service and other service animal issues through the Uber Rider App and from the home page of the Uber website. Settlement § 5.B. Uber will respond to complaints about service animal discrimination in a timely manner and will provide customers with information about Uber's investigation and whether the Driver involved in the incident was permanently blocked from the platform. Settlement § 5.B. Uber will also reverse any charges related to the incident, and will provide a Rider an account credit if a Driver is removed from the platform as a result of the Rider's complaint. Settlement § 5.B.

### 4.    Revisions to Uber's Service Animal Policy

Uber will revise its written service animal policy to reflect its enhanced enforcement policy, improved complaint processing and response policies and procedures, and updates to its cleaning fee policy. Settlement § 1. Uber will also adopt a guidance document to assist Uber employees in assessing allegations of discrimination. Settlement § 5.A.

### 5.    Compliance, Data Collection, and Testing

Uber will collect data regarding service animal denials to facilitate monitoring, assessment of the policy, and practice improvements required by the Settlement. Uber agrees to maintain a national database with information about all alleged incidents of

3:14-cv-04086-NC

7

discrimination against Riders with service animals. This data includes Rider and Driver name and contact information, location, date, and account information for alleged denials of service, complaints, and numerical ratings. Settlement § 6.A. Class Counsel and a third-party monitor will review the data for the term of the Settlement, which is three and a half years with the possibility of extension. Settlement § 6.B. Additionally, NFB and NFB-CA will send blind individuals with service animals to use the Uber service to test whether Drivers are complying with their obligations to provide equal access. Settlement § 6.C.

> 6.  Monitoring, Opportunity to Request Additional Policy Changes, and Dispute Resolution

The Settlement includes a number of provisions to ensure that Uber is making the changes required by the Settlement and that the updated policies and practices are effectively reducing discrimination on the platform. First, a third-party monitor will review data and complaints and will report to Class Counsel on a yearly basis. If the monitor concludes that the policies and practices are not sufficiently ameliorating discrimination on the platform, the monitor can recommend additional changes. Settlement § 8.A. Further, Plaintiffs may request additional changes if there is good cause to believe further modifications are necessary; such modifications cannot lessen the benefits or protections for members of the Class. Settlement § 8.B. The Settlement establishes a dispute resolution procedure in the event that the Parties disagree on the need for additional modifications or other issues in implementing the Settlement. Settlement § 10.

> 7.  Monetary Payments

NFB and the individual names Plaintiffs will receive monetary compensation under the Settlement. NFB will receive a total of $225,000 over the term of the agreement. The payments are intended to support the testing program. Settlement § 11. Mr. Hingson, Mr. Pedersen, and Mr. Kelly will receive $45,000 in total, to apportion among themselves, as compensation for the discrimination they experienced on the Uber platform.

The Parties did not settle the amount of attorneys' fees, costs, and expenses to which Plaintiffs were entitled. Plaintiffs filed their Motion for Reasonable Attorneys' Fees

8

3:14-cv-04086-NC

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

1  and Costs on September 19, 2016. Dkt. No. 119.

2  **C.    Notice Has Been Provided to the Class**

3       The Parties have provided notice to the Class by complying with the notice

4  requirements specified in the Joint Amended Proposed Order Granting Approval to File

5  Plaintiffs' Second Amended Complaint, Preliminary Approval to Class Settlement,

6  Certifying Settlement Class, Authorizing Distribution of Notice, and Setting Fairness

7  Hearing, Dkt. No. 109, as incorporated into the Court's Order Granting Motions to Amend

8  the Complaint, Conditionally Certify Class, and Preliminary Approval of Class Action

9  Settlement , Dkt. No. 112. The Court approved the Parties' proposed notice ("Notice"),

10  which is attached to the Declaration of Laurence Paradis in Support of the Joint Motion for

11  Preliminary Approval of Class Settlement and Related Motions as exhibit 3, Dkt. No. 85.3.

12       Class Counsel posted the Notice, in a screen-reader accessible format, on the

13  websites of DRA, Rosen Bien, and TRE Legal on or before August 3, 2016. Marks Decl.

14  ¶¶ 22-24. Class Counsel emailed the Notice to all individuals who had contacted Class

15  Counsel to report discrimination on July 23, 2016. Marks Decl. ¶ 21. The American

16  Council of the Blind ("ACB") and NFB, the two largest organizations of blind persons in

17  the United States, distributed the Notice via email to its listservs before August 3, 2016.

18  Marks Decl. ¶¶ 25, 26. The guide-dog users groups of ACB and NFB, Guide Dog Users

19  International and National Association of Guide Dog Users, respectively, also distributed

20  the Notice via email to its listservs before August 3, 2016. Marks Decl. ¶¶ 25-28.

21  Kurtzman Carson Consultants LLC ("KCC"), a settlement administrator, published the

22  notice in the September issue of *The Forum*, the Braille magazine of the American Council

23  of the Blind, and the August/September issue of *The Monitor*, the Braille magazine of the

24  National Federation of the Blind. Marks Decl. ¶¶ 29, 30. KCC maintained a settlement

25  website through the notice period, from August 3, 2016 through October 13, 2016,

26  containing the full Settlement, Notice, and the Court's Order Granting Preliminary

27  Approval (Dkt. 112). Marks Decl. ¶¶ 14-16.

28

3:14-cv-04086-NC

The Parties stipulated to a modified version of the Notice ("Modified Notice"), which the Court approved on August 5, 2016, to change the contact person at DRA. Dkt. No. 116. Class Counsel posted the Modified Notice on the DRA, RBGG, and TRE Legal websites and the settlement website.[2] Marks Decl. ¶¶ 22-24. Class Counsel also posted their Notice of Motion and Motion, Memorandum of Points and Authorities in Support of Plaintiff's Motion for Fees and Costs, and declarations in support, Dkt. Nos. 119, 119-1 – 119-9, 123, 123-1 – 123-4, on the settlement website on September 21, 2016. Marks Decl. ¶ 19. In October, 2016, Class Counsel updated their respective websites and the settlement website to reflect the new date for the hearing on final approval and the fee motion of December 1, 2016. Marks Decl. ¶¶ 22-24. Class Counsel also emailed individuals who had contacted Class Counsel to report discrimination to notify them of the new hearing date. Marks Decl. ¶ 31.

Defendant published a blog posting with a link to the Notice on its Newsroom webpage on August 22, 2016. Declaration of Emily O'Connor In Support of Plaintiffs' Motion for Final Approval ("O'Connor Decl.") ¶ 3. KCC served the Notice of Class Action Settlement Pursuant to the Class Action Fairness Act of 2005 in accordance with 28 U.S.C. § 1715. O'Connor Decl. ¶ 2.

**D.      No Class Members Have Objected to the Settlement**

No class members have filed objections to the Settlement. Marks Decl. ¶ 32. The final day for class members to file objections was October 13, 2016. Dkt. No. 112.

---

[2] Plaintiffs did not send updated versions of the notice to the email listservs. However, Class members could effectively reach Class Counsel by relying on either the original or the modified notice. The only modification to the notice was updating the contact person at DRA from attorney Laurence Paradis to attorney Julia Marks. Marks Decl. ¶ 17. DRA's phone number and address did not change, and staff at DRA was instructed to forward any calls or correspondence regarding this case to Ms. Marks. Marks Decl. ¶ 17.

**ARGUMENT**

**I.      LEGAL STANDARD FOR SETTLEMENT OF A CLASS ACTION**

Pursuant to Federal Rule of Civil Procedure 23(e), the claims of a certified class may be settled only with a court's approval. If a proposed settlement will bind class members, "the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When settlement takes place prior to formal class certification, the Court should engage in a more probing inquiry into the fairness of the settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

A district court's role in reviewing the substance of the settlement is solely to ensure that it is "fair, adequate, and free from collusion." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon*). The district court should consider the settlement as a whole, rather than looking at each separate part, to determine whether the settlement is fair. *Id.* at 818-19. Further, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect." *Id.* Courts should give deference to the private consensual decision of the parties. *Hanlon*, 150 F.3d at 1027. "[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008).

In assessing whether a proposed settlement is fair, adequate, and reasonable, courts consider a collection of factors:

> "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.

Additionally, when the Settlement occurs prior to formal class certification, the Court must determine whether the settlement was a product of collusion or other conflicts

3:14-cv-04086-NC

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

of interest. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

## II.      FINAL APPROVAL OF THE SETTLEMENT IS PROPER

Plaintiffs assert, and the Defendant does not contest, that each of the *Hanlon* factors supports final approval of the proposed Settlement pursuant to Rule 23(e).

### A.      The Benefits to the Class are Significant in Light of the Strength of the Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation.

The first four *Hanlon* factors weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

The Settlement provides significant benefits to the Class. As detailed above, the Settlement requires comprehensive, nationwide changes to Uber's policies, practices, and procedures to ensure that blind persons traveling with service animals receive equal, non-discriminatory treatment on the Uber platform. Uber will clarify its service animal policy and make clear to Drivers that the company does not tolerate discrimination against guide dog users on its platform. The Settlement requires thorough dissemination of information to Drivers about the obligation to transport people traveling with service animals, and implements strict Driver contract termination policies that will deter drivers from denying rides to blind people with service animals. Under the Settlement, Class members will be able to report discrimination more easily and will receive timely and thorough responses upon submitting complaints. The Settlement includes additional protections that benefit the Class, including limitations on the imposition of cleaning fees and policies for reimbursing cancellation fees. The Settlement's provisions regarding data reporting, testing, and monitoring will ensure that Uber implements these changes and that the changes sufficiently remedy discrimination in the Uber network.

Although Plaintiffs maintain that they have a strong case, pursuing litigation instead of Settlement would carry significant risk, expense, and complexity. Had the Parties not achieved settlement, the Parties would likely have been engaged in protracted and

3:14-cv-04086-NC

12

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT

1    contentious litigation. Discovery for the litigation would be lengthy and costly: Plaintiffs

2    had already retained an expert and noticed numerous depositions, and discovery disputes

3    were pending at the time of settlement. The Parties would also likely engage in complex

4    law and motion practice. For instance, since Plaintiffs had originally filed this case as an

5    action on behalf of individuals and an organization in California, to achieve the scope of

6    relief that Plaintiffs negotiated in the Settlement, Plaintiffs would have needed to seek

7    leave to file an amended complaint and to move for class certification of a nation-wide

8    class. The Settlement avoids the risk and delay of protracted litigation, while providing

9    significant benefit to the Class.

10         **B.    The Settlement is Fair, Adequate, and Reasonable in Light of the
                Discovery Completed and the Stage of the Proceedings.**

11

12         The Parties had a strong grasp of the merits of their case before reaching agreement

13    on the Settlement. When class counsel, as in this case, "possess a sufficient understanding

14    of the issues involved and the strengths and weaknesses of the case," this factor weighs in

15    favor of settlement approval. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848,

16    852 (N.D. Cal. 2010).

17         Although the Parties had not completed formal discovery or depositions, Class

18    Counsel conducted significant factual and legal research and the Parties exchanged

19    information prior to settlement through the General Order 56 process. "[I]n the context of

20    class action settlements, formal discovery is not a necessary ticket to the bargaining table

21    where the parties have sufficient information to make an informed decision about

22    settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as

23    amended (June 19, 2000) (internal quotations omitted). Much of Plaintiffs' case rested on

24    affirmative evidence of discriminatory treatment, which Class Counsel collected by

25    speaking with over 80 individuals while investigating and litigating the case. Marks. Decl.

26    ¶ 4. Class Counsel reviewed correspondence between Uber and individuals who alleged

27    discrimination, Uber's publicly posted policies, and driver message boards. Marks. Decl. ¶

28    4. During the General Order 56 process, Uber shared additional information about internal

3:14-cv-04086-NC

13

1    policies and practices that assisted Plaintiffs in determining proper relief to end the alleged

2    discrimination. These investigations and exchanges provided the Parties with sufficient

3    facts to make an informed decision about settlement.

4         The Parties were further able to assess their relative positions prior to the Settlement

5    because they commenced settlement negotiations after the Court had ruled on Defendant's

6    motion to dismiss.

7         **C.    Experienced Class Counsel Endorse the Settlement.**

8         Class Counsel in this case brings extensive experience with class action litigation,

9    settlement, and disability rights law. Disability Rights Advocates' practice focuses

10   exclusively on disability rights litigation, primarily consisting of class actions and

11   representative impact actions, and includes litigation, negotiations, and creating and

12   monitoring complex policy-based settlement agreements. Declaration of Laurence Paradis

13   in Support of Joint Motion for Preliminary Approval of Class Settlement and Related

14   Motions ("Paradis Decl."), Dkt. No. 85, ¶¶ 8, 9. Rosen Bien similarly brings significant

15   experience with complex litigation and settlement implementation and monitoring. Paradis

16   Decl. ¶¶ 11-13. TRE Legal specializes in disability rights litigation as well. Paradis Decl. ¶

17   14. Class Counsel brought this experience to bear on developing strategy, assessing the

18   viability of Plaintiffs' claims and pursuit of a class action, and negotiating and drafting the

19   Settlement in this case.

20        The Ninth Circuit has recognized that parties that are represented by experienced

21   and competent counsel "are better positioned than courts to produce a settlement that fairly

22   reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d

23   373, 378 (9th Cir. 1995). The significant experience of Class Counsel led to an effective

24   and comprehensive Settlement, and Class Counsel are well positioned to assess the

25   adequacy and efficacy of the Settlement. Class Counsel's endorsement of the Settlement

26   weighs in favor of a finding that it is fair, reasonable, and adequate.

27        Courts also consider whether government participants are involved in the

28

3:14-cv-04086-NC

14

1    Settlement. The United States, which had submitted a Statement of Interest to clarify the

2    scope of Title III coverage during the motion to dismiss phase, Dkt. No. 29, did not object

3    to the settlement. Dkt. No. 97.

4            **D.      No Class Members Objected to the Settlement.**

5            "[T]he absence of a large number of objections to a proposed class action settlement

6    raises a strong presumption that the terms of a proposed class settlement action are

7    favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

8    1043 (N.D. Cal. 2008) (quotation omitted). No class members submitted objections to the

9    Settlement. Marks Decl. ¶ 32. Accordingly, this factor weighs in favor of the settlements.

10           **E.      The Settlement Is the Product of Good Faith, Arms-Length
                      Negotiations.**

11

12           The Parties engaged in protracted good faith, non-collusive, arms-length

13   negotiations to reach settlement. The Parties began negotiations in May 2015 and

14   continued negotiations through the end of April 2016.  Marks Decl. ¶¶ 7, 8, 10, 12. The

15   Parties held multiple in-person negotiations, and exchanged numerous redlines of the

16   Settlement and the Settlement addenda, which include Uber's formal written policy on

17   service animals, internal guidance documents, driver education materials, and detailed

18   plans for providing Riders with methods for reporting service animal issues. Marks Decl.

19   ¶¶ 7, 8; Settlement Addenda 1-4. The Parties negotiated the policy, practice, and procedure

20   changes that make up the class relief prior to negotiating damages for the individual named

21   Plaintiffs and prior to unsuccessfully negotiating attorneys' fees and costs. Marks Decl. ¶
     11.
22
             The indicia of collusion are not present in this case. Signs of collusion include
23
     payment of excessive attorneys' fees when compared with the scope of relief and reversion
24
     of fees to defendants. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947.
25
     Since the Settlement does not provide damages to the class, and class members do not
26
     release their claims, there are no concerns about improper distribution or reversion of
27
     funds. Class Counsel has no guarantee of a significant fee recovery, as the Parties were
28
                                                                                    3:14-cv-04086-NC
                                                 15

1 unable to reach agreement on attorneys' fees. Marks Decl. ¶ 13. Rather, Defendant

2 indicated it would vigorously oppose Plaintiffs' amount of requested fees and costs. Marks

3 Decl. ¶ 13.

4      Further, the Parties developed much of the framework for their Settlement with the

5 assistance of an experienced mediator, Hon. Jamie Jacobs-May (ret.). "The assistance of an

6 experienced mediator in the settlement process confirms that the settlement is non-

7 collusive." *Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4

8 (N.D. Cal. Apr. 13, 2007); *see also Chun-Hoon*, 716 F.Supp.2d at 852. The arms-length,

9 non-collusive negotiations, facilitated by an experienced mediator, weigh in favor of the

10 Court's finding that the Settlement is fair, reasonable, and adequate.

11 **CONCLUSION**

12      The proposed Settlement will dramatically improve the treatment of Riders with

13 service animals in the Uber transportation network. This Settlement is a fair, reasonable,

14 and adequate resolution of the claims at issue. The Parties have provided adequate notice

15 to class members, and no class members objected to the Settlement. For the foregoing

16 reasons, Class Counsel respectfully request that, following the fairness hearing, the Court

17 enter an order granting final approval of the Settlement pursuant to Federal Rule of Civil

18 Procedure 23(e).

19

20 DATED: October 27, 2016       Respectfully submitted,

21

22                DISABILITY RIGHTS ADVOCATES

23                By: _____

24                    Mary-Lee K. Smith

25                Attorneys for Plaintiffs

26

27

28                                       3:14-cv-04086-NC