STUART SEABORN – Cal. Bar No. 198590
MELISSA RIESS – Cal. Bar No. 295959
DISABILITY RIGHTS ADVOCATES
2001 Center Street, Fourth Floor
Berkeley, California 94704-1204
Telephone:   (510) 665-8644
Facsimile:   (510) 665-8511
TTY:         (510) 665-8716
Email:       sseaborn@dralegal.org
             mriess@dralegal.org

TIMOTHY ELDER – Cal. Bar No. 277152
TRE LEGAL PRACTICE
4226 Castanos Street
Fremont, California 94536
Telephone:   (410) 415-3493
Facsimile:   (888) 718-0617
Email:       telder@trelegal.com

MICHAEL W. BIEN – Cal. Bar No. 096891
ERNEST GALVAN – Cal. Bar No. 196065
MICHAEL S. NUNEZ – Cal. Bar No. 280535
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California 94105-1738
Telephone:   (415) 433-6830
Facsimile:   (415) 433-7104
Email:       mbien@rbgg.com
             egalvan@rbgg.com
             mnunez@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| NATIONAL FEDERATION OF THE BLIND, NATIONAL FEDERATION OF THE BLIND OF CALIFORNIA, MICHAEL HINGSON, and MICHAEL PEDERSON,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 3:14-cv-04086-NC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS FEES AND COSTS**<br><br>Judge:   Hon. Nathanael Cousins<br><br>Trial Date:   None Set |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

I. UBER'S ATTACK ON ESTABLISHED FEE-SHIFTING LAW FAILS ................ 1

II. UBER'S ATTACK ON PLAINTIFFS' CLAIMED MONITORING ACTIVITIES FAILS .................................................................................................. 3

    A. Analyzing Complaint Data, Conferring with Uber and the Monitor, and Reporting to the Monitor Are Compensable Activities ............................ 4

    B. Conferring with Class Members about Settlement Issues Is Compensable ................................................................................................... 5

    C. Work Negotiating Additional Relief Is Compensable ................................... 7

    D. Other Claimed Monitoring Work Is Recoverable ......................................... 10

    E. Work Preparing to Litigate Plaintiffs' First Fee Claim Is Compensable ...... 11

III. THE BILLING RECORDS ARE NOT DEFECTIVE ............................................ 12

    A. Vagueness .................................................................................................... 12

    B. Block Billing ................................................................................................ 13

    C. Uber's Unexplained Objections Should Be Disregarded ............................. 14

IV. UBER DOES NOT DISPUTE THAT PLAINTIFFS' RATES ARE REASONABLE ....................................................................................................... 14

V. PLAINTIFFS' CLAIM FOR FEES TO PREPARE THIS FEE MOTION .............. 15

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Armstrong v. Davis*,
    318 F.3d 965 (9th Cir. 2003) ............................................................................. 11

*Balla v. Idaho*,
    677 F.3d 910 (9th Cir. 2012) ............................................................................. 11

*Barrios v. California Interscholastic Fed'n*,
    277 F.3d 1128 (9th Cir. 2002) ............................................................................. 2

*Bell v. Vista Unified School Dist.*,
    82 Cal. App. 4th 672 (2000) ............................................................................. 14

*Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*,
    121 S. Ct. 1835 (2001) ....................................................................................... 2

*Casella v. SouthWest Dealer Servs., Inc.*,
    157 Cal. App. 4th 1127 (2007) ........................................................................... 3

*Christian Research Inst. v. Alnor*,
    165 Cal. App. 4th 1315 (2008) ................................................................... 13, 14

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    68 Cal. App. 4th 445 (Cal. Ct. App. 2 Dist. 1998) ............................................. 6

*Concepcion v. Amscan Holdings, Inc.*,
    223 Cal. App. 4th 1309 (2014) ......................................................................... 14

*Ctr. for Food Safety v. Vilsack*,
    2011 U.S. Dist. LEXIS 144428 (N.D. Cal. Oct. 13, 2011) ............................... 13

*Davis v. City and Cnty. of San Francisco*,
    976 F. 2d 1536 (9th Cir. 1992) ......................................................................... 14

*El Escorial Owners' Ass'n v. DLC Plastering, Inc.*,
    154 Cal. App. 4th 1337 (2007) ........................................................................... 4

*Elder v. Nat'l Conf. of Bar Exams.*,
    No. 11-00199 SI, 2011 WL 4079623 (N.D. Cal. Sep. 12, 2011) ................ 13, 14

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ....................................................................... 2, 13

*Gates v. Rowland*,
    39 F.3d 1439 (9th Cir.1994) ............................................................................... 3

*Jackson v. Los Lunas Ctr.*,
    489, F. Supp. 2d 1267 (D. NM 2007) ................................................. 3, 4, 11, 12

*James v. Se. Pa. Trans. Auth.*,
  93-CV-5538, 1997 WL 698035 (E.D. Pa. Nov. 4, 1997) ............................................ 3

*K.M. ex rel. Bright v. Tustin Unified School Dist.*,
  78 F. Supp.3d 1289 (C.D. Cal. 2015) ..................................................................... 2

*Ketchum v. Moses*,
  24 Cal.4th 1122 (2001) ........................................................................................ 14

*LaToya A. v. S.F. Unified Sch. Dist.*,
  No. 3:15-cv-04311-LB, 2016 WL 344558 (N.D. Cal. Jan. 28, 2016) ..................... 12

*Lucas v. White*,
  63 F. Supp. 2d 1046 (N.D. Cal. 1999) ........................................................... 3, 4, 5, 7

*Lytle v. Carl*,
  382 F.3d 978 (9th Cir. 2004) ............................................................................... 12

*Melendres v. Penzone*,
  No. CV-07-2513-PHX-GMS, 2019 WL 1586877 (D. Ariz. Apr. 12, 2019) ............. 4

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
  618 Fed. Appx. 304 (9th Cir. 2015) ....................................................................... 3

*Moralez v. Whole Foods Mkt., Inc.*,
  C 12-01072 CRB, 2013 WL 3967639 (N.D. Cal. July 31, 2013) ........................... 12

*Oberfelder v. City of Petaluma*,
  No. C- 98-1470 MHP, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002) ..................... 13

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) ............................................................................................... 2

*Prison Legal News v. Schwarzenegger*,
  561 F. Supp. 2d 1095 (N.D. Cal. 2008) ................................................................ 11

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) .................................................................. 2, 3, 5, 10

*Prison Legal News v. Schwarzenegger*,
  C 07-02058 CW, 2008 WL 11411620 (N.D. Cal. Dec. 5, 2008) *aff'd* 608
  F.3d 446 (9th Cir. 2010) .................................................................................. 3, 15

*S.F. Baykeeper v. W. Bay Sanitary Dist.*,
  No. C-09-5676 EMC, 2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) ...................... 12

*Salazar v. D.C.*,
  30 F. Supp. 3d 47 (D.D.C. 2014), *aff'd* 809 F.3d 58 (D.C. Cir. 2015) ................. 11

*Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*,
  646 F. Supp. 2d 1206 (E.D. Cal. 2009) ................................................................ 14

*Trulock v. Hotel Victorville*,
  92 Fed. App'x 433 (9th Cir. 2004) ........................................................................ 13

*Welsh v. Metro. Life Ins. Co.*,
   480 F.3d 942 (9th Cir. 2007) .................................................................................. 13

*Wilder v. Bernstein*,
   975 F. Supp. 276 (S.D.N.Y. 1997) ...................................................................... 5, 11

**STATUTES**

42 U.S.C. § 12205 ............................................................................................................ 2

42 U.S.C. § 1988 ............................................................................................................... 2

Cal. Civ. Code § 1641 ...................................................................................................... 6

**OTHER AUTHORITIES**

H.R. Rep. No. 101-485, Pt. III at 73 (1990) ..................................................................... 2

**INTRODUCTION**

Uber concedes that Class Counsel's monitoring and enforcement work generated benefits for the class and that many of class counsel's monitoring activities were appropriate. Uber does not dispute the reasonableness of Class Counsel's requested rates, that the Monitor relies on Plaintiffs' Monitoring and reporting, or Class Counsel's costs.

Uber argues that monitoring fees are not recoverable at all, contrary to decades of case law. Uber then argues in the alternative that Class Counsel spent too much time monitoring compliance with this nationwide settlement. Uber accuses Class Counsel of working on this case only to generate fees, ignoring the fact that their compliance with, and the success of, this settlement is vital to service animal users all over the country. The class gave up valuable rights in return for this Settlement Agreement, and the class deserves diligent monitoring of Uber's compliance.

The time records and declarations fully support the $293,907.45 in fees and expenses. In addition, with this reply, Plaintiffs claim $64,019.25 for their work on this fee motion through August 25, 2019. Plaintiffs request that the Court award Plaintiffs a total of $357,926.70 in attorneys' fees, costs, and expenses.

**ARGUMENT**

**I.   UBER'S ATTACK ON ESTABLISHED FEE-SHIFTING LAW FAILS**

Federal civil rights law protects the right of plaintiffs to secure enforcement of decrees and settlement agreements through compensated monitoring activities by counsel. Pls.' Mot. for Attys.' Fees and Costs at 16-19 (Jul. 12, 2019), ECF No. 185 ("Fee Mot."). Plaintiffs clearly preserved this statutory right in the Settlement. Agreement § 11(c)(1). Uber failed to identify even one case holding that settlement monitoring fees are unavailable under the ADA or that Plaintiffs' Ninth Circuit authority is inapplicable to the ADA. Opp. at 11-13.[1]

Uber's argument that *Prison Legal News v. Schwarzenegger*, 608 F.3d 446 (9th Cir.

---

[1] Citations to the Opposition and other documents filed in this case use ECF pagination.

2010) and other cases awarding monitoring fees under 42 U.S.C. § 1988 ("Section 1988") are inapplicable is mistaken for several reasons. Opp. at 12. First, for these purposes, Section 1988 is "nearly identical" to the ADA's fee shifting provision, 42 U.S.C. § 12205. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 121 S. Ct. 1835, 1839 n. 4 (2001); *K.M. ex rel. Bright v. Tustin Unified School Dist.*, 78 F. Supp.3d 1289, 1299 (C.D. Cal. 2015) (ADA's fee shifting provision "is modeled on … 42 U.S.C. § 1988"). The ADA's fee shifting provision and Section 1988 also share the same purpose, demonstrating that they should be interpreted similarly. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559-60 (1986) (fee shifting provision in other civil rights law with "nearly identical" purpose to Section 1988 "should be interpreted in a similar manner"); *Tustin Unified*, 78 F. Supp. 3d at 1299-00 (fee shifting provision in ADA and Section 1988 have same purpose). Nothing in the ADA's fee shifting provision suggests that it should be interpreted differently than Section 1988 with respect to settlement monitoring fees or that such fees are unavailable.

Second, Uber's argument ignores the fact that, for decades, the Ninth Circuit and other courts have interpreted the two fee shifting provisions consistently. *Buckhannon*, 121 S. Ct. at 1839 N. 4, 1841-42 (explaining that ADA fee shifting provision interpreted consistently with Section 1988 and fee shifting provisions in other civil rights laws); *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134-36 (9th Cir. 2002) (applying standards from cases resolving fee claims under Section 1988 to determine entitlement to fees under ADA); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118-20 (9th Cir. 2000) (same); H.R. Rep. No. 101-485, Pt. III at 73 (1990) (ADA's attorneys' fee provision should "be interpreted in a manner consistent with the Civil Rights Attorney's Fees Act (42 U.S.C. § 1988), including that statute's definition of prevailing party").

Uber argues that *Buckhannon* bars recovery of monitoring fees under the ADA absent additional judicial relief. Opp. at 12-13. The Ninth Circuit squarely rejected this argument because *Buckhannon* does not address settlement monitoring fees. *Prison Legal News*, 608 F.3d at 451 ("we cannot accept the proposition that [in the aftermath of

*Buckhannon*,] attorney fees for post-decree efforts are compensable only if they result in a judicially sanctioned change in the parties' legal relationship.").

Uber's other arguments are unavailing. That Uber did not agree in the Settlement that Plaintiffs are entitled to monitoring fees is irrelevant. *Prison Legal News*, 608 F.3d at 452 (plaintiffs entitled to recover settlement monitoring fees where settlement preserved plaintiffs' statutory right to recover fees but defendant did not agree in settlement to plaintiffs' entitlement to monitoring fees); Opp. at 13. Uber asks the Court to disregard cases from other circuits awarding monitoring fees under the ADA. Opp. at 13. These cases demonstrate that awarding monitoring fees under the ADA is appropriate, and Uber offers no persuasive justification to ignore them. *Jackson v. Los Lunas Ctr.*, 489, F. Supp. 2d 1267 (D. NM 2007); *James v. Se. Pa. Trans. Auth.*, 93-CV-5538, 1997 WL 698035, at *4 (E.D. Pa. Nov. 4, 1997); Opp. at 13.

## II. UBER'S ATTACK ON PLAINTIFFS' CLAIMED MONITORING ACTIVITIES FAILS

Under federal law, Plaintiffs may recover fees for time "reasonably expended" on a broad array of Settlement monitoring activities. *Prison Legal News v. Schwarzenegger*, C 07-02058 CW, 2008 WL 11411620 at *1 (N.D. Cal. Dec. 5, 2008) *aff'd* 608 F.3d 446 (9th Cir. 2010); Fee Mot at 16-19. The party opposing the fee application "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir.1994). Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees. *Lucas v. White*, 63 F. Supp. 2d 1046, 1057-58 (N.D. Cal. 1999).

Uber cites several cases under California law that turn on whether a party that litigating a contractual claim under a contractual fee-shifting clause can also recover time spent litigating a related tort claim. *See* Opp. at 14 (citing *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, 618 Fed. Appx. 304, 307 (9th Cir. 2015); *Casella v. SouthWest Dealer Servs., Inc.*, 157 Cal. App. 4th 1127, 1160-62 (2007); *El Escorial Owners' Ass'n v.*

*DLC Plastering, Inc.*, 154 Cal. App. 4th 1337 (2007).  These cases have no application here, where the only claims are under state and federal disabilities law, and there are no non-fee-shifting claims.  If Uber cites these cases for their criticisms of the way the fees were presented there, the cases are again irrelevant.  For example, in *El Escorial,* the fees claimant presented total fees amounts only, with no description of the services provided.  *El Escorial,* 154 Cal. App. 4th at 1366.

The only civil rights fee shifting case in Uber's litany is the unpublished district court decision, *Melendres v. Penzone*, No. CV-07-2513-PHX-GMS, 2019 WL 1586877, at *2 (D. Ariz. Apr. 12, 2019).  In *Melendres*, as well, the fees claimants provided far less information than Class Counsel provided here.  The *Melendres* claimants omitted the detailed task category analysis that Class Counsel has provided here, which the district court cited as part of the justification for reducing fees.  *Id.* at * 3.  In addition, as searching as the *Melendres* court was in reviewing the fee petition, it did not delete entire categories from the petition, as Uber asks the court to do here, but made specific targeted reductions in each category.  *See id.* *4-*5.  Here, Class Counsel has already made the necessary reductions in the form of the very substantial billing judgments in the Petition.  *See* Docket No. 185-1 at 206 (showing reductions in each of eight claimed categories, reducing total fees sought from $405,173 to $285,731).

### A. Analyzing Complaint Data, Conferring with Uber and the Monitor, and Reporting to the Monitor Are Compensable Activities

Despite Uber's contrary argument, work to monitor compliance with the settlement, including reporting to and conferring with Uber and the Monitor, is recoverable if reasonable and related even if not spelled out in the Settlement.  *Jackson*, 489 F. Supp. 2d at 1274 (awarding monitoring fees for quarterly monitoring and report writing because they are "necessary and reasonable" monitoring activities even though not required); *Lucas*, 63 F. Supp. 2d at 1059 (awarding fees for settlement monitoring work including communicating with class members and law school clinic advocates because communications were "related to plaintiffs' monitoring functions" even though not

required); *Wilder v. Bernstein*, 975 F. Supp. 276, 285 (S.D.N.Y. 1997) (awarding fees for attending task force meetings designed to "keep plaintiffs informed of the issues and problems" related to settlement, and for "review[ing] their mail" and "organizing documents"); Opp. at 15-16.

Nothing in the Settlement limits Plaintiffs' monitoring work to reviewing and requesting information under Section 6(b) as Uber suggests. Opp. at 15. That the Settlement instructs the monitor to review "*any* … information provided … by the parties" demonstrates that the Settlement contemplates Plaintiffs' monitoring would include other activities aside from those in Section 6(b). Agreement § 8(a) (emphasis added). The Settlement does not prohibit recovery of fees for conferring with and reporting to the Monitor and Uber, or any other claimed monitoring work. *See* Agreement § 11(c)(1).

### B. Conferring with Class Members about Settlement Issues Is Compensable

Uber's unsupported objection to time Plaintiffs claim for communicating with class members about Settlement issues lacks merit. Opp. at 16-18. Communicating with class members about settlement compliance is compensable monitoring work. *Prison Legal News*, 608 F.3d at 453 (awarding monitoring fees for communications with inmates affected by settlement); *Lucas*, 63 F. Supp. 2d at 1059 (awarding fees for time spent communicating with class members and law school clinic advocates working with them because communications were "related to plaintiffs' monitoring functions").

Uber argues that because the Settlement requires it to respond to service animal complaints, Class Counsel should not also communicate with class members. Opp. at 16. Uber's required complaint forms allow class members to report discrimination to Uber so that Uber may investigate and respond to such reports as the Settlement requires. Agreement §§ 5(b)(1)-(2). Uber's complaint forms and response complaint practices do not facilitate Class Counsel's timely settlement compliance monitoring. Class Counsel does not receive copies of complaints submitted through Uber's complaint forms or complainants' contact information. *See id.* §§ 5(b)(1)-(2), 6(a), 6(b)(1).

In contrast, information gathered through communications with class members enable Class Counsel to monitor Uber's compliance with a variety of required practices, and to monitor for new trends or developments in discrimination that warrant advocacy for additional relief to combat such discrimination as the Settlement contemplates. *Id.* §§ 5, 8(a)-(b), Addenda 2-3 (requiring Uber to investigate complaints, terminate drivers who discriminate, report to riders resolution of their complaints, refund improperly charged cancellation and cleaning fees, refrain from pair blocking without rider consent, issue account credits to certain riders, maintain complaint forms in accessible formats). Gathering information from class members is the primary way that Class Counsel currently monitor Uber's compliance with some of these provisions. *Id.* §§ 5(a)(2)-(3), 5(b)(3), 5(b)(6)-(7), Addendum 2 § IV(a). (requirements to investigate complaints, communicate with riders who submit complaints, issue account credits to certain riders, and refrain from pair blocking without rider consent). Monitoring compliance means more than rubber-stamping Uber's reports. It requires communicating with class members.

Uber also mistakenly suggests that time spent monitoring compliance with requirements to terminate drivers who discriminate is not compensable because it has "sole discretion" on whether to terminate drivers who discriminate. Opp. at 16. The implication is that there is nothing to monitor because the Settlement permits Uber to terminate drivers as it pleases. However, the "sole discretion" language to which Uber refers appears once in the service animal policy and nowhere else in the Settlement or its addenda. Addendum 4. Uber's discretion is limited by the Settlement's other requirements to investigate complaints and terminate drivers whom "Uber discovers" knowingly commit a discriminatory service denial and drivers against whom Uber receives two plausible complaints of discriminatory service denials. Agreement §§ 5(a)(1), 5(a)(4), Addendum 2 IV(b)-(c). to conclude otherwise would run contrary to governing principles of contract law by rendering these other settlement requirements effectively superfluous. *Id.*; *see* Cal. Civ. Code § 1641; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (Cal. Ct. App. 2 Dist. 1998) ("Courts must interpret contractual

language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless."). The Settlement's requirements to terminate drivers who discriminate are meaningful, valid obligations, so monitoring and enforcing Uber's compliance with them is compensable.

Uber also objects to four billing entries that Plaintiffs claim for discussing the NFB testing program, reviewing NFB testing data, and communicating with NFB testing program participants.[2] Opp. at 17. The NFB testing program generates information relevant to compliance monitoring. It is therefore reasonable that Class Counsel would discuss the program and the data it generates and communicate with some testers given their role monitoring settlement compliance. The Settlement's fee provisions do not bar Plaintiffs from recovering for time spent discussing NFB's testing program or communicating with class members who participate in the program. *See* Agreement § 11(c). Uber states that these billing entries are "troubling" because Uber has paid NFB for development and administration of the testing program. Opp. at 17. Plaintiffs do not claim time for developing or administering the testing program, so Uber's purported concern is unfounded. Declaration of Valerie Yingling ¶¶ 5, 12. Uber's attack on NFB's testing is unsupported and unfounded. *See* Declaration of Timothy Elder ¶ 8, ECF No. 185-2.

### C. Work Negotiating Additional Relief Is Compensable

The Settlement's goal is to provide the class and riders with service animals with reliable access to Uber's transportation services. *See* Joint Mot. for Prelim. Approval of Class Settlement and Related Mots. at 8 (Apr. 29, 2016), ECF No. 84 ("Prelim. Approval Mot."). To Plaintiffs' knowledge, before this Settlement, no one had developed a set of policies to overcome service animal discrimination and provide riders with service animals

---

[2] Uber describes these billing entries as "representative examples." Because Uber failed to identify any other billing entries related to the NFB testing program that it deems objectionable, Uber's vague, general objection to other billing entries that reference the NFB testing program should be disregarded. *Lucas*, 63 F. Supp. 2d at 1057-58.

reliable access to a national transportation service like Uber.  When the parties entered into the Settlement, they were hopeful but not certain that the measures that the Settlement required Uber to adopt would ensure that the class would receive reliable access to Uber.  The Settlement therefore embodies a process-based solution:  a base set of policies and practices designed to prevent and redress discrimination, monitoring, and a framework to negotiate additional relief to combat ongoing discrimination.  Agreement §§ 4-6, 8.

Uber argues that negotiating additional relief is not compensable because the Settlement does not mandate zero service animal discrimination.  Opp. at 10, 18-19.  However, that the Settlement does not explicitly require zero discrimination is irrelevant to whether Plaintiffs work under Section 8 was reasonable and compensable.  It is clear from the Settlement's requirements and framework, and Section 8 in particular, that the Settlement aims to provide the class with reliable access to Uber through ongoing efforts to reduce service animal discrimination while acknowledging that it may not be eliminated entirely.  Agreement §§ 4(a), 4(b)(1)-(3), 5(a), addendum 1-3 (requiring Uber to bar drivers who discriminate from driving for Uber, take steps to educate drivers, and adopt complaint processing and response practices).  Section 8(b) provides that, "if there is good cause to believe there is need for further modifications to Uber's policies and practices," upon Plaintiffs' request, the parties would negotiate additional relief to "more effectively address" service-animal discrimination.  Agreement § 8(b).

Plaintiffs' work seeking additional relief is compensable because Plaintiffs had "good cause" to seek additional relief given that reported discrimination remained pervasive and showed little sign of abating in 2017 and 2018.  Uber reported receiving 5,429 service-animal-related service denial complaints ("service denial complaints") in 2017 and 5,866 complaints in 2018.[3]  *See* Declaration of Kristopher Nelson, Ex. 1.  The number of complaints changed from month to month but there was no clear, noteworthy

---

[3] For 2017, Uber reported service denial complaints that it received from February 16, 2017 through and including December 31, 2017.  Uber reported service denial complaints for the entire 2018 calendar year.

downward trend. *Id.* Given these facts, it was reasonable to advocate for additional relief.

The Monitor's report is not relevant to the compensability of claimed time for negotiating additional relief despite Uber's argument to the contrary. First, whether or not Uber substantially complied with its Settlement obligations is irrelevant to whether work negotiating additional relief to more effectively address service animal discrimination is compensable. *See* Agreement § 8(b), 11(c). Second, the Monitor's report addresses 2017, not 2018, the period covered by Plaintiffs' fee motion. March 21, 2019 Monitor's Report at 2. The Monitor has not yet reported on Uber's compliance in 2018.[4] The Monitor's report also does not opine on the compensability of Plaintiffs' claimed monitoring work. Instead, the Monitor's report demonstrates that Plaintiffs' monitoring work is critical to her compliance reporting. It is through Plaintiffs' monitoring and reporting that the Monitor learns about most if not all concerns regarding compliance and efficacy of the Settlement. *See* Spurchise Dec. Ex. 1 at ¶¶ 9, 11, 17-18.

Uber also argues that Plaintiffs' work negotiating additional relief is not compensable because the "2018 data reflected an overall downward trend" in complaints. Opp. at 19. This argument is both misleading and irrelevant. Plaintiffs' work negotiating relief is compensable because Plaintiffs had good cause to seek additional relief given that reported discrimination remains pervasive. Whether time spent negotiating additional relief is compensable does not depend on small trends in the number of service denial complaints, how many drivers Uber terminated for discriminating, or whether or not Uber complied with its Settlement obligations. Agreement §§ 8(b), 11(c); Opp. at 19.

Plaintiffs also dispute that the evidence shows any meaningful reduction in discrimination. The Monitor's Report discusses Uber's argument that comparing, over time, the number of service denial complaints against the total number of U.S. Uber trips shows that discrimination is declining because total trip volume has grown more than the

---

[4] At the Monitor's request, the parties are currently briefing Uber's settlement compliance during 2018.

number of complaints. Spurchise Dec. Ex. 1 ¶¶ 19-20. Uber's comparison is not a valid measure of the Settlement's efficacy. *See* Schwarz Dec. ¶¶ 8-12. This is because most Uber trips do not involve service animals, and Uber's approach assumes, without proof, that total trips taken by riders with service animals has grown at the same rate as Uber's overall trip volume and that riders consistently report discrimination. *Id.*

In addition, that few drivers receive two service denial complaints does not prove anything. Opp. at 19. The class numbers from hundreds up to approximately ten thousand, suggesting that riders with service animals are a small share of Uber's U.S. ridership. *See* Prelim. Approval Mot. at 22. That most drivers do not receive a second service denial discrimination complaint may simply result from the rarity of being asked to transport a rider with a service animal.

Uber's argument that work negotiating additional relief is not compensable because Uber did not agree to all of Plaintiffs' proposed relief and Plaintiffs did not secure another court order is without merit. Opp. at 19-21; *Prison Legal News*, 608 F.3d at 451 (monitoring fees recoverable absent post-settlement judicial relief). Uber does not dispute that Plaintiffs' efforts led to additional relief for the class. Opp. at 19. In February 2018, Uber rejected many proposals in Plaintiffs' January 29, 2018 letter. Reply Declaration of Ernest Galvan ¶ 2 ("Galvan Reply Dec."). Plaintiffs continued to advocate for additional relief and to respond to Uber's proposed changes to policies and practices after submitting their February 27, 2018 Statement to the Monitor. *Id.*; Declaration of Ernest Galvan ¶¶ 46-47, ECF No. 185-1 ("Galvan Dec."). That Class Counsel raised some proposals with Uber under Section 8(b) and others with the Monitor under Section 8(a) and that Class Counsel dropped some proposals that Uber rejected reflects litigation strategy and the give and take of negotiation and has no bearing on compensability of the work.

### D. Other Claimed Monitoring Work Is Recoverable

Uber mistakenly argues that time spent communicating with Uber about Settlement compliance, responding to Settlement-related inquiries from law enforcement and the public, investigating Uber's relevant submissions before other regulatory and adjudicative

bodies, and investigating Settlement efficacy is not compensable. Opp. at 21-22. Communicating with a party to a settlement about its settlement compliance is essential to Monitoring and compensable. Working to evaluate the Settlement's efficacy is also related to Settlement monitoring and Plaintiffs' work advocating for additional relief and therefore compensable. Agreement § 8(b).

Responding to settlement-related inquiries and investigating other proceedings related to the Settlement are also an ordinary, compensable part of monitoring. *Salazar v. D.C.*, 30 F. Supp. 3d 47, 60-61 (D.D.C. 2014), *aff'd* 809 F.3d 58 (D.C. Cir. 2015) (awarding monitoring fees for attending monthly conferences related to developments that affect class members); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1101, 1104 (N.D. Cal. 2008) (awarding monitoring fees for work communicating with prisoners impacted by settlement regarding settlement compliance, drafting press releases, and responding to press inquiries); *Wilder*, 975 F. Supp. at 285 (awarding fees for attending task force meetings designed to "keep plaintiffs informed of the issues and problems" related to settlement); *cf. Armstrong v. Davis*, 318 F.3d 965, 970 (9th Cir. 2003) (awarding post-judgment fees for work on separate but related case because work protected plaintiffs' interest). Uber offers no authority to the contrary.

### E. Work Preparing to Litigate Plaintiffs' First Fee Claim Is Compensable

Contrary to Uber's argument, work on the fee motion is compensable if it was reasonable to perform at the time even if it was not filed. *Balla v. Idaho*, 677 F.3d 910, 921 (9th Cir. 2012) ("To decide whether a lawyer's bills were 'reasonably incurred,' a judge properly looks at whether what the lawyer did was reasonable when he did it, and compensates for time reasonably spent."); *cf. Jackson*, 489 F. Supp. 2d at 1273 (awarding fees for developing protocols that were not given to defendants and conferences with monitor where monitor's advice was not shared with defendants); Opp. at 22-23. Uber offers no authority to the contrary.

Uber does not dispute that it failed to make any fee claim settlement offers during the Settlement's 60-day negotiation period. Opp. at 22-23; Galvan Dec. ¶¶ 65-67. Given

Uber's failure to make a Settlement offer by April 10, 2018, more than half way through the negotiation period, it was reasonable for Class Counsel to begin drafting a fee motion. Agreement § 11(c)(2); Galvan Dec. ¶ 65. Continuing that work was reasonable given the pace of Uber's responses once Uber began to negotiate the fee claim, the schedule of stipulated extensions, and the impasse that the parties appeared to reach in June 2018. Galvan Dec. ¶¶ 66-69.

### III. THE BILLING RECORDS ARE NOT DEFECTIVE

Uber relies on boilerplate objections, such as vagueness and block-billing that have no application to the detailed time records that Class Counsel has provided.

#### A. Vagueness

The billing entries that Uber objects to for vagueness are not defective. Billing entries, including redacted entries, are sufficiently detailed if the entry or surrounding context enable the court to understand the entry's relevance to the case. *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir. 2004); *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011 WL 6012936, at *11 (N.D. Cal. Dec. 1, 2011) (redacted entries permissible); *LaToya A. v. S.F. Unified Sch. Dist.*, No. 3:15-cv-04311-LB, 2016 WL 344558, at *8 (N.D. Cal. Jan. 28, 2016) (entry for "legal research" sufficient given surrounding entries).

Many entries objected to are easily understood in context. Surrounding entries show that both Ms. Riess' October 18, 2018 entry for "Preparing for team call" and Michael Nunez's December 21, 2018 entry for "Continue prep for call with Uber," to which Uber objected, related to Plaintiffs' compensable work conferring with Uber and the monitor. *Jackson*, 489 F. Supp. 2d at 1274; Spurchise Dec. ¶ 5, Ex. 4. Four entries marked as "vague" for Timothy Elder that include redactions to protect privileged information can be disclosed to the court under the protective order if further explanation is needed. Reply Declaration of Timothy Elder ¶ 2 ("Elder Reply Dec.").

Uber's own cases approve less descriptive entries. *Moralez v. Whole Foods Mkt., Inc.*, C 12-01072 CRB, 2013 WL 3967639 (N.D. Cal. July 31, 2013) (entry stating "[c]all[s] w/ client Francisca Moralez" adequate); *Ctr. for Food Safety v. Vilsack,* 2011

U.S. Dist. LEXIS 144428, *24-25 (N.D. Cal. Oct. 13, 2011) (entry stating "emails to/from P. Goldman; t/c to G. Loarie; t/c to W. Rostov; emails to/from B. Smith; research facts re herbicide tolerant crops." adequate).  *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1324-29 (2008), which Uber cites, is inapposite because the fee claim here is nothing like the severely problematic fee claim in that case, which was plagued with "inflated, noncredible, often vaguely documented hours" that "destroyed" counsel's credibility.

### B. Block Billing

The records that Uber tags were not block billed because they describe closely related tasks that are part of a single project or assignment.  Galvan Reply Dec.  ¶ 3; Elder Reply Dec. ¶ 3; Riess Dec. ¶ 5. Uber labels as block billed an entry from Michael Nunez on December 3, 2018 with the description "[r]eview, revise, and comment on draft statement to monitor re q7 complaint data report and other settlement issues, and email to legal team with my proposed revisions and comments" and one from Cara Trapani on February 15, 2018 with the   description "review letter from Uber re: discrepancies in Q4 data report and respond to Uber counsel."  Mr. Nunez's entry describes closely related tasks regarding preparing a report to the Monitor, and Ms. Trapani's entry describes details of responding to correspondence from Uber regarding its complaint data reports.

Even if some entries are blocked, Plaintiffs may still recover fees for such entries if all time recorded was for reasonable and necessary work on the case. *Trulock v. Hotel Victorville*, 92 Fed. App'x 433, 434 (9th Cir. 2004) (block billing not basis for refusing to award fees); *Elder v. Nat'l Conf. of Bar Exams.*, No. 11-00199 SI, 2011 WL 4079623, at *2 n.2 (N.D. Cal. Sep. 12, 2011); *Oberfelder v. City of Petaluma*, No. C- 98-1470 MHP, 2002 WL 472308, at *3 (N.D. Cal. Jan. 29, 2002); *see also Welsh v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (rejecting 20% cut to total claimed hours for block billing).

Most of the cases that Uber cites do not support Uber's argument that block billed entries should be disallowed.  *Welsh*, 480 F.3d at 948; *Fischer*, 214 F. 3d 1121; *Davis v.*

*City and Cnty. of San Francisco*, 976 F. 2d 1536 (9th Cir. 1992); *Concepcion v. Amscan Holdings, Inc.*, 223 Cal. App. 4th 1309 (2014); *Ketchum v. Moses*, 24 Cal.4th 1122 (2001) (no discussion of block billing).  Uber's other cases are inapposite because they involved fee claims with serious deficiencies not present here.  *Alnor*, 81 Cal. Rptr. 3d at 869, 874 (awarding fees for 71 of 600 claimed hours where counsel had "destroyed the credibility" of claim with "vague, indecipherable billing statements" and block billing obscured nature of work); *Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672, 689 (2000) (block billing made it "virtually impossible" to allocate "hours on a task-by-task basis" between work on claim for which fees were available and other claims).  Class Counsel should not be penalized for providing greater information than required about subtasks that go into a larger task.

### C. Uber's Unexplained Objections Should Be Disregarded

Uber marks entries totaling 6.5 hours and $2,459.50 as clerical or duplicative.  Spurchise Dec. ¶ 9, Ex. 3.  Entries that Uber marks as "clerical," such as Cara Trapani's entry on April 23, 2018 for "review agenda for internal meeting to discuss upcoming m&c w/ Uber," are compensable legal work.  *Id.* Ex. 3.  Other entries tagged as "clerical" concern short tasks that lawyers and paralegals performed, rather than incur time supervising them.  Billing for such tasks is reasonable.  *See Elder*, 2011 WL 4079623, at *4.  That two or three attorneys worked on a task does not mean that their work is duplicative.  *Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1214 (E.D. Cal. 2009) (awarding fees for work of two or three attorneys drafting documents).  Uber marks three entries as "duplicative" without explanation, which is insufficient to show duplicative billing.  *Id.*

### IV. UBER DOES NOT DISPUTE THAT PLAINTIFFS' RATES ARE REASONABLE

Plaintiffs provided ample evidence showing that the rates requested by Class Counsel are consistent with those in the San Francisco market.  Declaration of Richard Pearl ¶¶ 10, 19-20, ECF No. 185-3; Declaration of Daniel Mason ¶ 12, ECF No. 185-4;

Fee Mot. at 25-27.  Uber does not dispute Class Counsel's requested rates.

## V. PLAINTIFFS' CLAIM FOR FEES TO PREPARE THIS FEE MOTION

Class Counsel has expended 182.3 hours on work related to this fee motion, but have written down all but 115.45 of those hours, leaving a fees-for-fees claim of $64,019.25 for work on this motion through August 25, 2019.[5] Galvan Reply Dec. ¶ 4, Ex. 1.  The fees on fees claim is reasonable and significantly lower than amounts this and other courts have awarded for fee applications.  Order on Mot. for Attys' Fees and Costs at 1 (Dec. 15, 2016), ECF No. 144 (awarding, at 2016 rates, $87,938 for fee motion); *Prison Legal News*, 2008 WL 11411620 at *4 (awarding, at 2008 rates, $88,940.29 for fee motion).

## CONCLUSION

For the reasons discussed above, Plaintiffs request that the Court award fees, costs, and expenses of $293,907.45 for their work in 2018 and $64,019.25 for preparing this fee motion.

DATED:  August 30, 2019                Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: */s/ Michael S. Nunez*
Michael S. Nunez

Attorneys for Plaintiffs

---

[5] Class Counsel will claim time that they expended on this fee motion after August 25, 2019 in their next annual fee claim.